2023–2007

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

MICRON TECHNOLOGY INC., MICRON SEMICONDUCTOR PRODUCTS, INC.,
MICRON TECHNOLOGY TEXAS, LLC, STATE OF IDAHO,

*Plaintiffs-Appellees*

v.

LONGHORN IP LLC,

*Defendant-Appellant*

---

Appeal from the United States District Court for the District of Idaho
in No. 1:22-cv-00273, Judge David C. Nye

---

## MOTION TO DISMISS

---

Amanda Tessar
PERKINS COIE LLP
1900 Sixteenth Street
Denver, Colorado 80202
(303) 291–2357
ATessar@perkinscoie.com

Andrew T. Dufresne
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, Wisconsin 53703
(608) 663–7492
ADufresne@perkinscoie.com

Jonathan I. Tietz
PERKINS COIE LLP
700 Thirteenth Street N.W., Suite 800
Washington, D.C. 20005
(202) 654–6200
JTietz@perkinscoie.com

Counsel for Appellees Micron Technology, Inc.,
Micron Semiconductor Products, Inc., and Micron Technology Texas LLC

July 14, 2023

CERTIFICATE OF INTEREST

I certify that the information below is complete to the best of my knowledge.

Date: July 14, 2023          Signature:    /s/Amanda Tessar

                             Name:         Amanda Tessar

| 1. Represented Entity | 2. Real Party in Interest | 3. Parent Corporations and 10% Stockholders |
| --- | --- | --- |
| Micron Technology, Inc. | n/a | n/a |
| Micron Semiconductor Products, Inc. | n/a | Micron Technology, Inc. |
| Micron Technology Texas, LLC | n/a | Micron Technology, Inc. |

| 4. Other Legal Representatives | | |
| --- | --- | --- |
| **Perkins Coie LLP**: | Trevor Jonathan Bervik | David T. Krueck |
| | Daniel Graham | Amy E. Simpson* |
| | | * no longer with Perkins Coie |

| 5. Related Cases |
| --- |
| *Katana Silicon Technologies LLC v. Micron Technology, Inc.*, No. 23-2095 (Fed. Cir.); *Katana Silicon Technologies LLC v. Micron Technology, Inc.*, No. 1:22-cv-00282-DCN (D. Idaho). |

| 6. Organizational Victims and Bankruptcy Cases |
| --- |
| None |

# TABLE OF CONTENTS

Table of Authorities ...................................................................... ii

Table of Abbreviations and Conventions........................................ v

Introduction ................................................................................. 1

Background................................................................................... 2

    I.    Longhorn/Katana Sued Micron Yet Again ............................2

    II.   Micron Responded With IPRs, A Bad Faith Patent Assertion Claim, And A Bond Motion................................................6

    III.  The District Court Ordered Longhorn Or Katana To Post A Bond ..........8

    IV.  Longhorn/Katana Asked To Stay Their Infringement Case ...................10

Legal Standard .............................................................................11

Argument .....................................................................................11

    I.    This Court Lacks Jurisdiction Over This Appeal Under Section 1295(a)(1) Because The Bond Order Is Not A Final Ruling.......11

        A.   The Bond Order Is Not A Final Judgment.......................................11

        B.   The Bond Order Is Not An Appealable Collateral Order.................13

    II.   This Court Lacks Jurisdiction Because The District Court's Bond Order Is A Non-Appealable Interlocutory Order .....................................16

        A.   This Court Lacks Jurisdiction Under Section 1292(a)(1) Because The Appealed Order Is Not An Injunction........................16

        B.   The District Court Did Not Certify A Legal Question Under Section 1292(b)........................................................................20

        C.   Longhorn/Katana Cannot Identify Any Other Viable Grounds For Jurisdiction .................................................................21

Conclusion...................................................................................23

## TABLE OF AUTHORITIES

**CASES**                                                              **PAGES**

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981).........................................................................17, 18

*Catlin v. United States*,
  324 U.S. 229 (1945).............................................................................11

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004).............................................................................21

*Firestone Tire & Rubber Co. v. Risjord*,
  449 U.S. 368 (1981).............................................................................15

*Flanagan v. United States*,
  465 U.S. 259 (1984).............................................................................15

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
  485 U.S. 271 (1988).........................................................................14, 18

*Habasit Belting Inc. v. Rexnord Indus., Inc.*,
  161 F. App'x 952 (Fed. Cir. 2006) ....................................................16

*Hitachi Zosen Clearing, Inc. v. Tek-Matik, Inc.*,
  846 F.2d 27 (6th Cir. 1988) .........................................................19, 21

*Intellectual Ventures II LLC v. JPMorgan Chase & Co.*,
  781 F.3d 1372 (Fed. Cir. 2015) ....................................................13, 17

*Intertape Polymer Corp.*, *In re*,
  121 F. App'x 386 (Fed. Cir. 2004) ....................................................21

*Kensington Int'l Ltd. v. Republic of Congo*,
  461 F.3d 238 (2d Cir. 2006) ...............................................................21

*Klein v. United States*,
  60 F.3d 839 (Fed. Cir. 1995) .......................................................16, 17

*Lone Star Silicon Innovations LLC*, *In re*,
  No. 17-cv-03980, 2018 WL 500528 (N.D. Cal. Jan. 20, 2018) ......3, 4

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
  925 F.3d 1225 (Fed. Cir. 2019) ............................................................4

*Med. Components, Inc., In re*,
  535 F. App'x 916 (Fed. Cir. 2013) .....................................................21

*Modern Font Applications LLC v. Alaska Airlines, Inc.*,
  56 F.4th 981 (Fed. Cir. 2022) ........................................................14, 15

*Nystrom v. TREX Co.*,
  339 F.3d 1347 (Fed. Cir. 2003) .....................................................12, 13

*Orange Cnty. v. Hongkong & Shanghai Banking Corp.*,
  52 F.3d 821 (9th Cir. 1995) .................................................................18

*Pause Tech. LLC v. TiVo Inc.*,
  401 F.3d 1290 (Fed. Cir. 2005) .....................................................11, 12

*Richardson-Merrell, Inc. v. Koller*,
  472 U.S. 424 (1985)..............................................................13, 15, 16

*Quantum Corp. v. Tandon Corp.*,
  940 F.2d 642 (Fed. Cir. 1991) .............................................................16

*SafeTCare Mfg., Inc. v. Tele-Made, Inc.*,
  497 F.3d 1262 (Fed. Cir. 2007) ...........................................................11

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
  657 F.3d 1349 (Fed. Cir. 2011) .....................................................17, 18

*TCL Commc'n Tech. Holdings Ltd. v. Telefonaktiebolaget LM
  Ericsson*, 943 F.3d 1360 (Fed. Cir. 2019) .........................................18

*Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*,
  338 F.3d 1353 (Fed. Cir. 2003) ...........................................................20

*Ultratec, Inc. v. CaptionCall, LLC*,
  611 F. App'x 720 (Fed. Cir. 2015) ......................................................16

*Woodard v. Sage Prods., Inc.*,
  818 F.2d 841 (Fed. Cir. 1987) (en banc) ...............................17, 19, 20

**STATUTES**                                                      **PAGES**

28 U.S.C. § 1292(a)(1) .................................................................16, 17, 18, 19

28 U.S.C. § 1292(b) ............................................................................16, 20

28 U.S.C. § 1292(c) ....................................................................................11

28 U.S.C. § 1292(c)(1) ...............................................................................16

28 U.S.C. § 1295(a)(1) ...................................................................11, 12, 13

35 U.S.C. § 285 .............................................................................................7

Idaho Code § 48-1703 ......................................................................7, 9, 15

Idaho Code § 48-1706 .........................................................................6, 7

Idaho Code § 48-1707 ......................................................................7, 9, 14

**OTHER AUTHORITIES**                                   **PAGES**

Fed. R. Civ. P. 11 .......................................................................................7

Fed. R. Civ. P. 54(b) ................................................................................12

## TABLE OF ABBREVIATIONS AND CONVENTIONS

| | |
|---|---|
| Add___ | addendum page ___ |
| IPR | *inter partes* review |
| Micron | plaintiff-appellees Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC |
| Katana | Katana Silicon Technologies LLC |
| Longhorn | defendant-appellant Longhorn IP LLC |
| Stay Motion | motion of Longhorn/Katana to stay district court proceedings (*Katana Silicon Techs. LLC v. Micron Tech., Inc.*, No. 22-cv-00282-DCN (D. Idaho June 30, 2023), ECF No. 69-1) |
| § | unless otherwise specified, all uses of "§" refer to sections of U.S.C. Title 28 |

## INTRODUCTION

This is a premature appeal. Longhorn and Katana purport to appeal from an Order by the district court requiring one of them to post a bond before Katana can proceed with its infringement suit against Micron. Longhorn is a serial plaintiff with a long history of using shell holding companies like Katana to bring baseless patent infringement claims. The district court imposed the bond under state law because it found a reasonable likelihood that Longhorn/Katana brought the infringement claims in bad faith.

Longhorn/Katana filed this appeal prematurely because the district court's Bond Order is not a final judgment and does not otherwise fit within this Court's limited appellate jurisdiction applicable to interlocutory orders. Orders granting security during litigation are typically not appealable. Nor are stays or discretionary case-management decisions setting the order in which issues will be litigated. The district court's Bond Order extends no further. The district court has issued no final judgment nor granted any injunctive relief. The underlying infringement case remains pending—the district court has not dismissed or entered judgment, and Katana has not asked it to do so. In fact, Katana has moved to *stay* the infringement case in view of separate IPR proceedings (and for the pendency of this appeal), undercutting any claim of urgency from Longhorn or Katana in pursuing their infringement case.

Longhorn and Katana will have their chance to argue the merits of the Bond Order and the district court's application of state law when the correct time comes for a viable appeal. But now is not the time for those arguments, which must await a final judgment from the district court before becoming ripe for appeal. Longhorn and Katana have simply jumped the gun before proceeding to any final, appealable ruling from the district court. The Court should dismiss their premature appeals.[1]

## BACKGROUND

## I.    Longhorn/Katana Sued Micron Yet Again

Micron is an American success story. In less than twenty years, it grew from a four-person company in a Boise basement to a Fortune 500 leader in computer memory. Add32. It spends billions of dollars each year on research and development. Add32. It employs more than 45,000 people and has obtained more than 53,000 patents. Its technology is ubiquitous. Add32. Despite its global reach, Micron maintains its Boise roots—it remains headquartered in Idaho and employs thousands in the Gem State. Add32.

Micron's success makes it a target. Enter Katana and Longhorn. Longhorn is a serial plaintiff. It makes no goods. It performs no technological services. Headquartered in Texas, it does nothing but collect and assert patents. Add2; Add138.

---

[1] Micron conferred with the other parties regarding this motion. The State of Idaho does not oppose Micron's motion to dismiss. Longhorn opposes.

Longhorn paints itself as an adviser to "clients." Add138; Add755. But that is a caricature of what it really does. Longhorn is a puppeteer, not a practitioner. Mr. Khaled Fekih-Romdhane is its puppet master and the sole person who dictates its mission, business model, and execution priorities. Add153-154. Longhorn forms holding companies like Katana (calling them "clients") that are *also* controlled by Mr. Fekih-Romdhane and typically headquartered at his home address. Add42-43. The holding companies buy low-value patents in their own names, while Longhorn publicly touts those patent portfolios as its own. *See* Add692. Longhorn then has its holding companies sue—usually in venues far from its targets' home districts. *See, e.g.*, Add3, Add240. Longhorn's litigation strategy relies on nuisance, not substance. Defendants like Micron soon realize that any merits victory would be pyrrhic: not only would the defendant spend more money defending the case than the holding company demanded, but Longhorn's shell game also effectively nullifies the fee-shifting provisions that ordinarily would discourage baseless litigation. The holding company, after all, can just fold and let Longhorn off scot-free.

Longhorn has targeted Micron before. In 2016, another of its shell companies, Lone Star Silicon Innovations LLC, sued Micron in the Eastern District of Texas. Add240. After transfer to the Northern District of California, the district court criticized Lone Star for engaging in a "litigation gimmick" to conceal a third party's retained ownership interest in the patents Lone Star asserted. Add310, Add320; *In*

*re Lone Star Silicon Innovations LLC*, No. 17-cv-03980, 2018 WL 500258, at *1, *6 (N.D. Cal. Jan. 20, 2018).[2]  Micron fought back on the merits and eventually succeeded in IPRs against every one of the seven asserted patents, but it cost millions to get there.  Add45, Add57.  Longhorn/Lone Star then threatened to drive costs still higher through a series of appeals before offering a tiny settlement that made it utterly impractical for Micron to keep litigating.  Add32-33.  Micron *thought* that meant Longhorn would not target Micron with another meritless suit.

But that was not to be.  Another of Longhorn's shell companies, Katana,[3] soon began to pepper Micron with less than clear assertions, unsubtle threats, and much too tall demands.  First, Longhorn/Katana sent a letter in August 2018 demanding that Micron license the Katana portfolio and telling Micron that Longhorn/Katana had sued others.  Add33; Add597.  They proffered no infringement theory.  Add33;

---

[2]  Lone Star sued alone, claiming to be the sole patent owner, but it withheld its assignment documents for "nearly a year after filing suit."  *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1228 (Fed. Cir. 2019).  Once produced, those documents showed an agreement crafted to "shield [Lone Star's assignor] from counterclaims" while sharing the rights to benefit from litigation.  *In re Lone Star*, 2018 WL 500258, at *1.  The district court dismissed for lack of standing and refused to allow joinder, citing prejudice from Lone Star's "litigation gimmick" that delayed discovery into its insufficient ownership rights.  *Id.* at *6.  This Court vacated not because it disagreed as to Lone Star's conduct or the resulting prejudice, but because Rule 19 joinder is mandatory and overrides such discretionary considerations.  *Lone Star*, 925 F.3d at 1238.

[3]  A "katana" is a kind of sword.  It is thin and has one sharp edge.  While a katana can cut, it also tends to bend or break when struck.

– 4 –

Add597-598.  A month later, they sent another letter, again bereft of explanation.

Add33.  The second letter cited a different set of patents than the first.  Add33;

Add652-653.  A month after that, Longhorn/Katana requested a meeting—again, not

yet having explained how they thought Micron might infringe.  Add33; Add692.

Micron agreed, and Mr. Fekih-Romdhane traveled to Boise in November 2018.

Add33.  Longhorn/Katana finally sent claim charts shortly before that meeting.

Add33-34.  Those claim charts made clear that Longhorn/Katana's position was

baseless.  Micron brought its technical team to the meeting to explain some of the

many reasons why Micron did not infringe and why Katana's patents were invalid.

Add34; Add696-697.  Longhorn/Katana never plausibly rebutted Micron's points

nor addressed the many other substantive deficiencies with their infringement alle-

gations.

After a few more rounds of correspondence in 2019 and 2020, Longhorn/Kat-

ana went quiet.  Add34.  In the meantime, Longhorn made passing threats about the

patent portfolios of a few of its other aggressively named shell companies ("Car-

thage," "Hamilcar," and "Trenchant Blade").  Add34.

In March 2022, Katana sued Micron in the Western District of Texas, asserting

three patents: United States Patent Nos. RE38,806, 6,352,879, and 6,731,013.  Add3.

The '806 and '879 patents had expired in 2018, and the '013 patent in 2021.  Add3.

The dispute's center of gravity was Boise, and so the Texas court transferred to the

District of Idaho. Add3. Longhorn/Katana initially opposed transfer—making Micron spend money on motion practice and briefing—before summarily dropping their opposition when it came time to prepare and file their own responsive brief. Add703-704. This made sense, as the Western District of Texas lacked jurisdiction over this suit from the beginning.

## II. Micron Responded With IPRs, A Bad Faith Patent Assertion Claim, And A Bond Motion

Faced (again) with a Longhorn entity's nuisance suit, Micron took steps to protect itself. Specifically, Micron asserted Idaho state-law claims for bad faith patent assertion against both Katana[4] and Longhorn.[5] Add3-4; *see* Idaho Code § 48-1706. Micron also filed IPR petitions against Katana/Longhorn's asserted patents. *See Micron Tech., Inc. v. Katana Silicon Techs. LLC*, Nos. IPR2023-00071, -00072 (PTAB) ('806 patent); *Micron Tech., Inc. v. Katana Silicon Techs. LLC*, No. IPR2023-00073 (PTAB) ('879 patent); *Micron Tech., Inc. v. Katana Silicon Techs. LLC*, No. IPR2023-00105 (PTAB) ('013 patent). The Board instituted the first three

---

[4]   Micron raised its bad faith patent assertion claim against Katana as a counterclaim in Katana's infringement suit. *Katana Silicon Techs. LLC v. Micron Tech., Inc.*, No. 1:22-cv-00282 (D. Idaho, June 6, 2022), ECF No. 13 (Micron's Answer).

[5]   Micron brought its claim against Longhorn as a new affirmative suit in Idaho state court, which Longhorn later removed to federal court. *Micron Tech., Inc. v. Longhorn IP LLC*, No. 1:22-cv-00273 (D. Idaho July 5, 2022), ECF No. 1 (Longhorn's Notice of Removal).

IPRs in this past May.  The Board later denied institution as to the '013 patent—*after* Micron's notice of appeal here—but the other three proceedings continue.[6]

Micron also sought a protective bond in the district court, as permitted by the same Idaho legislation that established a cause of action against bad faith patent assertion.  Idaho Code § 48-1707.  Micron did so with good reason, as it knew that Longhorn's litigation model could otherwise render toothless the available mechanisms for financial accountability.  For example, Micron could pursue fees and costs if the court deemed Katana/Longhorn's infringement claims exceptional at the end of the case.  *See, e.g.*, 35 U.S.C. § 285; Fed. R. Civ. P. 11.  Micron could also seek damages under state law.  Idaho Code §§ 48-1703(1), 48-1706.  But Longhorn structures its whack-a-mole shell subsidiaries such that post-hoc attorney-fee orders or monetary sanctions will never take effect.  Add2.  After all, if one undercapitalized subsidiary gets hit with a judgment, Longhorn can simply leave it for dead and hop to another.

So Micron sought a bond under a state law requiring plaintiffs credibly accused of bad faith patent assertion to post an amount corresponding to the estimated liability that would follow from an ultimate finding of bad faith.  *See* Idaho Code § 48-1707.  That should have been uncontroversial.  If the district court ultimately

---

[6]  Micron intends to request rehearing of the decision denying institution on the '013 patent.  That request has been filed and is pending.

finds that Katana/Longhorn did not assert their patents in bad faith, or they successfully challenge that statutory framework, they get the bond back.  And if their case *is* held to be in bad faith, the bond simply ensures they pay what they owe.  The bond, effectively, acts as a surety against any eventual fee award entered in consequence of bad faith litigation and would be a credit against that award.  Katana/Longhorn's only basis to object would be a desire to dodge their legal obligations.  That is not a legitimate reason.

## III.    The District Court Ordered Longhorn Or Katana To Post A Bond

Katana and Longhorn moved to dismiss Micron's state law claim alleging bad faith patent assertion and opposed Micron's request for a bond.  Add3-4.

The district court denied Katana/Longhorn's motions to dismiss.  The court analyzed and rejected arguments that the Idaho law was preempted, Add6-19, that Micron's claim fell outside the statute of limitations, Add19-21, and that Micron had not plausibly pled a bad faith patent assertion.  Add21-26.  Katana/Longhorn do not appeal the denial of their motions to dismiss—nor could they do so now.  The merits of Micron's complaint are subject to judicial review later, but only after this case reaches a final judgment.

Turning to Micron's bond request, the district court concluded that the bond statute is a substantive provision that applies in federal court, not just in state court.  Add27.  To support a bond, the statute required Micron to show "a reasonable

likelihood" that Longhorn/Katana would ultimately be found to have "made a bad faith assertion of patent infringement."  Idaho Code § 48-1707; *see also id.* § 48-1703 (identifying factors for bad faith assertion).  The district court concluded that Micron had met the statutory standard for entitlement to a bond.  Add28.  In discussing various statutory factors pointing to bad faith, the court noted Micron's showing that its products used a thermoplastic encapsulant instead of a "resin," as required by the asserted '806 patent claims, and Katana had no reason to think that Micron's products use resins, *see* Add22-23; that Longhorn's activities and communications were threatening and extortive, *see* Add23-24; that Katana should have been aware of its patents' invalidity based on abundant prior art, *see* Add24; that Katana's complaint contained deceptive assertions, such as implying that Longhorn was a totally unrelated entity, not a puppeteer, Add24-25; and that Longhorn's shell companies had filed meritless claims against Micron before, involving a "litigation gimmick." Add25-26.  All of that illustrated Longhorn/Katana's shoot-first, ask-questions-later business model and added up to a reasonable likelihood that Micron would ultimately succeed in establishing a bad faith patent assertion.

The district court also agreed that Micron had provided a reasonable estimate of its costs to litigate Longhorn/Katana's infringement claims.  Add28.  Micron's estimate was based on statistics from the American Intellectual Property Law Association on the cost of defending patent suits.  Appx28-29.  But the district court

adopted a lower, even more conservative estimate (*i.e.*, one that favored Long-horn/Katana), and based on its own estimate, calculated a total bond requirement of $8 million—about half the bond amount that Micron had requested. Add28-29. In its Order, the court explained that one or the other of Longhorn or Katana had to post the bond before Katana's infringement case (No. 1:22-cv-00282) could proceed further. Add30.

## IV.    Longhorn/Katana Asked To Stay Their Infringement Case

The Bond Order offered Longhorn and Katana a choice between paying the bond or effectively staying their infringement case pending final resolution of Micron's bad faith assertion claims. Add29-30. Specifically, nonpayment of the bond shifts the order of issues, with Micron's bad faith-assertion claims to be litigated first, followed by the infringement claims and invalidity defenses. To date, Long-horn/Katana have not paid the bond, asserting that it was "not feasible" for them to do so, and their infringement claims remain pending. In addition, Longhorn/Katana have also now *asked* the court for an affirmative stay of their infringement case, citing Micron's pending IPRs and this appeal. *Katana Silicon Techs. LLC v. Micron Tech., Inc.*, No. 22-cv-00282-DCN (D. Idaho June 30, 2023), ECF No. 69-1 ("Stay Motion").

Longhorn and Katana have now filed overlapping, parallel appeals challenging the district court's Bond Order. *See also Katana Silicon Techs. LLC v. Micron Technology, Inc.*, No. 23-2095 (Fed. Cir.) (Katana's appeal).

## LEGAL STANDARD

Appellants Longhorn/Katana have the burden to show that this Court has jurisdiction over their appeal. *SafeTCare Mfg., Inc. v. Tele-Made, Inc.*, 497 F.3d 1262, 1266-67 (Fed. Cir. 2007). That requires Longhorn/Katana to show that there is either a final judgment of the district court, 28 U.S.C. § 1295(a)(1), or a basis for jurisdiction over an interlocutory order, *id.* § 1292(c). *Pause Tech. LLC v. TiVo Inc.*, 401 F.3d 1290, 1292 (Fed. Cir. 2005). Whether this Court has appellate jurisdiction is a matter of Federal Circuit law. *Id.*

## ARGUMENT

### I.    This Court Lacks Jurisdiction Over This Appeal Under Section 1295(a)(1) Because The Bond Order Is Not A Final Ruling

#### A.    The Bond Order Is Not A Final Judgment

This Court has jurisdiction over a "final decision" of a district court in a patent case. 28 U.S.C. § 1295(a)(1). A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945) (citation omitted). That fundamental rule prevents piecemeal appeals and requires that *all* claims in the action have been decided on the merits before an appeal. *Pause Technology*, 401 F.3d at 1292-93.

Premature appeals must therefore be dismissed. *See id.* at 1293-95 (dismissing appeal where district court had decided infringement but had not yet reached invalidity counterclaims); *Nystrom*, 339 F.3d 1347, 1351 (Fed. Cir. 2003) (similar). That is the case here: this litigation is not over.

First, Micron's bad faith assertion claims against Longhorn/Katana have not been finally decided. The district court denied Longhorn/Katana's motions to dismiss those claims. Add26, Add30. Further, Micron has already incurred significant costs litigating numerous issues across multiple venues (the Western District of Texas, the District of Idaho, the Idaho state district court, and the PTAB). As a result, Micron would still be entitled to seek damages for bad faith assertion even if Longhorn/Katana were to withdraw their baseless infringement claims.

Second, Longhorn/Katana's infringement claims are not dead. The district court has not dismissed the infringement claims—either on the merits or for failure to prosecute. And Longhorn/Katana have not asked for those claims to be withdrawn or voluntarily dismissed. If Longhorn or Katana posts a bond or defeats Micron's bad faith assertion claims, their infringement case will continue. Further, even if the district court disposed of Longhorn/Katana's infringement claims, the ongoing pendency of Micron's counterclaim would still preclude Section 1295(a)(1) jurisdiction absent certification under Federal Rule of Civil Procedure 54(b). *Pause Technology*, 401 F.3d at 1293-94. The district court made no such certification here.

Finally, even if this Court construes the Bond Order as a stay, "decisions on motions to stay ordinarily are not appealable under the final judgment rule." *Intell. Ventures II LLC v. JPMorgan Chase & Co.*, 781 F.3d 1372, 1375 (Fed. Cir. 2015); *see also Nystrom*, 339 F.3d at 1351 (similar).

Accordingly, the Bond Order is not an appealable final judgment under 28 U.S.C. § 1295(a)(1).

### B.    The Bond Order Is Not An Appealable Collateral Order

Longhorn and Katana have suggested that the Bond Order falls within the collateral order doctrine. That does not apply here either. The collateral order doctrine is a "narrow exception" to the final judgment rule that allows appeals only for a "small class" of orders affecting rights that otherwise would "be irretrievably lost." *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 430-31 (1985) (citations omitted). To meet that standard, an order must (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) "be effectively unreviewable on appeal from a final judgment." *Id.* (cleaned up).

Longhorn and Katana will not irretrievably lose any right by awaiting a final judgment here. If they prevail on the merits of Micron's bad faith claim, the bond requirement will fall away. If not, they can appeal at that point. Any delay in litigating Longhorn/Katana's infringement claims can always be accounted for in a

final judgment because the asserted patents are expired, and there is no threat of ongoing infringement.  There is no prospect for the type of harm the collateral order doctrine is meant to address: "harm that cannot be undone on appeal from a final judgment."  *Modern Font Applications LLC v. Alaska Airlines, Inc.*, 56 F.4th 981, 986 (Fed. Cir. 2022).  That requires a bell that cannot be un-rung, such as an order to make sensitive information public.  *See id.* (discussing examples).

The Bond Order likewise fails to meet any of the three basic requirements of the collateral order doctrine.  First, the bond is not conclusive—it can change.  If Longhorn or Katana does not pay the bond, the district court will resolve Micron's claim for bad faith patent assertion first.  That will determine whether the bond is still required.  To the extent that Longhorn and Katana suggest that they *cannot* pay because the bond is too high, the amount of the bond is not conclusive either.  The bond's magnitude depends on the costs of defending the infringement case.  Idaho Code § 48-1707.  There are pending IPRs against the asserted patents.  If some or all of those claims are held unpatentable, the cost of defending the infringement case could shift, even plummet.  *See, e.g.*, *Gulfstream Aerospace Corp. v. Maycamas Corp.*, 485 U.S. 271, 278 (1988) (noting that an order is "inherently tentative" if the district court "does not 'necessarily contemplate' that the decision will close the matter for all time").

Second, the Bond Order is not "completely separate from the merits." *Richardson-Merrell*, 472 U.S. at 439-40. It is entangled with them. The requirement for a bond, and its amount, depend on the infringement case and whether it was brought in bad faith, including whether a reasonable plaintiff "would know or reasonably should know that such assertion is meritless." Idaho Code § 48-1703(2). The bond issue is therefore inseparable from the merits of Longhorn/Katana's infringement claims and Micron's defenses.

Third, relief is available after a final judgment. To appeal now, Longhorn and Katana must show that later review is impossible, not merely "unlikely." *Modern Font*, 56 F.4th at 985. But when this case becomes final, Longhorn/Katana either will have already prevailed on the merits of Micron's bad faith assertion claim (and thus eliminated the bond requirement) or will be able to appeal regarding the bad faith claim and the validity and amount of any final bond order. A successful appeal would offer Longhorn/Katana a path for a remand to litigate the infringement claims without posting the disputed bond. The Supreme Court has deemed analogous orders affecting the course of litigation reviewable only after final judgment, in part because a prejudiced litigant might be able to obtain a remand. *See, e.g.*, *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981) (order refusing to disqualify counsel deemed reviewable after final judgment); *Flanagan v. United States*, 465 U.S. 259, 265-66 (1984) (order disqualifying counsel also deemed reviewable after

final judgment); *Richardson-Merrell*, 472 U.S. at 440 (same, even despite the "significant hardship" the underlying order imposed).  Orders that merely determine the order in which issues are tried are reviewable after final judgment.  *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 644 (Fed. Cir. 1991) (refusal to defer willfulness issue was effectively reviewable on appeal from final judgment).

Finally, to the extent that the Bond Order has the practical effect of a stay, this Court has held that stay orders are not immediately appealable under the collateral-order doctrine.  *E.g.*, *Habasit Belting Inc. v. Rexnord Indus., Inc.*¸ 161 F. App'x 952, 953 (Fed. Cir. 2006); *Ultratec, Inc. v. CaptionCall, LLC*, 611 F. App'x 720, 721 (Fed. Cir. 2015); *Klein v. United States*, 60 F.3d 839 (Fed. Cir. 1995) (table).

## II.    This Court Lacks Jurisdiction Because The District Court's Bond Order Is A Non-Appealable Interlocutory Order

Although this Court has limited jurisdiction over certain types of interlocutory appeals, none of those situations is present here.

### A.    This Court Lacks Jurisdiction Under Section 1292(a)(1) Because The Appealed Order Is Not An Injunction

Section 1292(a)(1) confers jurisdiction over orders "granting, continuing, modifying, refusing[,] or dissolving injunctions."[7]  But the district court's Bond

---

[7]    Under 28 U.S.C. § 1292(c)(1), this Court has jurisdiction over interlocutory appeals to the extent specified by §§ 1292(a)-(b) in cases arising under the patent laws.

Order is not an injunction. The court did not characterize it as an injunction, and it lacks the effect of one. Section 1292(a)(1) does not apply.

In practical effect, the district court's bond operates as a temporary stay of one set of claims within these cases: it puts Longhorn/Katana's patent infringement claims on pause while the bad faith patent assertion claims proceed or until Longhorn or Katana posts the bond. Importantly, a stay is not an injunction under Section 1292(a)(1). *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1359-60 (Fed. Cir. 2011); *see also Intell. Ventures II*, 781 F.3d at 1374-75, 1379 (no interlocutory jurisdiction over stay pending CBM reviews where no statute imbued court with interlocutory jurisdiction); *Klein*, 60 F.3d at 839 (no interlocutory jurisdiction over stay of refund action in Court of Federal Claims pending resolution of later-filed action in district court because stay did not displace plaintiff from federal forum and was not injunctive in nature).

Further, even if the Bond Order could be equated with injunctive relief, Longhorn/Katana would have to do "more" than show "that the order has the practical effect of granting or refusing an injunction" to establish jurisdiction. *Spread Spectrum*, 657 F.3d at 1360 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981)) (cleaned up). An immediately appealable order must (1) "be injunctive in nature," (2) "cause a serious, if not irreparable consequence," and (3) "be effectually challenged only by immediate appeal." *Woodard v. Sage Prods., Inc.*, 818 F.2d 841,

849 (Fed. Cir. 1987) (en banc) (citing *Carson*, 450 U.S. at 84). These requirements further the Supreme Court's "narrow[ ]" reading of Section 1292(a)(1) as a "limited exception" to the "congressional policy against piecemeal review." *Carson*, 450 U.S. at 84. Longhorn/Katana cannot satisfy any of the conditions necessary for immediate review.

First, the Bond Order is not "injunctive in nature." *Woodard*, 818 F.2d at 849. Injunctions are equitable relief. A bond is legal, not equitable, and is designed to ensure that compensation will be available if needed. *See Orange Cnty. v. Hongkong & Shanghai Banking Corp.*, 52 F.3d 821, 826 (9th Cir. 1995) (surveying circuits and explaining that "security devices" are not "injunctive for purposes of section 1292(a)(1)"); *TCL Commc'n Tech. Holdings Ltd. v. Telefonaktiebolaget LM Ericsson*, 943 F.3d 1360, 1372-73 (Fed. Cir. 2019) (explaining that a "release payment" was legal, not equitable, because it was compensatory in nature). To the extent it could be viewed more broadly, the district court's Bond Order simply controls the pace and order of litigation, akin to a stay or other ordinary docket-control activities that are left to the district court's discretion. Stays and case-management orders are not injunctive in nature. *See Spread Spectrum*, 657 F.3d at 1360; *Woodard*, 818 F.2d at 846; *Gulfstream*, 485 U.S. at 279 ("An order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1)."). If

Longhorn/Katana pay the bond or succeed in defending against Micron's claim for bad faith patent assertion, their infringement claims can resume; otherwise, Micron's offensive claims proceed first.

Second, Longhorn/Katana can point to no "serious" or "irreparable" consequences of the Bond Order. *Woodard*, 818 F.2d at 849. A bond order *prevents* irreparable consequences to a party. *See Hitachi Zosen Clearing, Inc. v. Tek-Matik, Inc.*, 846 F.2d 27, 29 (6th Cir. 1988) (explaining that prejudgment security devices do not pose a serious risk of loss "since the interest of both parties is adequately protected"). If Longhorn and Katana prevail in their infringement claims or in defending against Micron's bad faith assertion claims, any bond they pay will be returned. If Micron prevails on its bad faith assertion claims, a bond will assure that Longhorn/Katana end up paying what they owe by law. Nor can the temporary-stay effect of declining to pay the bond count as a serious or irreparable consequence—Longhorn/Katana have themselves affirmatively asked the district court to stay their infringement claims pending resolution of this (premature) appeal and the parallel IPRs. Stay Motion at 2 (Longhorn/Katana arguing that "[w]hile these IPRs review Katana's patents, the cases here should be stayed"). In view of that request, it cannot *also* be urgent to litigate those same infringement claims *now*, and temporarily putting the infringement claims on hold risks no irreparable harm.

Third, the bond is not "effectually challenged only by immediate appeal." *Woodard*, 818 F.2d at 849, 854-55.  Longhorn/Katana's infringement case is simply paused.  Meanwhile, Micron's bad faith assertion claims continue.  Longhorn/Katana can obtain relief by prevailing on those claims before the district court or on appeal if, as they insist, their infringement case was filed in good faith.  In short, *immediate* appeal is not Longhorn/Katana's only option.

## B.    The District Court Did Not Certify A Legal Question Under Section 1292(b)

In limited cases, Section 1292(b) allows for interlocutory jurisdiction where a district judge issues an order and certifies that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  The district court made no such certification.  Even if it had, however, and even if Longhorn/Katana had made a timely application, review by this Court would *still* be discretionary.  *See Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353, 1357-58 (Fed. Cir. 2003).  Because Longhorn/Katana have suffered no injury, there would be no reason to permit a piecemeal appeal.   In short, Longhorn/Katana cannot establish jurisdiction under Section 1292(b).

### C.    Longhorn/Katana Cannot Identify Any Other Viable Grounds For Jurisdiction

When asked, Longhorn and Katana have suggested that the Bond Order is an injunction or a collateral order, which is incorrect for the reasons explained above. The only other basis for appellate jurisdiction they have offered was to suggest that bond awards are immediately appealable as of right.  But that is not even remotely true.  *See Hitachi*, 846 F.2d at 29 (explaining that "courts of appeals have uniformly held that orders granting … security are not immediately appealable"); *Kensington Int'l Ltd. v. Republic of Congo*, 461 F.3d 238, 240-42 (2d Cir. 2006) (holding unappealable order requiring posting of bond to cover costs).

Likewise, Longhorn/Katana have not petitioned for mandamus.  At best, Longhorn/Katana have suggested that they might seek mandamus relief in the alternative.  ECF No. 3 (docketing statement of Longhorn IP, LLC).  But, even if they do, they cannot meet the exacting mandamus standard, which requires a petitioner to show (1) a clear and indisputable legal right, (2) a lack of any other adequate method for obtaining relief, and (3) that the writ is appropriate under the circumstances.  *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004).  Applying that standard, this Court routinely denies mandamus petitions aimed at dislodging a district court's temporary stay.  *See, e.g.*, *In re Med. Components, Inc.*, 535 F. App'x 916, 918-19 (Fed. Cir. 2013) (denying mandamus where petitioner challenged district court's stay pending reexamination); *In re Intertape Polymer Corp.*, 121 F.

App'x 386, 386-87 (Fed. Cir. 2004) (denying mandamus where petitioner challenged district court's stay pending *en banc* appellate decision). The same conclusion would be warranted here. First, Longhorn/Katana have no clear and indisputable right to avoid paying a bond required by law to secure a defendant's recovery after fighting off bad faith infringement allegations. That issue has not been decided in their favor by any court. Second, Longhorn/Katana have other adequate methods for obtaining relief. For instance, they can litigate Micron's bad faith assertion claim first. If they win, the bond goes away. If they lose, they can immediately appeal that claim from a final judgment because the Longhorn case includes only Micron's claim for bad faith patent assertion and Longhorn's counterclaim challenging the Idaho statute. *Micron Tech., Inc. v. Longhorn IP, LLC*, No. 1:22-cv-00273 (D. Idaho May 17, 2023), ECF No. 51 (answer and counterclaim). Third, the writ would not be appropriate under the circumstances here because Micron's bad faith assertion claim and IPRs remain ongoing, and those actions could moot the bond entirely (for example, if Longhorn/Katana prevail on the bad faith claim) or substantially decrease its amount (if the IPRs streamline the infringement case and thereby reduce Micron's overall cost of defense).

## CONCLUSION

The Court should dismiss Longhorn's and Katana's appeals.


Respectfully submitted,

PERKINS COIE LLP

by /s/Amanda Tessar

Amanda Tessar

Counsel for Appellees Micron

# Addendum

## CONTENTS

| Document | Pages |
|---|---|
| Memorandum Decision and Order, No. 1:22-cv-00273, Dkt. 50 (May 3, 2023) (also No. 1:22-cv-00282, Dkt. 64). | Add1-30 |
| Declaration of David Westergard in Support of Motion for Bond, No. 1:22-cv-00273, Dkt. 15-1 (July 21, 2022). | Add31-36 |
| Plaintiffs' Memorandum in Support of Their Motion for Bond Pursuant to Idaho Code § 48-1707, No. 1:22-cv-00273, Dkt. 15 (July 21, 2022). | Add37-61 |
| Declaration of Daniel Graham in Support of Plaintiffs' Memorandum in Support of Their Motion for Bond Pursuant to Idaho Code § 48-1707, No. 1:22-cv-00273, Dkt. 15-3 (July 21, 2022). | Add72-81 |
| Exhibit 5 to Declaration of Daniel Graham, No. 1:22-cv-00273, Dkt. 15-8 (July 21, 2022). | Add137-138 |
| Exhibit 7 to Declaration of Daniel Graham, No. 1:22-cv-00273, Dkt. 15-10 (July 21, 2022). | Add142-218 |
| Complaint for Patent Infringement, *Lone Star Silicon Innovations LLC v. Micron Tech., Inc.*, No. 2:16-cv-1116 (E.D. Tex.), Exhibit 13 to Declaration of Daniel Graham, No. 1:22-cv-00273, Dkt. 15-16 (July 21, 2022). | Add239-297 |
| Order Granting Motions to Dismiss, *In re Lone Star Silicon Innovations LLC*, No. C 17-03980 (N.D. Cal. Jan. 20, | Add309-320 |

| Document | Pages |
|---|---|
| 2018), Exhibit 15 to Declaration of Daniel Graham, No. 1:22-cv-00273, Dkt. 15-18 (July 21, 2022). | |
| Letter from Jason Weinert to Joel L. Poppen (Aug. 22, 2018), Exhibit 24 to Declaration of Daniel Graham, No. 1:22-cv-00273, Dkt. 15-27 (July 21, 2022). | Add596-599 |
| Letter from Jason Weinert to Joel L. Poppen (Sept. 18, 2018), Exhibit 27 to Declaration of Daniel Graham, No. 1:22-cv-00273, Dkt. 15-30 (July 21, 2022). | Add651-654 |
| Email from Jason Weinert to David Ashmore (Oct. 19, 2018), Exhibit 29 to Declaration of Daniel Graham, No. 1:22-cv-00273, Dkt. 15-32 (July 21, 2022). | Add691-694 |
| Email from Dave Westergard to William Cory Spence (Feb. 4, 2019), Exhibit 30 to Declaration of Daniel Graham, No. 1:22-cv-00273, Dkt. 15-33 (July 21, 2022). | Add695-699 |
| Katana's Response in Non-Opposition to Micron's Motion to Transfer, *Katana Silicon Techs. LLC v. Micron Tech., Inc.*, No. 1:22-cv-00214 (W.D. Text. July 6, 20122), Exhibit 32 to Declaration of Daniel Graham, No. 1:22-cv-00273, Dkt. 15-35 (July 21, 2022). | Add702-704 |
| Longhorn IP LLC's Response to Plaintiffs' Motion for Bond Pursuant to Idaho Code § 48-1707, No. 1:22-cv-00273, Dkt. 35 (Aug. 11, 2022) | Add750-775 |

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KATANA SILICON TECHNOLOGIES LLC, <br><br> Plaintiff, <br><br> v. <br><br> MICRON TECHNOLOGY, INC, et al., <br><br> Defendants. | Case No. 1:22-cv-00282-DCN <br> Case No. 1:22-cv-00273-DCN <br><br> **MEMORANDUM DECISION AND ORDER** |
| MICRON TECHNOLOGY, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> LONGHORN IP, LLC, <br><br> Defendants. | |

## I. INTRODUCTION

Before the Court are three motions from two connected actions: Micron's Motion for Bond (Longhorn Dkt. 3), Longhorn's Motion to Dismiss (Longhorn Dkt. 7), and Katana's Motion to Dismiss (Katana Dkt. 27). On January 10, 2023, the Court held oral argument and took the motions under advisement. Upon review, and for the reasons below, the Court DENIES Longhorn and Katana's Motions to Dismiss and GRANTS Micron's Motion for Bond.

## II. BACKGROUND

### 1. The Act

The Idaho Bad Faith Assertions of Patent Infringement Act (the "Act") is designed

to discourage patent trolls. It makes it "unlawful for a person to make a bad faith assertion of patent infringement in a demand letter, a complaint, or any other communication." Idaho Code § 48-1703(1). It also creates a private cause of action for those targeted by bad-faith demand letters, empowering courts to grant equitable relief, costs and fees, and significant punitive damages. Idaho Code § 48-1706.

The Act contains a bond provision:

> Upon motion by a target and a finding by the court that a target has established a reasonable likelihood that a person has made a bad faith assertion of patent infringement in violation of this chapter, *the court shall require the person to post a bond* in an amount equal to a good faith estimate of the target's costs to litigate the claim and amounts reasonably likely to be recovered under this chapter, conditioned upon payment of any amounts finally determined to be due to the target . . . .

Idaho Code § 48-1707 (emphasis added).

2. *The Parties*

Micron Technology, Inc.[1] ("Micron") is a major manufacturer of semiconductors headquartered in Boise, Idaho. Longhorn IP, LLC ("Longhorn") is a patent licensing company headquartered in Texas. It does not create products or offer services. Instead, it makes money by asserting a portfolio of patents against companies that do. Through a network of affiliates,[2] it acquires and enforces patents on, among other things, semiconductors. One of its many affiliates is Katana Silicon Technologies, LLC ("Katana"), which owns patents covering semiconductor manufacturing.

---

[1] Two Micron subsidiaries are also parties: Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC.
[2] Micron alleges that this affiliate structure allows Longhorn to aggressively pursue judgments against other companies while remaining judgment-proof itself.

MEMORANDUM DECISION AND ORDER - 2

**Add2**

   3.  *The Katana Case*

   On March 4, 2022, Katana sued Micron for patent infringement in the U.S. District Court for the Western District of Texas (the "Katana case"). Katana alleged certain Micron products infringed on three of its patents: No. RE38,806 (the "'806 patent"), No. 6,352,879 (the "'879 patent,"), and No.6,731,013 (the "'013 patent"). The '806 patent and the '879 patent cover miniaturized devices that allow for many semiconductor chips to be contained in a small space. These patents expired on December 30, 2018. The '013 patent covers a special wiring substrate for semiconductor devices that relieves connection failure between the semiconductor chip and the terminal section. It expired on July 5, 2021.

   Micron, which had previously been sued by a different Longhorn affiliate, perceived Katana's suit to be a bad-faith assertion of patent infringement. It filed an Answer (Katana Dkt. 13) asserting a counterclaim under the Act and seeking equitable relief, costs and fees, and damages. Katana countered with a motion to dismiss Micron's counterclaim, arguing that the Act is preempted because the federal government, not the states, regulates patents. Katana Dkt 27. Micron then asked the U.S. District Court for the Western District of Texas to transfer the Katana case to the District of Idaho and the court agreed. Once the case was in Idaho, the State of Idaho exercised its right to intervene and defend the Act, filing a memorandum in opposition to Katana's Motion to Dismiss. Katana Dkt. 43.

   4.  *The Longhorn Case*

   The same day Micron filed its Answer and counterclaim in Texas, it sued Longhorn, which allegedly controls Katana, in Idaho state court (the "Longhorn case"). The Longhorn

MEMORANDUM DECISION AND ORDER - 3

**Add3**

case alleges that the patent infringement asserted in the Katana case violated the Act. Under Section 48-1707, Micron asked the court to impose a $15 million bond on Longhorn and Katana, asserting that this amount was a good faith estimate of its costs to litigate the claim and the amount reasonably likely to be recovered. *See* Longhorn Dkt. 1-6, at 2–3. Longhorn removed the case here and then moved to dismiss, raising the same constitutional arguments it did in the Katana case. Once again, the State intervened to defend the Act.

Both the Katana and Longhorn cases are now before the Court.

### III. LEGAL STANDARD

#### A. Motion to Dismiss

Federal Rule of Civil Procedure 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal/Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Twombly*, 550 U.S. at 556. Accordingly, to avoid dismissal for failure to state a claim, a complaint must provide sufficient factual allegations to show that there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. If a complaint fails to state a plausible claim, "'[a] district court

should grant leave to amend even if no request to amend the pleading was made, unless it

determines that the pleading could not possibly be cured by the allegation of other facts.'"

*Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (cleaned up).

**B. Motion for Bond**

The Act gives courts nine factors to consider in determining whether a patent is

asserted in bad faith:

> (a) [A] person sends a demand letter to a target without first
> conducting an analysis comparing the claims in the patent to
> the target's products, services or technology.
> (b) The demand letter does not contain the following
> information:
>> (i) The patent number;
>> (ii) The name and address of the patent owner or owners
> and assignee or assignees, if any; and
>> (iii) The factual allegations concerning the specific
> areas in which the target's products, services and technology
> infringe the patent or are covered by the claims in the patent.
> (c) The demand letter does not identify specific areas in which
> the products, services and technology are covered by the
> claims in the patent.
> (d) The demand letter demands payment of a license fee or
> response within an unreasonably short period of time.
> (e) The person offers to license the patent for an amount that is
> not reasonably based on the value of a license to the patent.
> (f) The person asserting a claim or allegation of patent
> infringement acts in subjective bad faith, or a reasonable actor
> in the person's position would know or reasonably should
> know that such assertion is meritless.
> (g) The claim or assertion of patent infringement is deceptive.
> (h) The person or its subsidiaries or affiliates have previously
> filed or threatened to file one (1) or more lawsuits alleging
> patent infringement based on the same or similar claim, the
> person attempted to enforce the claim of patent infringement
> in litigation and a court found the claim to be meritless.
> (i) Any other factor the court finds relevant.

Section 48-1703. The Act provides another four factors a court may consider in

MEMORANDUM DECISION AND ORDER - 5

**Add5**

determining a patent is *not* asserted in bad faith:

> (a) The person engages in a good faith effort to establish that the target has infringed the patent and to negotiate an appropriate remedy.
> (b) The person makes a substantial investment in the use of the patent or in the production or sale of a product or item covered by the patent.
> (c) The person has:
>     (i) Demonstrated good faith in previous efforts to enforce the patent, or a substantially similar patent; or
>     (ii) Successfully enforced the patent, or a substantially similar patent, through litigation.
> (d) Any other factor the court finds relevant.

*Id.*

## IV. ANALYSIS

The motions at issue raise three major questions. First, is the Act preempted by federal law? Second, has the applicable statute of limitations run? Finally, has Micron pleaded enough facts to state a plausible claim under the Act, and on those facts, is a bond warranted?

### A. Federal Preemption

Longhorn and Katana argue that the Act "cannot exist alongside U.S. patent laws in our federal system" and so is preempted under the Supremacy Clause. Longhorn Dkt. 7-1, at 15. The Supremacy Clause dictates that federal law is "the supreme Law of the Land." U.S. Const. art. VI, cl. 2. Thus, federal law preempts incompatible state laws. *See Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376 (2015). Preemption comes in three forms: express preemption, field preemption, and conflict preemption. *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1113–14 (9th Cir. 2022). Field and conflict

MEMORANDUM DECISION AND ORDER - 6

**Add6**

preemption are types of implied preemption. *Id.* at 1114.

### 1. Express Preemption

Congress may expressly preempt a state law by passing targeted federal legislation. *Id.* Here, no party has submitted—and the Court has not found—any federal statute expressly preempting the Act. Further, the Federal Circuit has held that federal patent law does not generally preempt state unfair competition law, which the Act could be read to be. *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1332–33 (Fed. Cir. 1998), overruled on other grounds by *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999). For these reasons, the Court finds that the Act is not expressly preempted.

### 2. Implied Preemption

Federal statutes may impliedly preempt state ones. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). The Supreme Court, however, has sometimes applied a presumption against implied preemption. *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009). In *Wyeth*, the Court applied the presumption and upheld a state law regulating drug labelling, despite noting that the Federal government had historically regulated this field. *Id.* (establishing an "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."). *But see Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) (refusing to apply the presumption to a fraud case against a federal agency because the relationship between federal agencies and regulated parties is "inherently federal in character"); *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 14 (2013)

MEMORANDUM DECISION AND ORDER - 7

**Add7**

(declining to apply the presumption to a state law governing voter-registration officials because state regulation of congressional elections "has always existed subject to the express qualification that it terminates according to federal law").

Patent law is quintessentially federal. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156 (1989). States have no authority to issue patents or protect intellectual property in similar ways. *Id.* But they do have authority to protect businesses and regulate unfair competition. *See Hunter Douglas*, 153 F.3d at 1332–33.

This case pits the federal government's exclusive right to issue and regulate patent protections against Idaho's police power to protect its businesses from harassment. Though the question is close, the Court finds that the fundamentally federal nature of patents weighs against applying the presumption. Thus, because of the inherently federal subject matter at issue here, the Court will address the implied preemption arguments without applying any presumption.

Implied preemption can be divided into two general categories: field preemption and conflict preemption. *Association des Eleveurs de Canards*, 33 F.4th at 1114. The Court will address each one in turn.

a. Field Preemption

Field preemption occurs "when the scope of a federal statute indicates that Congress intended federal law to occupy a field exclusively." *Kurns v. R.R. Friction Prod. Corp.*, 565 U.S. 625, 630 (2012) (cleaned up). Here, the federal government occupies the field of patent issuance. *See Bonito Boats*, 489 U.S. at 156 (1989). Still, state law is not displaced just because it relates to intellectual property. *Id.* "[T]he states are free to regulate the use

of . . . intellectual property in any manner not inconsistent with federal law." *Id.* (quoting *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979)). "The case for federal preemption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them." *Wyeth*, 555 U.S. at 575 (quoting *Bonito Boats*, 489 U.S. at 166–167).

Here, more than half of the states[3] have adopted statutes outlawing bad-faith patent assertion. These state laws do not establish quasi-patent protections. Instead, they allow damages against those who abuse the federal patent system. Congress, by contrast, has neither passed legislation outlawing bad faith patent assertion nor established a standard for finding bad faith.[4]

By choosing not to legislate on the issue of bad-faith patent assertion, Congress has created a policy vacuum. Many states have stepped into that vacuum to protect local businesses from shakedowns at the hands of patent trolls. Considering there are more than 30 state acts prohibiting bad faith patent assertion, it is reasonable to assume that Congress knows about these acts and that its continued silence constitutes acquiescence. *See Wyeth*, 555 U.S. at 575. Thus, the Court finds that field preemption does not render the Act

---

[3] *Guide to State Patent Legislation*, Patent Progress, (May 1, 2019), https://web.archive.org/web/20190911174618/https://www.patentprogress.org/patent-progress-legislation-guides/patent-progresss-guide-state-patent-legislation/ (identifying thirty-three states with bad faith patent assertions statutes) (accessed via the Wayback Machine as the site appeared on Sep. 11, 2019).

[4] The federal standard for finding bad faith is the product of caselaw, not legislation. *See Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1375–77 (Fed. Cir. 2004) (holding that bad faith has both an objective and subjective component).

MEMORANDUM DECISION AND ORDER - 9

**Add9**

unconstitutional.

### b. Conflict Preemption

"[C]onflict preemption arises when state law conflicts with a federal statute." *Ass'n des Éleveurs de Canards*, 33 F.4th at 1114. Conflict preemption has at least two subcategories of its own: impossibility preemption and obstacle preemption. *See id.*

#### i. Impossibility Preemption

Impossibility preemption occurs "where it is impossible for a private party to comply with both state and federal law." *Crosby*, 530 U.S. at 372. Here, Longhorn and Katana argue that the Act conflicts with federal law in at least two ways. Both arguments involve the way courts apply allegedly competing standards, not the way private parties comply with them. The Court will nevertheless consider whether the Act makes it impossible for courts to apply both state and federal standards.

First, Longhorn and Katana argue the Act contradicts Federal law because it improperly substitutes a set of decision-making factors for the federal standard—a simple presumption of good faith. Federal law dictates that "[a] patent shall be presumed valid." 35 U.S.C.A. § 282; *see also C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998) ("the assertion of a duly granted patent is [presumed to be] made in good faith."). "This presumption is overcome only by affirmative evidence of bad faith." *C.R. Bard, Inc.*, 157 F.3d at 1369. The Act, on the other hand, supplies courts with a series of factors to consider in determining whether a patent is being asserted in bad faith. The list is open ended: it includes the catch-all "[a]ny other factor the court finds relevant." Idaho Code §§ 48-1703(2)(i); 48-1703(3)(d).

The Act does not make compliance with federal law impossible. In fact, it plays in close harmony with the federal standard. By providing examples of evidence that might overcome the presumption of good faith, the state legislature has not supplanted that presumption. If anything, the Act facilitates the application of the federal standard by illustrating what kinds of behavior could constitute bad faith. The list of factors, which includes "any other factor the court finds relevant," leaves courts free to consider and follow federal guidance. Idaho Code §§ 48-1703(2)(i); 48-1703(3)(d).

It is true that the Act contains factors a court may consider "as evidence that a person has *not* made a bad faith assertion of patent infringement." Idaho Code § 48-1703(3)(3) (emphasis added). The inclusion of these factors, however, does not negate the presumption of good faith, nor does the Act require courts to make an affirmative finding of good faith before a patent may be enforced. The Act is concerned only with bad faith patent assertion, not general patent enforcement, and the language of Section 48-1703 is remarkably permissive. It offers factors that courts *may* consider, including—twice—a sweeping catch-all that invites courts to consider whatever other factors they find relevant. *See* Idaho Code §§ 48-1703(2)(i); 48-1703(3)(d). How, (and whether), a court applies the factors is left to the judge's discretion.

Because a court must follow federal law, the factors in Section 48-1703 are best viewed as a supplement to the federal standard, not an obstacle to it. Courts must apply the factors in a manner consistent with the federal presumption of good faith, and nothing in the Act prevents them from doing so. For these reasons, the Court finds that the factors in Section 48-1703 are compatible with federal law and do not engage

impossibility preemption.

Second, Longhorn and Katana argue the Act impermissibly allows courts to find that patents are being asserted in bad faith without specifically finding evidence of both objective and subjective bad faith, as Federal law requires. State laws creating liability for asserting a patent "are preempted by federal patent laws, unless the claimant can show that the patent holder acted in bad faith." *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1304 (Fed. Cir. 2018). Bad faith requires a showing that the claims of infringement are both objectively baseless and asserted in subjective bad faith. *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1375–77 (Fed. Cir. 2004).

Here, in a single factor, the Act provides that courts may consider whether "[t]he person asserting a claim or allegation of patent infringement acts in subjective bad faith, or a reasonable actor in the person's position would know or reasonably should know that such assertion is meritless." Idaho Code § 48-1703(2)(f)).

Unlike the Federal standard, which requires a specific finding of both objective and subjective bad faith, the Act's factor could be read to permit consideration of only one or the other. The problem is the difference between "and" and "or." This inconsistency in conjunctions might create an issue, were it not for the catch-all clauses in Section 48-1703, which allow courts to consider any other factor they find relevant. *See* Idaho Code §§ 48-1703(2)(i); 48-1703(3)(d). Courts applying the Act must consider the federal standard— requiring both objective and subjective findings—as a relevant factor, and the Act allows them to do so. The Act and federal law are not mutually exclusive, and so impossibility preemption does not apply.

### ii. Obstacle Preemption

Obstacle preemption occurs where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby*, 530 U.S. at 373. "[S]tate regulation of intellectual property must yield to the extent that it clashes with the balance struck by Congress in our patent laws." *Bonito Boats,* 489 U.S. at 152. In *Bonito Boats*, a Florida statute barred people from duplicating a proprietary molding process used for making boat hulls, or selling duplicated hulls, effectively granting this unpatented molding process greater protection than it would have received under federal patent laws. *Id.* at 144–45. The Supreme Court held that this state law improperly upset the balance of interests Congress struck in its patent laws, and so was preempted. *Id.* at 152. The Court held that, when it is clear how patent laws strike the balance between "the desire to freely exploit the full potential of our inventive resources and the need to create an incentive to deploy those resources," the states may not second guess Congress' judgment by passing more stringent intellectual property protections. *See id.*

Similarly, at least one federal court has found that a state may not disrupt the "congressionally chosen calculus of litigation incentives and disincentives" by providing for attorneys' fees in patent cases other than those available under federal law. *Bldg. Innovation Indus., LLC v. Onken*, 473 F. Supp.2d 978, 986–88 (D. Ariz. 2007).

The Federal Patent Act ("Patent Act") is Congress' primary effort to balance what *Bonito Boats* called "the desire to freely exploit the full potential of our inventive resources" against "the need to create an incentive to deploy those resources." 489 U.S. at 152. To discourage patent infringement, the Patent Act sets a floor for the damages a

successful patentee can receive: nothing less "than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C.A. § 284. It also sets a ceiling: "the court may increase the damages up to three times the amount found or assessed." *Id.*

The Patent Act discourages egregious abuse of the patent system. It provides that courts may, "in exceptional cases," award reasonable attorney fees to a prevailing party. 35 U.S.C. § 285. This provision, which Congress added in 1945, "enabled courts to address unfairness or bad faith in the conduct of the losing party." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 548 (2014) (cleaned up); *see also Pennsylvania Crusher Co. v. Bethlehem Steel Co.*, 193 F.2d 445, 451 (3rd Cir. 1951) (listing "vexatious or unjustified litigation" as adequate justification for awarding attorneys' fees). Congress recodified the provision in 1952, adopting its current language, but the change did not substantively alter its meaning. *See Octane Fitness*, 572 U.S. at 549. In *Octane Fitness*, the Supreme Court expanded the applicability of this provision, holding that "something less than bad faith" could warrant fee shifting. *Id.* at 555.

Here, the Act strikes a similar balance to the one struck by Congress. It expresses a strong policy against patent infringement:

> (b) . . . Patent holders have every right to enforce their patents when they are valid and infringed, to solicit interest from prospective licensees and to initiate patent enforcement litigation as necessary to protect intellectual property.

> (c) The legislature does not wish to interfere with the good faith enforcement of patents or good faith patent litigation. The legislature also recognizes that Idaho is preempted from passing any law that conflicts with federal patent law.

MEMORANDUM DECISION AND ORDER - 14

**Add14**

Idaho Code § 48-1701(b)–(c). Though it does not set a floor, it does set a ceiling for the damages a successful party may be entitled to if it proves a patent has been asserted in bad faith. A court may grant a successful plaintiff his actual costs and damages, plus exemplary damages of fifty thousand dollars or three times the total of his damages, costs and fees, whichever is greater. Idaho Code § 48-1706(1).

Longhorn and Katana complain that the Act unfairly chills patentees' ability to enforce their rights: "[b]y regulating federal lawsuits and allowing for quadruple damages, an up-front bond, and injunctive relief, [the Act] strikes a lopsided balance of the rights of patentees and apparent infringers and poses an obstacle to the 'full purposes and objectives' of federal patent laws." Longhorn Dkt. 71, at 19. The Court disagrees.

The Act does not stand as an obstacle to the policy goals Congress expressed in the Patent Act. Both the state Act and the federal Patent Act have the end goal of protecting valid patents without enabling bad-faith or vexatious litigation.

The fee-shifting provision in the Patent Act—which the Supreme Court recently expanded and emphasized in *Octane Fitness*, is especially relevant. Through that provision, Congress intended to allow courts to penalize abusive or bad-faith patent litigation—the identical aim the Idaho Legislature had in passing the Act. Remarkably, the fee-shifting provision in the Patent Act requires a lower evidentiary threshold than the threshold in the Act. Compare 35 U.S.C. § 285 (allowing fee-shifting in "exceptional cases") with Idaho Code Section 48-1703 (allowing damages when a court finds affirmative evidence of bad faith); *Octane Fitness*, 572 U.S. at 555 (holding that the federal Patent Act requires

"something less than bad faith") with *Globetrotter Software,* 362 F.3d at 1375–77 (holding that state laws creating liability for patent assertion require a showing that the claims of infringement are both objectively baseless and asserted in subjective bad faith). The Act has the same essential purposes as the Patent Act and goes no further than its federal counterpart in pursuing them. There is no conflict of purpose or objective here.

Longhorn and Katana nevertheless assert that there is a conflict of method and execution. They argue that the Act threatens to upset at least one federal policy balance by allowing higher damages for successful defendants than the Patent Act allows successful plaintiffs. The Federal Patent Act allows a court to give successful plaintiffs treble damages. Functionally, the state Act allows a court to grant successful defendants quadruple damages. This disparity allows the inference that the Idaho legislature views bad-faith patent assertion as a bigger problem than Congress does and has attempted to alter the "congressionally chosen calculus of litigation incentives" accordingly. *Onken*, 473 F. Supp.2d at 987.

*Bonito Boats* held this type of alteration would be inappropriate in the context of a state law providing quasi-patent protections. And *Onken* suggests it would be inappropriate in the context of a state law creating new fee shifting provisions separate from those already in the federal Patent Act. Neither decision, however, fits neatly with the facts here.

Besides addressing mirror-opposite state activity (in *Bonito Boats,* Florida was trying to protect IP owners from infringement by businesses; here, Idaho is trying to protect businesses from harassment by IP owners), *Bonito Boats* forbade states from upsetting Congress' solution to the problem of how to motivate creators without stifling creativity.

MEMORANDUM DECISION AND ORDER - 16

**Add16**

Unlike that high-level, strategic compromise, this case implicates a more tactical compromise: should the risks and potential rewards of litigation favor IP owners or businesses?

Congress has not directly addressed this issue in the context of bonds and damages. *Onken* expressly addresses this tactical compromise, but only in the context of attorneys' fees, which are already provided for by the Patent Act. By contrast, there is no federal statute on bad faith assertion of patent infringement. The distinction is important because fee shifting alone does not address the entire calculus of litigation incentives: it may not be an effective deterrent against patent trolls who have compartmentalized their liability and assets to avoid the potential negative consequences of litigation.[5] Damages and bonds are a developing part of the calculus, which Congress has yet to weigh in on. As discussed, this is an area where Congress has been content to let states do the legislating—and courts asked to review those state acts have upheld their constitutionality. *See NAPCO, Inc. v. Landmark Tech. A, LLC*, 555 F. Supp. 3d 189, 212 (M.D.N.C. 2021) (upholding a North Carolina bad-faith patent assertion statute providing for quadruple damages); *Landmark Tech., LLC v. Azure Farms, Inc.*, 2020 WL 1430088, at *5 (D. Or. Mar. 24, 2020)

---

[5] At least one state legislature has made such a finding:

> In lawsuits involving abusive patent assertions, an accused infringer prevailing on the merits may be awarded costs and, less frequently, fees. These awards do not serve as a deterrent to abusive patent assertion entities who have limited liability, as these companies may hold no cash or other assets. North Carolina has a strong interest in making sure that prevailing North Carolina companies sued by abusive patent assertion[] entities can recover what is awarded to them.

N.C. Gen. Stat. § 75-141(9).

MEMORANDUM DECISION AND ORDER - 17

(upholding a similar Oregon statute); *Washington v. Landmark Tech. A, LLC*, No. 2:21-cv-00728-RSM (ECF No. 35), slip op. at 12 (W.D. Wash. Oct. 28, 2022) (upholding a similar Washington statute).

The Act does not intrude on Congress' exclusive right to grant patents. Nor does it alter any policy line that Congress has expressly drawn. Without more guidance from Congress, the Court will not strike down the Act just because of the difference between triple and quadruple damages. Because the Act is not inconsistent with Congress' express policies, the Court finds that it is not an obstacle to them. *See Aronson*, 440 U.S. at 262 (upholding a contract that had the effect of a patent because it was not inconsistent with express congressional policy).

### 3. The Noerr-Pennington Doctrine

Longhorn and Katana argue that, by making it unlawful to assert bad-faith patent infringement in a complaint, the Act impermissibly interferes with the ability to sue in federal court. The *Noerr–Pennington doctrine* immunizes defendants against antitrust liability for engaging in conduct aimed at influencing decision-making by the government, including litigation. *Octane Fitness*, 572 U.S. at 555–56. Courts have applied the *Noerr-Pennington* doctrine to bar "any claim, federal or state, common law or statutory, that has as its gravamen constitutionally-protected petitioning activity." *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 955 (S.D. Cal. 1996) (collecting cases and finding that *Noerr* immunity is "constitutional and rooted in the First Amendment right to petition").

The *Noerr-Pennington* doctrine, however, does not protect defendants engaged in "sham litigation." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49,

51 (1993). Sham litigation is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Globetrotter Software*, 362 F.3d at 1376. "In other words, the plaintiff must have brought baseless claims in . . . [subjective] bad faith." *Octane Fitness*, 572 U.S. at 556. The fundamental question is one of reasonableness. *See Globetrotter Software*, 362 F.3d at 1376.

Because application of the *Noerr-Pennington* Doctrine requires a fact-intensive reasonableness determination, it is impractical to consider at the motion-to-dismiss stage. *Washington v. Landmark Tech. A, LLC*, No. 2:21-cv-00728-RSM (ECF No. 35), slip op. at 12 (W.D. Wash. Oct. 28, 2022) (declining to decide whether Washington's bad faith patent assertion statute violated the *Noerr–Pennington* doctrine at the motion-to-dismiss stage); *see also NAPCO, Inc.*, 555 F. Supp. 3d at 215 (declining to find *Noerr-Pennington* immunity on a motion to dismiss because "reasonableness is a question of fact").

Here, the Court is asked to determine whether the Act unconstitutionally interferes with Longhorn and Katana's First Amendment right to petition the government for redress of grievances, which requires it to determine whether they are engaged in sham litigation. Both questions are fact intensive and premature at the motion-to-dismiss stage. The Court may take up these arguments upon the completion of discovery, but it will not dismiss any complaints on *Noerr-Pennington* grounds before then.

## B. Time Bars

Longhorn and Katana argue that Micron's claims under the Act have been barred since 2021. The Act, in creating a private cause of action, also creates a limitations period:

No private action may be brought under the provisions of this chapter more than three (3) years after the cause of action accrues. A cause of action shall be deemed to have accrued when the party bringing an action under the provisions of the chapter knows, or in the exercise of reasonable care should have known, about the violation of the provisions of this chapter. *Each bad faith assertion of patent infringement constitutes a separate violation of this chapter.*

Idaho Code § 48-1706(3) (emphasis added). The Act prohibits bad-faith assertions of patent infringement "in a demand letter, a complaint, or any other communication." Idaho Code § 48-1703(1).

Here, Micron knew about Katana and Longhorn's intent to assert their patents as early as 2018, when Katana sent demand letters and met with Micron at its Boise headquarters. Katana filed its complaint on March 4, 2022, some three years after first threatening to do so. Micron made its first claim under the Act on June 6, 2022.

It is undisputed that, for purposes of the statute of limitations, a cause of action accrued in 2018 when Micron first knew of Longhorn and Katana's intent to assert their patents. The issue is whether the Katana complaint constituted a new "assertion" of the Katana patents, or merely another step in an ongoing assertion that began in 2018. The Katana complaint, Longhorn argues, was an escalation of an existing assertion, not a new assertion that triggered a new limitations period. Micron counters that each demand letter and complaint constituted an independent assertion that triggered a distinct limitation period.[6]

---

[6] Micron also argues that Longhorn and Katana's actions constituted a continuing tort such that the statute of limitations should be tolled. The Court does not decide this question here because, at this stage of the proceedings, it is moot.

MEMORANDUM DECISION AND ORDER - 20

**Add20**

Micron is within the statute of limitations. The Act lists complaints as unlawful acts distinct from demand letters. *See* Idaho Code § 48-1703(1)) (making it "unlawful for a person to make a bad faith assertion of patent infringement *in a demand letter, a complaint, or any other communication*.") (emphasis added). Because a demand letter usually precedes a complaint, this language is redundant if a complaint that follows a demand letter does not constitute a separate assertion. Further, "[e]ach bad faith assertion of patent infringement constitutes a separate violation." Idaho Code § 48-1706(3). This provision suggests that, in commencing patent litigation against a target, a person may commit a separate violation at each step or escalation of the process, rather than committing one extended violation that begins with the demand letter and ends three years later, no matter what escalatory tactics are employed in between.

Finally, Longhorn's reading of the limitations provision would allow bad actors to defeat the Act through gamesmanship: if a patent troll can escape the Act by waiting three years between sending a demand letter and commencing litigation, the limitations provision swallows the Act. For these reasons, the Court finds that by sending a complaint, Longhorn and Katana made a new assertion that triggered a new limitations period, which has not yet run.

## C. Adequacy of the Pleadings

Longhorn and Katana argue that Micron has failed to plead a plausible claim for bad-faith patent assertion and that the Court must therefore dismiss Micron's complaint in the Longhorn case and counterclaim in the Katana case under Rules 8 and 12(b)(6).

To escape dismissal under Rule 12(b)(6), a complaint must "contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). This "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Twombly*, 550 U.S. at 556. Thus, the issue here is whether Micron's complaint contains enough factual content to state a facially plausible claim that Longhorn and Katana are liable under the Act. The Court presumes that Longhorn and Katana have asserted their patents in good faith, though this presumption may be overcome by affirmative evidence. 35 U.S.C.A. § 282; *C.R. Bard, Inc.*, 157 F.3d at 1369.

### 1. *Factors for Bad Faith*

The Act allows a court to make a determination of bad faith using factors including the analysis that led to sending a demand letter, Idaho Code Section 48-1703(2)(a), the nature of the demand letter and the information it contained, Section 48-1703(2)(b)–(c), the sum of money sought in the demand letter, Section 48-1703(2)(d)–(e), the subjective and objective good faith of the patentee, Section 48-1703(2)(f), the patentee's history of assertion, and any deception present in the assertion. Idaho Code § 48-1703(2)(g)–(h).

### a. Section 48-1703(2)(a)

Under Section 48-1703(2)(a), Micron has pleaded enough facts to support a conclusion that Katana sent a demand letter without first conducting an adequate analysis comparing its patents to Micron's products. Micron's complaint distinguishes the subject matter of the Katana patents from that of the allegedly infringing Micron products. For example, the asserted '806 patent covers a semiconductor device sealed with a resin, which

MEMORANDUM DECISION AND ORDER - 22

**Add22**

the allegedly infringing Micron product does not contain, being sealed instead with a "thermoplastic encapsulant." Micron asserts that, had Longhorn and Katana properly compared the patents against the allegedly infringing products, it would have discovered such a critical difference.

### b. Section 48-1703(2)(b)–(c)

There is no information in the pleadings about whether the demand letters contained the patent number, name and address of the patent owner, or the specific areas in which Micron's products infringed on covered claims. Without this information, the factors in Section 48-1703(2)(b)–(c) do not weigh either for or against bad faith.

### c. Section 48-1703(2)(d)–(e)

The pleadings do not mention the sum of money that Longhorn and Katana sought from Micron in the demand letters. Thus, the factors in Section 48-1703(2)(d)–(e) are not probative either.

### d. Section 48-1703(2)(f)

Micron has pleaded sufficient facts to support a conclusion that Longhorn and Katana acted in subjective bad faith. In its initial demand letter, Katana "in what can only be characterized as a thinly-veiled threat . . . pointed out that its . . . patents had been asserted against other companies." Dkt. 1-4, at 12. When the parties later met at Micron's Boise headquarters, "Longhorn communicated that the amounts demanded would increase as time passed because Longhorn was only just beginning its campaign of seeking licensing fees from companies based on the Katana portfolio. In [the Longhorn's principal]'s words, they were offering Micron an 'early bird special.'" Dkt. 1-4, at 14–15. Later, Longhorn's

representative suggested that Micron look over the patents in the portfolio of another Longhorn affiliate, Carthage Silicon Innovations, LLC. Micron took this suggestion to mean that Longhorn intended to pursue every available avenue to assert patent infringement claims against Micron, no matter which affiliate held the patents or how applicable those patents were.

Further, Micron has pleaded sufficient facts to support a conclusion that Longhorn and Katana's claims are objectively meritless. Micron pleads that the asserted patents are invalid. First, according to Micron's complaint, the asserted patents have expired. The '879 and '806 patents expired on December 30, 2018, and the '013 patent expired on July 5, 2021.

Micron further alleges that these patents are invalid "because the technology claimed in [them] was known, discussed in literature, described in other patents, and used in multiple commercially available products, all prior to the priority dates of the Katana patents." Dkt. 1-4, at 15. Micron's complaint takes pains to list, for each asserted patent, preexisting inventions and literature describing the same innovations that Longhorn and Katana claim their patents cover. For example, as early as 1998, Intel Corporation had developed a semiconductor package with the same key elements as the subject matter of the '879 patent. Thus, Micron has adequately pleaded that Longhorn and Katana have acted in objective and subjective bad faith.

    e.  <u>Section 48-1703(2)(g)</u>

Micron has pleaded enough facts to support a conclusion that Longhorn and Katana's assertion of patent infringement is deceptive. Micron's complaint says that

"Longhorn purports to assert claims of ongoing, current infringement for expired patents"—in other words, that it engages in deception. Micron's complaint further alleges that Katana is a mere puppet of Longhorn, which drives the bad-faith patent assertion through its affiliates. Though Longhorn otherwise portrays itself as a completely separate entity, it lists its affiliates' patent portfolios on its website in a manner suggesting it considers those patents to be its own assets. The sole manager and member of Longhorn is also the sole member and manager of each of its affiliates. Longhorn is represented by the same counsel as Katana and appears to have identical interests. Katana informed Micron that, to escape liability, it would need to secure licenses from two other Longhorn affiliates: Hamilcar Barca IP, LLC, and Trenchant Blade Technologies, LLC. On these facts, it is plausible that Longhorn and Katana have portrayed both their patents and themselves deceptively.

     f.   <u>Section 48-1703(2)(h)</u>

Micron has pleaded enough facts to indicate that Longhorn and Katana have filed or threatened to file lawsuits based on a similar claim that was meritless. Micron claims to have a history with one of Longhorn's affiliates, Lone Star Silicon Solutions, LLC, ("Lone Star") who sued Micron for patent infringement in 2016. In that case, the Patent Trial and Appeal Board ruled the disputed patents were invalid—the covered inventions were not patentable because "the subject matter as a whole would have been obvious to a person of ordinary skill in the art at the time of the invention of the patents." Dkt. 1-4, at 10. Judge Alsup, of the Northern District of California, dismissed the district court litigation and "criticized Lone Star for having incorrectly stated that it was the sole owner of the asserted

patents and having engaged in a 'litigation gimmick.'" Dkt 1-4, at 10. Micron agreed to pay Lone Star a sum in exchange for a promise not to appeal.

In its Complaint, Micron alleges that Longhorn is a non-practicing entity with a pattern of asserting patents in bad faith through a network of affiliates. Longhorn and Katana do not use their patents in commerce. Their only business is litigation. Longhorn and Katana may have made a substantial investment in purchasing the patents, but it was not an investment in research or development.

    *2. Factors Against Finding Bad Faith*

As factors to consider in finding that the patentee *is not acting in bad faith*, the Act lists the patentee's good-faith efforts to negotiate an appropriate remedy, Idaho Code Section 48-1703(3)(a), the patentee's investment in the use of the patent or use of it in manufacturing, Section 48-1703(3)(b), the patentee's history of successfully enforcing the patent in good faith, Section 48-1703(3)(c), and any other factor the court finds relevant. Idaho Code § 48-1703(3)(d). Because patents are already presumed to be asserted in good faith, the Court does not consider these factors to be probative and will not analyze them. *See infra* section A2(b)(*i*) (discussing the federal presumption of good faith and its interplay with the factors in Idaho Code Section 48-1703(3)(a)–(d)).

The bottom line is that Micron's complaint pleads enough facts to allow a finding under the statutory factors that Longhorn and Katana acted in bad faith. This is enough affirmative evidence, if accepted as true, to overcome the presumption of good faith. Thus, Micron has stated a claim under the Act and dismissal is inappropriate. For all the reasons above, Longhorn and Katana's motions to dismiss are DENIED.

### 1. Bond

As an initial matter, the Court is constitutionally empowered to impose a bond. When sitting in diversity—as this Court is in the Longhorn case—federal courts apply state substantive law and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). In *Ice Castles, LLC, v. LaBelle Lake Ice Palace, LLC*, 2021 WL 3085479, at *3 (D. Idaho July 21, 2021), the Court declined to wade into the "vexing question" of whether the Act's bond provision was substantive or procedural. After a review of similar statutes from other states, however, the Court is satisfied that the bond is not merely procedural—it is a substantive provision that discourages bad-faith patent assertion in and of itself.

North Carolina's equivalent statute, for instance, provides for both damages and a bond because patent trolls "may hold no cash or other assets" to pay a damages award and the state "has a strong interest in making sure that prevailing . . . companies sued by abusive patent assertion[] entities can recover what is awarded to them." N.C. Gen. Stat. § 75-141(9). The bond provision thus serves a similar purpose to the damages provisions and furthers the purpose of the statute. Though the Act does not explicitly list such a finding, the Court is persuaded that the same rationale applies. Further, if the Court were to find that the provision was procedural, it would create a forum shopping problem: plaintiffs would favor the state courts where the bond provision was available, while defendants would favor the federal courts. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 (9th Cir. 2020) (holding that, in distinguishing substantive and procedural laws, courts must be cognizant of *Erie*'s dual aims: "discouragement of forum-shopping and avoidance of inequitable administration of the laws"). Because the bond provision is substantive, it is

within the power of the Court to impose a bond.

The Act provides the standard for imposing a bond. Idaho Code § 48-1707. If, using the Section 48-1703 factors, a court determines there is a reasonable likelihood that a patent is being asserted in bad faith, it must require the party asserting the patent to "post a bond in an amount equal to a good faith estimate of the target's costs to litigate the claim and amounts reasonably likely to be recovered" under the Act. *Id.*

Unlike the 12(b)(6) standard, which requires facial plausibility, the Act requires merely "a reasonable possibility." Thus, the Court must determine whether there is a reasonable possibility that Longhorn and Katana asserted infringement in bad faith.

Because the higher 12(b)(6) standard has been satisfied, the lower statutory standard is also necessarily satisfied. The above analysis on the motion to dismiss serves also to show that, under the Act, a bond is required.

Micron asserts that the Court should require a bond of $15 million. It reached this number by using the American Intellectual Property Law Association's report on the cost of defending patent suits. This report estimates that the cost to litigate against a non-practicing entity over one patent from motion practice through to appeal is $4,558,000, assuming that more than $25 million is at stake. Dkt. 15-37, at 17. Micron acknowledges that Longhorn has not yet made a specific demand for damages. Nevertheless, Micron relies on this $25-million-plus estimate from the report to calculate that the cost of defending a three-patent case is $3.75 million. That amount, plus treble damages, brings its estimate to $15 million.

There is no reason to find that this estimate is made in bad faith. The Act, however,

does not obligate the Court to reflexively accept a party's good faith estimate—in fact, it does not specify who, between the parties and the Court, is responsible for making such an estimate. *See* Idaho Code § 48-1707 (providing for a bond "in an amount equal to a good faith estimate of the target's costs to litigate the claim and amounts reasonably likely to be recovered . . .").

The Court accepts Micron's estimate as it relates to litigation over a single patent. That is, a conservative estimate of litigating a single-patent suit from pre-trial through to appeal is $1.25 million. The Court rejects, however, the assumption that, by tripling that sum, one can accurately predict the cost of litigating a three-patent suit. Although patent litigation does become more expensive the more patents are at issue, there are significant efficiencies inherent in bundling disputed patents together into a single suit. For instance, depositions need only be taken once—not three times—and pleadings likewise need only be filed once. Thus, for purposes of this suit, the Court finds that the additional two patents could be reasonably expected to increase Micron's cost of litigation by a total of $.75 million. Two million dollars, therefore, is a good-faith estimate of Micron's costs to litigate the claims and an amount reasonably likely to be recovered under the Act. That sum, plus treble damages, yields an $8 million bond. The Court will impose a bond in that amount. Micron's Motion for Bond is GRANTED.

## V. CONCLUSION

The Court finds that the Act is not preempted by federal law, that its limitations period has not run, and that Micron has adequately pleaded a claim under it. Accordingly, the Court will DENY Longhorn and Katana's Motions to Dismiss and GRANT Micron's

Motion for Bond.

## IV. ORDER

1. Longhorn's Motion to Dismiss (Case 1:22-cv-00273, Dkt. 7) is DENIED.

2. Katana's Motion to Dismiss (Case 1:22-cv-00282, Dkt. 27) is DENIED.

3. Micron's Motion for Bond (Case 1:22-cv-00273, Dkt. 3) is GRANTED.

    a. Longhorn or Katana must post a bond of $8 million before the Katana case (1:22-cv-00282) may proceed further.

4. This order will be entered in both cases.

DATED: May 3, 2023

David C. Nye
Chief U.S. District Court Judge

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

MICRON TECHNOLOGY, INC., MICRON
SEMICONDUCTOR PRODUCTS, INC., and
MICRON TECHNOLOGY TEXAS, LLC.,

        *Plaintiffs*,

vs.

LONGHORN IP, LLC

        *Defendant*.

No. 1:22-cv-00273-DCN

DECLARATION OF DAVID
WESTERGARD IN SUPPORT OF
MICRON'S MOTION FOR BOND
PURSUANT TO IDAHO CODE
§ 48-1707

I, David Westergard, declare as follows:

1.      I am over 18 years of age and am competent to make this declaration.  If called to testify as a witness, I could and would testify truthfully under oath to each of the statements in this declaration.  I make each statement below based either on my personal knowledge or, after investigation, based on information and belief.

2.      I am a current employee of Micron Technology, Inc.  I collectively refer to Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC here as "Micron," unless the context dictates otherwise or there is a reason here to distinguish between the entities.

3.      I joined Micron approximately twenty-seven years ago, in March 1995.  Since then, I have served in many roles, including Chief Counsel, Patent Litigation & Licensing, as well as Director, Patent Licensing & European Litigation.  I am currently Senior Director,

**Add31**

Licensing & Litigation.  Among other responsibilities, I oversee Micron's patent litigation matters, including oftentimes litigations and assertions by non-practicing entities.

4.      I hold a Bachelor's Degree in Civil Engineering and a Juris Doctor from Brigham Young University.

5.      Micron is, in my opinion and by many objective measures, Idaho's most successful technology company.  Micron was founded in 1978 as a four-person company in the basement of a Boise dental office.  By 1980, Micron had broken ground on its first fabrication plant and then, just a few years later, Micron introduced the world's smallest 256K DRAM memory product.  In 1994, Micron earned a spot in the Fortune 500 and steadily grew into a world leader for computer memory products.  Micron's products are used in everything from cars to appliances to servers to computers.

6.      More than 45,000 Micron employees across seventeen countries (including more than 6,000 employees in Idaho) contribute to Micron's success.  Micron devotes more than $2.5 billion per year to research and development.  Micron has obtained one of the world's largest patent portfolios over several decades: over 50,000 patents worldwide (approximately 20,000 of which are currently active).  Micron understands that a strong patent system that protects innovators is a critical feature of strong economies, and Micron respects legitimate intellectual property rights.  Indeed, part of my job is to ensure that Micron does so.

7.      Longhorn IP, LLC ("Longhorn"), through Lone Star Silicon Solutions, LLC ("Lone Star"), filed an infringement suit against Micron in the Eastern District of Texas in 2016.  Micron achieved success in the Lone Star litigation, particularly in *inter partes* review ("IPR") proceedings.  Longhorn threatened to file appeals, however, and even did file one.  Longhorn

WESTERGARD DECLARATION IN
SUPPORT OF MOTION FOR BOND

coupled its threats with a less-than-nuisance-value settlement offer. Faced with this offer, Micron paid Lone Star a small settlement amount in 2019 to make Longhorn go away.

8.      In August 2018, Katana Silicon Technologies, LLC ("Katana") sent Micron a letter asserting that Micron infringes two of Katana's patents. Although the letter facially came from Katana, I understood then and understand now that Katana is controlled by Longhorn and/or the principal behind Longhorn.

9.      In its August 2018 demand letter, Longhorn did not provide claim charts or other documents explaining its infringement theory for the two asserted patents, nor did it offer to do so. In the patent world, such claim charts are the standard way that parties explain their infringement theories and allow companies to assess the strength of a patentee's infringement claim.

10.     After the August 2018 demand letter, Longhorn (through Katana) then sent another letter to Micron on September 18, 2018. As with its first letter, Longhorn did not provide claim charts or proof of infringement with this letter.

11.     On October 4, 2018, Longhorn (or Katana) requested a meeting with Micron "to discuss the Longhorn portfolios." As before, Longhorn still did not provide Micron with claim charts or proof of infringement for any of the '013, '806, or '879 patents.

12.     Micron hosted Longhorn and its attorneys at Micron's Boise campus on November 14, 2018 to discuss Longhorn's allegations relating to the Katana portfolio. The founder and CEO of Longhorn, Mr. Fekih-Romdhane, traveled to Idaho to attend this November 2018 meeting on behalf of Longhorn, Lone Star, and Katana, along with outside counsel for Lone Star and Katana.

13.     Shortly before that meeting, Longhorn finally sent Micron claim charts for the

WESTERGARD DECLARATION IN
SUPPORT OF MOTION FOR BOND

**Add33**

three asserted patents, and Longhorn and Katana presented these claim charts at the meeting.

14.     At the meeting, Micron explained some of the many reasons that Longhorn's assertions of the Katana patents are meritless.  Longhorn, for its part, demanded the payment of license fees or a settlement.  Moreover, Longhorn explained that the amount sought would increase as time passed because Longhorn/Katana was only just beginning its enforcement campaign.  Longhorn referred to this approach as offering Micron an "early bird" special.

15.     Longhorn continued to press for payment on the Katana patents during 2019 and 2020.  But Micron heard nothing from Longhorn about the Katana patents between October of 2020 and March of 2022.

16.     In addition to its threats regarding its Katana portfolio, Longhorn has made threats regarding other portfolios it has owned and/or continues to own.  On November 20, 2018, after the in-person meeting in Boise, Longhorn sent a follow-up email from Mr. Fekih-Romdhane, where he stated that it might be "helpful" for Micron to also look at patents from the portfolio of another Longhorn portfolio entity, Carthage Silicon Innovations, LLC.  Although phrased under the guise of being "helpful," I understood this as a further threat.

17.     Further, Longhorn has now made similar threats regarding two of its other portfolios—the Hamilcar and Trenchant Blade portfolios—which it has said may be "of interest" to Micron, in the context of demanding payments from Micron for the Katana portfolio.

18.     Based on my experience in supervising large, complex patent litigations, as well as associated IPRs and related follow-on litigations like this Idaho suit, I believe that $3.75 million is a very conservative approximation of the likely costs of litigating issues relating to "Katana's" (i.e., Longhorn's) three asserted patents through trial, and to a final written decision from the PTAB in connection with the three IPR proceedings.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on July 20, 2022.

W. David Westergard

WESTERGARD DECLARATION IN
SUPPORT OF MOTION FOR BOND

**Add35**

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on the 21st day of July, 2022, I electronically filed the foregoing with the U.S. District Court. Notice will automatically be electronically mailed or served via email to the following individuals who are registered with the U.S. District Court CM/ECF System:

Keely E. Duke - ked@dukevett.com

Mallam J. Prior - mjp@dukeevett.com

Scott W. Breedlove - sbreedlove@carterarnett.com

Nathan Cox - ncox@carterarnett.com

*/s/: Daniel Graham* _____

David Krueck, Bar No. 6246
DKrueck@perkinscoie.com
Daniel Graham, Bar No. 11506
DGraham@perkinscoie.com
PERKINS COIE LLP
1111 West Jefferson Street, Suite 500
Boise, Idaho 83702-5391
Telephone: 208.343.3434
Facsimile: 208.343.3232

Amanda Tessar, *pro hac vice pending*
ATessar@perkinscoie.com
Perkins Coie LLP
1900 Sixteenth Street, Suite 1400
Denver, Colorado 80202
Telephone: 303.291.2300
Facsimile: 303.291.2400

**ATTORNEYS FOR PLAINTIFFS, MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., & MICRON TECHNOLOGY TEXAS, LLC**

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., and MICRON TECHNOLOGY TEXAS, LLC., <br><br> *Plaintiffs*, <br><br> v. <br><br><br> LONGHORN IP, LLC, <br><br> *Defendant*. | No. 1:22-cv-00273-DCN <br><br><br> PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR BOND PURSUANT TO IDAHO CODE §48-1707 <br><br> ORAL ARGUMENT REQUESTED |

TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 2

    A.   Micron ................................................................................................................ 2

    B.   Longhorn, Its "Portfolio" Companies, And Their Practice Of Filing Suits In
        Texas ................................................................................................................. 3

    C.   Longhorn's History Of Litigation Against Micron ...................................... 5

    D.   Having Lost On Its Lone Star Portfolio, Longhorn Again Targets Micron, Now
        With Infringement Claims From Its Katana Portfolio .................................. 6

    E.   The Asserted Katana Patents Are Expired, Invalid, And Not Infringed ...... 9

        1.   Micron Cannot Infringe Expired Patents As A Matter Of Law ..... 10

        2.   The '806 Patent ...........................................................................-10

        3.   The '879 Patent ............................................................................ 11

        4.   The '013 Patent ............................................................................ 12

LEGAL STANDARDS ...................................................................................................... 13

    A.   Bad Faith Assertions Of Patent Infringement (Idaho Code §48-1701 et seq.)............ 13

    B.   Alter Ego Law .................................................................................................. 15

    C.   Principal-Agent Relationships ........................................................................ 15

ARGUMENT ................................................................................................................... 15

    A.   Longhorn Is Liable For Katana's Acts ......................................................... 15

    B.   This Court Must Assess Whether Micron Has Shown A Reasonable Likelihood
        Of Success On Its Claim That Longhorn Has Acted In Bad Faith.............................. 16

    C.   This Court Is Empowered To Grant A Bond ............................................. 17

    D.   Longhorn's Patent Infringement Claims Against Micron Are Made In Bad Faith
        And Violate Idaho Code §48-1703 .............................................................. 18

    E.   A Bond Of $15 Million Is Appropriate And Necessary .............................. 20

**Add38**

# TABLE OF AUTHORITIES

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co.*,
224 F.3d 1308 (Fed. Cir. 2000).................................................................13

*Forbush v. Sagecrest Multi Fam. Prop. Owners' Ass'n, Inc.*,
396 P.3d 1199 (Idaho 2017)....................................................................15

*Hanna v. Plumer*,
380 U.S. 460 (1965).................................................................................17

*Kimble v. Marvel Entm't, LLC*,
576 U.S. 446 (2015)...................................................................................9

*SK hynix, Inc. v. Longhorn IP LLC*,
No. 22-cv-3915 (N.D. Cal., filed July 5, 2022) .........................................9

*Vanderford Co., Inc. v. Knudson*,
165 P.3d 261 (Idaho 2007)......................................................................15

*Wandering Trails, LLC v. Big Bite Excavation, Inc.*,
329 P.3d 368 (Idaho 2014)......................................................................15

**STATUTES**

Idaho Code §48-1701 et *seq.* .......................................................... *passim*

35 U.S.C. §154(a)(2)...................................................................................7

35 U.S.C. §255..........................................................................................11

35 U.S.C. §§285-287 .............................................................................2, 7

35 U.S.C. §§311-19 ....................................................................................5

**OTHER AUTHORITIES**

37 C.F.R. §1.323 ......................................................................................11

memory.  *Id.*  Micron's products are used in everything from cars to appliances to servers to computers.  *Id.*

Micron is an innovator.  45,000+ Micron employees across 17 countries (including >6,000 in Idaho) contribute to Micron's success.  *Id.*, ¶6.  Micron devotes >$2.5 billion per year to research and development.  *Id.* & Ex. 3.[2]  As a result, Micron has obtained over 50,000 patents worldwide and holds one of the world's largest portfolios.  West Dec. ¶6 & Ex. 4.  Micron understands that a strong patent system that protects innovators is a critical feature of strong economies, and Micron respects legitimate intellectual property rights.  West Dec. ¶6.

The suggestion that Micron's success as a company is any way attributable to Longhorn or its patents, or that these entities should share in Micron's success, is not tenable.

**B.**     **Longhorn, Its "Portfolio" Companies, And Their Practice Of Filing Suits In Texas**

Longhorn is a non-practicing entity ("NPE"), sometimes called a "patent assertion entity" or "patent troll."  Longhorn produces no products and provides no services.  Ex. 5 (describing itself as a "privately owned IP management and patent portfolio licensing company").

Longhorn's pattern and practice is to form a holding company (a "portfolio" entity), controlled by Mr. Fekih-Romdhane, and then to have that holding company buy a grouping of patents that the holding company asserts in its own name.  Longhorn lists the following portfolio entities on its website, and public records provide the principals' names and addresses for each:

| Entity | Principal | Address |
|---|---|---|
| Katana Silicon Technologies LLC | Khaled Fekih-Romdhane (via Tanit Ventures, Inc.) | 5204 Bluewater Drive Frisco, TX 75036 |
| Trenchant Blade Technologies LLC | Khaled Fekih-Romdhane | 5204 Bluewater Drive Frisco, TX 75036 |
| Nyckel UI Technologies LLC | Khaled Fekih-Romdhane (via Tanit Ventures, Inc.) | 5204 Bluewater Drive Frisco, TX 75036 |
| Hannibal IP LLC | Khaled Fekih-Romdhane | 5204 Bluewater Drive Frisco, TX 75036 |

---

[2]     All exhibits are attached to the Declaration of Dan Graham.

| Entity | Principal | Address |
|---|---|---|
| Hamilcar Barca IP LLC | Khaled Fekih-Romdhane | 5204 Bluewater Drive Frisco, TX 75036 |
| Dido Wireless Innovations LLC | Khaled Fekih-Romdhane | 5204 Bluewater Drive Frisco, TX 75036 |
| Lone Star Silicon Innovations LLC | Christian Dubuc (partner or former partner of Mr. Fekih-Romdhane) | 5204 Bluewater Drive Frisco, TX 75036 |
| L2 Mobile Technologies LLC | Khaled Fekih-Romdhane | 8105 Rasor Blvd., #210 Plano, Texas 75024 |
| Nordic Interactive Technologies LLC | Khaled Fekih-Romdhane (via Tanit Ventures, Inc.) | 8105 Rasor Blvd., #210 Plano, Texas 75024 |
| Ox Mobile Technologies LLC | Khaled Fekih-Romdhane | 8105 Rasor Blvd., #210 Plano, Texas 75024 |
| Carthage Silicone Innovations LLC | Khaled Fekih-Romdhane | 8105 Rasor Blvd., #210 Plano, Texas 75024 |

Exs. 6-7.

As is clear from this table and from Longhorn's website (which proudly touts these entities as part of Longhorn), Mr. Fekih-Romdhane controls all of these entities, which share just two addresses (one of which is Mr. Fekih-Romdhane's home address in Frisco). *Id.* He does so either directly himself or through Tanit Ventures, Inc. ("Tanit"). Ex. 7. Mr. Fekih-Romdhane is Tanit's Director, Organizer, & President, and Tanit is the sole member of Longhorn. *Id.* at 9, 12-14.

Like many other NPEs, Longhorn and its entities are formed as Texas LLCs. Ex. 7. This is not by accident; it is instead part of a calculated plan that, superficially, creates the impression that Longhorn has sufficient connections with Texas to justify jurisdiction for its suits there.

NPEs have been drawn to file suits in the Eastern and, more recently, Western Districts of Texas because, for instance: the judges there have adopted local rules that patent owners perceive as favorable; times to trial are extremely fast; judges are often disinclined to grant transfer or dispositive motions; and plaintiffs can often know which judge they will be assigned by the selection of the division in which they file. *E.g.*, Exs. 8-10. In 2021 alone, 977 patent cases were filed in Western Texas—almost ¼ of all patent suits filed in the entire USA. Ex. 11. This contrasts

with, for instance, the District of Idaho, which had only two patent cases filed in 2021.[3]  *Id.*
Longhorn has taken full advantage of this trend.  In total, Longhorn has filed 16 patent suits in the
Eastern and Western Districts of Texas through its assertion entities, including all five Katana,
both Trenchant Blade, six Lone Star, half of L2 Mobile, and both Nordic Interactive cases.[4]

Ultimately, Longhorn's approach creates pressures that force companies to settle even in
situations where the asserted patents lack merit.

## C.  Longhorn's History Of Litigation Against Micron

Longhorn's shells include Lone Star, through which Longhorn first targeted Micron in
2016 with a baseless suit filed in the Eastern District of Texas.  No. 2:16-cv-1116.  There,
Longhorn (through Lone Star) accused Micron of infringing seven patents.  Ex. 13.  Micron earned
an early victory by securing a transfer to Northern California.  Ex. 14.  The case was then dismissed
with prejudice by Judge Alsup, who criticized Lone Star for having incorrectly stated that it was
the sole owner of the asserted patents and having engaged in a "litigation gimmick."  Ex.15, at 11.

Micron also filed *inter partes* review ("IPR") petitions challenging the validity of all of
Lone Star's asserted claims.  An IPR is a procedure to challenge patent validity before the U.S.
Patent & Trademark Office's Patent & Trademark Appeal Board ("PTAB").  35 U.S.C. §§311-19.
Although IPRs are generally cheaper than district court litigation, the costs are still sizeable
(particularly when a large number must be filed), and it takes about 18 months to reach a decision,
which is then subject to appeal.  35 U.S.C. §316(a)(11).  Moreover, some district courts, including

---

[3]   The reluctance of certain judges in these Texas districts to transfer cases has recently led to
      numerous Federal Circuit mandamus decisions ordering transfer, as well as outcry in the patent
      community and beyond.  Ex. 12 (Republican and Democratic senators jointly asking for
      Supreme Court reform to address the "extreme concentration of patent litigation in [Western
      Texas] and the unseemly and inappropriate conduct that has accompanied this phenomenon").

[4]   Katana cases: Nos. 6:21-cv-074 (Western Digital); 6:19-cv-344 (Samsung); 6:19-cv-695
      (TSMC); 6:22-cv-191 (GlobalFoundries); & 1:22-cv-214 (Micron) (all W.D. Tex.).  Trenchant
      Blade cases: Nos. 6:21-cv-67 (Samsung); & 6:21-cv-490 (Intel) (both W.D. Tex.).  Lone Star
      cases: Nos. 2:16-cv-1116 (Micron); 2:16-cv-1117 (Nanya); 2:16-cv-1170 (Toshiba); 2:16-cv-
      1216 (UMC); 2:16-cv-1276 (SMIC); & No. 2:16-cv-1438 (Renesas) (all E.D. Tex.).  L2 case:
      No. 6:21-cv-358 (Google) (W.D. Tex.).  Nordic cases: Nos. 6:20-cv-64 (Samsung); & 6:21-
      cv-438 (LG) (both W.D. Tex.).

those in Eastern and Western Texas, do not typically stay litigation pending resolution of IPRs, so a defendant must still litigate while its IPRs are pending. *E.g.*, Ex. 8.

Micron achieved overwhelming success on its IPRs. For two of the seven asserted patents, Lone Star conceded before the PTAB could reach a decision, preemptively cancelling challenged claims. Exs. 16-17. For the other five patents, the PTAB invalidated 50+ challenged claims. *See* Exs. 18-23. This means that the PTAB found the challenged claims contained nothing inventive.

But it took more than three years of fighting and millions of dollars to get to that point. Not only that, but Longhorn and Lone Star threatened a series of appeals that would have cost even more to defend—and even filed a first one. No. 18-1578 (Fed. Cir.). Longhorn coupled these threats with a tiny settlement offer that made it nonsensical to keep fighting. West. Dec., ¶7.

Faced with this offer, Micron paid Lone Star a small settlement amount in 2019. *Id.* (amount shown in Ex. 36, filed under seal). This amount was far less than Lone Star's original demand and was intended to simply make Longhorn go away. West. Dec., ¶7. Micron made this payment believing that Longhorn would never again have the audacity to file another meritless suit against Micron. Micron's belief proved correct for just three years, until March of 2022.

**D. Having Lost On Its Lone Star Portfolio, Longhorn Again Targets Micron, Now With Infringement Claims From Its Katana Portfolio**

On August 22, 2018, Longhorn first contacted Micron about Katana. Ex. 24; West. Dec., ¶8. The demand letter that "Katana" sent to Micron explained that Katana "has a licensing service agreement with Longhorn" (Ex. 24 at 1; West Dec., ¶8), confirming that Katana is one of Longhorn's many portfolio entities. In that first letter, Katana asked Micron to take a license to its portfolio and identified two patents that Micron allegedly infringed. *Id.* In what can only be characterized as a thinly-veiled threat, Longhorn pointed out that its Katana patents had been asserted against other companies. *Id.* ("[Katana's] patents have been asserted against major semiconductor companies in the world. Among the potential licensees are: Toshiba, TSMC, SK Hynix and NXP."). Longhorn did not provide claim charts or other documents explaining its infringement theory for the two identified patents at this time, nor did it offer to do so. West. Dec.,

**Add45**

**D.      Longhorn's Patent Infringement Claims Against Micron Are Made In Bad Faith And Violate Idaho Code §48-1703**

As the above chronology shows, Micron is reasonably likely—for multiple reasons—to prove that Longhorn and Katana have brought bad faith infringement claims against Micron.

*First*, the Idaho Legislature enacted §48-1701 *et seq.* to protect Idaho companies (like Micron) from NPEs exactly like Longhorn.  *See* §48-1701(2).  Longhorn, through its portfolio entities, preys on "deep pockets" with its parade of demands and threats, nuisance-value settlements, weak infringement theories, sloppy claims, and assertion of expired patents.  In short, "abusive and bad faith assertions of patent infringement" that violate, for instance, §§48-1703(2)(e), (f) (subjective portion), (g), and (i) are Longhorn's bread and butter.

Micron has been in Longhorn's crosshairs since 2016.  Micron has already spent millions of dollars defending itself from Longhorn's low-rent patents—and with great success in the process.  But fighting Longhorn is like fighting the rising tide.  Longhorn has openly threatened to bring additional claims against Micron through other Longhorn entities like Hamilcar, Carthage, and Trenchant Blade.  It is time that Longhorn be required to be responsible for the ramifications of its assertions through the posting of the requested bond here.

*Second*, Longhorn's infringement claims here fail on their face because Longhorn purports to assert claims of ongoing, *current* infringement for expired patents.  Ex. 1, ¶13.  This is a legal impossibility.  Belatedly claiming that this illegal assertion was just a "drafting error," *see supra*, n.9, does not cure the problem.  Assertion of patents in these circumstances cannot satisfy, *e.g.*, §48-1703(2)(f) (subjective and objective portions).

*Third*, even if Longhorn's claims are somehow read to only focus on past conduct between August (or September) of 2018 and the date that Katana filed its Complaint—*i.e.*, the time for which Katana is permitted to seek damages—Longhorn's claims here are exceptionally weak as a technical matter.   Longhorn's infringement allegations are facially insufficient to show infringement of any of the '806, '879, and '013 patents.  Longhorn knows, or should know (had it conducted an appropriate pre-suit investigation), that its infringement theories are meritless.  No

reasonable litigant in Longhorn's shoes could realistically expect success on the merits of these claims, which are both objectively and subjectively in bad faith under §48-1703(2)(f).

For instance, as discussed above, Katana cannot in good faith suggest that Micron ever infringed asserted claim 1 of the '806 patent because Micron's products are not now and were not at the relevant time sealed with a resin, as required by the asserted claim. Ex. 25 (claim 1); Steph. Decl., ¶6. Katana/Longhorn have not, and presumably cannot, show that they tested before suing to confirm the composition of the accused products consistent with at least §48-1703(2)(i).

Likewise, Katana also cannot in good faith suggest that Micron ever infringed claim 1 of the '879 patent because step (d) of the asserted claim does not make sense and is not infringed by Micron. As discussed above, step (d)—like step (a)—requires that two separate circuits be formed on "a front surface of the first wafer." Ex. 26 (claim 1). But Katana maps steps (a) and (d) to the two totally different structures, rather than alleging (much less showing) that there are two circuits formed on a first wafer in Micron's accused products. Assertion of this claim is inconsistent with the requirements of at least §48-1703(2)(f) (subjective and objective portions), and the meaning of the asserted claim should not simply be written off as another "typo."

Longhorn's allegations for the '013 patent are similarly meritless, including because the alleged electrically **connected** "wiring pattern" and electrically **unconnected** "support pattern" are said to be the same thing, even though this theory directly contradicts the relevant claim language. Ex. 28 (claim 11, relevant portion quoted above). Just as a single car cannot be both driving and parked at the same time, a single accused "pattern" cannot be both electrically connected and electrically unconnected at the same time. These are mutually exclusive—yet Katana ignores this distinction in contravention of both the objective and subjective portions of at least §48-1703(2)(f).

**Fourth**, Micron repeatedly **told** Longhorn of the weakness of its patents and allegations on multiple occasions. Exs. 29-30; West. Decl., ¶¶13-14. Micron also met with Longhorn representatives in a good-faith effort to discuss Longhorn's allegations. *Id.* Nevertheless, on March 4, 2022, more than three years after these communications and meetings, and after the '806, '879, and '013 patents had long since expired, Longhorn (through Katana) sued in Texas. Ex. 1.

MICRON MEMORANDUM
ISO MOTION FOR BOND

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., and MICRON TECHNOLOGY TEXAS, LLC., <br><br> *Plaintiffs*, <br><br> vs. <br><br><br> LONGHORN IP, LLC <br><br> *Defendant*. | No. 1:22-cv-00273-DCN <br><br><br> DECLARATION OF DANIEL GRAHAM IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR BOND PURSUANT TO IDAHO CODE §48-1707 |

1

I, Daniel Graham, declare as follows:

1.     I am over 18 years of age and competent to make this declaration. If called to testify as a witness, I could and would testify truthfully under oath to each of the statements in this declaration. I make each statement below based on my personal knowledge or after investigation of the relevant information.

2.     I am an attorney at Perkins Coie LLP, counsel of record for Plaintiffs Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC ("Defendants" or "Micron"). I am licensed to practice law in the States of Idaho and Colorado.

3.     I make this Declaration in support of Micron's Memorandum in Support of Their Motion for Bond Pursuant to Idaho Code §48-1707.

4.     Attached hereto as Exhibit 1 is a true and correct copy of Katana Silicon Technologies LLC's ("Katana") Complaint for Patent Infringement filed in the Western District of Texas, Austin Division, dated March 4, 2022.

5.     Attached hereto as Exhibit 2 is a true and correct copy of a timeline titled "A Long-Term Innovation Path" from Micron's website, from https://www.micron.com/about/our-company/timeline (last visited July 16, 2022).

6.     Attached hereto as Exhibit 3 is a true and correct copy of an excerpt from Micron's Form 10-K for the fiscal year ended September 2, 2021. For the Court's convenience, Micron's counsel has highlighted the $2.663 billion figure that Micron reports having spent on R&D in 2021.

7.     Attached hereto as Exhibit 4 is a true and correct copy of a press release titled "Micron Marks 50,000 Patents Milestone," dated May 11, 2022.

**Add73**

8.    Attached hereto as Exhibit 5 is a true and correct copy of the home page of Longhorn IP's website at https://www.longhornip.com/ (last visited July 5, 2022).

9.    Attached hereto as Exhibit 6 is a true and correct copy of the "Portfolios" page of Longhorn IP's website at https://www.longhornip.com/portfolios (last visited July 5, 2022).

10.    Attached hereto as Exhibit 7 are true and correct copies of the following entity documents:

- Katana's Certificate of Formation, as filed with the Texas Secretary of State, dated May 14, 2018;
- Katana's Certificate of Amendment, as filed with the Texas Secretary of State, dated March 11, 2019;
- Katana's Certificate of Amendment, as filed with the Texas Secretary of State, dated December 9, 2019;
- Longhorn IP, LLC's ("Longhorn") Certificate of Formation, as filed with the Texas Secretary of State identifying Khaled Fekih-Romdhane as the Registered Agent and Managing Member of Longhorn, dated April 10, 2016;
- Longhorn's Texas Franchise Tax Public Information Report, dated May 3, 2021;
- Tanit Ventures Inc.'s ("Tanit") Certificate of Formation, identifying Khaled Fekih-Romdhane as Tanit's Registered Agent, Director, and Organizer, dated May 9, 2016;
- Tanit's Certificate of Amendment, dated March 18, 2019;
- Carthage Silicon Innovations LLC's ("Carthage") Certificate of Formation, dated May 21, 2018;
- Carthage's Certificate of Amendment, dated March 11, 2019;
- Carthage's Certificate of Amendment, dated December 9, 2019;
- Dido Wireless Innovations LLC's ("Dido") Certificate of Formation, dated March 1, 2022;
- Hamilcar Barca IP LLC's ("Hamilcar") Certificate of Formation, dated November 24, 2021;
- Hannibal IP LLC's ("Hannibal") Certificate of Formation, dated April 20, 2021;
- L2 Mobile Technologies LLC's ("L2") Certificate of Formation, dated December 7, 2016;

GRAHAM DECLARATION
IN SUPPORT OF MOTION FOR BOND

**Add74**

- L2's Statement of Change of Registered Agent, dated August 3, 2021;

- L2's Acceptance of Appointment and Consent to Serve as Registered Agent, dated July 29, 2021;

- Lone Star Silicon Innovations LLC's ("Lone Star") Certificate of Formation, dated July 7, 2016;

- Nordic Interactive Technologies LLC's ("Nordic") Certificate of Formation, dated April 19, 2018;

- Nordic's Certificate of Amendment, dated March 11, 2019;

- Nordic's Certificate of Amendment, dated December 9, 2019;

- Nyckel UI Technologies LLC's ("Nyckel") Certificate of Formation, dated January 4, 2019;

- Nyckel's Certificate of Amendment, dated March 11, 2019;

- Nyckel's Certificate of Amendment, dated December 9, 2019;

- Nyckel's Statement of Change of Address of Registered Agent, dated August 3, 2021;

- Nyckels' Acceptance of Appointment and Consent to Serve as Registered Agent, dated July 29, 2021;

- Ox Mobile Technologies LLC's ("Ox Mobile") Certificate of Formation, dated December 15, 2016;

- Ox Mobile's Texas Franchise Tax Public Information Report, dated May 10, 2021;

- Taijitu Ventures Inc.'s ("Taijitu") Certificate of Formation, dated May 9, 2016;

- Taijitu's Certificate of Amendment, dated November 22, 2019;

- Taijitu's Statement of Change of Address of Registered Agent, dated July 8, 2019;

- Taijitu's Statement of Change of Address of Registered Agent, dated February 20, 2019;

- Trenchant Blade Technologies LLC's ("Trenchant") Certificate of Formation, dated January 8, 2020;

- Trenchant's Texas Franchise Tax Public Information Report, dated May 1, 2021;

- Denton County, Texas CAD sheet showing that 5204 Bluewater Driver, Frisco, Texas 75036 is a residence owned by Khaled Fekih-Romdhane.

GRAHAM DECLARATION
IN SUPPORT OF MOTION FOR BOND

For the Court's convenience, Micron's counsel has highlighted some of the pertinent information in these documents.

11.      Attached hereto as Exhibit 8 is a true and correct copy of an article titled "Move Over Marshall, There's a New Sherriff in Town—The Rise of Waco and the Western District of Texas" by Ronald S. Lemieux and Steven M. Auvil, National Law Review, Volume XI, Number 87, from https://www.natlawreview.com/article/move-over-marshall-there-s-new-sheriff-town-rise-waco-and-western-district-texas (last visited July 16, 2022).

12.      Attached hereto as Exhibit 9 is a true and correct copy of an article titled "Guest Post: How it Started…How It's Going: Venue Transfers in the Western District of Texas," by Jason Rantanen, PATENTLYO, dated October 28, 2021, from https://patentlyo.com/patent/2021/10/startedhow-transfers-district.html (last visited June 30, 2022).

13.      Attached hereto as Exhibit 10 is a true and correct copy of an article titled "Judge Gilstrap Keeps Eastern District's Tight Ship Afloat," by Jess Krochtengel, Law 360, dated March 6, 2015, from https://www.law360.com/articles/628732/print?section=ip (last visited June 30, 2022).

14.      Attached hereto as Exhibit 11 is a true and correct copy of a report from LexMachina titled All Court Case Filings by Year, Patent Cases Filed by Year" for the past ten years, from https://law.lexmachina.com/court/table?case_type=27. For the Court's convenience, Micron's counsel has highlighted some of the pertinent information in this document.

15.      Attached hereto as Exhibit 12 is a true and correct copy of a letter from United States Senators Thom Tillis and Patrick Leahy to The Honorable Chief Justice John Roberts of

GRAHAM DECLARATION
IN SUPPORT OF MOTION FOR BOND

**Add76**

the United States Supreme Court regarding issues with forum shopping in patent litigation, dated November 2, 2021.

16.     Attached hereto as Exhibit 13 is a true and correct copy of Lone Star Silicon Innovations LLC's ("Lone Star") Complaint for Patent Infringement filed against Micron in the Eastern District of Texas, Marshall Division, on October 7, 2016.

17.     Attached hereto as Exhibit 14 is a true and correct copy of United States Magistrate Judge Roy S. Payne's Order Granting Micron's Motion to Transfer from the Eastern District of Texas to the Northern District of California in Case No. 2:16-cv-01116-JRG-RSP, dated August 24, 2017.

18.     Attached hereto as Exhibit 15 is a true and correct copy of District Judge William Alsup's Order Granting Motions to Dismiss Lone Star's patent infringement action for lack of standing in the Northern District of California, in Case No. 17-05458 WHA, dated January 20, 2018.

19.     Attached hereto as Exhibit 16 is a true and correct copy of the Patent Trial and Appeal Board's Decision Granting Motion for Adverse Judgment pursuant to 37 C.F.R. § 42.73 in Case No. IPR2017-01565, regarding United States Patent No. 6,326,231, dated June 25, 2018 (Paper No. 15).

20.     Attached hereto as Exhibit 17 is a true and correct copy of the Patent Trial and Appeal Board's Decision Granting Motion for Adverse Judgment pursuant to 37 C.F.R. § 42.73 in Case No. IPR2017-01630, regarding United States Patent No. 5,872,038, dated June 25, 2018 (Paper No. 13).

21.     Attached hereto as Exhibit 18 is a true and correct copy of the Patent Trial and Appeal Board's Final Written Decision pursuant to 35 U.S.C. § 318 and 37 C.F.R. § 42.73 in

**Add77**

Case No. IPR2017-01561, regarding United States Patent No. 5,912,188, dated December 12, 2018 (Paper No. 34).

22.     Attached hereto as Exhibit 19 is a true and correct copy of the Patent Trial and Appeal Board's Final Written Decision pursuant to 35 U.S.C. § 318 and 37 C.F.R. § 42.73 in Case No. IPR2017-01560, regarding United States Patent No. 5,912,188, dated December 12, 2018 (Paper No. 41).

23.     Attached hereto as Exhibit 20 is a true and correct copy of the Patent Trial and Appeal Board's Final Written Decision Determining that Claims 1, 3-6, 11 and 13-16 Are Proven Unpatentable pursuant to 35 U.S.C. § 318(a) in Case No. IPR2017-01562, regarding United States Patent No. 6,097,061, dated December 13, 2018 (Paper No. 30).

24.     Attached hereto as Exhibit 21 is a true and correct copy of the Patent Trial and Appeal Board's Final Written Decision Finding Claims 1-5, 8-12, and 15 Unpatentable pursuant to 35 U.S.C. § 318(a) in Case No. IPR2017-01563, regarding United States Patent No. 6,103,611, dated December 17, 2018 (Paper No. 29).

25.     Attached hereto as Exhibit 22 is a true and correct copy of the Patent Trial and Appeal Board's Final Written Decision pursuant to 35 U.S.C. § 318 and 37 C.F.R. § 42.73 in Case No. IPR2017-01566, regarding United States Patent No. 6,388,330, dated January 14, 2019 (Paper No. 24).

26.     Attached hereto as Exhibit 23 is a true and correct copy of the Patent Trial and Appeal Board's Final Written Decision pursuant to 35 U.S.C. § 318(a) and 37 C.F.R. § 42.73 in Case No. IPR2017-01597, regarding United States Patent No. 6,023,085, dated January 16, 2019 (Paper No. 26).

GRAHAM DECLARATION
IN SUPPORT OF MOTION FOR BOND

27.     Attached hereto as Exhibit 24 is a true and correct copy of a letter from Jason Wejnert of SpencePC to Micron's former General Counsel, Joel L. Poppen, dated August 22, 2018.

28.     Attached hereto as Exhibit 25 is a true and correct copy of United States Patent No. RE38,806, issued to Fukui, et al. on October 4, 2005. For the Court's convenience, Micron's counsel has highlighted the application date on the cover page of this document.

29.     Attached hereto as Exhibit 26 is a true and correct copy of United States Patent No. 6,352,879, issued to Fukui, et al. on March 5, 2002. For the Court's convenience, Micron's counsel has highlighted in the application date on the cover page of this document.

30.     Attached hereto as Exhibit 27 is a true and correct copy of a letter from Jason Wejnert of SpencePC to Micron's former General Counsel, Joel L. Poppen, dated September 18, 2018.

31.     Attached hereto as Exhibit 28 is a true and correct copy of United States Patent No. 6,731,013, issued to Juso, et al. on May 4, 2004. For the Court's convenience, Micron's counsel has highlighted in the application date on the cover page of this document.

32.     Attached hereto as Exhibit 29 is a true and correct copy of an email thread with the topmost email from Jason Wejnert to David Westergard, sent October 19, 2018. For the Court's convenience, Micron's counsel has highlighted some of the pertinent information in the document. Micron has also omitted the attachment to this exhibit.

33.     Attached hereto as Exhibit 30 is a true and correct copy of an email thread with the topmost email from David Westegard to William Cory Spence of SpencePC, sent February 4, 2019.

GRAHAM DECLARATION
IN SUPPORT OF MOTION FOR BOND

**Add79**

34.    Attached hereto as Exhibit 31 is a true and correct copy of an email thread with the topmost email from Khaled Fekih-Romdhane to David Westegard, sent November 20, 2018.

35.    Attached hereto as Exhibit 32 is a true and correct copy of Katana's Response in Non-Opposition to Micron's Motion to Transfer, filed in Case No. 1:22-cv-00214-LY, in the Western District of Texas, Austin Division, dated July 6, 2022.

36.    Attached hereto as Exhibit 33 are true and correct copies of excerpts from 5A Chisum on Patents § 18.03.  For the Court's convenience, Micron's counsel has highlighted the portions of this document referenced in its Memorandum.

37.    Attached hereto as Exhibit 34 are true and correct copies of excerpts from the American Intellectual Property Law Association's 2021 Report of the Economic Survey.

38.    Attached hereto as Exhibit 35 is a true and correct copy of an article titled "IPRs: Balancing Effectiveness vs. Cost," RPX Rational Patent, dated June 17, 2016, from https://www.rpxcorp.com/intelligence/blog/iprs-balancing-effectiveness-vs-cost/ (last visited July 20, 2022).

39.    Attached hereto as Exhibit 36 is a true and correct copy of Settlement and Patent License Agreement between Lone Star and Micron, dated March 4, 2019.  This exhibit is being filed under seal.  For the Court's convenience, Micron's counsel has highlighted the monetary amount found in section 4.1 of this document.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 20, 2022 in Honolulu, Hawaii.

Daniel Graham

GRAHAM DECLARATION
IN SUPPORT OF MOTION FOR BOND

# EXHIBIT 5



Home      Portfolios      News      News Archive      People      Investors      Careers      Contact Us

# Longhorn IP

Longhorn IP is a privately owned IP management and patent
portfolio licensing company. Drawing upon the deep
experience of its team, Longhorn IP is dedicated to
providing best-in-class intellectual property analysis,
management, and licensing services to its clients. Longhorn
IP provides technology solutions to several world's leading
HighTech companies.





## Contact

info@longhornip.com

+1-469-268-2567

## Follow



©2017 BY LONGHORN IP LLC



Add138

# EXHIBIT 7

# Texas Franchise Tax Public Information Report

05-102
(Rev.9-11/30)
FORM

Comptroller
of Public
Accounts

*To be filed by Corporations , Limited Liability Companies (LLC) and Financial Institutions*
**This report MUST be signed and filed to satisfy franchise tax requirements**

■ **Tcode** 13196 Franchise

| ■ Taxpayer number | ■ Report year |
|---|---|
| 3 2 0 6 0 1 4 2 1 9 0 | 2 0 2 1 |

**You have certain rights** under Chapter 552 and 559, Government Code, to review, request, and correct information we have on file about you. Contact us at (800) 252-1381or (512) 463-4600.

| Taxpayer name | | |
|---|---|---|
| | LONGHORN IP LLC | |
| Mailing address | | |
| | 8105 RASOR BLVD STE 210 | |
| City | State | ZIP Code | Plus 4 |

PLANO    TX    75024

Secretary of State (SOS) file number or Comptroller file number

0802432859

● Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

Principal office
5204 BLUEWATER DR FRISCO, TX 75036 9313
Principal place of business
5204 BLUEWATER DR FRISCO, TX 75036 9313

*Please sign below!*

Officer, director and manager information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers, directors, or managers change throughout the year.

3206014219021

**SECTION A** Name, title and mailing address of each officer, director or manager.

| Name | Title | Director | Term expiration | m m d d y y |
|---|---|---|---|---|
| TANIT VENTURES INC | MEMBER | ○ YES | | |
| Mailing address | City | State | ZIP Code | |
| 5204 BLUEWATER DRIVE | FRISCO | TX | 75034 | |
| Name | Title | Director | Term expiration | m m d d y y |
| | | ○ YES | | |
| Mailing address | City | State | ZIP Code | |
| Name | Title | Director | Term expiration | m m d d y y |
| | | ○ YES | | |
| Mailing address | City | State | ZIP Code | |

**SECTION B** Enter the information required for each corporation or LLC, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |

**SECTION C** Enter the information required for each corporation or LLC, if any, that owns an interest of 10 percent or more in this entity or limited liability company.

| Name of owned (parent) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|

Registered agent and registered office currently on file. *(see instructions if you need to make changes)*    ○ Blacken circle if you need forms to change the registered agent or registered office information.
Agent: KHALED FEKIH ROMDHANE

| Office: | City | State | ZIP Code |
|---|---|---|---|
| 5204 BLUEWATER DRIVE | FRISCO | TX | 75034 |

The above information is required by Section 171.203 of the Tax Code for each corporation or limited liability company that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B, and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director or manager and who is not currently employed by this, or a related, corporation or limited liability company.

| sign here ▶ | Title | Date | Area code and phone number |
|---|---|---|---|
| MARWAN KASSIM | Electronic | 05-03-2021 | ( 281 ) 248 - 1683 |

**Texas Comptroller Official Use Only**

| VE/DE | ○ | PIR IND | ○ |
|---|---|---|---|

Add153



| Form 201 | | |
|---|---|---|
| Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>FAX: 512/463-5709<br><br>Filing Fee: $300 | **Certificate of Formation<br>For-Profit Corporation** | **Filed in the Office of the<br>Secretary of State of Texas<br>Filing #: 802453941 05/09/2016<br>Document #: 669901600002<br>Image Generated Electronically<br>for Web Filing** |

## Article 1 - Entity Name and Type

The filing entity being formed is a for-profit corporation. The name of the entity is:

### TANIT VENTURES INC

The name must contain the word "corporation," "company," "incorporated," "limited," or an abbreviation of one of these terms. The name must not be the same as, deceptively similar to or similar to that of an existing corporate, limited liability company, or limited partnership name on file with the secretary of state. A preliminary check for "name availability" is recommended.

## Article 2 – Registered Agent and Registered Office

☐A. The initial registered agent is an organization (cannot be corporation named above) by the name of:

### OR

☑B. The initial registered agent is an individual resident of the state whose name is set forth below:

**Name:**
### KHALED    FEKIH-ROMDHANE

C. The business address of the registered agent and the registered office address is:

**Street Address:**
### 5204 BLUEWATER DR   FRISCO TX  75034

## Consent of Registered Agent

☐A. A copy of the consent of registered agent is attached.

### OR

☑B. The consent of the registered agent is maintained by the entity.

## Article 3 - Directors

The number of directors constituting the initial board of directors and the names and addresses of the person or persons who are to serve as directors until the first annual meeting of shareholders or until their successors are elected and qualified are set forth below:

Director 1: **KHALED    FEKIH-ROMDHANE**

Address: **5204 BLUEWATER DR   FRISCO TX, USA  75034**

## Article 4 - Authorized Shares

The total number of shares the corporation is authorized to issue and the par value of each of such shares, or a statement that such shares are without par value, is set forth below.

| Number of Shares | Par Value (must choose and complete either A or B) | Class | Series |
|---|---|---|---|
| **1000** | ☑ A. has a par value of $**1**<br>☐ B. without par value. | | |

If the shares are to be divided into classes, you must set forth the designation of each class, the number of shares of each class, and the par value (or statement of no par value), of each class. If shares of a class are to be issued in series, you must provide the designation of each series. The preferences, limitations, and relative rights of each class or series must be stated in space provided for supplemental information.

## Article 5 - Purpose

The purpose for which the corporation is organized is for the transaction of any and all lawful business for which corporations may be organized under the Texas Business Organizations Code.

## Supplemental Provisions / Information

[The attached addendum, if any, is incorporated herein by reference.]

**Add154**

| Effectiveness of Filing |
| --- |
| ☐ A. This document becomes effective when the document is filed by the secretary of state. |
| **OR** |
| ☑ B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its signing. The delayed effective date is: **May 10, 2016** |

| Organizer |
| --- |
| The name and address of the organizer is set forth below. |
| **KHALED FEKIH-ROMDHANE**          **5204 BLUEWATER DR FRISCO TX 75034** |

| Execution |
| --- |
| The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument. |
| **KHALED FEKIH-ROMDHANE** |
| Signature of organizer |

FILING OFFICE COPY

EXHIBIT 13

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| LONE STAR SILICON INNOVATIONS LLC, | Civil Action No. 2:16-cv-1116 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON CONSUMER PRODUCTS GROUP, INC., and MICRON MEMORY JAPAN, INC. | |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Lone Star Silicon Innovations LLC ("Lone Star"), complains against Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., Micron Consumer Products Group, Inc., and Micron Memory Japan, Inc. (individually or collectively "Defendants" or "Micron") as follows:

### NATURE OF ACTION

1.      This is an action for patent infringement of United States Patent Nos. 5,872,038; 5,912,188; 6,023,085; 6,097,061; 6,103,611; 6,326,231 and 6,388,330 (collectively, the "Patents in Suit") under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

### THE PARTIES

2.      Plaintiff Lone Star is a corporation organized and existing under the laws of the State of Texas with its principal place of business at 8105 Rasor Blvd., Suite 210, Plano, TX

75024. Lone Star is in the business of licensing patented technology. Lone Star is the assignee of the Patents in Suit.

3.      Defendant Micron Technology, Inc. ("MTI") is a corporation incorporated under the laws of Delaware with its principal place of business at 8000 South Federal Way, Boise, Idaho 83707. Micron and/or its subsidiaries also maintain offices in Allen, Texas 75031 and Round Rock, Texas 78681. Defendant MTI conducts business in and is doing business in Texas and in this District and elsewhere in the United States, including, without limitation, using, promoting, offering to sell, importing and/or selling memory devices and/or devices that incorporate memory devices that embody the patented technology, and enabling end-user purchasers to use such devices in this District.

4.      Defendant Micron Semiconductor Products, Inc. ("MSP") is an Idaho corporation with a principal place of business at 3475 E. Commercial Ct., Meridian, Idaho 83642. MSP's registered agent for service of process in the State of Texas is Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218. On information and belief, MSP is a wholly-owned subsidiary of MTI. Defendant MSP conducts business in and is doing business in Texas and in this District and elsewhere in the United States, including, without limitation, using, promoting, offering to sell, importing and/or selling memory devices and/or devices that incorporate memory devices that embody the patented technology, and enabling end-user purchasers to use such devices in this District.

5.      Defendant Micron Consumer Products Group, Inc. ("MCPG") is a Delaware corporation with its principal place of business at 47300 Bayside Parkway, Fremont, California 94538. On information and belief, MCPG is a wholly-owned subsidiary of MTI. On information and belief, Defendant MCPG conducts business in and is doing business in Texas and in this

District and elsewhere in the United States, including, without limitation, using, promoting, offering to sell, importing and/or selling memory devices and/or devices that incorporate memory devices that embody the patented technology, and enabling end-user purchasers to use such devices in this District.

6.      Defendant Micron Memory Japan, Inc. is a corporation with a principal place of business at Sumitomo Seimei Yaesu Bldg., 3F, 2-1 Yaesu 2-chome, Chuo-ku, Tokyo 104-0028, Japan. On information and belief, Micron Memory Japan, Inc. is a wholly-owned subsidiary of Micron. Before it was acquired by Micron, Micron Memory Japan, Inc. was known as Elpida Memory, Inc. Micron Memory Japan, Inc., and Elpida Memory, Inc. are referred to collectively herein as "Micron Japan." Micron Japan is the parent company of Micron Akita, Inc., with a principal place of business at 89-2, Yamada, Yuwaishida, Akita-shi, Akita 010-1222, Japan ("Micron Akita"). Micron Akita, Inc. supplies Micron Japan and MTI with memory devices and/or devices that incorporate memory devices that embody the patented technology. On information and belief, Micron Japan manufactures and sells memory devices and/or devices that incorporate memory devices that embody the patented technology and also sells such DRAM semiconductor devices manufactured by foundries such as Micron Taiwan, and Micron Akita.

7.      Upon information and belief, MTI controls and is the majority owner of the other Defendants, and Defendants are joint tortfeasors with one another with respect to the matters alleged herein.

## JURISDICTION AND VENUE

8.      This action arises under the Patent Laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3

**Add242**

# Exhibit 15

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE LONE STAR SILICON INNOVATIONS LLC | No. C 17-03980 WHA<br>No. C 17-03981 WHA<br>No. C 17-04032 WHA<br>No. C 17-04033 WHA<br>No. C 17-04034 WHA<br>No. C 17-05458 WHA |
| | **ORDER GRANTING MOTIONS TO DISMISS** |

_____/

**INTRODUCTION**

Defendants in six related patent infringement actions move to dismiss on the basis that plaintiff in all six lacks standing. To the extent stated below, the motions are **GRANTED**.

**STATEMENT**

The essence of this problem is that the patent owner tried to find a way to shield itself from counterclaims while retaining a way to reap the monetary benefits of suing competitors and others for infringement of its patents. Its mechanism for that neat trick was a "patent transfer agreement" that seemed to include the magic wording required to authorize a non-practicing entity to sue. But other wording in the same agreement subtracted from those provisions and thus rendered the agreement insufficient to sustain standing for the non-practicing entity under Federal Circuit law.

\*              \*              \*

United States District Court
For the Northern District of California

In the six above-captioned actions, plaintiff Lone Star Silicon Innovations LLC, a non-practicing entity with its principal place of business in Plano, Texas, asserts claims for patent infringement against Semiconductor Manufacturing International Corporation, Semiconductor Manufacturing International (Shanghai) Corporation, Semiconductor Manufacturing International (Beijing) Corporation, and SMIC, Americas (collectively, "SMIC"); Renesas Electronics Corporation and Renesas Electronics America Inc. (collectively, "Renesas"); Nanya Technology Corporation, Nanya Technology Corporation, U.S.A., and Nanya Technology Corporation Delaware (collectively, "Nanya"); United Microelectronics Corporation and UMC Group (USA) (collectively, "UMC"); Toshiba Corporation, Toshiba America, Inc., and Toshiba America Electronic Components, Inc. (collectively, "Toshiba"); and Micron Technology, Inc., Micron Semiconductor Products, Inc., Micron Consumer Products Group, Inc., and Micron Memory Japan, Inc. (collectively, "Micron"). These actions originated in the Eastern District of Texas and transferred to our district in mid-2017.

Lone Star currently asserts the following patents against each group of defendants:

- SMIC — 5,973,372 ("the '372 patent") and 6,388,330 ("the '330 patent")

- Renesas — 6,153,933 and the '330 patent

- Nanya — 6,097,061 ("the '061 patent") and the '330 patent

- UMC — the '372 patent and the '330 patent

- Toshiba — 5,912,188 ("the '188 patent"), 6,023,085 ("the '085 patent"), the '330 patent, and RE39,518

- Micron — the '188 patent, the '085 patent, the '061 patent, and the '330 patent

Each of the patents-in-suit originally issued to Advanced Micro Devices, Inc., a multinational semiconductor company based in Sunnyvale, California. On August 4, 2016, AMD and Lone Star entered into a patent transfer agreement that encompassed various patents, including the patents-in-suit, and executed an assignment for those patents. The complaint in each of the six above-captioned actions alleges that Lone Star is the "assignee" and "sole owner" of the patents-in-suit. Lone Star, however, did not produce the patent transfer agreement until October 2017 — months after the actions commenced.

2

**Add311**

United States District Court
For the Northern District of California

Section 2.1 of the patent transfer agreement gave Lone Star "all right, title and interest in, to and under the Assigned Patents . . . including any and all inventions and discoveries claimed therein, any and all legal rights entitled by the original owner of the Assigned Patents and all rights of AMD to sue for past, present and future infringement of any and all of the Assigned Patents." In exchange, Section 5.1 gave AMD 35 to 50 percent of the proceeds from Lone Star's "monetization efforts." No provision in the patent transfer agreement addressed Lone Star's right (or lack thereof) to practice the patents-in-suit.

Despite the broad language of Section 2.1, other provisions in the same agreement substantially curtailed Lone Star's rights. For example, Section 4.1 gave AMD "a fully paid up, irrevocable, worldwide, transferable, non-exclusive, license under the Assigned Patents to use, develop, copy, modify, import, make and have made, offer for sale, sell, lease, import, export, distribute, demonstrate, display, transfer and/or otherwise exploit or dispose of [its] Licensed Products," which includes "all of its software, hardware, products, designs, services, and activities." Section 2.3 further required Lone Star to comply with "Existing Encumbrances" and "to make any and every future sale, transfer, assignment, lien, mortgage or other encumbrance of the Assigned Patents subject to the Existing Encumbrances and the license and other rights granted under Section 4," with "Existing Encumbrances" broadly defined as:

> (a) pre-existing patent licenses, covenants not to assert, promises or agreements to license, and/or similar patent immunities; (b) rights to renew or extend pre-existing patent licenses exercised unilaterally by third parties (such as legally binding options); (c) releases for past infringement; and/or (d) pre-existing commitments related to AMD's or its Affiliates' standardization activities or patent pool activities, and other pre-existing specification-related or standards-related licenses, covenants and promises of AMD or any of its Affiliates, which, in each of (a), (b), (c) and (d), shall transfer in connection with the transfer of the Assigned Patent(s) and/or which AMD or any of its Affiliates has committed to maintain in connection with the transfer of such Assigned Patent(s).

Section 2.6 further restricted Lone Star's ability to transfer the patents-in-suit:

> Any assignment of an Assigned Patent in violation of this Section 2.6 shall be void ab initio. Lone Star will not transfer ownership of any of the Assigned Patents unless: (a) all Assigned Patents are transferred collectively; (b) the proposed successor-in-interest agrees to be bound by this Agreement (with the successor-in-interest taking the place of Lone Star for all purposes of this

3

United States District Court
For the Northern District of California

Agreement) including, but not limited to, obtaining ownership of any of the Assigned Patents subject to any and all Existing Encumbrances, in writing enforceable by AMD and with a copy provided to AMD; and (c) AMD provides its written consent to the transfer, which shall not be unreasonably withheld.

Finally, Section 6.2(f) explicitly limited Lone Star's enforcement rights to specific "Unlicensed Third Party Entities" listed in Exhibit E to the patent transfer agreement:

Lone Star acknowledges that the Assigned Patents are subject to Existing Encumbrances to other Persons and that Lone Star represents and warrants that it shall not commence, direct or control any legal action seeking to enforce and/or licensing activity asserting any of the Assigned Patents against a Person that is (1) not an Unlicensed Third Party Entity or Affiliate thereof, or (2) is a distributor, reseller, or direct or indirect customer with respect to materials, devices, software or firmware, services or products that are used, made or supplied directly or indirectly by or for a Person that is not an Unlicensed Third Party Entity.

Section 3.3(c) added that "[t]he Parties shall cooperate in good faith in attempting to identify additional third-parties that the Parties may agree, *at each's sole discretion*, to add to the Exhibit E list of Unlicensed Third Party Entities" (emphasis added).

After receiving the patent transfer agreement, all defendants moved to dismiss on the basis that Lone Star had no standing to sue thereunder. This order follows full briefing in each of the above-captioned actions (*i.e.*, eighteen briefs in total) and oral argument.[1]

## ANALYSIS

The question of standing is jurisdictional. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995). The party bringing the action bears the burden of establishing it has standing. *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975–96 (Fed. Cir. 2005) (citation omitted). The Federal Circuit has recognized three general categories of plaintiffs in analyzing the standing issue in patent infringement actions. *First*, a patentee or assignee of "all rights or all substantial rights" under the patent can sue in its own name alone. *Second*, an exclusive licensee or other party with exclusionary rights — but not "all substantial rights" — can sue, but must usually join the patentee to avoid "the potential for multiple litigations and multiple liabilities and recoveries against the same alleged infringer." Joinder also "protects the

---

[1] In Case No. 17-5458, Micron styled its motion as one for judgment on the pleadings. That motion, however, seeks the same relief as the other defendants' motions to dismiss and thus receives no separate treatment herein.

4

**United States District Court**
For the Northern District of California

1   patentee from losing substantial rights if its patent claims are invalidated or the patent rendered

2   unenforceable in an action in which it did not participate." *Luminara Worldwide, LLC v. Liown*

3   *Elecs. Co. Ltd.*, 814 F.3d 1343, 1350 (Fed. Cir. 2016). *Third*, a party that holds "less than all

4   substantial rights to the patent" and lacks exclusionary rights thereunder cannot sue or even

5   participate alongside the patent owner as a party to an infringement action. *Morrow v.*

6   *Microsoft Corp.*, 499 F.3d 1332, 1339–41 (Fed. Cir. 2007) (citations omitted).

7       The instant motions concern only the first category since Lone Star claims to be an

8   "assignee" and "sole owner" of the patents-in-suit under its patent transfer agreement with

9   AMD. To create an assignment, a contract must transfer (1) the entire exclusive patent right,

10   including "all substantial rights in the patent"; (2) an undivided interest in the patent right; or

11   (3) the entire exclusive patent right within any geographical region of the United States. An

12   agreement that does not transfer one of these three interests is merely a license. *Diamond*

13   *Coating Techs., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 618 (Fed. Cir. 2016). Whether an

14   agreement constitutes an assignment or license depends not on the "labels" or "bare formalities"

15   of title transfer but on the "substance of what was granted." *Ibid.*

16       The Federal Circuit has observed that the exclusive right to make, use, and sell products

17   or services under the patent is "vitally important" to assignment, and that the nature and scope

18   of the right to sue accused infringers and license the patent is the "most important factor" to

19   consider. *Id.* at 619 (quoting *Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*,

20   604 F.3d 1354, 1360–61 (Fed. Cir. 2010)).

21       Other rights that should be examined include the scope of the licensee's right to

22   sublicense, the licensor's reversionary rights following breach or termination of the license

23   agreement, the licensor's right to proceeds from litigation or licensing activities, the duration of

24   the licensee's rights, the licensor's ability to supervise and control the licensee's activities, the

25   licensor's obligation to continue paying patent maintenance fees, and the nature of any limits on

26   the licensee's right to assign its interests in the patent. *See Mann*, 604 F.3d at 1360–61.

27       Both sides cite selective snippets of various favorable-sounding authorities in their

28   briefs. Considering the *Mann* factors as a whole, however, the controlling decision with

1  underlying facts closest to ours is *Diamond Coating*. There, as here, the plaintiff claimed

2  standing to sue on the basis that it had received "all substantial rights" in the patents-in-suit

3  through a patent assignment and transfer agreement. *See* 823 F.3d at 618. The district court

4  disagreed, holding that the actual terms of the agreement weighed against finding a transfer of

5  substantial rights because (1) the plaintiff could not assign the agreement to another party

6  without the transferor's consent; (2) the transferor retained an economic interest in future

7  proceeds, including from infringement litigation; (3) the transferor retained a license to practice

8  the patents-in-suit; and (4) the transferor retained significant control over enforcement decisions

9  because the agreement conditioned enforcement on consideration of both the transferor and the

10 plaintiff's "best interests." On appeal, the plaintiff argued, as Lone Star does here, that it had

11 the sole right to exclude others, had the sole right to sue, could assign or sell the patents-in-suit,

12 and could enforce the patents-in-suit free from the transferor's control. *Id.* at 619.

13          The Federal Circuit affirmed based on two aspects of the agreement. *First*, a "licensor's

14 retention of a limited right to develop and market the patented invention indicates that the

15 licensee failed to acquire all substantial rights," and the agreement allowed the transferor to

16 keep "'a world-wide, royalty-free, non-exclusive, non-sublicensable, non-transferable right and

17 license to practice the methods and to make, have made, use, distribute, lease, sell, offer for

18 sale, import, export, develop and otherwise dispose of and exploit any' products covered by the

19 patents-in-suit." Indeed, the agreement did not even grant the plaintiff practicing rights but

20 limited it to the "prosecution, maintenance, licensing, litigation, enforcement and exploitation"

21 of the patents-in-suit and explained that it would "engage in no other business or activity." The

22 Federal Circuit specifically rejected the argument that the plaintiff's right to "exploitation"

23 implied the right to make, use, and sell the patented invention. The Federal Circuit noted that

24 the agreement explicitly provided such rights to the transferor, so if the parties to the agreement

25 had intended to also provide such rights to the plaintiff, "they knew how to say so." Thus, with

26 respect to the "vitally important" exclusive right to make, use, and sell products or services

27 under the patent, the plaintiff "unquestionably failed to acquire all substantial rights in the

28 patents-in-suit." *Id.* at 619–20 (citation and internal modifications omitted).

*Second*, the transferor in *Diamond Coating* "retained significant control over [the plaintiff's] enforcement and litigation activities" because the agreement (1) conditioned such activities on consideration of the transferor's "best interests," (2) prohibited the plaintiff from licensing the patents-in-suit jointly with patents owned by other parties absent the transferor's written consent, and (3) included a list of companies that the plaintiff reserved the right to *not* assert the patents-in-suit against, and another list of companies that the transferor reasonably believed represented "licensing opportunities," thereby indicating that the plaintiff did not enjoy "unfettered discretion on enforcement." *Id.* at 620–21. Although *Diamond Coating* styled its analysis of these terms as bearing on "the nature and scope of the patentee's retained right to sue accused infringers and license the patent," *see id.* at 619, it seemed to also implicate other *Mann* factors, including the scope of the plaintiff's right to sublicense, the transferor's ability to supervise and control the plaintiff's activities, and limits on the plaintiff's right to assign its interests in the patents-in-suit. *See Mann*, 604 F.3d at 1360–61.

After analyzing the two foregoing issues, *Diamond Coating* concluded the agreement therein "did not convey all of the substantial rights in the patents-in-suit" to the plaintiff. The same result obtains here given our similar facts.

*First*, as stated, the patent transfer agreement did not grant Lone Star any practicing rights. Lone Star insists it had such rights by implication through Section 2.1, which provided it with "all right, title and interest in, to and under the Assigned Patents . . . including any and all inventions and discoveries claimed therein, any and all legal rights entitled by the original owner of the Assigned Patents and all rights of AMD to sue for past, present and future infringement of any and all of the Assigned Patents." *Lone Star's reliance on this provision is misplaced given that other provisions in the same agreement plainly curtailed Lone Star's rights thereunder notwithstanding the superficially-broad language of Section 2.1.*[2]

---

[2] Defendants also point out that the purported "assignment" in *Diamond Coating* also contained superficially-broad language granting the plaintiff "all right, title, and interest" in the patents-in-suit, but that language did not suffice to establish standing by assignment. This argument enjoys some force but is not relied upon in this order because the *Diamond Coating* decision did not specifically examine the language cited by defendants in its analysis.

7

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Lone Star also argues that, as a practical matter, it "obviously" acquired the unfettered

2    right to practice the patents-in-suit because only it can enforce them.  This argument is just

3    another attempt to conjure up practicing rights by implication and remains unpersuasive for the

4    reasons already stated.  The suggestion that, as a practical matter, no one can stop Lone Star

5    from practicing the patents-in-suit also rings particularly hollow given that Lone Star is a non-

6    practicing entity.  Moreover, the plaintiff in *Diamond Coating* similarly attempted to rely on its

7    "sole right to sue" to no effect.  The same argument fails to distinguish *Diamond Coating* here.

8    Even assuming for the sake of argument that Lone Star indeed has some right to practice

9    the patents-in-suit, any such right is certainly not exclusive.  As stated, Section 4.1 preserved

10   AMD's practicing rights and Section 2.3 preserved the "Existing Encumbrances," including

11   practicing rights, of other entities.  Lone Star cites *Azure Networks, LLC v. CSR PLC*, 771 F.3d

12   1336 (Fed. Cir. 2014), *vacated on other grounds*, 135 S. Ct. 1846 (2015), and *Luminara*, 814

13   F.3d 1343, for the proposition that AMD's retention of a non-exclusive license to practice the

14   patented inventions does not prevent assignment of the patents-in-suit.  Both decisions are

15   readily distinguishable.

16   In *Azure Networks*, the principle relied upon in *Diamond Coating* — that a "licensor's

17   retention of a limited right to develop and market the patented invention indicates that the

18   licensee failed to acquire all substantial rights" — enjoyed "little force" because the licensor did

19   not make or sell any products, nor would it make or sell any products in the future.  *See* 771

20   F.3d at 1344.  Here, in contrast, AMD actually practices the patents-in-suit and has expressly

21   preserved the "Existing Encumbrances" of other entities ostensibly practicing the patents-in-

22   suit.  Under our circumstances, *Diamond Coating* remains the better authority.

23   *Luminara* considered a limited set of rights retained by the licensor — the right to

24   practice the patents at issue, the title to those patents, the responsibility to pay maintenance fees,

25   a financial interest in litigation and licensing, and a right to notice of litigation and licensing

26   activities — and concluded they were not substantial enough to preclude assignment.  *See* 814

27   F.3d at 1351.  *Luminara* did not have occasion to weigh other factors present in our case,

28

8

Add317

United States District Court
For the Northern District of California

1    including the patent transfer agreement's preservation of "Existing Encumbrances" and other

2    constraints on Lone Star's litigation and licensing activities, discussed further below.

3        *Second*, like the transferor in *Diamond Coating*, AMD retained significant control over

4    Lone Star's activities.  In addition to the "Existing Encumbrances" preserved by Section 2.3 of

5    the patent transfer agreement, Section 2.6 conditioned any transfer of the "Assigned Patents" on

6    bundling of said patents, the successor-in-interest's agreement to be bound by the patent

7    transfer agreement, and AMD's written consent.  Section 2.6 did specify that AMD could not

8    "unreasonably" withhold its consent but did not further explain what "unreasonable" meant.

9    Sections 6.2(f) and 3.3(c) also limited all of Lone Star's enforcement capabilities to specific

10   targets listed in Exhibit E and conditioned any expansion of that list on AMD's agreement, with

11   AMD could grant or deny in its "sole discretion."  These terms are not identical to but, taken as

12   a whole, are at least as restrictive as those examined in *Diamond Coating*.

13       Lone Star cites three decisions for the proposition that Section 2.6 does not defeat the

14   purported "assignment" here.  None of those decisions, however, examined restrictions like

15   those set by Section 2.6, let alone a whole body of terms comparable to the patent transfer

16   agreement here.  *See Rude v. Westcott*, 130 U.S. 152, 163 (1889) ("absolute transfer of title"

17   reserved "no control over the patents or their use or disposal, or any power to interfere with the

18   management of the business growing out of their ownership"); *Speedplay, Inc. v. Bebop, Inc.*,

19   211 F.3d 1245, 1251–52 (Fed. Cir. 2000) (consent requirement to transfer did not significantly

20   curtail rights of licensee free from existing encumbrances, prior practice rights, and restrictions

21   on enforcement); *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870,

22   874–75 (Fed. Cir. 1991) (grant of exclusive practice and enforcement rights constituted

23   assignment despite retention of a veto right on sublicensing, the right to obtain foreign patents

24   on the invention, termination provisions "consistent with an assignment," and a right to receive

25   infringement damages).  Again, *Diamond Coating* remains the better authority on our facts.[3]

26

27

28       [3] The issues examined in *Diamond Coating* suffice to decide the standing issue here, but it merits mention that AMD's right to 35–50 percent of Lone Star's "monetization efforts" — a factor not discussed in *Diamond Coating* — further belies the notion that Lone Star received "all substantial rights" in the patents.  *See Mann*, 604 F.3d at 1360–61.

9

**Add318**

**United States District Court**
For the Northern District of California

Lone Star further contends Section 6.2(f) is immaterial here because, even if Lone Star lacks standing to sue on the patents-in-suit *in general*, it still has standing to sue the *specific* defendants herein since they are all listed as targets on Exhibit E to the patent transfer agreement. This argument ignores that, *even as to the specific targets listed on Exhibit E*, Lone Star's enforcement and licensing capabilities remain subject to the "Existing Encumbrances" and restrictions on alienation set forth in Sections 2.3 and 2.6, respectively. Even assuming for the sake of argument that, as Lone Star urges, standing should be determined on a defendant-by-defendant basis, that general proposition would not suffice to create standing for Lone Star here.

In support of its position, Lone Star also cites *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1266–67 (Fed. Cir. 2010), for the proposition that, "[d]epending on the scope of its exclusionary rights, an exclusive licensee may have standing to sue some parties and not others. . . . [I]f an exclusive licensee has the right to exclude others from practicing a patent, and a party accused of infringement does not possess, and is incapable of obtaining, a license of those rights from any other party, the exclusive licensee's exclusionary right is violated." But *WiAV* examined the standing of *exclusive licensees* to sue based on their *exclusionary rights*, not the standing of *assignees* to sue based on receipt of *all substantial rights* in the patents-in-suit. The question here is not merely whether or not Lone Star received *exclusionary rights* but whether or not Lone Star received *all substantial rights* in the patents-in-suit. To repeat, Lone Star's complaints alleged only that it is an "assignee" and "sole owner" of the patents-in-suit. It cannot simply retreat to the position of an "exclusive licensee" to evade arguments that it did not actually receive "all substantial rights" in the patents-in-suit.

In a similar vein, Lone Star requests in the alternative that, if it is not an "assignee" and "sole owner" of the patents-in-suit, it be granted leave to join AMD as a party. Defendants counter-propose that these actions be dismissed without prejudice so that Lone Star can re-file if it can allege sufficient facts to state a claim as an exclusive licensee and secure AMD as a co-plaintiff. Defendants point out that Lone Star's delay in producing the crucial patent transfer agreement already prejudiced defendants' ability to litigate effectively because, without AMD, defendants had to move to transfer these actions to our district from the Eastern District of

**Add319**

United States District Court
For the Northern District of California

Texas. Additionally, defendants have not been able to leverage their own patent portfolios to resolve this dispute because Lone Star, unlike AMD, is a non-practicing entity immune from the threat of counterclaims. Moreover, if AMD simply joins at this stage, Lone Star and AMD would enjoy earlier filing dates for their claims than defendants would for any counterclaims for purposes of recovering damages. *See* 35 U.S.C. § 286 ("Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action."). This would be a manifestly unfair outcome given that Lone Star itself prevented defendants from asserting counterclaims earlier by failing to timely produce the patent transfer agreement.

This order agrees with defendants that allowing Lone Star to simply add AMD in at this stage would reward Lone Star for its litigation gimmick and unfairly prejudice defendants. Accordingly, these actions are hereby dismissed. Lone Star will have the option to re-file its claims as an "exclusive licensee" with AMD as a co-plaintiff, though this order in no way decides the separate question of whether or not Lone Star could sustain such claims under the applicable law. To be clear, if Lone Star re-files, it will not be allowed to take advantage of the earlier filing dates in the instant actions for purposes of recovering damages.

## CONCLUSION

To the foregoing extent, defendants' motions to dismiss are **GRANTED**. The above-captioned actions are **DISMISSED**. The Clerk shall please **CLOSE THE FILES**.

**IT IS SO ORDERED.**

Dated: January 20, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11

**Add320**

EXHIBIT 24



Jason Wejnert
312-637-3394
jason.wejnert@spencepc.com

August 22, 2018

**VIA COURIER AND EMAIL**

Joel L. Poppen
Director of Litigation

Micron Technology, Inc.
P.O. Box 6
Boise, ID 83707-0006

Re:     **KATANA SILICON TECHNOLOGIES PATENT LICENSING**

Dear Mr. Poppen:

I write with respect to the Semiconductor Patent Licensing Program of our client, Katana Silicon Technologies LLC ("KST"). KST has a licensing service agreement with Longhorn IP LLC.

KST owns a portfolio of patents related to semiconductor designs and manufacturing technologies. KST's semiconductor patents have been asserted against major semiconductor companies in the world. Among the potential licensees are: Toshiba, TSMC, SK Hynix and NXP. We believe that products of MICRON TECHNOLOGY, INC. and its subsidiaries/affiliates ("Micron") infringe our client's patented semiconductor technologies and are made using infringing fabrication methods, and thus require a license. In particular, we believe that Micron sells and offers to sell in the United States, and imports into the United States, integrated circuit devices that infringe one or more of the KST patents, including integrated circuit devices incorporated into products such as mobile broadband data devices, modems, smartphones, tablets, smartwatches, cameras, laptops, and automotive applications as well as several other consumer electronics products. We also believe that Micron induces other companies, such as distributors, resellers and end-users, to perform one or more of these acts in the United States. Infringing Micron products that are imported into, and sold and offered for sale in the United States, include but are not limited to integrated circuit devices packaged in a Chip Size Package structure and a manufacturing method that produces the same.

Page 2 of 3
Joel Poppen
August 22, 2018

Specifically, the following *exemplary* Micron products and fabrication technologies infringe at least the KST patents identified below.

Claims 1, 12, 23 and 30 of U.S. Patent No. RE38,806:

- All integrated circuit devices processed and packaged as shown, for example, in Micron MT29F768G08EEHBBJ4 32L 3D and other devices with a semiconductor device including a stacked package structure and a chip size package structure, with first and second semiconductor chips mounted in a stacked configuration through adhesion layers and wire-bonded to an electrode section of the package, and all sealed within a resin.

Claims 1, 2 and 15 of U.S. Patent No. 6,352,879 B1:

- All integrated circuit devices processed and packaged as shown, for example, in Micron MT29F768G08EEHBBJ4 32L 3D and other devices with a semiconductor device including a stacked package structure and a chip size package structure, with first and second semiconductor chips mounted in a stacked configuration through adhesion layers and wire-bonded to an electrode section of the package, and all sealed within a resin.

Also, subject to receiving confirmation that the information will be treated as privileged settlement information under Fed.R.Evid. 408, we are willing to discuss these issues with Micron. We would be pleased to discuss with you the terms under which your company might obtain a license to the Semiconductor Patent Licensing Program and to answer any questions that you may have. We look forward to your prompt reply, so we can arrange a meeting with you or your representatives as soon as possible.

Thank you in advance for your attention to this matter.

Very truly yours,

SPENCE PC
JASON WEJNERT

Enclosures:
U.S. Patent Nos. RE38,806; 6,352,879 B1:

*Fed. Rule Evid. 408 Settlement Communication*

Page 3 of 3
Joel Poppen
August 22, 2018

cc: William Cory Spence, Khaled Fekih-Romdhane, Chris Dubuc

*Fed. Rule Evid. 408 Settlement Communication*

EXHIBIT 27



**SPENCE**PC

IP AND COMPLEX LITIGATION

Jason Wejnert
312-637-3394
jason.wejnert@spencepc.com

September 18, 2018

**VIA COURIER AND EMAIL**

Joel L. Poppen
Senior Vice President of Legal Affairs, General Counsel and Corporate Secretary

Micron Technology, Inc.
8000 S. Federal Way
MS 1-557
Boise, ID 83716

Re: **KATANA SILICON TECHNOLOGIES PATENT LICENSING**

Dear Mr. Poppen:

I follow up to write you again with respect to the Semiconductor Patent Licensing Program of our client, Katana Silicon Technologies LLC ("KST"). KST has a licensing service agreement with Longhorn IP LLC. Previously, KST sent you a notice letter on August 22, 2018 (enclosed).

KST owns a portfolio of patents related to semiconductor designs and manufacturing technologies. KST's semiconductor patents have been asserted against major semiconductor companies in the world. Among the potential licensees are: Toshiba, TSMC, SK Hynix and NXP. We believe that products of MICRON TECHNOLOGY, INC. and its subsidiaries/affiliates ("Micron") infringe our client's patented semiconductor technologies and are made using infringing fabrication methods, and thus require a license. In particular, we believe that Micron sells and offers to sell in the United States, and imports into the United States, integrated circuit devices that infringe one or more of the KST patents, including integrated circuit devices incorporated into products such as mobile broadband data devices, modems, smartphones, tablets, cameras, laptops, and automotive applications as well as several other consumer electronics products. We also believe that Micron induces other companies, such as distributors, resellers and end-users, to perform one or more of these acts in the United States. Infringing Micron products that are imported into, and sold and offered for sale in the United States, include but are not limited

Page 2 of 3
Joel Poppen
September 18, 2018

to integrated circuit devices packaged in a Chip Size Package structure and a manufacturing method that produces the same.

Specifically, the following *exemplary* Micron products and fabrication technologies infringe at least the KST patents identified below.

Claims 1 and 12 of U.S. Patent No. RE38,806:

- All integrated circuit devices processed and packaged as shown, for example, in Micron's MT53D512M64D4NZ-053 WT_D 1x nm LPDDR4 SDRAM Memory, MT66R7072A10AB5ZZW 45 nm Phase Change Memory ACMOS and other devices with a semiconductor device including a stacked package structure and a chip size package structure, with first and second semiconductor chips mounted in a stacked configuration through adhesion layers and wire-bonded to an electrode section of the package, and all sealed within a resin.

Claims 1, 2, 3, 4 and 5 of U.S. Patent No. 6,731,013 B2:

- All integrated circuit devices processed and packaged as shown, for example, in Micron MT29F768G08EEHBBJ4 32L 3D NAND Flash Memory and other devices with a semiconductor device including a stacked package structure and a chip size package structure, with first and second semiconductor chips mounted in a stacked configuration through adhesion layers and wire-bonded to an electrode section of the package, and all sealed within a resin.

Also, subject to receiving confirmation that the information will be treated as privileged settlement information under Fed.R.Evid. 408, we are willing to discuss these issues with Micron. We would be pleased to discuss with you the terms under which your company might obtain a license to the Semiconductor Patent Licensing Program and to answer any questions that you may have. We look forward to your prompt reply, so we can arrange a meeting with you or your representatives as soon as possible.

Thank you in advance for your attention to this matter.

Very truly yours,

SPENCE PC
JASON WEJNERT

*Fed. Rule Evid. 408 Settlement Communication*

Page 3 of 3
Joel Poppen
September 18, 2018

Enclosures:
U.S. Patent Nos. RE38,806; 6,731,013 B2; Notice Letter to Micron Technology dated August 22, 2018:

cc: William Cory Spence, Khaled Fekih-Romdhane, Chris Dubuc

*Fed. Rule Evid. 408 Settlement Communication*

# EXHIBIT 29

| From: | Jason Wejnert |
|---|---|
| To: | David Ashmore (dashmore) [ CONT-Type2-APS CONSULTING LLC ]; Dave Westergard (dwestergard) |
| Cc: | Khaled Fekih-Romdhane; William Cory Spence; Chris Dubuc |
| Subject: | FW: [EXT] Katana Silicon Technologies Semiconductor Patent Licensing Program- Sept. 18, 2018 |
| Date: | Friday, October 19, 2018 2:53:51 PM |
| Attachments: | Katana - Micron Confidentiality Agreement - 09.28.2018.pdf |

David,

I'm following up on my previous email below to see what your availability is in the last week of October or early November to discuss the Longhorn portfolios. I look forward to hearing from you.

Regards,

Jason Wejnert | SpencePC
Partner
515 N. State, Suite 1801, Chicago, IL 60654
Phone: 312-637-3394 Fax: 312-635-2299
Email: jason.wejnert@spencepc.com

*PLEASE NOTE OUR CHANGE IN MAILING ADDRESS, EFFECTIVE APRIL 2, 2018*

The information contained in this communication is confidential, may be attorney-client privileged, and is intended only for the use of the addressee. If you believe that you may have received this message in error, please delete the message and notify SpencePC at info@spencepc.com.

**From:** Jason Wejnert
**Sent:** Thursday, October 4, 2018 7:49 AM
**To:** 'David Ashmore (dashmore)' <dashmore@micron.com>; Dave Westergard (dwestergard) <dwestergard@micron.com>
**Cc:** Khaled Fekih-Romdhane <khaled@longhornip.com>; Chris Dubuc <chris@longhornip.com>; William Cory Spence <william.spence@spencepc.com>
**Subject:** RE: [EXT] Katana Silicon Technologies Semiconductor Patent Licensing Program- Sept. 18, 2018

David,

Thanks for reaching out and including Dave Westergard on the email chain. Dave W., nice to meet you electronically.

Do you think we can have a meeting the back half of October or early November to discuss the Longhorn portfolios? I sent you an NDA previously, which if you sign, allows us to send you claim charts to discuss. If you have questions or issues about the NDA (attached again), please feel free to contact me.

Regards,

Jason Wejnert | SpencePC
Partner

515 N. State, Suite 1801, Chicago, IL 60654
Phone: 312-637-3394 Fax: 312-635-2299
Email: jason.wejnert@spencepc.com

*PLEASE NOTE OUR CHANGE IN MAILING ADDRESS, EFFECTIVE APRIL 2, 2018*

The information contained in this communication is confidential, may be attorney-client privileged, and is intended only for the use of the addressee. If you believe that you may have received this message in error, please delete the message and notify SpencePC at info@spencepc.com.

---

**From:** David Ashmore (dashmore) <dashmore@micron.com>
**Sent:** Monday, October 1, 2018 12:59 PM
**To:** Jason Wejnert <Jason.Wejnert@spencepc.com>; Dave Westergard (dwestergard) <dwestergard@micron.com>
**Cc:** Khaled Fekih-Romdhane <khaled@longhornip.com>; Chris Dubuc <chris@longhornip.com>; William Cory Spence <william.spence@spencepc.com>
**Subject:** RE: [EXT] Katana Silicon Technologies Semiconductor Patent Licensing Program- Sept. 18, 2018

Jason,

I'm adding my colleague Dave Westergard, who is handling other Longhorn matters for Micron.

Regards,
David

---

**From:** Jason Wejnert [mailto:Jason.Wejnert@spencepc.com]
**Sent:** Friday, September 28, 2018 8:38 AM
**To:** Joel Poppen (jlpoppen) <jlpoppen@micron.com>
**Cc:** Khaled Fekih-Romdhane <khaled@longhornip.com>; Chris Dubuc <chris@longhornip.com>; William Cory Spence <william.spence@spencepc.com>; David Ashmore (dashmore) <dashmore@micron.com>
**Subject:** RE: [EXT] Katana Silicon Technologies Semiconductor Patent Licensing Program- Sept. 18, 2018

Joel, David,
Please find attached  Confidentiality Agreement between Micron Technology and KST, to allow exchange of information under FRE 408. Please let us know if this is agreeable, and we can send you example claim charts and plan to meet to discuss.


Regards,

Jason Wejnert| SpencePC
Partner
515 N. State, Suite 1801, Chicago, IL 60654

Phone:  312-637-3394 Fax:  312-635-2299
Email:  jason.wejnert@spencepc.com

*PLEASE NOTE OUR CHANGE IN MAILING ADDRESS, EFFECTIVE APRIL 2, 2018*

The information contained in this communication is confidential, may be attorney-client privileged, and is intended only for the use of the addressee. If you believe that you may have received this message in error, please delete the message and notify SpencePC at info@spencepc.com.

---

**From:** Joel Poppen (jlpoppen) <jlpoppen@micron.com>
**Sent:** Tuesday, September 18, 2018 2:19 PM
**To:** Jason Wejnert <Jason.Wejnert@spencepc.com>
**Cc:** Khaled Fekih-Romdhane <khaled@longhornip.com>; Chris Dubuc <chris@longhornip.com>; William Cory Spence <william.spence@spencepc.com>; David Ashmore (dashmore) <dashmore@micron.com>
**Subject:** RE: [EXT] Katana Silicon Technologies Semiconductor Patent Licensing Program- Sept. 18, 2018

Mr. Wejnert,

I've copied David Ashmore, Senior Director, Litigation and IP Transactions. He will follow up with you as appropriate. Thanks.  Joel

---

**From:** Jason Wejnert [mailto:Jason.Wejnert@spencepc.com]
**Sent:** Tuesday, September 18, 2018 8:33 AM
**To:** Joel Poppen (jlpoppen) <jlpoppen@micron.com>
**Cc:** Khaled Fekih-Romdhane <khaled@longhornip.com>; Chris Dubuc <chris@longhornip.com>; William Cory Spence <william.spence@spencepc.com>
**Subject:** [EXT] Katana Silicon Technologies Semiconductor Patent Licensing Program- Sept. 18, 2018

Mr. Poppen,
Please see the attached correspondence regarding Katana's Semiconductor Patent Licensing Program.

Regards,

Jason Wejnert│ SpencePC
Partner
515 N. State, Suite 1801, Chicago, IL 60654
Phone:  312-637-3394 Fax:  312-635-2299
Email:  jason.wejnert@spencepc.com

*PLEASE NOTE OUR CHANGE IN MAILING ADDRESS, EFFECTIVE APRIL 2, 2018*

The information contained in this communication is confidential, may be attorney-client privileged, and is intended only for the use of the addressee. If you believe that you may have received this message in error, please delete the message and notify SpencePC at info@spencepc.com.

# EXHIBIT 30

**From:** Dave Westergard (dwestergard) <dwestergard@micron.com>
**Sent:** Monday, February 4, 2019 1:49 PM
**To:** William Cory Spence
**Cc:** Jan Bissey (jbissey); Jason Wejnert; Chris Dubuc; Khaled Fekih-Romdhane
**Subject:** RE: [EXT] Re: Katana Silicon Technologies Semiconductor Patent Licensing Program- Sept. 18, 2018

Hi, Cory. In truth, I was losing hope of ever hearing from you again, given the pounding your patents (at least in Lone Star) have been taking of late. 🙂 But glad to hear you're rid of crutches. You should take advantage of your newly rekindled mobility to come see some of Idaho's backcountry. It has no peer.

Moving on to the business at hand, thanks for your email of January 15, 2019, and for your offer of an "early bird special." After serious internal inquiry and assessment, we can't see the business justification for entering into a license agreement with Katana/Longhorn IP at this time. Given the PTAB invalidity rulings for each of the Lone Star patents-in-suit, we see the Lone Star "component" at zero. While we expect Lone Star to appeal, we see little likelihood the Federal Circuit will reverse given the strong analytical underpinnings of PTAB's rulings on each patent.

On the Katana patents, we come to the same conclusion; specifically that the patents presented in our November meeting (US 6,731,013, US RE38,806, and US 6,352,879) and the patents identified in Khaled's follow-up email (US 7,087,524 and US 7,910,437) are either invalid or not infringed.

In our November meeting, you asserted (seconded by Khaled), that Katana is not interested in asserting "weak" patents against anyone. You invited Micron to provide evidence of weakness. Below is a brief glimpse of the patents, the prior art, and non-infringement information. In light of all of this, we don't see benefit in continuing license negotiations. Let me know if you disagree.
Cheers.
dave.


**US 6,731,013**
1. Priority date of June 28, 2000.
2. Patent claims a semiconductor device wirebonded to a substrate that has a "support pattern" located underneath the wirebonding location on the substrate. The claims require that the support pattern "corresponds" to the wire bonding location.
3. The claim chart that Katana presented shows a metal fill pattern located on the substrate of a FBGA packaged device that does not "correspond" to the location of the wirebond location as interpreted in light of the specification.
4. The exemplary Micron product that Katana presented does not have a "support pattern" that corresponds to the wirebond location on the substrate.
5. This technology (as construed by Katana's claim construction/claim charts) was known and used prior to the priority date of the patent. An example is an Intel product with an SRAM and NAND device part number 28F1602C3. See TechInsights, Report #PKG-1342 (analysis conducted in 1999). Other companies used similar technology, notably Texas Instruments MicroStar[tm] BGA and Memory Flex[tm], GE Chip-on Flex[tm] and Amkor Flex BGA[tm]. Each of the foregoing used stacked wirebonded packaging technology prior to the priority date of the patent.
6. Numerous US patents and non-patent literature describe similar use of "support patterns" located beneath the wire bond location on the substrate. See, for example, U.S. Patent Nos. 5,519,936; 5,639,695; 6,172,419; and 5,541,450.

1

**Add696**

**US RE38,806 and US 6,352,879**

1. These patents are related back to US 6,100,594 and have a priority date of December 30, 1998.
2. These patents claim a stacked multi-chip package primarily using wirebonds to connect to the mounting substrate.
   a. Notable difference in the claims
      i. US 6,100,594: all independent claims are method claims. Various face up and face down embodiments are claimed. Claims 1 and 11 requires the stacked semiconductor chips come from different wafers.
      ii. US RE38,806: 6 device claims + 2 method claims. The device claims vary the methods and orientation of the die used to form the stack. Method claims are similar to the '594 patent.
3. This technology was known and used prior to the inventive date of the patent. An example is an Intel package with a stacked SRAM and NAND device part number 28F1602C3, ca 1998. A report is available from TechInsights, Report #PKG-1342, analysis conducted in 1999.
4. The Multi-Chip Module ("MCM") consortium was working on stacking technology prior to the priority date of these patents. The MCM consortium produced a significant amount of non-patent literature dating back to 1980 regarding various methods of stacking multiple semiconductor chips into one package. Wirebond was the common method of attachment between the semiconductor devices and the substrate. Notably, a company called nChip published an article in 1994 describing "Laminated Memory" and used stacked Micron SRAM, MT2C2568, as a demonstration vehicle.
5. Several US patents disclose and claim the same subject matter as (and pre-date) the Katana patents, notably US 5,495,398; US 5,527,740; US 5,322,207; and US 5,608,262.

**US 7,087,524**

1. Priority date July 09, 2003.
2. This patent has one independent method claim regarding a damascene copper layer that is that has a "metal element doping layer" on the surface of the copper layer.
3. Micron products do not use a method of forming a "metal element doping layer" on top of our copper layers.

**US 7,910,437**

1. Priority date Nov 19, 2009.
2. This patent has one independent method claim regarding the formation of a recessed gate transistor using two trenches.
3. Micron processes do not use a method of forming a recessed gate transistor using two stacked trenches.

---

**From:** William Cory Spence [mailto:william.spence@spencepc.com]
**Sent:** Tuesday, January 15, 2019 9:35 AM
**To:** Dave Westergard (dwestergard) <dwestergard@micron.com>
**Cc:** Jan Bissey (jbissey) <jbissey@micron.com>; Jason Wejnert <Jason.Wejnert@spencepc.com>; Chris Dubuc <chris@longhornip.com>; Khaled Fekih-Romdhane <khaled@longhornip.com>
**Subject:** Re: [EXT] Re: Katana Silicon Technologies Semiconductor Patent Licensing Program- Sept. 18, 2018

Dave,

Happy New Year. I hope that 2019 is off to a great start for you. I am happy to report that I have finally been "relieved" of my crutches. It is a very welcome development to be walking again.

I am also writing to express my thanks to you for hosting our meeting in November. It was humbling to learn that Micron does not often host such meetings with potential licensors. We appreciate the apparent serious consideration given to the Katana patent porfolio.

2

Further, as Khaled mentioned, I left our meeting with an appreciation that Micron may be willing to negotiate a comprehensive agreement to address the entirety of the licensing opportunities that both law firms presented. I believe that the negotiated financial terms with Fitch are well defined at this point. Please let me know if you are available this week to further define potential financial terms for the Katana component of such a possible comprehensive agreement.

I am confident we can jointly succeed here. And I look forward to hearing from you soon so that we can explore the necessary and mutually rewarding terms that will provide ample justification for Micron to become one—of what we anticipate will soon be many—valuable licensees. Of course, early adopters, such as your self, are far for more likely to receive more favorable terms. The timing may be a big benefit to you.

In the meantime, please let me know if your travels will bring you to Chicago (or whether we might cross paths in Korea or Japan where I will once again be traveling from the 21st to the 27th).

Cory

William C. Spence | SpencePC
515 N. State, Suite 1801
Chicago, IL, 60654
P 312.404.8882 | C 312.882.4468
E william.spence@spencepc.com

The information contained in this communication is confidential, may be attorney-client privileged, and is intended only for the use of the addressee. If you believe that you may have received this message in error, please delete the message and notify SpencePC at info@spencepc.com.

On Tue, Nov 20, 2018 at 2:17 AM -0600, "Khaled Fekih-Romdhane" <khaled@longhornip.com> wrote:

Hi Dave,

Thanks a lot for meeting with us last week. It was a productive and fruitful conversation and we were delighted to meet you and Jan face-to-face. We look forward to your feedback this week as we discussed. In the meantime and since you mentioned that you turned the "machine" on and that there is eventually some interest in a global deal with LIP, it might be helpful to also look at some patents from the Carthage portfolio that are not licensed to Micron such as US7087524 and US7910437 among others. As I mentioned during the meeting, we are willing to be flexible and to work with you on a fair deal for both of us.

Please let me know if you have any questions or concerns. Cory and Nick are also happy to help if there are any outstanding questions on your end. I look forward to any feedback from David Kaplan as well.

Best Regards,
Khaled

On Wed, Nov 14, 2018 at 9:42 AM Dave Westergard (dwestergard) <dwestergard@micron.com> wrote:

Copy that. Check into Building 17C (most cabbies know location on north side of campus with small, blue tent/looking things over the entryway). Security will advise us, and someone will come get you. We don't have access to more than one conference room so if you don't intend for your entire party to be in the room at the same time, some will need to wait downstairs.

On Nov 14, 2018, at 8:37 AM, Khaled Fekih-Romdhane <khaled@longhornip.com> wrote:

    Hi Dave,

    Due to some issues, we might be few minutes late. Please bare with us.

    Best,
    Khaled

    On Nov 1, 2018, at 7:07 PM, Dave Westergard (dwestergard) <dwestergard@micron.com> wrote:

        Micron Technology, Inc.

        8000 S. Federal Way

        Boise, ID  83716

        Bldg 17C

        <mime-attachment.ics>

--
Khaled Fekih-Romdhane
Founder and Managing Member
Longhorn IP LLC
www.longhornip.com
https://www.linkedin.com/in/khaledfekih
Mobile | 469.268.2567

**Add699**

Case 23-2073, Document 115, Page 126 Filed 07/14/2023 Page 2 of 2

EXHIBIT 31

**From:** Khaled Fekih-Romdhane [mailto:khaled@longhornip.com]
**Sent:** Tuesday, November 20, 2018 12:17 AM
**To:** Dave Westergard (dwestergard) <dwestergard@micron.com>
**Cc:** Jan Bissey (jbissey) <jbissey@micron.com>; Jason Wejnert <Jason.Wejnert@spencepc.com>; William Cory Spence <william.spence@spencepc.com>; Chris Dubuc <chris@longhornip.com>
**Subject:** Re: [EXT] Re: Katana Silicon Technologies Semiconductor Patent Licensing Program- Sept. 18, 2018

Hi Dave,

Thanks a lot for meeting with us last week. It was a productive and fruitful conversation and we were delighted to meet you and Jan face-to-face. We look forward to your feedback this week as we discussed. In the meantime since you mentioned that you turned the "machine" on and that there is eventually some interest in a global deal with LIP, it might be helpful to also look at some patents from the Carthage portfolio that are not licensed to Micron such as US7087524 and US7910437 among others. As I mentioned during the meeting, we are willing to be flexible and to work with you on a fair deal for both of us.

Please let me know if you have any questions or concerns. Cory and Nick are also happy to help if there are any outstanding questions on your end. I look forward to any feedback from David Kaplan as well.

Best Regards,
Khaled


On Wed, Nov 14, 2018 at 9:42 AM Dave Westergard (dwestergard) <dwestergard@micron.com> wrote:

Copy that. Check into Building 17C (most cabbies know location on north side of campus with small, blue tent/looking things over the entryway). Security will advise us, and someone will come get you. We don't have access to more than one conference room so if you don't intend for your entire party to be in the room at the same time, some will need to wait downstairs.

On Nov 14, 2018, at 8:37 AM, Khaled Fekih-Romdhane <khaled@longhornip.com> wrote:

Hi Dave,

Due to some issues, we might be few minutes late. Please bare with us.

Best,
Khaled

On Nov 1, 2018, at 7:07 PM, Dave Westergard (dwestergard) <dwestergard@micron.com> wrote:

Micron Technology, Inc.

8000 S. Federal Way

Boise, ID 83716


Bldg 17C

<mime-attachment.ics>

--
Khaled Fekih-Romdhane
Founder and Managing Member
Longhorn IP LLC
www.longhornip.com
https://www.linkedin.com/in/khaledfekih
Mobile | 469.268.2567

EXHIBIT 32

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

KATANA SILICON TECHNOLOGIES
LLC,

   Plaintiff,

v.

MICRON TECHNOLOGY, INC.;
MICRON SEMICONDUCTOR
PRODUCTS, INC.; and MICRON
TECHNOLOGY TEXAS,
LLC,

   Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Case No. 1:22-cv-00214-LY

**JURY TRIAL DEMANDED**

## KATANA'S RESPONSE IN NON-OPPOSITION
## TO MICRON'S MOTION TO TRANSFER

Plaintiff Katana Silicon Technologies LLC ("Katana") responds to the motion (Dkt. 14) of all three Defendants ("Micron") under 28 U.S.C. § 1404(a) to transfer to the District of Idaho.

In recent patent lawsuits involving unrelated plaintiffs, Micron has requested transfer **to** the Austin Division of the Western District of Texas, where it has a substantial presence. *E.g.*, Case No. 1:22-cv-00136-LY, Dkt. 43 (Micron stipulating "to the entry of an Order transferring the above-captioned action to the United States District Court for the Western District of Texas, Austin Division, for the convenience of the parties and witnesses and in the interest of justice"); Case No. 6:20-cv-00500-ADA, Dkt. 34 (Micron moving for intra-district transfer to the Austin Division). Yet in this case, where Plaintiff Katana is in Texas, Micron moves to transfer **out** of the Austin Division to the District of Idaho.

Even so, to conserve party and judicial resources, and based on Micron's representations in its motion and accompanying evidence (which Katana reserves the right to challenge as appropriate in other contexts), Katana has determined it is not opposed to the Micron motion's

1

requested relief in this particular case. Katana's non-opposition to Micron's requested relief should not be interpreted as any form of agreement to Micron's allegations, including those concerning Katana or affiliated companies.

Dated: July 6, 2022

Respectfully submitted,

*/s/ Scott W. Breedlove*

E. Leon Carter
lcarter@carterarnett.com
Texas Bar No. 03914300
Scott W. Breedlove
sbreedlove@carterarnett.com
Texas Bar No. 00790361
Bradley D. Liddle
bliddle@carterarnett.com
Texas Bar No. 24074599
Seth A. Lindner
slinder@carterarnett.com
Texas Bar No. 24078862
Theresa M. Dawson
tdawson@carterarnett.com
Texas Bar No. 24065128
Daniel L. Schmid
Texas State Bar No. 24093118
dschmid@carterarnett.com
Nathan Cox
ncox@carterarnett.com
Texas Bar No. 24105751
**CARTER ARNETT PLLC**
8150 N. Central Expy, 5th Floor
Dallas, Texas 75206
Telephone No. (214) 550-8188
Facsimile No. (214) 550-8185

**ATTORNEYS FOR PLAINTIFF
KATANA SILICON TECHNOLOGIES
LLC**

2

Keely E. Duke
ISB #6044; ked@dukevett.com
Mallam J. Prior
ISB#10938; mjp@dukeevett.com
DUKE EVETT, PLLC
1087 West River Street, Suite 300
P.O. Box 7387
Boise, ID 83707
Telephone (208) 342-3310
Facsimile (208) 342-3299

*Attorneys for Longhorn IP LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICRON TECHNOLOGY, INC.; MICRON SEMICONDUCTOR PRODUCTS, INC.; and MICRON TECHNOLOGY TEXAS, LLC,<br><br>       Plaintiffs,<br><br>v.<br><br>LONGHORN IP LLC<br><br>       Defendant. | CASE NO. 1:22-cv-00273-DCN<br><br>**LONGHORN IP LLC'S RESPONSE TO PLAINTIFFS' MOTION FOR BOND PURSUANT TO IDAHO CODE § 48-1707 [DKT. 3, 15]**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................. 1

II. THE FACTS ...................................................................................... 2

    A. Longhorn, Katana, and the Micron Plaintiffs ................................ 2

    B. Micron's conspicuous omission about the unrelated *Lone Star* litigation ..................................................................................... 4

    C. Attempts to negotiate with Micron about its infringement ............... 6

    D. Micron's misplaced reliance on one clause in *Katana's* Complaint .... 8

    E. Micron's tenuous non-infringement positions ................................ 9

III. ARGUMENT .................................................................................... 12

    A. Legal Standards ......................................................................... 12

        1. *Erie* Doctrine ...................................................................... 12

        2. Presumption of Good Faith .................................................. 13

    B. Micron's request for the posting of a bond should be denied with prejudice ................................................................................. 13

        1. Micron's Motion should be denied because its "alter-ego" theory is not supported by law or fact ..................................... 14

        2. The bond provision of the Idaho Statute is inapplicable in federal court .................................................................. 16

        3. Micron has failed to establish bad faith ................................ 17

        4. At least the bond provision of the Idaho Statute is preempted under federal patent law .................................................... 19

IV. CONCLUSION .................................................................................. 20

i

**Add751**

# TABLE OF AUTHORITIES

**Cases:**

*A.G. Design & Assocs., LLC v. Trainman Lantern Co.*,
No. C07-5158RBL, 2009 WL 279053 (W.D. Wash. Feb. 3, 2009) ..................................... 14

*Agrisource, Inc. v. Johnson*,
332 P.3d 815, 820 (2014) ..................................................................................................... 15

*Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*,
356 U.S. 525 (1958) .............................................................................................................. 13

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
157 F.3d 1340 (Fed. Cir. 1998) ....................................................................................... 13, 18

*Bldg. Innovation Indus., L.L.C. v. Onken*,
473 F. Supp. 2d 978 (D. Ariz. 2007) ..................................................................................... 2

*Clearplay, Inc. v. Nissim Corp.*,
555 F. Supp. 2d 1318 (S.D. Fla. 2008) ................................................................................. 19

*First Coast Energy, L.L.P. v. Mid-Continent Cas. Co.*,
286 F.R.D. 630 (M.D. Fla. 2012) ......................................................................................... 16

*FM Prod., Inc. v. Classic Gears & Machining, Inc.*,
No. 20-C-79, 2020 WL 4583655 (E.D. Wis. Aug. 10, 2020) .............................................. 14

*Gasperini v. Ctr. for Humanities, Inc.*,
518 U.S. 415 (1996) .............................................................................................................. 13

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
362 F.3d 1367 (Fed. Cir. 2004) ..................................................................................*passim*

*Golan v. Pingel Enter., Inc.*,
310 F.3d 1360 (Fed. Cir. 2002) ...................................................................................... 13, 19

*Guaranty Trust Co. v. York*,
326 U.S. 99 (1945) ................................................................................................................ 13

*Ice Castles, LLC v. LaBelle Lake Ice Palace, LLC*,
No. 4:18-CV-00571-DCN, 2021 WL 3085479 (D. Idaho July 21, 2021) ....................... 16, 18

**Add752**

*KDN Mgmt., Inc. v. WinCo Foods, LLC,*
    423 P.3d 422 (2018) ........................................................................................ 15

*Landmark Tech., LLC v. Azure Farms, Inc.,*
    No. 3:18-CV-1568-JR, 2020 WL 1430088 (D. Or. Mar. 24, 2020)................................ 19, 20

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.,*
    925 F.3d 1225 (Fed. Cir. 2019) .......................................................................... 5

*Mallinckrodt, Inc. v. Medipart, Inc.,*
    976 F.2d 700 (Fed. Cir. 1992) ............................................................................ 13

*Mikohn Gaming Corp. v. Acres Gaming, Inc.,*
    165 F.3d 891 (Fed. Cir. 1998) ............................................................................ 19

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.,*
    35 F.4th 1367 (Fed. Cir. 2022) .......................................................................... 10

*Peacock v Thomas,*
    516 U.S. 349 (1996) ....................................................................................... 14

*San Francisco Culinary, Bartenders, and Serv. Emps. Welfare Fund v. Lucin,*
    76 F.3d 295 (9th Cir. 1996) ................................................................................ 2

*Semmaterials, L.P. v. All. Asphalt, Inc.,*
    No. CV 05-320-S-LMB, 2008 WL 161797 (D. Idaho Jan. 15, 2008).................................. 14

*Snead v. Metro. Prop. & Cas. Ins. Co.,*
    237 F.3d 1080 (9th Cir. 2001) ............................................................. 12, 13, 16, 17

*Virtue v. Creamery Package Mfg. Co.,*
    227 U.S. 8 (1913) ......................................................................................... 13

*Viskase Companies, Inc. v. World PAC Int'l AG,*
    710 F. Supp. 2d 754 (N.D. Ill. 2010).................................................................... 19

*Voyles v. City of Nampa,*
    548 P.2d 1217 (1976) ..................................................................................... 20

*Wayne Enterprises, LLC v. McGhee,*
    No. 115CV00195EJLCWD, 2017 WL 1960662 (D. Idaho May 10, 2017) ........................ 15

*Zenith Elecs. Corp. v. Exzec, Inc.,*
    182 F.3d 1340 (Fed. Cir. 1999) .......................................................................... 15

**Add753**

**Statutes:**

35 U.S.C. § 281 ................................................................................. 17

35 U.S.C. § 285 ................................................................................... 2

35 U.S.C. § 287 ................................................................................. 15

Dist. Idaho Loc. Patent R. 3.1 ........................................................... 12

Idaho Code Ann. § 48-1701 ............................................................... 16

Idaho Code Ann. § 48-1703 ............................................................... 16

Idaho Code Ann. § 48-1703(a) ........................................................... 16

Idaho Code Ann. § 48-1703(b)(i) ....................................................... 18

Idaho Code Ann. § 48-1703(b)(iii) ..................................................... 18

Idaho Code Ann. § 48-1707 ..................................................... 16, 19, 20

**Others:**

Restatement (Second) of Conflicts § 307 (1971) ................................ 15

## I. INTRODUCTION

Longhorn IP LLC ("Longhorn") assisted its client Katana Silicon Technologies LLC ("Katana") to identify infringement of patents that Katana acquired from Sharp in 2018. Longhorn helped to prepare and present seven infringement charts (presentation slide decks) to Micron in November of that same year, illustrating and explaining Micron's infringement of three of these patents. The charts, which were given to and presented in-person to Micron, provided illustrations of Micron's infringement utilizing forensic electron-microscope images of the accused Micron product, which images Longhorn had obtained at a cost of tens of thousands of dollars from the leading company specializing in such imaging. When Micron offered its standard non-infringement and invalidity arguments, Longhorn and Katana rebutted Micron's arguments in, among other things, two additional slide decks delivered to Micron's Senior Director of Licensing & Litigation, Dave Westergard, in February 2019.

Micron and Mr. Westergard never negotiated in good faith to resolve the asserted infringement of Katana's patents. Instead, they repeatedly referred to interim victories Micron had won in unrelated patent litigation against Lone Star, a different client and affiliate of Longhorn, in totally unrelated patent litigation. Little has changed in Micron's strategy of misdirection. Almost four years after Longhorn and Katana first made the infringement assertion, Micron now claims that the assertion violated an Idaho statute (a statute with a *three*-year limitations period built in) proscribing bad-faith patent assertions. And its leading arguments to show "bad faith" rely on (a) a misleading account of the unrelated *Lone Star* litigation (featuring a district court ruling that was criticized and vacated on appeal), (b) omitting all nine of the detailed infringement slide decks noted above, (c) stressing a clerical error in one isolated phrase in *Katana's* Complaint, and (d) offering tenuous non-infringement positions.

Micron's claim against Longhorn in this case is a transparent attempt by a multi-billion-dollar company to intimidate. This Court observed earlier this week, "Presumably, Micron's claim is based on the idea that Longhorn would be scared off from this case (and the related Katana case) if Longhorn was required to post a significant bond. This may be so . . . ." Dkt. 32 at 4. Indeed,

**Add755**

## CERTIFICATE OF COMPLIANCE

1.    This motion complies with the type–volume limitation of Federal Rule of Appellate Procedure 27(d)(2). The brief contains 5,200 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2.    This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). The document was prepared in a proportionally spaced typeface using Microsoft® Word and 14-point Times New Roman type.

Dated: July 14, 2023           /s/Amanda Tessar

                                    Amanda Tessar

**CERTIFICATE OF AUTHORITY**

I certify that I have the authority of my co-counsel Amanda Tessar to file this document with her electronic signature.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated: July 14, 2023                            /s/Andrew T. Dufresne

                                               Andrew T. Dufresne