**Case No. 23-2007, Case No. 23-2095**

# United States Court of Appeals
# for the Federal Circuit

MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON TECHNOLOGY TEXAS, LLC, STATE OF IDAHO,
*Plaintiffs-Appellees*

v.

LONGHORN IP, LLC,
*Defendant-Appellant*

Case No. 23-2007: Appeal from the United States District Court for the District of Idaho in No. 1:22-cv-00273-DCN, Judge David C. Nye.

KATANA SILICON TECHNOLOGIES LLC,
*Plaintiff-Appellant*

v.

MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON TECHNOLOGY TEXAS, LLC, STATE OF IDAHO,
*Defendants-Appellees*

Case No. 23-2095: Appeal from the United States District Court for the District of Idaho in No. 1:22-cv-00282-DCN, Judge David C. Nye.

## CORRECTED RESPONSE BRIEF OF APPELLEE STATE OF IDAHO

RAÚL R. LABRADOR
*Attorney General*

Idaho Office of the Attorney General
P.O. Box 83720
Boise, ID 83720
(208) 334-2400
michael.zarian@ag.idaho.gov

ALAN HURST
*Solicitor General*

MICHAEL ZARIAN
*Deputy Solicitor General*

JAMES SIMERI
*Chief, Consumer Protection Division*

Counsel for Appellee State of Idaho

## EXEMPLARY PATENT CLAIMS

**U.S. Patent No. RE38,806**

1.  A semiconductor device including a stacked package structure and a chip size package structure, comprising:

an insulating substrate including a wiring layer having electrode sections;

a first semiconductor chip having a first adhesion layer adhered to its back surface where a circuit is not formed, said first semiconductor chip being mounted on said wiring layer through the first adhesion layer; and

a second semiconductor chip having a second adhesion layer adhered to its back surface where a circuit is not formed, said second semiconductor chip being mounted on a circuit-formed front surface of said first semiconductor chip through the second adhesion layer;

each of said first and second semiconductor chips being wire-bonded to the electrode section with a wire, said first and second semiconductor chips and the wire being sealed with a resin.

**U.S. Patent No. 6,352,879**

1.  A method of manufacturing a semiconductor device comprising:

(a) forming a first adhesion layer on a back surface of a first wafer on which no circuit is formed, a circuit being formed on a front surface of the first wafer;

(b) producing separate first semiconductor chips from said first wafer by dicing;

(c) mounting said first semiconductor chip on a wiring layer with its back surface facing said wiring layer;

(d) forming a second adhesion layer on a back surface of a second wafer on which no circuit is formed, a circuit being formed on a front surface of the first wafer;

(e) producing separate second semiconductor chips from said second wafer by dicing; and

(f) mounting said second semiconductor chip on said first semiconductor chip with its back surface facing said first semiconductor chip.

**U.S. Patent No. 6,731,013**

11. A semiconductor device comprising:

an insulating substrate;

a terminal section, provided on a first surface of the insulating substrate, for making connection by wire bonding;

a land section, provided on the insulating substrate, for an external connection terminal;

wiring patterns, respectively provided on the first surface and a second surface on the other side of the first surface, for making electrical connection between the terminal section and the land section;

a support pattern, provided on the second surface corresponding in position to the terminal section, for improving wire bonding connection, wherein the support pattern is not electrically connected to one of the terminal section and land section;

a semiconductor chip mounted on the insulating substrate;

a bonding wire section for making electrical connection between the terminal section and the semiconductor chip; a resin sealing section for sealing a circuit forming surface of the semiconductor chip and the bonding wire section; and

a conductive member, provided on the land section, for connecting the semiconductor chip to outside.

FORM 9. Certificate of Interest                                          Form 9 (p. i)
                                                                          March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 23-2007

**Short Case Caption** Micron Technology Inc. v. Longhorn IP, LLC

**Filing Party/Entity** State of Idaho

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/17/2024

Signature: /s/ Michael Zarian

Name: Michael Zarian

FORM 9. Certificate of Interest                                      Form 9 (p. ii)

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑None/Not Applicable |
| State of Idaho | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable          ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)   ☑ No   ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# Table of Contents

Introduction ........................................................................................................... 1

Statement of Related Cases ................................................................................. 1

Statement of the Issues ...................................................................................... 1

Statement of the Case ......................................................................................... 2

   I.    Idaho Enacts a Bad-Faith Patent Assertion Statute. ............................... 2

   II.   Idaho Intervenes to Defend the Constitutionality of Its Statute. ......... 5

Summary of the Argument ................................................................................... 5

Argument .............................................................................................................. 7

   I.    Out of Respect for State Sovereignty, State Law is Only Preempted Where
      There is an Actual Conflict Between Federal and State Law .............................. 7

   II.   Idaho's Statute Is Not Preempted .......................................................... 11

      A.   Idaho's Cause of Action for Bad-Faith Assertion of Patent Infringement
          Is Not Preempted ............................................................................. 12

      B.   The Bond Requirement in Idaho's Bad-Faith Patent Assertion Statute
          Is Not Preempted. ............................................................................ 22

Conclusion ......................................................................................................... 29

# TABLE OF AUTHORITIES

## CASES

*Abbas v. Foreign Pol'y Grp., LLC,*
    783 F.3d 1328 (D.C. Cir. 2015) ..........................................................28

*Adept, Inc. v. Murex Sec., Ltd.,*
    539 F.3d 1354 (Fed. Cir. 2008) .........................................................14

*Alden v. Maine,*
    527 U.S. 706 (1999) .............................................................................8

*All Plaintiffs v. All Defendants,*
    645 F.3d 329 (5th Cir. 2011) .............................................................25

*Arizona v. United States,*
    567 U.S. 387 (2012) .............................................................................8

*Aronson v. Quick Point Pencil Co.,*
    440 U.S. 257 (1979) ...................................................................... 10, 11

*A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.,*
    62 F.3d 1454 (D.C. Cir. 1995) ...........................................................24

*Bond v. United States,*
    564 U.S. 211 (2011) ..........................................................................7, 8

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
    489 U.S. 141 (1989) ..............................................................10, 12, 17

*Burlington N. R.R. Co. v. Woods,*
    480 U.S. 1 (1987) ...............................................................................25

*Cohen v. Beneficial Indus. Loan Corp.,*
    337 U.S. 541 (1949) ...........................................................................27

*Compco Corp. v. Day–Brite Lighting, Inc.,*
    376 U.S. 234 (1964) ...........................................................................10

*Consolidation Coal Co. v. United States,*
    528 F.3d 1344 (Fed. Cir. 2008) .........................................................14

*Conway v. United States,*
    997 F.3d 1198 (Fed. Cir. 2021) .........................................................12

*Dow Chem. Co. v. Exxon Corp.,*
    139 F.3d 1470 (Fed. Cir. 1998)............................................ 13, 14, 18, 22

*Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH,*
   524 F.3d 1254 (Fed. Cir. 2008) ............................................................26

*Energy Heating, LLC v. Heat On-The-Fly, LLC,*
   889 F.3d 1291 (Fed. Cir. 2018) ..................................................... 13, 17

*English v. Gen. Elec. Co.,*
   496 U.S. 72 (1990) ...............................................................................9

*Feinstein v. Mass. Gen. Hosp.,*
   643 F.2d 880 (1st Cir. 1981) ...............................................................27

*Felder v. Casey*
   487 U.S. 131 (1988) ............................................................................28

*First Coast Energy, LLP v. Mid-Continent Cas. Co.,*
   286 F.R.D. 630 (M.D. Fla. 2012) .........................................................27

*First Specialty Ins. Corp. v. Cont'l Cas. Co.,*
   2002 WL 31386521 (N.D. Ill. Oct. 21, 2002) ......................................27

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.,*
   362 F.3d 1367 (Fed. Cir. 2004) ......................6, 13, 14, 19, 21, 22, 26, 28

*Golan v. Pingel Enter., Inc.,*
   310 F.3d 1360 (Fed. Cir. 2002) .................................................15, 18, 23

*Goldstein v. California,*
   412 U.S. 546 (1973) ............................................................................11

*Gregory v. Ashcroft,*
   501 U.S. 452 (1991) ..............................................................................7

*Hunter Douglas, Inc. v. Harmonic Design, Inc.,*
   153 F.3d 1318 (Fed. Cir. 1998) ........................................................ 9, 20

*In re Cnty. of Orange,*
   784 F.3d 520 (9th Cir. 2015) .......................................................... 25, 26

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,*
   959 F.3d 1201 (9th Cir. 2020) .......................................................... 6, 10

*Indep. Park Apartments v. United States,*
   449 F.3d 1235 (Fed. Cir. 2016) ....................................................... 10, 12

*K-fee Sys. GmbH v. Nespresso USA, Inc.,*
   89 F.4th 915 (Fed. Cir. 2023) ..............................................................21

*Kansas v. Garcia,*
   589 U.S. 191 (2020) .....................................................................8, 10, 16, 21

*Kewanee Oil Co. v. Bicron Corp.*,
    416 U.S. 470 (1974) ...................................................................... 11, 14, 18

*Kilopass Tech., Inc. v. Sidense Corp.*,
    738 F.3d 1302 (Fed. Cir. 2013) ................................................................ 26

*Lakehead Pipe Line Co. v. Am. Home Assur. Co.*,
    981 F. Supp. 1205 (D. Minn. 1997) .......................................................... 27

*Landmark Tech., LLC v. Azure Farms, Inc.*,
    2020 WL 1430088 (D. Or. Mar. 24, 2020) ............................................... 16

*Lite-Netics, LLC v. Nu Tsai Cap. LLC*,
    60 F.4th 1335 (Fed. Cir. 2023) ................................................................. 21

*Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*,
    24 F.3d 1368 (Fed. Cir. 1994) .................................................................. 13

*Maternally Yours v. Your Maternity Shop*,
    234 F.2d 538 (2d Cir. 1956) ..................................................................... 24

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996) .................................................................................... 8

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*,
    175 F.3d 1356 (Fed. Cir. 1999) .................................................................. 9

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
    584 U.S. 453 (2018) .................................................................................... 9

*NAPCO, Inc. v. Landmark Tech. A, LLC*,
    555 F. Supp. 3d 189 (M.D.N.C. 2021) ..................................................... 15

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) .................................................................................. 17

*Oneok, Inc. v. Learjet, Inc.*,
    575 U.S. 373 (2015) ................................................................................ 5, 9

*Puritan Med. Prod. Co. LLC v. Copan Italia S.p.A.*,
    188 A.3d 853 (Me. 2018) ......................................................................... 16

*Royalty Network, Inc. v. Harris*,
    756 F.3d 1351 (11th Cir. 2014) ........................................................... 25, 27

*Sears, Roebuck & Co. v. Stiffel Co.*,
    376 U.S. 225 (1964) .................................................................................. 11

*Shoflo, LLC v. TSE Servs., LLC*,
    2017 WL 10080141 (M.D. Fla. July 12, 2017) ....................................... 16

*Starr Int'l Co., Inc. v. United States*,
 856 F.3d 953 (Fed. Cir. 2017) ........................................................................... 23

*Summer Infant (USA), Inc. v. TOMY Int'l, Inc.*,
 2019 WL 5540224 (D.R.I. Oct. 25, 2019) ........................................................ 16

*Tafflin v. Levitt*,
 493 U.S. 455 (1990) ............................................................................................ 8

*Trierweiler v. Croxton & Trench Holding Corp.*,
 90 F.3d 1523 (10th Cir. 1996) .......................................................................... 26

*Triple7Vaping.com, LLC v. Shipping & Transit LLC*,
 2017 WL 5239874 (S.D. Fla. Feb. 6, 2017) ...................................................... 16

*United States v. Salerno*,
 481 U.S. 739 (1987) .......................................................................................... 20

*Va. Uranium, Inc. v. Warren*,
 139 S. Ct. 1894 (2019) .................................................................................. 8, 19

*Vas-Cath Inc. v. Mahurkar*,
 935 F.2d 1555 (Fed. Cir. 1991) ........................................................................ 17

*Walker v. Armco Steel Corp.*,
 446 U.S. 740 (1980) .......................................................................................... 25

*Wash. State Grange v. Wash. State Republican Party*,
 552 U.S. 442 (2008) .......................................................................................... 15

*Washington v. Landmark Tech. A, LLC*,
 637 F. Supp. 3d 1154 (W.D. Wash. 2022) ........................................................ 16

*Wyeth v. Levine*,
 555 U.S. 555 (2009) ............................................................................... 9, 17, 22

*Zenith Elecs. Corp. v. Exzec, Inc.*,
 182 F.3d 1340 (Fed. Cir. 1999) ............................................................. 13, 14, 22

## CONSTITUTIONAL

U.S. CONST. art. VI, cl. 2 ...................................................................................... 8

## STATUTES

28 U.S.C. § 2403 ............................................................................................. 5, 11

35 U.S.C. § 281 .................................................................................................... 12

35 U.S.C. § 285 .................................................................................................... 17

Idaho Code § 48-1701 ........................................................................... 3, 4, 6, 15, 21

Idaho Code § 48-1702 ........................................................................... 4

Idaho Code § 48-1703 ........................................... 4, 6, 11, 12, 14, 15, 19, 20

Idaho Code § 48-1704 ........................................................................... 4

Idaho Code § 48-1705 ........................................................................... 4

Idaho Code § 48-1706 ........................................................................... 4, 11, 14

Idaho Code § 48-1707 ........................................................................... 4, 6, 11, 22, 23

Idaho Code § 48-1708 ........................................................................... 4

Ga. Code § 10-1-772 ........................................................................... 23

Ind. Code § 24-11-4-1 ........................................................................... 23

Me. Stat. tit. 14 § 8701 ........................................................................... 23

Miss. Code § 75-24-355 ........................................................................... 23

Mont. Code § 30-13-153 ........................................................................... 23

N.C. Gen. Stat. § 75-141 ........................................................................... 24, 27

N.C. Gen. Stat. § 75-144 ........................................................................... 23

N.D. Cent. Code. § 51-36-05 ........................................................................... 23

N.H. Rev. Stat. § 359-M:3 ........................................................................... 23

Okla. Stat. tit. 23, § 113 ........................................................................... 23

R.I. Gen. Laws Ann. § 6-41.1-5 ........................................................................... 23

S.D. Codified Laws § 37-36-5 ........................................................................... 23

Tenn. Code § 29-10-103 ........................................................................... 23

Utah Code Ann. § 78B-6-1906 ........................................................................... 23

Vt. Stat. tit. 9, § 4197 ........................................................................... 4

Vt. Stat. tit. 9, § 4198 ........................................................................... 23

## RULES

Fed. R. Civ. P. 5.1 ........................................................................... 5

## OTHER AUTHORITIES

Amy Lombardo & Lt. Gov. Brad Little, *'Patent Troll' bill will protect Idaho businesses,*
    IDAHO BUSINESS REVIEW, Mar. 21, 2014, https://tinyurl.com/3s2k844h ..............3, 4

*Biden-Harris Administration Announces Preliminary Terms with Micron to Onshore Leading-Edge Memory Chip Production in U.S. for First Time in Decades,* U.S. DEP'T. OF COMMERCE, Apr. 25, 2024, https://tinyurl.com/36rx7afr ..............................................2

Colleen V. Chien, *Reforming Software Patents,*
50 HOUS. L. REV. 325, (2012) ................................................................. 7, 24

*Patent Progress's Guide to State Patent Legislation,* PATENT PROGRESS,
https://tinyurl.com/2usfn3ww ............................................................4

Matt Levy, *More on State Patent Troll Laws*, PATENT PROGRESS, (Nov. 19, 2015),
https://tinyurl.com/4zxsemjm ............................................................4

*Technology and innovation one-sheet,* IDAHO DEP'T. OF COMMERCE,
https://tinyurl.com/48zdk8ar (last visited May 17, 2024) ............................................2

**INTRODUCTION**

States can protect their citizens from unfair competition practices—even when those practices involve the bad-faith assertion of a federal right. As this Circuit has consistently held, States' power over unfair competition does not end when patent litigation begins; instead, because Congress has not addressed the specific problem of patent suits brought in bad faith, States like Idaho are free to create a cause of action against parties who intentionally misuse federal patent law.

As to Idaho's bond requirement, it too protects Idahoans from unfair competition practices—in this case, the practice of filing bad-faith patent suits in the name of uncapitalized shell corporations that might otherwise be immune to judgment. Because this bond is a substantive right granted to Idahoans, it applies in diversity actions the same way it would in state-court actions.

**STATEMENT OF RELATED CASES**

No other appeals in or from these actions have previously been before this or any other appellate court.

**STATEMENT OF THE ISSUES**[1]

1. Whether federal law preempts Idaho's cause of action for bad-faith assertions of patent infringement.

2. Whether federal law preempts the bond requirement in Idaho's statute regarding bad-faith assertions of patent infringement.

---

[1] Idaho takes no position on whether there is jurisdiction in this appeal.

**STATEMENT OF THE CASE**

## I.     Idaho Enacts a Bad-Faith Patent Assertion Statute.

Idaho has a thriving community of technology-based businesses that rely on patents. These include most obviously Idaho's co-appellee Micron, a "global leader in leading-edge DRAM technology and production" and "the only U.S. based manufacturer of memory chips."[2] But Micron is not alone.

According to the Idaho Department of Commerce, Idaho technology-industry leaders include, among others:

- Cradlepoint—the industry leader in cloud-delivered 4G LTE network solutions that has been a leader in 5G advancements (recently acquired by Ericsson);

- Kochava—a mobile app attribution and analytics company that provides mobile advertisers with real-time visualization of campaign and user data;

- Kount—innovator of solutions for fraud and risk-management;

- ON Semiconductor—a supplier of high-performance, energy-efficient silicon solutions for green electronics;

- Simplot—a major agricultural technology company that has become a leader in plant genomes and other agricultural-technology advancements; and

- T-Sheets—a cloud-based time tracking and scheduling solution (recently acquired by Intuit).[3]

---

[2] *Biden-Harris Administration Announces Preliminary Terms with Micron to Onshore Leading-Edge Memory Chip Production in U.S. for First Time in Decades,* U.S. DEP'T. OF COMMERCE, Apr. 25, 2024, https://tinyurl.com/36rx7afr.

[3] *Technology and innovation one-sheet,* IDAHO DEP'T. OF COMMERCE, https://tinyurl.com/48zdk8ar (last visited May 17, 2024).

In total, Idaho's technology industry contributes $4.1 billion to the state's GDP, includes 515 establishments, pays a $113,919 average salary, and is expected to grow by 2% annually over the next ten years.[4]

Idaho's technology sector was already booming in 2014, when it was named one of the top 20 U.S. metropolitan regions for patent origination and the sixth most inventive state in the country.[5] However, Idaho businesses found themselves increasingly exposed to the threat of expensive bad-faith patent litigation. Idaho's Legislature summarized the problem: "Abusive patent litigation, and especially the assertion of bad faith infringement claims, can harm Idaho companies." Idaho Code § 48-1701(d). "A business that receives a letter or other communication asserting such claims faces the threat of expensive and protracted litigation and may feel that it has no choice but to settle and to pay a licensing fee, even if the claim is meritless." *Id.*

Such threats and nuisance settlements do real economic damage to Idaho. "Not only do bad faith patent infringement claims impose a significant burden on individual Idaho businesses, they also undermine Idaho's efforts to attract and nurture IT and other knowledge-based companies." Idaho Code § 48-1701(e). "Funds used to avoid the threat of bad faith litigation are no longer available to invest, produce new products, expand or hire new workers, thereby harming Idaho's economy." *Id.*

---

[4] *Id.*

[5] Amy Lombardo & Lt. Gov. Brad Little, *'Patent Troll' bill will protect Idaho businesses,* IDAHO BUSINESS REVIEW, Mar. 21, 2014, https://tinyurl.com/3s2k844h.

Facing this problem, Idaho turned to a solution developed in other states: it enacted The Bad Faith Assertions of Patent Infringement Act. Idaho Code §§ 48-1701–48-1708. Its statute closely resembles that of Vermont, which had enacted the nation's first bad-faith assertion law a year earlier. *Compare* Idaho Code § 48-1703 with Vt. Stat. tit. 9, § 4197. Idaho's statute prohibits bad-faith assertions of patent infringement, and provides courts with a non-exhaustive list of factors it "may" use to assess bad faith. Idaho Code § 48-1703. It also grants remedies to "targets" of these bad-faith patent assertions, including a private right of action and a requirement that the patent-asserting party post a bond if the target shows there is a "reasonable likelihood" that the assertion was made in bad faith. *Id.* §§ 48-1706; 48-1707.

Idaho and Vermont were not alone in concluding during this time frame that legislation was necessary to protect their citizen from abusive patent assertions, which imposed $29 billion in direct costs just on American software and hardware companies in 2011.[6] Many other states acted to adopt highly similar statutes. By now, at least 32 states have enacted bad-faith assertion statutes; at least 21 of them have private rights of action like Idaho's, and at least 15 of them have similar requirements for bad-faith patent claimants to post a bond.[7]

---

[6] Amy Lombardo & Lt. Gov. Brad Little, *'Patent Troll' bill will protect Idaho businesses,* IDAHO BUSINESS REVIEW, Mar. 21, 2014, https://tinyurl.com/3s2k844h.

[7] *Patent Progress's Guide to State Patent Legislation,* PATENT PROGRESS, https://tinyurl.com/2usfn3ww; Matt Levy, *More on State Patent Troll Laws,* PATENT PROGRESS, (Nov. 19, 2015), https://tinyurl.com/4zxsemjm.

## II.     Idaho Intervenes to Defend the Constitutionality of Its Statute.

On July 18, 2022, Idaho was served with a Notice of Constitutional Challenge to a Statute by Katana Silicon Technologies LLC and Longhorn IP, LLC (the "Patent Asserters"). Appx128; *see* Fed. R. Civ. P. 5.1(a). The notice informed Idaho that Micron had asserted a claim under the Idaho bad-faith patent statute against the Patent Asserters, and that they had argued in their motions to dismiss the claim that the statute was preempted by federal law. Idaho intervened to defend its statute. 28 U.S.C. § 2403(b); Appx129–30.

On May 3, 2023, the district court agreed that Idaho's bad-faith patent assertion statute was constitutional. Appx1–30. It held that the statute was not preempted by federal law because it penalizes only bad-faith assertions of infringement, and therefore does not conflict with the federal Patent Act, which likewise has "the end goal of protecting valid patents without enabling bad-faith or vexation litigation." Appx15.

### SUMMARY OF THE ARGUMENT

In America's federalist system, both the federal government and the States are sovereigns, and States possess a general police power to pursue their people's interests. State laws are presumed valid unless a specific preemption doctrine applies.

The Patent Asserts' argue only one kind of preemption: the subtype of conflict preemption known as obstacle preemption, under which a state law is an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015) (cleaned up). Obstacle preemption,

however, does not apply every time state and federal law are in tension. Instead, obstacle preemption applies only when Congress has passed a specific rule to address specific circumstances and state law would interfere; it therefore applies "in only a small number of cases." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 959 F.3d at 1212–13.

This is not one of those cases. As this circuit has long recognized, Congress has not enacted specific rules addressing the specific problem of bad-faith patent assertions, and Congressional silence leaves the States free to legislate. Laws like Idaho's are not preempted simply because they make some allegations of patent infringement more risky to assert; instead state-law claims "can survive federal preemption" if they "are based on a showing of 'bad faith' action in asserting infringement." *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004).

Idaho law meets that requirement. The statute at issue limits its prohibition to "bad faith assertion[s] of patent infringement." Idaho Code § 48-1703(1). The statute does not expressly require both objective and subjective bad faith, but that should not be an obstacle. As in prior circuit cases, the Court should simply read that requirement into the statute, thus complying with the Idaho Legislature's stated intent to respect good-faith patent enforcement and avoid preemption. *See* Idaho Code § 48-1701(1)(c).

As to Idaho's bond requirement, it likewise requires the party requesting it to "establish[] a reasonable likelihood that a person has made a bad faith assertion of patent infringement in violation of this chapter." *Id.* § 48-1707. The "reasonable

likelihood" standard is lower than this Circuit's ordinary "clear and convincing evidence" standard, but a bond is preliminary relief—the sort of relief to which preliminary standards like "reasonable likelihood" routinely apply. Further, the bond requirement is a reasonable response to a specific problem Congress has not addressed: patent trolls that "sue using shell companies created for the specific purpose of shielding their investors from liability and scrutiny." Colleen V. Chien, *Reforming Software Patents*, 50 Hous. L. Rev. 325, 382–83 (2012).

Finally, as the district court explained, Idaho's bond requirement is a substantive law that applies in federal court. It does not directly conflict with any federal procedural rule, and failing to apply it would lead to inequity and forum shopping.

## ARGUMENT

### I.  Out of Respect for State Sovereignty, State Law is Only Preempted Where There is an Actual Conflict Between Federal and State Law.

Our "Constitution establishes a system of dual sovereignty between the States and the Federal Government." *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991). While that design may seem "counterintuitive," the Founders recognized "that freedom is enhanced by the creation of two governments, not one." *Bond v. United States*, 564 U.S. 211, 220–21 (2011). Among other benefits, the federalist structure "assures a decentralized government that will be more sensitive to the diverse needs of a heterogenous society," "allows for more innovation and experimentation in government," and "makes government more responsive by putting the States in

competition for a mobile citizenry." *Gregory*, 501 U.S. at 458. So while the Founding "split[] the atom of sovereignty," *Alden v. Maine*, 527 U.S. 706, 751 (1999) (cleaned up), it left intact "the integrity, dignity, and residual sovereignty of the States." *Bond*, 564 U.S. at 221.

The "concurrent" sovereignty that "the States possess" is "subject only to limitations imposed by the Supremacy Clause" of the Constitution, which makes federal law "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) (first three quotes); U.S. CONST. art. VI, cl. 2 (last quote). The Supremacy Clause houses the concept of "federal preemption"—stated simply, it embodies a "rule of decision" requiring that "[i]f federal law imposes restrictions or confers rights on private actors and a state law confers rights or imposes restrictions that conflict with the federal law, the federal law [must] take[] precedence and the state law is preempted." *Kansas v. Garcia*, 589 U.S. 191, 202 (2020) (cleaned up).

"[B]ecause the States are independent sovereigns in our federal system," and preemption denies effect to a validly enacted state law, there is a presumption against preemption. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (plurality opinion); *Arizona v. United States*, 567 U.S. 387, 400 (2012); *Va. Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1904 (2019) (lead opinion of Gorsuch, J.) ("The preemption of state laws represents a serious intrusion into state sovereignty.") (cleaned up). Courts "[i]n *all* pre-emption cases" therefore "start with the assumption that the historic police powers of the States

were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 & n.3 (2009) (cleaned up and emphasis added).

The Supreme Court has "identified three different types of preemption—conflict, express, and field." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 477 (2018). Express preemption occurs when Congress enacts a clear statement preempting state law, and field preemption occurs "when federal law occupies a field of regulation so comprehensively that it has left no room for supplementary state legislation." *Id.* at 478–79 (cleaned up). Neither of these forms is at issue here, but only the third form, i.e., conflict preemption. *See* Opening Br. at 39–49.[8]

Conflict preemption occurs when a state law "actually conflicts with federal law," *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990), either because (1) "compliance with both state and federal law is impossible," or (2) "the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Oneok, Inc.*, 575 U.S. at 377 (cleaned up). Only the second form of conflict preemption is at issue here—i.e., obstacle preemption. *See* Opening Br. at 43–44.

---

[8] Any claim of field preemption would have been foreclosed by this Court's precedent. *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1333 (Fed. Cir. 1998) ("there is no field preemption of state unfair competition claims that rely on a substantial question of federal patent law"), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999).

Claims of obstacle preemption must surpass a "high threshold." *Indep. Park Apartments v. United States*, 449 F.3d 1235, 1243 (Fed. Cir. 2016). Such claims do not invite a "freewheeling judicial inquiry into whether a state statute is in tension with federal objectives." *Garcia*, 589 U.S. at 202 (citation omitted). Rather, "all preemption arguments[] must be grounded in the text and structure of the statute at issue." *Id.* at 208 (cleaned up). Even then, it is not enough that the federal and state statutes "overlap." *Id.* at 211–12. The federal statute must contain a "specific, contrary rule" conflicting with the state statute. *Indep. Park Apartments*, 449 F.3d at 1244. Because this bar is so high, "the Supreme Court has frequently rejected claims of obstacle preemption," finding it proper "in only a small number of cases." *In re Volkswagen*, 959 F.3d at 1212–13.

Following these principles, the Supreme Court has made clear in the intellectual property context that the "the states are free to regulate the use of [] intellectual property in any manner not inconsistent with federal law." *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979). In other words, conflict preemption applies only "[w]here it is clear how the patent laws strike that balance *in a particular circumstance.*" *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 152 (1989) (emphasis added). So state laws that frustrate Congress' objectives on matters it has clearly addressed—for example, patent-

10

like protection for articles in the public domain—are preempted.[9] However, States are free to legislate on matters not addressed by Congress—like protection for trade secrets or contracts for patent royalties.[10]

## II.     Idaho's Statute Is Not Preempted

Under these principles, Idaho's statute is not preempted. The statute makes it "unlawful for a person to make a bad faith assertion of patent infringement in a demand letter, a complaint or any other communication." Idaho Code § 48-1703. It entitles the target of a bad-faith patent assertion to (1) "bring an action in district court," and (2) request that the court impose a bond requirement on the party who made the assertion of infringement upon a determination that there is "a reasonable likelihood" that the patent assertion was made in bad faith. Idaho Code §§ 48-1706(1), 48-1707. Neither provision conflicts with federal law; both are constitutional on their face.[11]

---

[9] *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231 (1964); *Compco Corp. v. Day–Brite Lighting, Inc.*, 376 U.S. 234, 237 (1964); *Bonito Boats*, 489 U.S. at 157–58

[10] *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 479 (1974); *Aronson*, 440 U.S. at 262; *see also Goldstein v. California*, 412 U.S. 546, 569 (1973).

[11] The Patent Asserters' arguments that Idaho's bad-faith assertion statute is unconstitutional as-applied to the facts of this case are actually arguments that their conduct does not fall within the terms of the statute under the facts of this case. *See infra*. This brief will therefore respond only to the Patent Asserters' facial challenge to the statute. *See* 28 U.S.C. § 2403(b).

## A. Idaho's Cause of Action for Bad-Faith Assertion of Patent Infringement Is Not Preempted

The Patent Asserters (at 39–44) first take aim at the bad-faith patent assertion statute's cause of action. However, while the Patent Act authorizes actions to enforce a patent, *see* 35 U.S.C. § 281, it is *entirely silent* as to whether enforcement may be brought or threatened in bad faith, or what the consequences should be for bad-faith patent assertions. Thus, Idaho's statute does not conflict with federal law—there is no "specific, contrary rule," *Indep. Park Apartments*, 449 F.3d at 1244, and no clearly struck "balance" in this "particular circumstance" for state law to upset. *Bonito Boats*, 489 U.S. at 152. Congress's silence leaves States free to legislate on the matter for the welfare of their people as they deem necessary. *See Conway v. United States*, 997 F.3d 1198, 1208–15 (Fed. Cir. 2021) (no preemption where the "text of the statutory scheme is silent" on the issue).

That result should be unsurprising. Idaho's bad-faith patent assertion statute regulates unfair competition, and "the law of unfair competition" has "coexisted harmoniously with federal patent protection for almost 200 years." *Bonito Boats*, 489 U.S. at 166; Idaho Code § 48-1703(4) (bad faith assertion of infringement qualifies as an "unfair and deceptive act"). The two "bodies of law" are "independent," "each with different origins and each protecting different rights"—while "unfair competition generally protects consumers and competitors from deceptive or unethical conduct in commerce," patent law "protects a patent owner from the unauthorized use by others

of the patented invention, irrespective of whether deception or unfairness exists." *Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1373 (Fed. Cir. 1994). Thus, the Patent Act—in setting out the metes and bounds of patent protection—had no need to venture into the law of unfair competition, which has been traditionally regulated by States. *Id.* ("infringement of patent rights . . . is not generally recognized as coming within the rubric of 'unfair competition'").

This Court's precedents have already trod this ground and arrived at the exact same conclusion. Drawing from a lengthy line of precedent, this Court has held that "[s]tate-law claims . . . can survive federal preemption" if they "are based on a showing of 'bad faith' action in asserting infringement." *Globetrotter Software*, 362 F.3d at 1374; *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999) (collecting cases). Thus, patent-holders acting with objective and subjective bad faith exceed the scope of their federal patent rights, and may properly be held liable for their conduct under state tort law. *E.g.*, *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1476 (Fed. Cir. 1998) (tortious interference); *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1304 (Fed. Cir. 2018) (same).

In reaching this result, this Court also explained why imposing state tort law on bad-faith assertions of patent infringement creates no conflict with more abstract purposes behind the Patent Act. It explained that federal patent law aims to "provid[e] an incentive to invent, promot[e] the full disclosure of inventions, and ensur[e] that 'that which is in the public domain cannot be removed therefrom by action of the

States.'" *Dow Chem.*, 139 F.3d at 1474 (quoting *Kewanee Oil*, 416 U.S. at 480–81). But "[i]t is difficult to fathom how" state causes of action based on bad faith pose any "obstacle" to these objectives—for example, "it seems most improbable that an inventor would choose to forfeit the benefits of patent protection because of fear of the risk of being found tortiously liable based upon attempting to enforce a patent obtained by inequitable conduct." *Id.* at 1475; *see also Zenith Elecs.*, 182 F.3d at 1354 ("bad faith marketplace statements concerning patents do not further the purposes of the patent law").

Under Circuit precedent, then, Idaho's cause of action for bad-faith assertion of patent infringement survives preemption as long as it regulates "'bad faith' action in asserting infringement." *Globetrotter Software*, 362 F.3d at 1374; *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1369 (Fed. Cir. 2008) (deeming this principle "well-established"). And that's exactly what it does. Idaho Code §§ 48-1703, 48-1706(1).

It is of no concern that the statute does expressly require both objective and subjective faith as necessary elements of the claim. Even where a state cause of action does not mention bad faith *at all*, this Court simply imposes those requirements as additional hurdles. *Globetrotter Software*, 362 F.3d at 1374 ("[T]o avoid preemption, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim"); *Zenith Elecs.*, 182 F.3d at 1354 ("adding a bad faith requirement"). Here, where the statute *does* say bad faith—but does not specify whether objective, subjective, or both is required—this Court's job is even easier. It need only construe

that phrase to avoid unconstitutionality. *See Consolidation Coal Co. v. United States*, 528 F.3d 1344, 1347 (Fed. Cir. 2008) (canon of constitutional avoidance). That construction would align perfectly with the intent of the Idaho Legislature. *See* Idaho Code § 48-1701(c) ("The legislature does not wish to interfere with the good faith enforcement of patents" and "recognizes that Idaho is preempted from passing any law that conflicts with federal patent law"); Idaho Code § 48-1703(2)(f) (instructing a court to consider both objective and subjective bad faith).

The same goes for this Court's requirement that bad faith be proven by "clear and convincing evidence" to avoid preemption. *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002). Again, this Court imposes that requirement even where the cause of action carries no explicit mention of a burden of proof, *id.* at 1371–72 (unfair competition), and it should do so here since Idaho's bad-faith patent assertion statute contains no contrary burden of proof. Such a construction would avoid needlessly invalidating a statute enacted by the people of Idaho. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 456 (2008) (considering limiting construction "in fairness to the voters of the State of Washington who enacted" the statute being challenged).

Every district court interpreting a state statute affording a cause of action for bad-faith assertion of patent infringement has likewise determined that the statute is not facially preempted. *NAPCO, Inc. v. Landmark Tech. A, LLC*, 555 F. Supp. 3d 189, 211 (M.D.N.C. 2021) (denying facial challenge, construing statute constitutionally

where necessary); *Landmark Tech., LLC v. Azure Farms, Inc.*, 2020 WL 1430088, at *3 (D. Or. Mar. 24, 2020) (same); *Puritan Med. Prod. Co. LLC v. Copan Italia S.p.A.*, 188 A.3d 853, 862–63 (Me. 2018) ("Maine's statute is [not] preempted as a whole"). And those that have found individual claims to be "preempted" have simply concluded that the plaintiff had not adequately alleged subjective or objective bad faith on the facts—*i.e.*, that the plaintiff had failed to establish the bad-faith requirements of the statute. *E,g.*, *Shoflo, LLC v. TSE Servs., LLC*, 2017 WL 10080141, at *7 (M.D. Fla. July 12, 2017); *Summer Infant (USA), Inc. v. TOMY Int'l, Inc.*, 2019 WL 5540224, at *3 (D.R.I. Oct. 25, 2019); *see also Washington v. Landmark Tech. A, LLC*, 637 F. Supp. 3d 1154, 1162 (W.D. Wash. 2022) (pleading adequate); *Triple7Vaping.com, LLC v. Shipping & Transit LLC*, 2017 WL 5239874, at *7 (S.D. Fla. Feb. 6, 2017) (same).

It is not clear what—if any—of the above analysis the Patent Asserters disagree with. They seem to agree that Idaho's bad-faith patent assertion statute should require a showing of "objective and subjective bad faith by clear and convincing evidence," yet they still contend that the statute is facially preempted based on a scattershot of lightly developed arguments divorced from governing preemption principles. *See* Opening Br. at 39–44. These arguments are meritless and run headlong into binding circuit precedent.

*First*, in their only argument based in text or structure of the Patent Act, *see Garcia*, 589 U.S. at 208, the Patent Asserters argue (at 42–43) that Congress has already carefully balanced the incentives regarding bad faith assertions of infringement, and that Idaho's

bad-faith patent assertion statute disrupts that balance. But the Patent Act does no such thing—it is completely silent regarding bad-faith enforcement actions. The only provision the Patent Asserters cite does not mention bad-faith assertions of infringement *at all*. Instead, it allows attorney fees "in exceptional cases," 35 U.S.C. § 285. That *courts* have construed exceptional cases to include bad-faith assertions of infringement is irrelevant because (1) it is "the purpose of *Congress*," not courts, that matters for preemption, and Congress has said nothing about bad faith specifically, *Wyeth*, 555 U.S. at 565 (emphasis added), and (2) there is no evidence of an intent to foreclose *other* penalties punishing that same conduct. Indeed, federal law allows "[s]omething less than 'bad faith'" to be the basis for attorneys' fees, *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 548 (2014), further undermining any notion of a carefully struck balance concerning bad-faith assertions of patent infringement.

Moreover, the Patent Asserters' argument applies equally to *any* state tort claim based on bad-faith enforcement: malicious prosecution, tortious interference, state antitrust violations, and so on. Thus, if accepted, the argument would overturn this Court's longstanding holding that "[s]tate tort claims based on enforcing a patent . . . are preempted by federal patent laws, *unless the claimant can show that the patent holder acted in bad faith*." *Energy Heating*, 889 F.3d at 1304 (emphasis added). This panel cannot overrule that holding, applied previously by many three-judge panels. *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991).

*Second*, turning to the Patent Act's "purpose," the Patent Asserters mention in passing (at 43) that Idaho's bad-faith patent assertion statute would deny nationwide uniformity to the country's patent laws. The Supreme Court has considered uniformity as a purpose of the Patent Act once for preemption purposes, but only uniformity as to the scope of patentable subject matter, which is not implicated here. *Bonito Boats*, 489 U.S. at 163 ("the demarcation of broad zones of public and private right is the type of regulation that demands a uniform national rule") (cleaned up). Moreover, this argument suffers from the same flaw as the last—it would prohibit any state law penalizing bad faith or regulating patents *at all*. That defies this Court's precedents, which explain that penalizing bad faith does not conflict with the Patent Act's broader "threefold" purpose because it does not disincentivize invention, discourage public disclosure, or remove anything from the public domain. *Dow Chem.*, 139 F.3d at 1474 (citing *Kewanee Oil*, 416 U.S. at 480–81).

*Third*, and straying from the text, structure, and purposes of the Patent Act, the Patent Asserters claim (at 40) that Idaho's bad-faith patent assertion statute fails to account for the presumption that an assertion of patent infringement is made in good faith. But, as explained above, the Court has already solved that problem by imposing a "clear and convincing evidence" standard for proving bad faith. *Golan*, 310 F.3d at 1371 (discussing presumption of good-faith assertion). As long as the Court applies that burden of proof, the presumption of good faith is fully accounted for. And once again, no other state statute or cause of action addressed by this Court has explicitly addressed

the presumption of good-faith patent assertions, yet this Court allows them to proceed nonetheless if they require clear and convincing evidence of bad faith. *E.g.*, *Globetrotter Software*, 362 F.3d at 1374.

*Fourth*, the Patent Asserters contend (at 39–40) that Idaho's bad-faith patent assertion statute should be preempted because of its "clear intent to regulate litigation in federal court." This argument is factually inaccurate—the statute is entirely agnostic as to the court in which the bad-faith patent assertion action is brought. In any event, Idaho's "intent" is irrelevant because the Supreme Court generally treats preemption inquiries "as depending on *what* the State did, not *why* it did it." *Va. Uranium*, 139 S. Ct. at 1905 (lead opinion of Gorsuch, J.) (collecting cases).

*Fifth*, the Patent Asserters complain (at 40–41) that the statute "discriminates" against patent-owners who do not "use" their invention. They reason that since the non-exhaustive list of factors that may indicate *good faith* includes "mak[ing] a substantial investment in the use of the patent or in the production or sale of a product or item covered by the patent" that there would be *bad faith* if a person did not make or sell a product covered by the patent. Idaho Code § 48-1703(3)(b). This logic is faulty—the inverse of a proposition is not necessarily true. So while the statute makes use of a patent indicative of good faith, that does *not* mean that non-use weighs in favor of bad faith under the statute. In fact, the failure to use or sell a product is not among the eight listed factors indicating bad faith. *Id.* § 48-1703(2).

But in any event, it's not clear how the Patent Asserters' policy complaint concerning non-practicing entities implicates preemption. As explained, Idaho's statute makes only bad-faith assertions of infringement actionable, and Congress provided no conflicting right to assert a patent in bad faith. As nearly all states with similar statutes have done, Idaho has provided courts with a list of circumstances that could indicate good or bad faith, directing the court that it "may" consider those where applicable, or may also consider circumstances that are entirely separate from the lists. Idaho Code § 48-1703. To the extent that the Patent Asserters are worried that a district court might inappropriately assess bad faith in a particular circumstance, that error could be handled in an ordinary appeal. But its hypothetical does nothing to prove that the statute is preempted—and certainly does not show preemption in *all* applications, as required to succeed on a facial challenge and strike down a State's statute in its entirety. *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Hunter Douglas*, 153 F.3d at 1335 ("a state law is not per se preempted unless every fact situation that would satisfy the state law is in conflict with federal law . . . this approach best respects the states' sovereign nature").

*Sixth*, lacking any statutory basis for preemption, the Patent Asserters invite this Court to invalidate Idaho's bad-faith patent assertion statute based on their own policy positions, regardless of whether Congress implemented those positions in the Patent Act. They argue (at 41–42) that "willful patent infringers" are a "more substantial problem historically," and that Idaho's statute "would be bad federal policy" that takes too much "leverage" from patent holders. These are arguments for a legislature, not a

court. And like the legislatures of most other states, the Idaho legislature has disagreed with the Patent Asserters' preferred policy position, deciding instead that the bad-faith patent assertion statute would best advance its citizens' interests amidst a growing trend of "[a]busive patent litigation" in the state. Idaho Code § 48-1701(d). Absent any conflict with the Patent Act, nothing prevented Idaho from invoking its sovereign prerogative to make that choice.

*Finally*, as a last gasp, the Patent Asserters make fleeting references (at 44) to the First Amendment, Supremacy Clause, and Patent Clause. These constitutional provisions are all accounted for in this Court's preemption jurisprudence, which aligns preemption under the Supremacy Clause with the First Amendment right to petition the government. *Lite-Netics, LLC v. Nu Tsai Cap. LLC*, 60 F.4th 1335, 1343 (Fed. Cir. 2023) ("This requirement of a showing of bad faith as prerequisite to applying state tort law to speech about infringement rests partly on First Amendment principles."). Just as there is no constitutional right to petition the government in bad faith, there is no statutory right under the Patent Act to sue in bad faith. To the extent the Patent Asserters mean that these clauses present some separate basis making Idaho's bad-faith assertion statute unconstitutional, that argument is not developed, and is therefore forfeited. *K-fee Sys. GmbH v. Nespresso USA, Inc.*, 89 F.4th 915, 923 (Fed. Cir. 2023).

\*     \*     \*

The "text and structure" of the Patent Act, *Garcia*, 589 U.S. at 208, and this Court's precedents, *e.g.*, *Globetrotter Software*, 362 F.3d at 1374, wholly refute the Patent

Asserters' argument that the statute's cause of action is preempted. And after accounting for the presumption against preemption—which is at its peak in fields, like unfair competition, that "States have traditionally occupied," *Wyeth*, 555 U.S. at 565—the claim of preemption is dead on arrival.

### B. The Bond Requirement in Idaho's Bad-Faith Patent Assertion Statute Is Not Preempted.

Nearly all of the analysis above applies equally to the bond requirement in Idaho's bad-faith patent assertion statute. Idaho Code § 48-1707. States may penalize bad-faith assertions of patent infringement because doing so does not conflict with any right or purpose of the Patent Act. *Globetrotter Software*, 362 F.3d at 1374; *Zenith Elecs.*, 182 F.3d at 1353. There is no reason why a *refundable bond*—whatever the size—would pose a greater obstacle to the operation of the Patent Act than a cause of action resulting in similarly-sized *damages*. In either case, it's "difficult to fathom" how Idaho's statute penalizing truly bad faith infringement actions would discourage invention, disincentivize full disclosure of inventions, or remove anything from the public domain. *Dow Chem.*, 139 F.3d at 1475.

The only wrinkle in the preemption analysis for the bond requirement is that the standard of proof is different—because the determination is made at the outset of the case, Idaho's bad-faith patent assertion statute requires that a target of a patent assertion establish a "reasonable likelihood" that a person made the assertion in bad faith before the bond may be imposed, not clear and convincing evidence. Idaho Code § 48-1707.

But demanding a lower, interim showing at an early stage of the case presents no constitutional concern. This Court itself set a lower evidentiary hurdle for a claim to survive preemption at summary judgment: a party "must present affirmative evidence sufficient for a reasonable jury to conclude that the patentee acted in bad faith, in light of the burden of clear and convincing evidence that will adhere at trial." *Golan*, 310 F.3d at 1371. Other constitutional requirements are similarly scaled to the stage of litigation. *See Starr Int'l Co., Inc. v. United States*, 856 F.3d 953, 964 (Fed. Cir. 2017) (standing must be supported with "the manner and degree of evidence required at the successive stages of the litigation"). The bond requirement fits that mold by demanding a reasonable likelihood that bad faith will be proven by clear and convincing evidence at trial.[12]

Because a bond requirement for preliminary findings of bad-faith infringement does not pose an obstacle to the operation of the Patent Act, which affords a right only to assert a patent in good faith, Idaho—and the 14 other states that have a bond requirement[13]—were free to enact the requirement to protect the well-being of its

---

[12] A showing of a "reasonable likelihood" of bad faith will generally demand evidence. *See* Idaho Code § 48-1707 (requiring a hearing if either party requests). Because the State is defending the facial constitutionality of the statute in this brief, it takes no position on whether the district court in this case properly considered evidence, or whether the district court applied a "reasonable possibility" standard that meaningfully varied from the statutory "reasonable likelihood" standard.

[13] Vt. Stat. tit. 9, § 4198; Mont. Code § 30-13-153; Utah Code Ann. § 78B-6-1906; N.D. Cent. Code. § 51-36-05; S.D. Codified Laws § 37-36-5; Okla. Stat. tit. 23, § 113(C); Ind. Code § 24-11-4-1; Tenn. Code § 29-10-103(c); Miss. Code § 75-24-355; Ga. Code § 10-1-772; Me. Stat. tit. 14 § 8701(6); N.H. Rev. Stat. § 359-M:3; N.C. Gen. Stat. § 75-144; 6 R.I. Gen. Laws Ann. § 6-41.1-5.

citizens. The bond requirement serves the valuable purpose within the statutory scheme by ensuring that the amounts that the target of a bad-faith assertion of infringement will ultimately recover are available, recognizing that the entities making bad-faith assertions are often undercapitalized and judgment-proof. *See* N.C. Gen. Stat. § 75-141(a)(9) (noting state's "strong interest in making sure that prevailing [] companies sued by abusive patent assertions entities can recover what is awarded to them"); Colleen V. Chien, *Reforming Software Patents*, 50 HOUS. L. REV. 325, 382–83 (2012) ("Sophisticated trolls sue using shell companies created for the specific purpose of shielding their investors from liability and scrutiny.").

The Patent Asserters' arguments regarding the bond requirement purport to address "preemption," but are largely directed to a different species of "preemption" than the obstacle preemption outlined above. The Patent Asserters' argument (at 44–52) is that the bond requirement should not be applied by federal court under *Erie* choice-of-law principles, and is therefore "preempted" by the federal law that *Erie* would choose. Whether framed as preemption or not, the argument is wrong.

Under *Erie*, a federal court applies federal procedure, but applies state substantive law, "whatever the ground for federal jurisdiction, to any issue or claim which has its source in state law." *Maternally Yours v. Your Maternity Shop*, 234 F.2d 538, 540 n.1 (2d Cir. 1956); *A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1463 (D.C. Cir. 1995) ("a federal court applies state law when it decides an issue not addressed by federal law, regardless of the source from which the cause of action is deemed to have

arisen for the purpose of establishing federal jurisdiction"). "A substantive rule is one that creates rights or obligations, or is bound up with state-created rights and obligations in such a way that its application in the federal court is required." *In re Cnty. of Orange*, 784 F.3d 520, 527 (9th Cir. 2015) (cleaned up).

A familiar two-part test governs whether a state law is procedural or substantive. First, the court must determine whether there is a federal procedural rule that "conflicts with the state law." *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1358 (11th Cir. 2014). The conflict must cause a "direct collision with the state law or, implicitly, [] control the issue before the court, thereby leaving no room for the operation of that law." *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987) (cleaned up). If such a conflict is present, "the federal procedural rule applies instead of the state law." *Royalty Network*, 756 F.3d at 1358. If not, the court proceeds to the second step and assesses whether the "twin aims" of *Erie* mandate application of the state law in federal court—*i.e.*, "whether failure to apply the state law would lead to different outcomes in state and federal court and result in inequitable administration of the laws or forum shopping." *Id.* at 1358, 1362; *All Plaintiffs v. All Defendants*, 645 F.3d 329, 333–37 (5th Cir. 2011).

At the first step, the Patent Asserters' only argument is that the bond requirement fatally collides with Federal Rule of Civil Procedure 11. But there is more than sufficient space for each rule to "control[] its own intended sphere of coverage without conflict." *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752 (1980). Fundamentally, the two rules apply to distinct types of misconduct. While Idaho's bad-faith patent assertion statute

"penalizes the party, Rule 11 targets the attorney." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1540 (10th Cir. 1996). While Idaho's bad-faith patent assertion statute covers pre-litigation conduct, Rule 11 does not. *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1262 (Fed. Cir. 2008) ("the purpose and impact of the *Globetrotter* standard, which applies to pre-litigation infringement allegations, is entirely distinct from that of Rule 11, which applies to pleadings filed in court"). And Idaho's bad-faith patent assertion statute demands a showing of objective and subjective bad faith, but "Rule 11 does not require a showing of bad faith" at all. *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013). Indeed, if Rule 11 preempted the bond requirement, it would equally preempt the cause of action (as the Patent Asserters argue (at 42–43)), which would overrule decades of precedent in this Circuit. *See Globetrotter Software*, 362 F.3d at 1374.

At step two, the Patent Asserters make no argument as to why the bond requirement should not apply in federal court under *Erie* principles. That's because it has none. The bond requirement is part-and-parcel with the liability imposed by the statute's cause of action—one authorizes damages, and the other makes sure the bad-faith asserter can pay those damages. *See Cnty. of Orange*, 784 F.3d at 527. Without the bond requirement, the statute ordinarily would afford no relief to the targets of bad-faith assertions of patent infringement that Idaho meant to protect, as their accusers will often be undercapitalized and judgment-proof. Such a great disparity between the statute's operation without the bond requirement and with the bond requirement would

undoubtedly "result in inequitable administration of the laws or forum shopping." *Royalty Network*, 756 F.3d at 1358.

The Supreme Court itself has applied state-law bond requirements as substantive law. In *Cohen v. Beneficial Indus. Loan Corp.*, the Court held that a state law requiring stockholders in a derivative action to post a security equal to the company's expenses for the defending the action was substantive because it "create[d] new liability where none existed before" beyond "costs." 337 U.S. 541, 555–56 (1949) ("We do not think a statute which so conditions the stockholder's action can be disregarded by the federal court as a mere procedural device"). So too here. Idaho's bad-faith patent assertion statute—through its cause of action and bond requirement—indisputably creates a "new liability" of damages (even treble damages) exceeding an award of costs.

Other courts have followed the Supreme Court's lead by applying state bond requirements in federal court. These cases have recognized that bond requirements—like the one Idaho has adopted—can be "designed to have an impact on personal activity beyond the adjudicative process," and that failure to apply them in federal court can "encourage forum shopping." *Feinstein v. Mass. Gen. Hosp.*, 643 F.2d 880, 886 (1st Cir. 1981); N.C. Gen. Stat. § 75-141(a)(9) (bond requirement identical to Idaho's meant to "serve as a deterrent"); *First Coast Energy, LLP v. Mid-Continent Cas. Co.*, 286 F.R.D. 630, 634–35 (M.D. Fla. 2012) (applying bond requirement that "creates a new liability . . . beyond what is normally awarded as costs," and that would "influence a plaintiff's choice of forum"); *Lakehead Pipe Line Co. v. Am. Home Assur. Co.*, 981 F. Supp. 1205,

1210 n.3 (D. Minn. 1997) ("pre-answer security statutes, like Section 60A.21, are substantive rather than procedural in nature"); *First Specialty Ins. Corp. v. Cont'l Cas. Co.*, 2002 WL 31386521, at *1 (N.D. Ill. Oct. 21, 2002) ("Security statutes . . . are substantive rather than procedural in nature").

The Patent Asserters largely glide over the governing *Erie* principles with little analysis. As a result, the Patent Asserters' citations entirely miss the point, and simply assume the conclusion. For example, they cite cases (at 45, 52) concluding that state law may not "set[] up an additional hurdle a plaintiff must jump over to get to trial," (quoting *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1334 (D.C. Cir. 2015)), but that is true only of *procedural* hurdles that directly conflict with the Federal Rules of Civil Procedure. For the reasons explained above, there is no such conflict here.

The same goes for the Patent Asserters' preemption and First Amendment cases. *Felder v. Casey* does say that States may not "impose unnecessary burdens upon rights of recovery authorized by federal laws," but the way *Felder* determined whether the federal right to recovery at issue (Section 1983) was unnecessarily burdened was by conducting an obstacle preemption analysis and concluding that the state procedural requirement "conflicts in both its purpose and effects" with the federal right. 487 U.S. 131, 138 (1988). Here, as explained, penalizing bad-faith does not conflict with the Patent Act. The Patent Asserters also invoke cases striking down bond requirements that "chill . . . protected speech," but again, bad-faith speech is not protected under the First Amendment. *Globetrotter Software*, 362 F.3d at 1375–77.

\*    \*    \*

Like 32 other states, Idaho has used its historical police power to enact a bad-faith patent assertion statute in response to growing concerns of abusive, bad-faith assertions of patent infringement occurring both in and out of court. Congress, on the other hand, has said nothing at all regarding bad-faith assertions of infringement. It has authorized patent-holders to go to sue for infringement, but not to sue in bad faith. Because there is no conflict between state and federal law, Idaho may regulate bad-faith assertions of infringement—like any other unfair and deceptive acts—by creating a cause of action and associated bond requirement that will serve to deter bad-faith assertions and compensate targets. And because a bad-faith assertion would likely go wholly unremedied without those provisions—creating massive incentives for forum shopping—both provisions apply in federal court.

## CONCLUSION

For the foregoing reasons, the Court should affirm.

Date: May 17, 2024

Respectfully submitted,

HON. RAÚL R. LABRADOR
Attorney General

*/s/ Michael Zarian*
Alan Hurst
 *Solicitor General*
Michael Zarian
 *Deputy Solicitor General*
James Simeri
 *Chief, Consumer Protection Division*

*Counsel for Appellee State of Idaho*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 23-2007

**Short Case Caption:** Micron Technology Inc. v. Longhorn IP, LLC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 7,599 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 05/17/2024

Signature: /s/ Michael Zarian

Name: Michael Zarian

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing on this date with the Clerk of the Court for the United States Cout of Appeals for the Federal Circuit using the Appellate Electronic Filing system.

_/s/ Michael Zarian_____    Date: May 17, 2024
Michael Zarian