2023–2007, 2023–2095

_____

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____

No. 2023–2007

_____

MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON TECHNOLOGY TEXAS, LLC, STATE OF IDAHO,

*Plaintiffs-Appellees*

v.

LONGHORN IP LLC,

*Defendant-Appellant*

_____

Appeal from the United States District Court for the District of Idaho in No. 1:22-cv-00273, Judge David C. Nye

_____

No. 2023–2095

_____

KATANA SILICON TECHNOLOGIES LLC,

*Plaintiff-Appellant*

v.

MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON TECHNOLOGY TEXAS, LLC, STATE OF IDAHO,

*Defendants-Appellees*

_____

Appeal from the United States District Court for the District of Idaho in No. 1:22-cv-00282, Judge David C. Nye

_____

**CORRECTED RESPONSE BRIEF FOR MICRON APPELLEES**

_____

Amanda Tessar
PERKINS COIE LLP
1900 Sixteenth Street
Denver, Colorado 80202
(303) 291–2357
ATessar@perkinscoie.com

Andrew T. Dufresne
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, Wisconsin 53703
(608) 663–7492
ADufresne@perkinscoie.com

Jonathan I. Tietz
PERKINS COIE LLP
700 Thirteenth Street N.W., Suite 800
Washington, D.C. 20005
(202) 654–6200
JTietz@perkinscoie.com

**COUNSEL FOR APPELLEES MICRON TECHNOLOGY, INC.,
MICRON SEMICONDUCTOR PRODUCTS, INC., AND
MICRON TECHNOLOGY TEXAS LLC**

May 28, 2024

# Representative Patent Claims

## U.S. Patent No. RE38,806

1. A semiconductor device including a stacked package structure and a chip size package structure, comprising:

an insulating substrate including a wiring layer having electrode sections;

a first semiconductor chip having a first adhesion layer adhered to its back surface where a circuit is not formed, said first semiconductor chip being mounted on said wiring layer through the first adhesion layer; and

a second semiconductor chip having a second adhesion layer adhered to its back surface where a circuit is not formed, said second semiconductor chip being mounted on a circuit-formed front surface of said first semiconductor chip through the second adhesion layer;

each of said first and second semiconductor chips being wire-bonded to the electrode section with a wire, said first and second semiconductor chips and the wire being sealed with a resin.

## U.S. Patent No. 6,352,879

1. A method of manufacturing a semiconductor device comprising:

(a) forming a first adhesion layer on a back surface of a first wafer on which no circuit is formed, a circuit being formed on a front surface of the first wafer;

(b) producing separate first semiconductor chips from said first wafer by dicing;

(c) mounting said first semiconductor chip on a wiring layer with its back surface facing said wiring layer;

(d) forming a second adhesion layer on a back surface of a second wafer on which no circuit is formed, a circuit being formed on a front surface of the first wafer;

(e) producing separate second semiconductor chips from said second wafer by dicing; and

(f) mounting said second semiconductor chip on said first semiconductor chip with its back surface facing said first semiconductor chip.

**U.S. Patent No. 6,731,013**

11. A semiconductor device comprising:

an insulating substrate;

a terminal section, provided on a first surface of the insulating substrate, for making connection by wire bonding;

a land section, provided on the insulating substrate, for an external connection terminal;

wiring patterns, respectively provided on the first surface and a second surface on the other side of the first surface, for making electrical connection between the terminal section and the land section;

a support pattern, provided on the second surface corresponding in position to the terminal section, for improving wire bonding connection, wherein the support pattern is not electrically connected to one of the terminal section and land section;

a semiconductor chip mounted on the insulating substrate;

a bonding wire section for making electrical connection between the terminal section and the semiconductor chip;

a resin sealing section for sealing a circuit forming surface of the semiconductor chip and the bonding wire section; and

a conductive member, provided on the land section, for connecting the semiconductor chip to outside.

## CERTIFICATE OF INTEREST

I certify that the information below is complete to the best of my knowledge.

Date: May 17, 2024                    Signature:    /s/Amanda Tessar

                                      Name:        Amanda Tessar

| 1. Represented Entity | 2. Real Party in Interest | 3. Parent Corporations and 10% Stockholders |
|---|---|---|
| Micron Technology, Inc. | n/a | n/a |
| Micron Semiconductor Products, Inc. | n/a | Micron Technology, Inc. |
| Micron Technology Texas, LLC | n/a | Micron Technology, Inc. |

| 4. Other Legal Representatives | | |
|---|---|---|
| **Perkins Coie LLP**: | Trevor Jonathan Bervik | David T. Krueck |
| | Daniel Graham | Amy E. Simpson* |
| | | * no longer with Perkins Coie |

| 5. Related Case |
|---|
| None |

| 6. Organizational Victims and Bankruptcy Cases |
|---|
| None |

TABLE OF CONTENTS

Table of Authorities ..................................................................... iv

Table of Abbreviations and Conventions....................................... xiv

Statement of Related Cases .............................................................xv

Introduction ................................................................................. 1

Jurisdiction ................................................................................. 3

Issue Statement .............................................................................. 4

Statement of the Case ................................................................... 5

    I.    Statutory Background .........................................................5

    II.    The Parties and Their History.............................................10

        A.    Micron Is a Computer-Memory Innovator and Patentee.................10

        B.    Longhorn and Katana Exist to Sue Others .......................................11

        C.    Longhorn and Katana Continued a Pattern of Bad Faith, Nuisance Patent Assertion Against Micron.....................................12

    III.    District Court Litigation .........................................................14

        A.    Katana Sued Micron in an Inappropriate Venue .............................14

        B.    Micron Defended Itself with IPRs, a Claim of Bad Faith Patent Assertion, and a Bond Motion.............................................15

        C.    Appellants Moved to Dismiss Micron's State Claims and Opposed Micron's Bond Request......................................................17

        D.    The District Court Denied Appellants' Motion to Dismiss Micron's Bad Faith Assertion Claims and Ordered a Bond that Was Conservative Under the Circumstances ............................18

        E.    The District Court Stayed the Infringement Claims Until Longhorn or Katana Chose to Post a Bond, Then Stayed All Proceedings at Appellants' Request ................................................20

IV. Micron's Motion to Dismiss .................................................21

Summary of Argument ................................................................21

Standards of Review ..................................................................24

Argument ...................................................................................25

I.   The Court Should Dismiss this Interlocutory Appeal .............................26

     A.   Appellants Have Not Presented a Jurisdictionally Proper
          Interlocutory Appeal ........................................................26

          1.   The Bond Order Is Not Appealable as an Injunction Under
               § 1292(a)(1) ............................................................26

          2.   The Bond Order Is Not an Appealable Collateral Order ..........28

     B.   Appellants Have Not Shown Entitlement to Mandamus .................31

     C.   Pendent Jurisdiction Over the Motion to Dismiss Would Be
          Inappropriate ...................................................................34

II.  Micron Stated a Claim for Relief Under the Idaho Statute .....................34

     A.   Federal Law Does Not Preempt a State Tort Claim Predicated
          on Patent Assertion if That Claim Includes Bad Faith .....................35

     B.   Micron Plausibly Pled Objective Bad Faith, So Appellant's
          As-Applied Challenge Fails..............................................38

     C.   Idaho's Bad Faith Assertion Act Is Not Facially Invalid .................41

          1.   Patent Law Does Not Preempt Idaho's Bad Faith Assertion
               Law........................................................................42

          2.   The Constitution Does Not Otherwise Nullify Idaho Law.......48

III. The District Court Did Not Abuse Its Discretion Staying
     Infringement Proceedings Until Appellants Choose to Post a Bond .......51

     A.   The District Court Did Not Misapply State Law in Ordering
          the Bond, and Any Alleged Error Would Be Harmless ..................51

B.    Federal Law Does Not Preempt the Bond Provision as
      Applied ............................................................................54

C.    If the Court Finds Error in the District Court's Bond Order,
      the Correct Remedy Would Be Vacatur, Not Reversal....................60

Conclusion....................................................................................60

Certificate of Compliance ...............................................................61

## TABLE OF AUTHORITIES

CASES                                           PAGE(S)

*800 Adept, Inc. v. Murex Sec., Ltd.*,
   539 F.3d 1354 (Fed. Cir. 2008) ......................................................... 35

*Abbas v. Foreign Pol'y Grp., LLC*,
   783 F.3d 1328 (D.C. Cir. 2015) ................................................... 56, 57

*Anderson v. City of Bessemer City, N.C.*,
   470 U.S. 564 (1985) .......................................................................... 53

*Aronson v. Quick Point Pencil Co.*,
   440 U.S. 257 (1979) .......................................................................... 44

*Bernklau v. Principi*,
   291 F.3d 795 (Fed. Cir. 2002) ......................................................... 53

*Bill Johnson's Restaurants, Inc. v. NLRB*,
   461 U.S. 731 (1983) .......................................................................... 49

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
   489 U.S. 141 (1989) .......................................................................... 43

*Bowers v. Baystate Techs., Inc.*,
   320 F.3d 1317 (Fed. Cir. 2003) ....................................................... 24

*Building Innovation Industries, L.L.C. v. Onken*,
   473 F. Supp. 2d 978 (D. Ariz. 2007) ............................................... 48

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
   157 F.3d 1340 (Fed. Cir. 1998) ....................................................... 41

*California v. ARC Am. Corp.*,
   490 U.S. 93 (1989) ............................................................................ 42

*Carson v. American Brands, Inc.*,
   450 U.S. 79 (1981) ........................................................... 4, 21, 26, 28

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ............................................................................ 47

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004) ........................................................................ 31

*Cohen v. Beneficial Industrial Loan Corp.*,
337 U.S. 541 (1949) .................................................................. 28, 30

*Concept Design Elecs. & Mfg. v. Duplitronics, Inc.*,
52 F.3d 342 (Fed. Cir. 1995) ......................................................... 50

*DexCom, Inc. v. Abbott Diabetes Care, Inc.*,
89 F.4th 1370 (Fed. Cir. 2024) ...................................................... 56

*Donlon Industries, Inc. v. Forte*,
402 F.2d 935 (2d Cir. 1968) ........................................................... 30

*Dow Chem. Co. v. Exxon Corp.*,
139 F.3d 1470 (Fed. Cir. 1998) .......................................... 36, 47, 48

*Energy Heating, LLC v. Heat On-The-Fly, LLC*,
889 F.3d 1291 (Fed. Cir. 2018) ...................................... 35, 36, 48, 55

*Entegris, Inc. v. Pall Corp.*,
490 F.3d 1340 (Fed. Cir. 2007) ...................................................... 34

*First Interstate Bank of Billings v. United States*,
61 F.3d 876 (Fed. Cir. 1995) ......................................................... 60

*Gasperini v. Ctr. for Humanities, Inc.*,
518 U.S. 415 (1996) ....................................................................... 57

*Globetrotter Software, Inc. v. Elan Computer Group*,
362 F.3d 1367 (Fed. Cir. 2004) ............................................... *passim*

*Godin v. Schencks*,
629 F.3d 79 (1st Cir. 2010) ............................................................ 58

*Golan v. Pingel Enter., Inc.*,
310 F.3d 1360 (Fed. Cir. 2002) .......................................... 36, 41, 55

*Gulfstream Aerospace Corp. v. Maycamas Corp.*,
485 U.S. 271 (1988) ....................................................................... 27

*Hunter Douglas Inc. v. Harmonic Design, Inc.*,
    153 F.3d 1318 (Fed. Cir. 1998) ............................................................35, 43, 48

*Hydranautics v. FilmTec Corp.*,
    204 F.3d 880 (9th Cir. 2000) ...............................................................8, 50

*Ice Castles, LLC v. Labelle Lake Ice Palace, LLC*,
    No. 18-cv-00571, 2021 WL 3085479 (D. Idaho July 21, 2021) .......................16

*Impax Lab'ys, Inc. v. Aventis Pharms. Inc.*,
    468 F.3d 1366 (Fed. Cir. 2006) .........................................................51

*In re Cordis Corp.*,
    769 F.2d 733 (Fed. Cir. 1985) ...........................................................33

*In re Deutsche Bank Trust Co.*,
    605 F.3d 1373 (Fed. Cir. 2010) .........................................................33

*In re Shared Memory Graphics LLC*,
    659 F.3d 1336 (Fed. Cir. 2011) .....................................................32, 33

*In re Sumitomo Copper Litigation*,
    262 F.3d 134 (2d Cir. 2001) .............................................................32

*In re United States*,
    541 F.2d 463 (4th Cir. 1976) ...........................................................30

*K.W. ex rel. D.W. v. Armstrong*,
    789 F.3d 962 (9th Cir. 2015) ...........................................................25

*Kewanee Oil Co. v. Bicron Corp.*,
    416 U.S. 470 (1974)......................................................................36

*Klocke v. Watson*,
    936 F.3d 240 (5th Cir. 2019) .......................................................56, 57

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)......................................................................55

*Landmark Tech., LLC v. Azure Farms, Inc.*,
    No. 18-cv-1568, 2020 WL 1430088 (D. Or. Mar. 24, 2020) .......................37, 45

*Loctite Corp. v. Ultraseal Ltd.*,
  781 F.2d 861 (Fed. Cir. 1985) ........................................................44, 45

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
  925 F.3d 1225 (Fed. Cir. 2019) ...........................................................12

*Lowder v. DHS*,
  504 F.3d 1378 (Fed. Cir. 2007) ...........................................................51

*MarcTec, LLC v. Johnson & Johnson*,
  664 F.3d 907 (Fed. Cir. 2012) .............................................................39

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996)..............................................................................42

*Microsoft Corp. v. Baker*,
  582 U.S. 23 (2017)................................................................................32

*Mirafi, Inc. v. Murphy*,
  928 F.2d 410 (Fed. Cir. 1991) .............................................................50

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985)........................................................................29, 30

*Mod. Font Applications LLC v. Alaska Airlines, Inc.*,
  56 F.4th 981 (Fed. Cir. 2022) ..............................................................30

*Montserrat Overseas Holdings, S.A. v. Larsen*,
  709 F.2d 22 (9th Cir. 1983) .................................................................24

*NAPCO, Inc. v. Landmark Tech. A, LLC*,
  555 F. Supp. 3d 189 (M.D.N.C. 2021) .............................37, 42, 45, 46

*Nat. Res. Def. Council v. Sw. Marine, Inc.*,
  236 F.3d 985 (9th Cir. 2000) ...............................................................25

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014)..................................................................44, 47, 57

*Olympic Forest Coal. v. Coast Seafoods Co.*,
  884 F.3d 901 (9th Cir. 2018) ...............................................................24

*Orange Cnty. v. Hongkong & Shanghai Banking Corp.*,
    52 F.3d 821 (9th Cir. 1995) ...................................................27

*Preminger v. Peake*,
    552 F.3d 757 (9th Cir. 2008) .................................................25

*Puritan Med. Prods. Co. v. Copan Italia S.p.A.*,
    188 A.3d 853 (Me. 2018).................................................37, 45

*Quantum Corp. v. Tandon Corp.*,
    940 F.2d 642 (Fed. Cir. 1991) ...............................................30

*Reck-n-Rack LLC v. Just Encase Prods. Inc.*,
    649 F. Supp. 3d 734 (E.D. Wis. 2023) ...................................45

*Richardson-Merrell, Inc. v. Koller*,
    472 U.S. 424 (1985).........................................................29, 30

*SafeTCare Mfg., Inc. v. Tele-Made, Inc.*,
    497 F.3d 1262 (Fed. Cir. 2007) .............................................24

*Setty v. Shrinivas Sugandhalaya LLP*,
    3 F.4th 1166 (9th Cir. 2021) .................................................24

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010).........................................................56, 57

*SmithKline Beecham Corp. v. Apotex Corp.*,
    439 F.3d 1312 (Fed. Cir. 2006) .............................................48

*Spence P.C. v. Nordic Interactive Techs., LLC*,
    No. 22-cv-03363, ECF No. 20 (N.D. Ill. Sept. 5, 2022) .......11

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
    657 F.3d 1349 (Fed. Cir. 2011) .............................................27

*SSI Techs., LLC v. Dongguan Zhengyang Elec. Mech. Ltd.*,
    59 F.4th 1328 (Fed. Cir. 2023) .............................................56

*Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*,
    339 U.S. 684 (1950).............................................................29

*Tenneco Resins, Inc. v. Reeves Bros., Inc.*,
   736 F.2d 1508 (Fed. Cir. 1984) .........................................................30

*Triple7Vaping.com, LLC v. Shipping & Transit LLC*,
   No. 16-cv-80855, 2017 WL 5239874 (S.D. Fla. Feb. 6, 2017)...................37, 45

*U.S. Aluminum Corp./Texas v. Alumax, Inc.*,
   831 F.2d 878 (9th Cir. 1987) .............................................................50

*Ultra-Precision Mfg. v. Ford Motor Co.*,
   411 F.3d 1369 (Fed. Cir. 2005) .........................................................43

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
   190 F.3d 963 (9th Cir. 1999) .............................................................58

*United States v. Hansen*,
   599 U.S. 762 (2023).......................................................................41, 49

*United States v. Stevens*,
   559 U.S. 460 (2010).........................................................................49

*Versata Software, Inc. v. Callidus Software, Inc.*,
   780 F.3d 1134 (Fed. Cir. 2015) .........................................................24

*W. Pac. Fisheries, Inc. v. SS President Grant*,
   730 F.2d 1280 (9th Cir. 1984) ...........................................................51

*Washington v. Landmark Tech. A, LLC*,
   637 F. Supp. 3d 1154 (W.D. Wash. 2022) ...........................37, 45, 46

*Waymo LLC v. Uber Techs., Inc.*,
   870 F.3d 1350 (Fed. Cir. 2017) .................................................24, 33

*Willis v. Pac. Mar. Ass'n*,
   244 F.3d 675 (9th Cir. 2001) .............................................................55

*Woodard v. Sage Prods., Inc.*,
   818 F.2d 841 (Fed. Cir. 1987) .........................................................27

*Zenith Elecs. Corp. v. Exzec, Inc.*,
   182 F.3d 1340 (Fed. Cir. 1999) ...........................................36, 43, 44

**S**TATUTES

28 U.S.C. § 1292 ....................................................................3, 21, 26, 27

28 U.S.C. § 1295(a)(1) .............................................................................3

28 U.S.C. § 1651 ......................................................................................3

35 U.S.C. § 285 ...............................................................................*passim*

Ala. Code 1975 § 8-12A-2 ...................................................................7, 8

Ariz. Rev. Stat. § 44-1422 .......................................................................8

Colo. Rev. Stat. Ann. § 6-12-102(1) ..................................................7, 49

Fla. Stat. § 501.991(3) .............................................................................5

Fla. Stat. § 501.995 .................................................................................8

Ga. Code § 10-1-770(3)(B) ......................................................................7

Ga. Code § 10-1-771 ............................................................................7, 8

Ga. Code § 10-1-772 ................................................................................9

Ga. Code § 10-1-773 ................................................................................8

Idaho Code § 48-1701 ...................................................................5, 42, 43

Idaho Code § 48-1703 ......................................................................49, 53

Idaho Code § 48-1706 ........................................................6, 20, 45, 46

Idaho Code § 48-1707 ...................................................................*passim*

Ind. Code § 24-11-2-5(2).........................................................................7

Ind. Code § 24-11-3................................................................................7, 8

Ind. Code § 24-11-4-1 ..............................................................................9

Ind. Code § 24-11-5-1 ..............................................................................8

Kan. Stat. Ann. § 50-6,140(b) ..................................................................7

La. Rev. Stat. Ann. § 51:1428(B) ............................................................7, 8

Md. Code, Com. Law § 11-1601 ...................................................................7

Md. Code, Com. Law § 11-1603 ...............................................................7, 8

Md. Code, Com. Law § 11-1605 ...................................................................8

Me. Stat. tit. 14, § 8701 ................................................................7, 8, 9, 49

Mich. Comp. Laws § 446.165 ......................................................................7

Mich. Comp. Laws § 446.169(2)(d) .............................................................8

Minn. Stat. § 325D.72(2)(a) .........................................................................7

Miss. Code § 75-24-355 ...............................................................................9

Miss. Code § 75-24-357 ...............................................................................8

Mo. Rev. Stat. § 416.654 .............................................................................8

Mont. Code § 30-13-153 ..............................................................................9

N.C. Gen. Stat. § 75-141 .............................................................................5

N.C. Gen. Stat. § 75-142 .............................................................................7

N.C. Gen. Stat. § 75-143 .........................................................................7, 8

N.C. Gen. Stat. § 75-144 .............................................................................9

N.C. Gen. Stat. § 75-145 .......................................................................8, 50

N.D. Cent. Code § 51-36-01(2)(b) ...............................................................7

N.D. Cent. Code § 51-36-02 .........................................................................7

N.D. Cent. Code § 51-36-05 .........................................................................9

N.D. Cent. Code § 51-36-06 .........................................................................8

N.H. Rev. Stat. § 359-M:1(I)(b) ...................................................................7

N.H. Rev. Stat. § 359-M:2 ......................................................................7, 8

N.H. Rev. Stat. § 359-M:3 ................................................. 9

N.H. Rev. Stat. § 359-M:4 ................................................. 8

Okla. Stat. tit. 23, § 112(A) ............................................. 7

Okla. Stat. tit. 23, § 113(C) ............................................. 9

Okla. Stat. tit. 23, § 114 ................................................ 8

R.I. Gen. Laws § 6-41 .................................................. 7, 8

S.D. Codified Laws § 37-36-1(2)(b) ....................................... 7

S.D. Codified Laws § 37-36-2 ............................................. 7

S.D. Codified Laws § 37-36-5 ............................................. 9

S.D. Codified Laws § 37-36-7 ............................................. 8

Tenn. Code § 29-10-102(a) ............................................. 7, 50

Tenn. Code § 29-10-103(c) ................................................ 9

Tenn. Code § 29-10-104 ................................................... 8

Tex. Code Ann. § 17.952(a) ............................................... 7

Utah Code Ann. § 78B-6-1905 .............................................. 9

Utah Code § 78B-6-1903 ................................................... 8

Utah Code § 78B-6-1904(1) ................................................ 8

Vt. Stat. tit. 9, § 4196(2)(B) ........................................... 7

Vt. Stat. tit. 9, § 4197 .............................................. 7, 8

Vt. Stat. tit. 9, § 4198 ................................................. 9

Vt. Stat. tit. 9, § 4199(b) .............................................. 8

Wash. Rev. Code § 19.350.005 ............................................. 5

Wis. Stat. § 100.197 .................................................. 8, 50

Wyo. Stat. Ann. § 40-1-201(a)(ii)(B) .......................................................... 7

Wyo. Stat. Ann. § 40-1-202(a) .................................................................. 7

**OTHER AUTHORITIES**

U.S. Constitution, Amendment I .................................................. 35, 37, 48

Federal Rule of Civil Procedure 4(c) ...................................................... 50

Federal Rule of Civil Procedure 11 ...................................... 47, 56, 57, 58

Federal Rule of Civil Procedure 12 ................................................. *passim*

Federal Rule of Civil Procedure 23(f) .................................................... 32

## TABLE OF ABBREVIATIONS AND CONVENTIONS

| | |
|---|---|
| Appellants | Katana Silicon Technologies LLC and Longhorn IP LLC, collectively |
| BlueBr__ | Appellants' principal brief page __ |
| Appx__ | joint appendix page __ |
| IPR | *inter partes* review |
| Micron | Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC, collectively |
| Katana | Katana Silicon Technologies LLC |
| Longhorn | Longhorn IP LLC |

## STATEMENT OF RELATED CASES

These civil actions have not previously been before this or any other appellate court. The following cases may directly affect or be directly affected by this Court's decision in the pending case: *Micron Tech., Inc. v. Katana Silicon Techs., LLC*, Nos. IPR2023-00071, IPR2023-00072, IPR2023-00073 (PTAB).

## INTRODUCTION

Like more than thirty other states, Idaho has enacted legislation to defend its citizens and businesses against an increasingly common threat—bad faith patent assertion.  Micron, an Idaho-based company, knew that threat all too well as a world leader in semiconductor manufacturing and innovation.  So when Appellants targeted Micron with bad faith infringement claims, Micron responded in part by seeking relief under the Idaho bad faith assertion statute (the "Idaho law").  Appellants then moved to dismiss Micron's state-law claims.  But the district court concluded that Micron had pled a viable cause of action—including detailed factual assertions going to both objective and subjective bad faith.  The district court also granted Micron's motion for a statutory bond and ordered Appellants to post security equal to a reasonable estimate of their liability if Micron ultimately succeeds on its state-law claims.

Appellants insisted on an immediate interlocutory appeal, but they have neither jurisdiction nor jurisprudence on their side.  As a threshold matter, this appeal is not jurisdictionally proper or mandamus-worthy.  Appellants bear the burden to establish jurisdiction for interlocutory review, but each jurisdictional theory asserted here rests on a premise Appellants never back up—that the bond order prevents them from litigating at all.  Despite repeated opportunities, Appellants have not sought a smaller bond, have not sought a waiver of the bond for good cause (as permitted by

Idaho statute), and have never said—much less offered evidence—that they cannot pay. With nothing more than amorphous assertions that they have been "*effectively enjoined*" or face a "*risk* of irreparable harm," Appellants' jurisdictional theories collapse. This is not an immediately appealable injunction-like or collateral order. Appellants have shown no indisputable right to relief and no reason they cannot appeal after judgment on Micron's bad faith assertion claims.

On the merits, Idaho's bad faith assertion law and the district court's rulings are constitutionally sound. Through a long line of cases that Appellants barely mention, this Court has already answered the questions Appellants raise here about federal preemption of tort claims against wrongful patent assertion. The Idaho Legislature recognized the longstanding boundaries this Court has established to prevent unconstitutional conflicts between federal patent law and state commercial statutes and, consistent with those precedents, carefully circumscribed its own law to apply only when infringement has been asserted in *bad faith*. Appellants characterize Idaho's approach as an "extreme outlier," but its bad faith assertion law fits squarely within the norm and readily passes constitutional muster.

In assessing Appellants' Rule 12(b)(6) arguments, the district court also correctly applied Rule 12's plausibility standard to the in-depth, concrete factual allegations Micron pled in support of its claims for bad faith assertion. Moreover, the district court based its state-law bond order on a conservative estimate of litigation

costs and recoverable damages under the Idaho statute, Micron presented extensive evidence showing it is likely to prevail on its claims that Appellants asserted infringement in bad faith, and any amount posted in bond would be returned if Micron does not prevail. The bond simply ensures that there will be money to make Micron whole if it succeeds on its bad faith assertion claims, despite Appellants' intentionally undercapitalized structure.

This Court should dismiss for lack of appellate jurisdiction to review the interlocutory determinations at issue. If the Court concludes it has jurisdiction, however, it should affirm the denial of Appellants' motion to dismiss. It should additionally affirm or, at most remand for further factual determinations, the district court's bond determination.

## JURISDICTION

Appellants' jurisdictional statement is incorrect. The order on appeal is not an appealable final judgment under 28 U.S.C. § 1295(a)(1) and is not a properly appealable interlocutory order under 28 U.S.C. § 1292(a)(1), 1292(c), or otherwise. Mandamus under 28 U.S.C. § 1651 is also inappropriate.

# ISSUE STATEMENT

### *Concerning Appellate Jurisdiction:*

1.  Does this Court lack appellate jurisdiction because the district court's interlocutory bond order is not an injunction, fails the *Carson* test for injunction-like orders, and is not an appealable collateral order?

2.  Have Appellants failed to show entitlement to mandamus because they have no clear and indisputable right to relief and could obtain adequate review after final judgment?

3.  Even if this Court assumes jurisdiction over the bond order, should it decline discretionary pendent jurisdiction over Appellants' motion to dismiss?

### *Concerning the Merits:*

1.  Did Micron state a claim for relief based on bad faith patent assertion under Idaho state law?  Specifically, did Micron plausibly allege that Appellants' infringement allegations were subjectively and objectively baseless?

2.  Does federal law facially preempt Idaho's bad faith assertion statute?

3.  Did the district court abuse its discretion when it stayed the infringement case pending Appellants' statutory bond payment?  Specifically, (a) did the district court correctly apply the bond provision of Idaho's bad faith patent assertion statute (and if so, was any asserted error harmless), and (b) does federal law preempt the bond provision of Idaho's bad faith statute as applied in this case?

**STATEMENT OF THE CASE**

## I.    Statutory Background

States know best the concerns of their citizens, and many have recognized that abusive patent assertion by undercapitalized shell companies has become a substantial problem.  Legislatures like Idaho's have found that bad faith patent assertion can harm local companies, which may feel they have no practical choice but "to settle and to pay a licensing fee, even if the claim is meritless," and that money spent responding is "no longer available to invest, produce new products, expand or hire new workers," thus harming the state economy.  Idaho Code § 48-1701(1); *see also, e.g.*, Wash. Rev. Code § 19.350.005; Fla. Stat. § 501.991(3); N.C. Gen. Stat. § 75-141.  At least thirty-three states have passed their own consumer protection statutes to protect their citizens from abusive patent assertion.[1]

The Idaho Legislature found that patents are "essential to encouraging innovation" and that patents "create an incentive to invest in research and innovation," Idaho Code § 48-1701(1)(b), and the Legislature made clear that it "[did] not wish to interfere with the good faith enforcement of patents," *id.* § 48-1701(1)(c).  But Idaho's elected representatives also found that "[a]busive patent litigation … can

---

[1]   For a convenient compilation of state laws, see:

https://web.archive.org/web/20220126230744/https://www.patentprogress.org/patent-progress-legislation-guides/patent-progresss-guide-state-patent-legislation/.

harm Idaho companies" by forcing them into "expensive and protracted litigation" despite meritless claims. *Id.* § 48-1701(1)(d). It found that bad faith assertions "impose a significant burden on individual Idaho businesses" and "undermine Idaho's efforts to attract" innovative companies, thereby "harming Idaho's economy." *Id.* § 48-1701(1)(e). The Idaho Legislature therefore saw fit to enact "narrowly focused" legislation to "protect Idaho businesses from *abusive and bad faith assertions* of patent infringement." *Id.* § 48-1701(2) (emphasis added).

The result makes it "unlawful for a person to make a bad faith assertion of patent infringement in a demand letter, a complaint or any other communication." *Id.* § 48-1703(1). Doing so is an "unlawful, unfair and deceptive act or practice in trade or commerce" under Idaho's consumer protection act. *Id.* § 48-1703(4).

Idaho permits targets of bad faith patent assertion to assert a private right of action. *Id.* § 48-1706(1). If the target proves it was subjected to bad faith assertion, it may seek equitable relief or damages, including costs, fees, and three-fold exemplary damages. *Id.* § 48-1706(1). To guide courts in assessing whether a patent has been asserted in bad faith, the Idaho law provides factors a court may consider, like the adequacy of pre-suit analysis, the opacity of a demand letter, the unreasonable nature of demand terms, and the deceptiveness of communications. *Id.* § 48-1703(2). In addition, the law identifies safe-harbor factors that can counter evidence of bad faith, like good faith negotiation efforts, investment in the patented technology, and

any history of previous successful enforcement.  *Id.* § 48-1703(3).  On both sides of the ledger, Idaho's law also includes catch-all provisions encompassing "[a]ny other factor the court finds relevant."  *Id.* § 48-1703(2)(i), (3)(d).

Other states have followed a similar design.  Most broadly identify actionable misconduct as bad faith communications or assertions alleging patent infringement, necessarily allowing for the prospect of a litigation complaint as an "assertion" or "communication."[2]  Many further reference parties that have been sued for infringement as "targets" protected under state law.[3]  Most suggest factors that a court can consider in evaluating bad faith and many also include factors that can weigh against

---

[2]  *See, e.g.*, Ala. Code 1975 § 8-12A-2(a); Colo. Rev. Stat. Ann. § 6-12-102(1); Ga. Code § 10-1-771(a); Ind. Code § 24-11-3-1; Kan. Stat. Ann. § 50-6,140(b); La. Rev. Stat. Ann. § 51:1428(B)(1); Me. Stat. tit. 14, § 8701(2); Md. Code, Com. Law § 11-1603(a); Mich. Comp. Laws § 446.165; Minn. Stat. § 325D.72(2)(a); N.H. Rev. Stat. § 359-M:2(I); N.C. Gen. Stat. § 75-143(a); N.D. Cent. Code § 51-36-02; Okla. Stat. tit. 23, § 112(A); R.I. Gen. Laws § 6-41.1-3(a); S.D. Codified Laws § 37-36-2; Tenn. Code Ann. § 29-10-102(a); Tex. Code Ann. §17.952(a); Vt. Stat. tit. 9, § 4197(a); Wyo. Stat. Ann. § 40-1-202(a).

[3]  *See, e.g.*, Ga. Code § 10-1-770(3)(B); Ind. Code § 24-11-2-5(2); Me. Stat. tit. 14, § 8701(1)(C)(2); Md. Code, Com. Law § 11-1601(e)(2); N.H. Rev. Stat. § 359-M:1(I)(b); N.C. Gen. Stat. § 75-142(6)(b); N.D. Cent. Code § 51-36-01(2)(b); R.I. Gen. Laws § 6-41.1-2(3)(ii); S.D. Codified Laws § 37-36-1(2)(b); Vt. Stat. tit. 9, § 4196(2)(B); Wyo. Stat. Ann. § 40-1-201(a)(ii)(B).

bad faith.[4]  Like Idaho, many states created private rights of action[5] and authorize treble damages.[6]  The various bad faith assertion statutes are typically narrower, moreover, than prior state causes of action that already covered filing bad faith patent complaints.  *E.g.*, *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885-87 (9th Cir. 2000) (addressing malicious prosecution claim based on filing of a patent infringement action).

Bad faith assertion statutes became widespread because, by the time of enactment, bad faith patent assertion had turned into a common and lucrative cottage industry.  If a bad faith complaint makes it past the pleadings stage—as most

---

[4]   *See, e.g.*, Ala. Code 1975 § 8-12A-2(e)-(f); Ariz. Rev. Stat. § 44-1422; Ga. Code § 10-1-771(b)-(c); Ind. Code §§ 24-11-3-2, 24-11-3-3; La. Rev. Stat. Ann. § 51:1428(B)(2)-(3); Md. Code, Com. Law § 11-1603; Me. Stat. tit. 14, § 8701(3); N.H. Rev. Stat. § 359-M:2(II)-(III); N.C. Gen. Stat. § 75-143(a)-(b); R.I. Gen. Laws § 6-41.1-3(b)-(c); Utah Code § 78B-6-1903; Vt. Stat. tit. 9, § 4197.

[5]   *See, e.g.*, Ala. Code § 8-12A-2(d); Fla. Stat. § 501.995; Ga. Code §§ 10-1-773(a), (c); Ind. Code § 24-11-5-1; Me. Stat. tit. 14, § 8701(3); Md. Code, Com. Law § 11-1605; Miss. Code § 75-24-357; Mo. Rev. Stat. § 416.654; N.H. Rev. Stat. § 359-M:4; N.C. Gen. Stat. § 75-145(b); N.D. Cent. Code § 51-36-06; Okla. Stat. tit. 23, § 114; S.D. Codified Laws § 37-36-7; Tenn. Code § 29-10-104; Utah Code § 78B-6-1904(1); Vt. Stat. tit. 9, § 4199(b); Wis. Stat. § 100.197(3)(b).

[6]   *See, e.g.*, Ala. Code § 8-12A-2(d)(4); Ga. Code § 10-1-773(c); Ind. Code § 24-11-5-1(d)(3); Me. Stat. tit. 14, § 8701(4)(D); Md. Code, Com. Law § 11-1605(b)(2); Mich. Comp. Laws § 446.169(2)(d); Miss. Code § 75-24-357(b); N.C. Gen. Stat. § 75-145(b)(4); N.D. Cent. Code § 51-36-06(4); Okla. Stat. tit. 23, § 114(3); R.I. Gen. Laws § 6-41.1-6(b)(4); S.D. Codified Laws § 37-36-7(4); Tenn. Code § 29-10-104(2); Utah Code § 78B-6-1904(1)(d); Vt. Stat. tit. 9, § 4199(b)(4); Wis. Stat. § 100.197(3)(b)(4).

complaints do—many district courts are reluctant to consider dispositive motions, or at least defer them until after discovery.  It becomes more economically rational for a defendant to settle rather than commit the time and resources to litigate toward even a sure-fire merits win.  An unscrupulous plaintiff can create further imbalance by shielding itself from costs and consequences (for instance, by asserting patents through an undercapitalized, judgment-proof shell company) while forcing a defendant to expend millions of dollars in discovery and other costs, often in a forum distant from their home state.

To mitigate the lopsided risk profile that characterizes many bad faith assertions, many states have included bond provisions in their respective bad faith assertion laws.[7]  Some have fixed caps.  Others are set at good faith estimates of litigation costs and damages, which may include treble damages.[8]  Either way, the bonds are refundable should the accused infringer not prevail on its bad faith assertion claim.

Idaho's law authorizes courts to require a bond upon "a finding by the court that a target has established a reasonable likelihood that a person has made a bad

---

[7]  *See, e.g.*, Ga. Code § 10-1-772; Idaho Code § 48-1707; Ind. Code § 24-11-4-1; Me. Stat. tit. 14, § 8701(6); Miss. Code § 75-24-355; Mont. Code § 30-13-153; N.H. Rev. Stat. § 359-M:3; N.C. Gen. Stat. § 75-144; N.D. Cent. Code § 51-36-05; Okla. Stat. tit. 23, § 113(C); S.D. Codified Laws § 37-36-5; Tenn. Code § 29-10-103(c); Utah Code Ann. § 78B-6-1905; Vt. Stat. tit. 9, § 4198.

[8]  Idaho Code § 48-1707; Miss. Code § 75-24-355(3); Mont. Code § 30-13-153(4); Okla. Stat. tit. 23, § 113(C); Tenn. Code Ann. § 29-10-103(c).

faith assertion of patent infringement." Idaho Code § 48-1707. Idaho set the bond at "an amount equal to a good faith estimate of the target's costs to litigate the claim and amounts reasonably likely to be recovered," which can also include additional exemplary damages of three times the total of damages, costs, and fees. *Id.* §§ 48-1707, 48-1706(1). Courts can waive the bond requirement if a party accused of bad faith assertion has sufficient assets or "for other good cause shown." *Id.* § 48-1707.

## II.    The Parties and Their History

### A.    Micron Is a Computer-Memory Innovator and Patentee

Micron is Idaho's most successful technology company, founded in 1978 by four people in the basement of a Boise dentist office. Appx410. Micron broke ground on its first semiconductor fabrication plant two years later, and by 1994 it had earned a spot in the Fortune 500. *Id.* To this day, Micron does much of its research, development, and testing at its Boise headquarters, and it employs many thousands of people in Idaho. *Id.*; Appx2555.

Micron has succeeded through tireless innovation. It depends on the patent system to safeguard its own inventions and has generated more than 50,000 patents worldwide. Appx410; Appx483. Micron thus deeply respects intellectual property and takes infringement accusations seriously.

### B.    Longhorn and Katana Exist to Sue Others

Longhorn and Katana are patent assertion entities.  Longhorn styles itself an adviser to "clients" (such as Katana) that are created and organized, as a legal matter, as sister companies to Longhorn.  Appx485.  But that formal organization simply amounts to Longhorn "advising" itself under many names.  Using this pattern, Longhorn forms shell companies—each termed a "portfolio" entity—and causes each shell to buy patents for assertion purposes.  *See* Appx389-90; Appx487.  Khaled Fekih-Romdhane controls Longhorn, and he owns and controls each "portfolio" company, too.  Appx389-90; *see also* Final Arbitration Award, *Spence P.C. v. Nordic Interactive Techs., LLC*, No. 22-cv-03363, ECF No. 20 at 3-4 (N.D. Ill. Sept. 5, 2022); *id.*, ECF No. 27 (unsealing same).  He does so either in his own name, in his partner's name, or through another of his shell entities known as Tanit Ventures.  Appx490-564 (documenting ownership).  All of those companies share one of two addresses, one of which is Mr. Fekih-Romdhane's home.  *Id.*; *see also* Appx389-90.

Longhorn's holding companies include entities with names such as Katana, Trenchant Blade, Hannibal, Hamilcar, Carthage, and Dido.  Appx421-22; Appx489-565; Appx1664; *see also* Appx1215.  They buy patents in their own names, while Longhorn touts those portfolios as its own.  *See* Appx1039.  Longhorn's litigation strategy relies on the threat of steep defense fees to extract nuisance-value settlements.  Defendants like Micron soon realize that any merits victory would be

pyrrhic: not only would they spend more money defending the case than the holding company demanded, but Longhorn's shell game effectively nullifies fee-shifting provisions that ordinarily would discourage baseless litigation.

## C. Longhorn and Katana Continued a Pattern of Bad Faith, Nuisance Patent Assertion Against Micron

One of Longhorn's shells is Lone Star.  Through that company, Longhorn targeted Micron in 2016 in the Eastern District of Texas alleging infringement of seven patents.  *Lone Star Silicon Innovations LLC v. Micron Tech., Inc.*, No. 2:16-cv-1116 (E.D. Tex.); Appx410.  Micron secured transfer to the Northern District of California, Appx655, which later characterized Lone Star's participation in strategic efforts to "shield [the true patentee] from counterclaims while retaining a way to reap the monetary benefits of suing" as a "litigation gimmick."  Appx657, Appx667.[9] Micron also petitioned for *inter partes* review of all seven patents.  Appx391-92. Lone Star abandoned numerous claims, and the PTAB found many others unpatent-able, collectively resulting in the cancellation of all challenged claims.  Appx671;

---

[9]  Appellants say (at 27) that this Court repudiated the district court's assessment and "recognized Lone Star's innocence," but that is not so.  This Court did not express a view on the district court's criticisms because any gimmickry as to patent *ownership* was beside the point for purposes of the "mandatory, not discretionary" *joinder* issue on appeal.  *See Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1238 (Fed. Cir. 2019).

Appx676; Appx718; Appx768; Appx810; Appx846; Appx897; Appx941; *see* Appx392. The litigation then settled for a nuisance amount. Appx410-11.

As Lone Star's campaign fizzled, another Longhorn entity, Katana, began peppering Micron with infringement accusations. Appellants sent a letter in August 2018 demanding that Micron license Katana's patents. Appx944-45; Appx411. That letter contained no infringement theory. Appx944-45; Appx411. It listed United States Patents RE38,806 and 6,352,879, both of which were set to expire four months later. Appx945. Appellants soon sent another letter, but it likewise lacked substantive detail. Appx999-1000; Appx411. Although those two letters were sent just a month apart, they cited different sets of patents. The second letter, without acknowledgement or explanation, dropped the '879 patent and added United States Patent 6,731,013. Appx1000.[10]

A month later, Appellants requested a meeting, still not having offered any theory of infringement. Appx411; Appx1039. Micron nonetheless agreed to meet, and Mr. Fekih-Romdhane traveled to Boise in November 2018. Appx411. Appellants finally sent claim charts just before that meeting, Appx411-12, but those charts confirmed the baselessness of their assertions. Micron brought its technical team to the meeting to explain why Micron did not infringe and why the patents were invalid.

---

[10] Appellants bought the '806, '879, and '013 patents in 2018, when all three were near the end of their lives. *See* Appx3; Appx31; Appx56; Appx80.

*See* Appx1043-44. Appellants now say Micron blew them off. BlueBr17. But Micron took their allegations seriously, treated them courteously, and provided detailed analyses of noninfringement and invalidity. At the time, Appellants thanked Micron for "serious consideration given to the Katana patent portfolio" and for a "productive and fruitful conversation." Appx1044-45.

After a few more rounds of correspondence, Appellants went quiet in the spring of 2019. Appx412.

## III. District Court Litigation

More than three years later, Katana unexpectedly resurfaced in March 2022. It sued Micron alleging infringement of the '806, '879, and '013 patents. Appx2340, Appx2344-45. By then all three asserted patents had expired: the '086 and '879 patents expired in 2018, and the '013 patent in 2021. Appx3.

### A. Katana Sued Micron in an Inappropriate Venue

Katana initially sued in the Western District of Texas, and Micron sought transfer to the District of Idaho because the dispute's center of gravity plainly fell in Boise, not Austin. Boise is where Micron's headquarters lie, where its relevant research and development occurs, where its witnesses work, and where its records reside. Appx2536-37. Katana does not itself reside in the Western District of Texas and could articulate no local connection to the lawsuit. Appx2341; Appx2747-48. Katana initially opposed Micron's transfer motion, forcing Micron to incur briefing

costs, which included two declarations and nineteen exhibits. *See* Appx126. When it came time to respond, however, Katana declined to defend its venue choice and instead announced that it did not oppose transfer after all. Appx2747-48. The Texas court then transferred the case to Idaho where it had belonged in the first place. Appx2749. Katana's about-face exemplified Appellants' bad faith pattern of inflicting expenses while not taking any economic risk themselves.

### B. Micron Defended Itself with IPRs, a Claim of Bad Faith Patent Assertion, and a Bond Motion

Facing another nuisance Longhorn suit, Micron sought to protect itself. For starters, Micron filed additional IPR petitions. *Micron Tech., Inc. v. Katana Silicon Techs. LLC*, Nos. IPR2023-00071, -00072 ('806 patent), No. IPR2023-00073 ('879 patent), No. IPR2023-00105 ('013 patent) (PTAB). While the Board declined to institute the '013 IPR for petition-specific reasons unrelated to the merits here, Appx1997, it did institute the '806 and '879 IPRs in May 2023.

In those proceedings, the Board issued final written decisions holding all challenged claims of the '806 and '879 patents unpatentable over the prior art. *Micron Tech., Inc. v. Katana Silicon Techs., LLC*, No. 2023-00071, Paper No. 39 (PTAB May 13, 2024); No. 2023-00072, Paper No. 42 (PTAB May 13, 2024); No. IPR2023-00073, Paper No. 40 (PTAB May 13, 2024). In other words, all asserted claims of two of the three patents underlying Micron's bad faith assertion claims have now been held unpatentable by the PTAB.

Micron also raised claims under Idaho law for bad faith patent assertion: a counterclaim against Katana, the nominal patent plaintiff (Appx2505-29),[11] and a discrete lawsuit against Longhorn, its puppeteer (Appx150-75), originally filed in Idaho state court to enforce the Idaho statute (Appx150; Appx3-4).[12] Micron filed a bond motion with its suit against Longhorn in state court. Appx316-19. Longhorn removed the state case to Idaho federal court, Appx133, where it was treated together with the transferred Katana case. The two cases were never formally consolidated and so have separate dockets, with near-identical briefing on the motions to dismiss in each docket and the briefing on the motion for bond found only in the Longhorn docket.

Without a bond in place, Longhorn's shell model could render any victory on Micron's tort claims toothless even if Micron succeeded on the merits. Of course, if Micron failed to prove its bad faith assertion claims, any bond would be returned. By contrast, if the court ultimately found bad faith, the bond would simply ensure that Appellants paid what they owe.

---

[11]  The counterclaim against Katana included a request for a bond under § 48-1707. Appx2528.

[12]  At the time, there was a question about whether federal courts had jurisdiction to order the bond, *see Ice Castles, LLC v. Labelle Lake Ice Palace, LLC*, No. 18-cv-00571, 2021 WL 3085479, at *3 (D. Idaho July 21, 2021), so Micron filed its claim against Longhorn in state court to ensure that the bond would be available. After removal, the district court confirmed its power to order a bond. Appx27-28.

### C.    Appellants Moved to Dismiss Micron's State Claims and Opposed Micron's Bond Request

Appellants asserted a litany of arguments in seeking to dismiss Micron's bad faith assertion claims or avoid posting a bond.

Regarding their motions to dismiss under Rule 12(b)(6), Appellants first argued that Micron's state-law claims were time barred, Appx367-70, but the district court disagreed, Appx19-21, and Appellants do not challenge that ruling.

They next argued that federal law preempted Idaho's bad faith assertion statute. Appx370-76. The State intervened to defend the law and explain the policies it serves. Appx1500, Appx1510. Micron likewise explained that most states had passed similar laws and not one had been struck down, Appx1141-42, and it addressed why not one of the three kinds of preemption applied—express, field, or conflict. Appx1142. Micron noted that federal law protects *good faith* patent assertion, and that state-law torts addressing *bad faith* assertion have survived preemption under decades of precedent. Appx1142-45.

Appellants also argued under Rule 12(b)(6) that Micron had not stated a plausible claim for relief on its state-law claims. Appx376-81. In response, Micron walked through more than twenty-five pages of detailed factual assertions in its complaint and explained how those allegations, taken as true, plausibly showed both subjective and objective bad faith under the statute. Appx1149-55.

As to Micron's bond request, Appellants disputed that Longhorn could be responsible for Katana's conduct through an alter ego relationship, Appx1200-02, an argument not renewed here. Appellants also asserted that the Idaho bond provision is procedural and thus under *Erie* could not apply in federal court, Appx1202-03, but they do not renew that argument either. Micron's bond request included a mountain of evidence to establish a reasonable likelihood that Appellants asserted infringement in bad faith. Appx409-13, Appx415-17, Appx419-27. Appellants responded with about two pages of argument to dispute Micron's showing. *See* Appx1203-05. And Appellants devoted just two paragraphs to arguing the supposed unconstitutionality of the bond provision. Appx1205-06. Finally, Appellants did not meaningfully dispute the requested bond amount—they suggested only in passing that Micron had failed to provide a "good faith estimate." Appx1206.

The district court held a combined hearing on Appellants' motions to dismiss and Micron's motion for a bond. Appx1; Appx1544-45; Appx1612 (Appellants' slides); Appx1654 (Micron's slides).

### D. The District Court Denied Appellants' Motion to Dismiss Micron's Bad Faith Assertion Claims and Ordered a Bond that Was Conservative Under the Circumstances

The Idaho court held a hearing that included lengthy arguments about the evidence. *See* Appx1544 (transcript); Appx1612 (Appellants' slides); Appx1654 (Micron's slides). The district court then denied Appellants' motion to dismiss

Micron's state law claims. Appx29. The court expressly applied the federal presumption of good faith in its analysis. Appx11, Appx22, Appx26. In a detailed opinion, it rejected arguments that the Idaho law was preempted, Appx6-19, and that Micron had not plausibly pled bad faith, Appx21-26.

The district court also granted Micron's bond request. Appx28-29. The court reasoned that its "analysis on the motion to dismiss serve[d] also to show that, under the Act, a bond [was] required." Appx28. In that analysis, the district court had agreed that patents are "presumed to be asserted in good faith," Appx26, but that this presumption "may be overcome by affirmative evidence," Appx22. Micron submitted evidence to support its bond request under the statutory factors that weigh toward finding bad faith. *See, e.g.*, Appx409-13, Appx415-17, Appx419-27 (supporting declarations and three dozen exhibits). The court carefully analyzed those factors, Appx22-26, and concluded that Micron had identified "enough *affirmative evidence, if accepted as true, to overcome the presumption of good faith*" and support a finding that Appellants acted in bad faith, Appx26 (emphasis added). In doing so, the court pivoted from its focus on Rule 12(b)(6) arguments and the sufficiency of Micron's pleadings to, instead, acknowledging the specific, detailed evidence of bad faith that Micron had submitted in support of its bond motion. In other words, even when referring back to its Rule 12(b)(6) analysis, Appx28, the district court made clear

that it had considered and relied upon the abundant "affirmative evidence" of record when ruling on Micron's bond request.[13]

Idaho law capped the bond at "a good faith estimate of the target's costs to litigate the claim and amounts reasonably likely to be recovered," which can include adding three-fold exemplary damages on top of the base award. Idaho Code § 48-1707; *see id.* § 48-1706(1). The district court agreed that Micron estimated its costs in good faith, recognizing that a $1.25 million estimate for litigating a single patent was "conservative." Appx28-29; *see also* Appx412. But when extrapolating to all three asserted patents, the district court adopted a total estimate of $2 million, about half of what Micron proposed. Appx29. After accounting for potential exemplary damages, that yielded an $8 million bond amount. Appx29; *see* Idaho Code § 48-1706(1)(d).

Appellants did not post the bond, and they did not ask the district court to waive the bond for good cause. *See* Idaho Code § 48-1707.

### E.    The District Court Stayed the Infringement Claims Until Longhorn or Katana Chose to Post a Bond, Then Stayed All Proceedings at Appellants' Request

The district court put Appellants' infringement claims on a conditional pause until they paid the bond. Appx30. Appellants went on to ask for a stay of the *entire*

---

[13] Some of this evidence is summarized in Section III.A, *infra*.

litigation (including their infringement claims and Micron's bad faith assertion claims) in view of the pending IPRs and this appeal.  Appx1707-10.  The court granted Appellants' expansive stay request.  Appx2327, Appx2338-39.

## IV.    Micron's Motion to Dismiss

Longhorn and Katana appealed from the district court's interlocutory orders denying their motions to dismiss the state-law claims and granting Micron's bond motion, and those appeals were consolidated here.  Dkt. 20.  Micron asked this Court to dismiss for lack of appellate jurisdiction.  Dkt. 16.  This Court declined to resolve that jurisdictional challenge at the motions-panel stage, "deem[ing] it the better course to deny the motions in favor of the parties addressing the court's jurisdiction in their merits briefs."  Dkt. 23 at 2.

SUMMARY OF ARGUMENT

**The Court should dismiss this appeal.**  Appellants challenge two interlocutory rulings here: (1) an order denying Appellants' motions to dismiss the state-law claims and (2) an order granting Micron's bond request.  Appellants jumped the gun on both issues, and their arguments should await final judgment.

1.    Appellants have identified no sound basis for an interlocutory appeal. They first cite 28 U.S.C. § 1292(a)(1).  That provision is reserved for injunctions and injunction-like orders, but the bond here is not an injunction, and it fails the *Carson* test for injunction-like orders.  Nor did the district court's partial stay pending bond

payment suffice to confer jurisdiction, as stays are not appealable injunctions. Appellants also invoke the collateral order doctrine, but that requires targeting a determination separate from the merits and an otherwise irretrievable loss of rights. Appellants' challenge to the bond overlaps with the merits of Micron's bad faith assertion claim, and Appellants have not shown any irretrievable harm from awaiting a final judgment on those issues.

2.     Mandamus is also inappropriate. Appellants have not shown that they lack any other means for obtaining relief. They suggest that the bond amount is prohibitive but carefully avoid any direct assertion that they cannot pay. In addition, Appellants have not asked the district court to reduce or waive the bond, nor have they demonstrated that they cannot obtain relief on appeal from a final judgment or by prevailing on the merits as to Micron's bad faith assertion claims.

**The district court's rulings were correct.** If the Court concludes it can and should exercise jurisdiction to decide merits issues now, it should affirm.

1.     Micron stated a plausible claim for relief under Idaho's bad faith assertion statute. Micron pled facts relevant to both subjective and objective bad faith, and its complaint asserted numerous facts that would support a judgment in its favor. Regardless of Appellants' own contrary views about those facts, they must be taken as true for purposes of Rule 12, and Micron's pleadings amply support its claims. The district court correctly denied Appellants' motion to dismiss.

2.    Appellants argue that federal law preempts the Idaho statute.  But Appellants must show that no set of circumstances exists under which Idaho's statute is valid.  They cannot meet that standard because state laws like the one at issue here must be read to require objective and subjective baselessness, and this Court has long held that those requirements ensure constitutionality.  Federal law does not exempt bad faith patent assertion from state-law tort liability.

3.    The district court did not abuse its discretion by ordering a bond.  Appellants argue that the district court ignored evidence and did not find facts.  But at most, Appellants quibble with the form of the district court's opinion.  The district court recognized the correct standard and found that Micron satisfied it after receiving voluminous evidence and conducting a hearing where both sides discussed the evidence presented.  The law presumes that a district court considered and weighed the arguments and evidence before it when resolving a motion.  Appellants also conflate the "clear and convincing" evidentiary standard required for a final judgment of liability on Micron's bad faith assertion claims with the standard that can apply for a preliminary bond determination.  Finally, Appellants contend that federal law preempts the bond provision, but that fails for many of the same reasons as their facial challenge to Idaho's law as a whole.

## STANDARDS OF REVIEW

An appellant bears the burden to establish appellate jurisdiction. *SafeTCare Mfg., Inc. v. Tele-Made, Inc.*, 497 F.3d 1262, 1266-67 (Fed. Cir. 2007). Similarly, a petitioner seeking mandamus must establish entitlement to relief under the exacting mandamus standard, which requires "exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion." *Waymo LLC v. Uber Techs., Inc.*, 870 F.3d 1350, 1357, 1359 (Fed. Cir. 2017).

Regional circuit law applies to issues not unique to patent law. *Versata Software, Inc. v. Callidus Software, Inc.*, 780 F.3d 1134, 1136 (Fed. Cir. 2015). Whether the Patent Act preempts a state law is a question of Federal Circuit law, *Globetrotter Software, Inc. v. Elan Comput. Grp.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004), but whether federal law otherwise preempts a state law is a question of regional circuit law, *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1322-23 (Fed. Cir. 2003). Constitutional law and issues are discussed in more detail below.

The Ninth Circuit reviews the denial of a motion to dismiss *de novo*, accepting all plausible allegations as true and construing them in the light most favorable to the claim. *Olympic Forest Coal. v. Coast Seafoods Co.*, 884 F.3d 901, 905 (9th Cir. 2018). It reviews a court's decisions to impose stays, bonds, injunctions, or otherwise manage its docket for an abuse of discretion. *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166, 1168 (9th Cir. 2021) (stay); *Montserrat Overseas Holdings, S.A.*

*v. Larsen*, 709 F.2d 22, 24 (9th Cir. 1983) (bond); *K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 970 (9th Cir. 2015) (injunction); *Preminger v. Peake*, 552 F.3d 757, 769 n.11 (9th Cir. 2008) (docket management).  And the Ninth Circuit reviews legal conclusions *de novo* and findings of fact for clear error.  *Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 998 (9th Cir. 2000).

## ARGUMENT

Appellants' justifications for this Court to accept and decide this appeal turn on an interlocutory determination that Micron's claims for bad faith assertion warrant a bond under Idaho law.  But the arguments and requests for relief in Appellants' brief go much further, disputing the district court's separate ruling that declined to dismiss Micron's bad faith assertion claims and asking this Court to hold the entire Idaho statute unconstitutional.

The district court's denial of Appellants' motion to dismiss presents an unremarkable application of well-settled law.  The court followed long-established precedent on federal preemption that upholds state-law claims based on *bad faith* infringement accusations, and it correctly applied the permissive plausibility standard to the detailed factual assertions in Micron's pleadings relating to objective and subjective bad faith.  The district court deemed the bond necessary to secure any relief Micron would be owed if it ultimately prevails on those claims.

This Court need not stretch jurisdictional boundaries to reach any of these issues now, and even if it elects to do so, it should affirm the district court's Rule 12 and bond determinations at this preliminary stage.

## I.     The Court Should Dismiss this Interlocutory Appeal

All of Appellants' jurisdictional theories fail.  Each one rests in large part on vague, unsubstantiated suggestions that Appellants are harmed because the bond is prohibitive.  But Appellants never directly assert they could not pay, nor have they ever asked the district court to reduce or waive the bond for good cause.  In any event, Appellants were entitled to litigate the bad faith issues without making any payment, and the bond order would disappear if Micron failed to prove its claims.

### A.     Appellants Have Not Presented a Jurisdictionally Proper Interlocutory Appeal

#### 1.     The Bond Order Is Not Appealable as an Injunction Under § 1292(a)(1)

Appellants first cite (at 3-9) provisions authorizing immediate appeals for injunctions.  *See* 28 U.S.C. § 1292(a)(1), (c)(1).  Because the bond order is not an injunction, Appellants rely on a narrow exception for injunction-like orders under *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981).

But Appellants fail the *Carson* test.  For immediate appealability under *Carson*, a disputed interlocutory order must (1) have the "practical effect" of an injunction, (2) cause a "serious, perhaps irreparable, consequence," and (3) be "'effectually

challenged' only by immediate appeal." *Id.* at 84-85 (citations omitted); *Woodard v. Sage Prods., Inc.*, 818 F.2d 841, 849 (Fed. Cir. 1987) (en banc).

First, the bond order lacks the "practical effect" of an injunction. Bonds and security devices are not "injunctive for purposes of section 1292(a)(1)." *Orange Cnty. v. Hongkong & Shanghai Banking Corp.*, 52 F.3d 821, 826 (9th Cir. 1995) (surveying circuits). Appellants say that they "*must* post a bond of $8 million *before* the Katana case … may proceed further." BlueBr5. But that is effectively a conditional stay or case management order, and those are not injunctive for appeal purposes. *Gulfstream Aerospace Corp. v. Maycamas Corp.*, 485 U.S. 271, 279 (1988). Under Appellants' logic, *all* stays would be immediately appealable, because they *all* conditionally prevent cases from moving forward. Yet they are not. *See, e.g.*, *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1359-60 (Fed. Cir. 2011) (rejecting argument that stay was "effectively an injunction barring [patentee] from pursuing its case" under § 1292(a)(1)). Appellants also assert (at 5) that the bond "has no stated end date," but it is undeniable that the bond order would dissipate if Appellants litigated and prevailed on Micron's bad faith assertion claims.

Second, the bond will not cause serious, irreparable consequences. Bonds *prevent* harm because they ensure that a party will receive what it is owed upon a final, adjudged finding of liability, and they are otherwise refundable. Appellants never articulate an irreparable consequence of the bond, despite their burden. *See*

BlueBr6-9.  Appellants suggest (at 6) that the bond is "chilling," but that is not the test under *Carson*.  The cases Appellants cite do not pertain to interlocutory appellate jurisdiction.  Regardless, Idaho's provision has no unlawful "chilling" effect because it regulates only *bad faith* litigation.  Nor could any delay in litigating or resolving Appellants' infringement claims cause Appellants irreparable harm because the asserted patents have all expired, so Appellants can at most seek monetary damages for any alleged past infringement.

Finally, the bond is not effectually challenged *only* by immediate appeal.  Appellants have not availed themselves of procedures under Idaho law to waive the bond.  Idaho Code § 48-1707.  And Appellants have *chosen* not to proceed with litigating the bad faith assertion issue on the merits, Appx1707-08, which they were entitled to do without any bond payment at all, *see* Appx30 (staying only the Katana case).  If Appellants litigated Micron's bad faith assertion claims on the merits and won, the bond would go away.

## 2.    The Bond Order Is Not an Appealable Collateral Order

Appellants also invoke (at 9-11) jurisdiction under the collateral order doctrine as applied in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949).  But the point of *Cohen* was that, although harm from *issuing* a bond can be undone after final judgment, harm from *failing to issue* one cannot.  *See id.* at 546.

Accordingly, the "situation is quite different where an attachment is upheld." *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 689 (1950).

The collateral order doctrine requires (1) a conclusive determination that is (2) completely separate from the merits and (3) effectively unreviewable on appeal following a final judgment. *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 430-31 (1985) (citing *Cohen*, 337 U.S. at 546). The test applies "strictly" because it presents a "narrow exception" that is "limited to trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal." *Id.*

The separability factor alone is dispositive here. This appeal is entangled with the merits of Micron's state-law claims. Much of Appellants' brief focuses on the plausibility of, and evidence supporting, those claims. *See, e.g.*, BlueBr16-18, 23-25, 27-28 (disputing Micron's factual arguments about bad faith on the merits), BlueBr33-39 (arguing failure to plausibly state a claim), BlueBr49-52 (arguing preemption as applied to Micron's theory of the case). Appellants do not dispute that lack of separability. Instead, they insist that separability does not matter for appeals from preliminary orders assessing *allegations*. BlueBr10 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 528-29 (1985)).[14] If Appellants were correct, denied Rule 12(b)(6) motions would be routinely appealable. They are not.

---

[14] *Mitchell* concerned the idiosyncratic doctrine of immunity from suit, where

(footnote continued on next page)

Nor would the bond order be effectively unreviewable after final judgment. Bonds are by definition refundable. Similar orders that fall short of imposing "harm that cannot be undone" are reviewable only after final judgment. *Mod. Font Applications LLC v. Alaska Airlines, Inc.*, 56 F.4th 981, 985-86 (Fed. Cir. 2022) (order refusing access to documents); *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 644 (Fed. Cir. 1991) (order refusing to defer willfulness issue). Appellants identify no right that would be "irretrievably lost" without an appeal now. *See Richardson-Merrell*, 472 U.S. at 430-31.

Beyond *Cohen* and *Mitchell*, Appellants cite only a conclusion from a two-page per curiam decision, *In re United States*, 541 F.2d 463, 464 (4th Cir. 1976), and dictum from another case that *dismissed* an improper interlocutory appeal, *Donlon Industries, Inc. v. Forte*, 402 F.2d 935, 936-37 (2d Cir. 1968). Appellants argue (at 10) that the "right to security" is here "serious and unsettled." But whether a question is "serious and unsettled" matters only if the prospective appellant first meets the required three-factor test for collateral-order review. *Tenneco Resins, Inc. v. Reeves Bros., Inc.*, 736 F.2d 1508, 1510 (Fed. Cir. 1984).

Once again, Appellants speculate (at 10-11) about "irreparable damage" flowing from "a massive barrier," a "punitive, coercive bond," and being "forced into an

---

denials of immunity are immediately appealable. 472 U.S. at 525. There are no immunity issues here. And the question in *Mitchell* was immunity from litigation *regardless* of the merits. In contrast, Appellants take direct aim at the merits.

adverse settlement or bankruptcy."  But those passing suggestions are entirely un-

substantiated, and Appellants could challenge the bond requirement and obtain a

properly appealable final judgment on Micron's underlying bad faith assertion

claims without posting any security at all.

### B.    Appellants Have Not Shown Entitlement to Mandamus

Mandamus is an exacting standard.  It requires a petitioner to show (1) a clear

and indisputable legal right, (2) no other adequate method for obtaining relief, and

(3) that the writ is appropriate under the circumstances.  *Cheney v. U.S. Dist. Ct. for

D.C.*, 542 U.S. 367, 380-81 (2004).  Each of these factors sinks Appellants' request.

Appellants now suggest (at 14-15) that they lack adequate alternative means

to obtain relief—that the bond is so big that they are being "force[d] … to abandon"

their infringement claims.  But there is no evidence of that.[15]  Those claims remain

pending, and nothing in the district court's order required dismissing them to reach

an appealable final judgment on the state-law issues.  *See* Appx30.  Further, Appel-

lants had other adequate relief available but chose not to seek it: a trial court may

"waive the bond requirement if it finds the person has available assets equal to the

---

[15]  Elsewhere, Appellants consistently hedge on the same point.  *E.g.*, BlueBr31
("The option for Katana to post the bond is *largely* illusory …." (emphasis added)),
BlueBr45 ("*practically* insurmountable" (emphasis added)).

amount of the proposed bond or for other good cause shown." Idaho Code § 48-1707. Appellants did not try.

Appellants' reliance on *In re Shared Memory Graphics LLC*, 659 F.3d 1336, 1340-42 (Fed. Cir. 2011), is a bad fit for this case. The district court there had disqualified the appellant's chosen counsel. Being forced to try a case with other counsel is a bell that would be difficult to unring—but a bond payment can readily be returned. Appellants also rely on *In re Sumitomo Copper Litigation*, 262 F.3d 134 (2d Cir. 2001), but that was not a mandamus case—it was an appeal from a class certification order under Federal Rule of Civil Procedure 23(f), which authorizes such appeals. *Id.* at 137-38. Congress had to create that pathway *because* interlocutory review was not otherwise available, *see Microsoft Corp. v. Baker*, 582 U.S. 23, 30-33 (2017), even though certification decisions frequently *did in fact* compel parties to abandon a claim or defense, *see id.* at 34-35. That holding supports Micron, not Appellants, because no such rule exists for bond orders. Furthermore, *Sumitomo* merely assumed for argument's sake that class certification would "effectively terminate the litigation," but still denied leave to appeal. 262 F.3d at 140.

Appellants fail on the other mandamus factors as well. For instance, they argue (at 13-14) that it is "clear and undisputable" that the order was unconstitutional or erroneous. But Idaho's statute has been in effect for a decade, along with many others like it around the country. Several of the other states' statutes have been

challenged on the same grounds Appellants raise here and have been upheld, as discussed further below.  It is difficult to conceive how those laws could persist for so long—and in the face of the same attacks that Appellants make here—without uncovering *clear and indisputable* constitutional defects until now.   Appellants also suggest (at 13) that they need only show "an error on a question of law or application of the law to the facts."  But mandamus demands more than alleging what could be "reversible error" on direct appeal.  *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985); *Waymo*, 870 F.3d at 1359.  Appellants' cited case, *Shared Memory*, 659 F.3d at 1342, does not support them.  The Court there concluded that the petitioner presented the *only* viable interpretation of the disputed contract, *id.* at 1342, whereas Appellants agree (at 10) that the legal questions here are unsettled.

Appellants also argue (at 15) that mandamus is "appropriate under the circumstances" because this would not be the "first time" the Court granted writ review on an issue of first impression.  They do not explain how that makes a writ appropriate *here*, and the case they rely on, *In re Deutsche Bank Trust Co.*, 605 F.3d 1373, 1377, 1382 (Fed. Cir. 2010), did not discuss the "under the circumstances" mandamus factor.  Further, *Deutsche Bank* addressed an "important issue of first impression *in which courts have disagreed*."  *Id.* at 1375 (emphasis added); *see also id.* at 1377 (citing "a noted lack of uniformity among district courts").  That is not the case here,

as no state or federal court has struck down a bad faith assertion statute as facially unconstitutional.

## C.     Pendent Jurisdiction Over the Motion to Dismiss Would Be Inappropriate

Even if an appeal from the bond order were jurisdictionally proper, the denial of a motion to dismiss is not immediately appealable on its own. Appellants therefore rely (at 12) on pendent jurisdiction to support review of the district court's ruling on their motions to dismiss. But discretionary pendent jurisdiction is inappropriate unless an independently unreviewable order "is 'inexplicably intertwined' with another" order over which jurisdiction is proper "such that it is *necessary* to review both 'to ensure meaningful review.'" *Entegris, Inc. v. Pall Corp.*, 490 F.3d 1340, 1348 (Fed. Cir. 2007) (citation omitted)). Here, it is not necessary to decide the sufficiency of Micron's pleadings or the facial constitutionality of Idaho's entire bad faith assertion act to review the interlocutory decision on Micron's bond request.

## II.     Micron Stated a Claim for Relief Under the Idaho Statute

Appellants insist that Micron did not state a claim for relief under Idaho's law for two reasons. First, they raise an as-applied challenge to Idaho's law, asserting that Micron's claim is preempted for failure to plead objective bad faith. Second, they raise a facial challenge against Idaho's law as both preempted by federal patent law and otherwise in conflict with the Constitution. Appellants are wrong on all counts, and that conclusion follows from well-established case law.

A.    **Federal Law Does Not Preempt a State Tort Claim Predicated on Patent Assertion if That Claim Includes Bad Faith**

The contours of preemption due to federal patent law are "well-established." *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1369 (Fed. Cir. 2008).  Patent law does not preempt a state tort claim based on patent-assertion activity if "the claimant can show that the patent holder acted in bad faith." *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1304 (Fed. Cir. 2018).  Bad faith includes both subjective and objective components in this context.  *Globetrotter*, 362 F.3d at 1376 n.8.  Moreover, courts must read in these necessary bad faith requirements even when a state statute does not expressly recite them.  *Hunter Douglas Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336-37 (Fed. Cir. 1998), *overruled in part on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999) (en banc).[16]

That is so for several reasons.  "Congress does not 'cavalierly' preempt state law causes of action, for 'the States are independent sovereigns in our federal system.'"  *Hunter Douglas*, 153 F.3d at 1332 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).  In the patent context, First Amendment concerns caution against restricting a patentee's reasonable efforts to redress infringement through the courts

---

[16]  One holding of *Hunter Douglas* was later overruled: that regional circuit law applied to patent preemption.  *Midwest*, 175 F.3d at 1359.  *Hunter Douglas* remains good law for its other preemption principles.  *See, e.g.*, *800 Adept*, 539 F.3d at 1369.

and related communications, but those concerns fall away when it comes to bad faith or sham petitioning activity. *Globetrotter*, 362 F.3d at 1375-77; *see infra* § II.C.2. In addition, preemption concerns turn on whether a state law interferes with the objectives of federal patent law: maintaining incentives to invent, promoting full disclosure of inventions, and ensuring that once an invention enters the public domain it remains available for public use. *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1473-74 (Fed. Cir. 1998) (discussing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480-81 (1974)). Those objectives protect parties asserting patent rights in good faith from state interference. But federal patent law has no interest in upholding wrongful, bad faith conduct. *See Dow*, 139 F.3d at 1475; *Globetrotter*, 362 F.3d at 1377.

To be clear, this Court's previous patent-law decisions applying the bad faith constitutionality standard have involved different state torts than the bad faith assertion statute at issue here. *See, e.g.*, *Energy Heating*, 889 F.3d at 1303 (tortious interference with business relations); *Globetrotter*, 362 F.3d at 1374 (tortious interference with prospective economic advantage, unfair competition); *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1370-71 (Fed. Cir. 2002) (unfair competition); *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999) (tortious interference); *Dow*, 139 F.3d at 1472-73 & n.1 (tortious interference with contract, tortious interference with prospective contractual relations). But the principles announced in

those decisions apply equally here: the constitutional framework applied to each of those various state-law causes of action applies just the same as to Idaho's bad faith assertion law. Indeed, those precedents addressing the constitutionality of patent-related tortious interference or unfair competition claims relied on many of the same cases that Appellants cite now, and they considered the same preemption and First Amendment concerns. *See Globetrotter*, 362 F.3d at 1374-77 (citing *Virtue v. Creamery Package Mfg.*, 227 U.S. 8, 37-38 (1913)). Appellants barely acknowledge this longstanding constitutional framework in their merits arguments.

Numerous courts have applied these established principles to state bad faith patent assertion statutes, and each one to consider the issue has rejected facial challenges to such laws. *NAPCO, Inc. v. Landmark Tech. A, LLC*, 555 F. Supp. 3d 189 (M.D.N.C. 2021); *Landmark Tech., LLC v. Azure Farms, Inc.*, No. 18-cv-1568, 2020 WL 1430088 (D. Or. Mar. 24, 2020); *Washington v. Landmark Tech. A, LLC*, 637 F. Supp. 3d 1154 (W.D. Wash. 2022); *Puritan Med. Prods. Co. v. Copan Italia S.p.A.*, 188 A.3d 853, 862-63 (Me. 2018); *Triple7Vaping.com, LLC v. Shipping & Transit LLC*, No. 16-cv-80855, 2017 WL 5239874 (S.D. Fla. Feb. 6, 2017). Like the District of Idaho in this case, these courts have thoughtfully considered the issues in considerable detail and reached the same result. *See, e.g.*, *NAPCO*, 555 F. Supp. 3d at 207-14.

### B.    Micron Plausibly Pled Objective Bad Faith, So Appellant's As-Applied Challenge Fails

Appellants' as-applied challenge to Idaho's law raises a single issue: the adequacy of one element of Micron's pleading.  Appellants do not contest that Micron pled *subjective* bad faith and do not contest that Micron pled alter ego.  They instead argue (at 34-39) that Micron did not plausibly plead objective bad faith and that this Court can exercise pendent jurisdiction to review the district court's routine Rule 12(b)(6) ruling.  Appellants are incorrect.

Appellants asserted three patents.  Appx2344-45.  For each one, Micron's pleadings contained detailed factual assertions to support the claim that Appellants had asserted that patent in objective bad faith.  Appx1150-51 (citing Appx153-54, Appx162-63, Appx165-66, Appx168-69, Appx170 (¶¶ 8, 43-46, 56-57, 60-63, 65-66, 71, 73, 81)).  Appellants dispute (at 35-37) those well-pled factual contentions, but that is not a basis to grant a Rule 12(b)(6) motion.  Micron has pled—in detail—that Appellants' infringement claims are exceptionally weak.

For the '806 patent, Micron alleged that its accused products are not "sealed with a resin," as the claims require.  Appx166.  Although the infringement complaint purported to identify a "resin," Micron alleged facts showing that the accused products used a thermoplastic encapsulant, not a resin.  Appx166-67; Appx416.  Resins are one ingredient in thermoplastic encapsulants, so Appellants argue that they asserted in good faith that the accused products are sealed with "resins."  That makes

no sense.  Baking power is an ingredient in cake (and one that is chemically transformed during cooking, as resins are when thermoplastic encapsulants are formed), but nobody would ever argue that cake *is itself* baking powder.  But that is exactly what is happening here: Appellants insist (at 36) that their claim was made in good faith because the accused products' encapsulants "contain small amounts of resins," but the document they cite for support said those encapsulants "contain small amounts of resins *amongst their many ingredients*" and "are not themselves resins." Appx166-67 ¶66 (emphasis added).

For the '879 patent, Micron alleged that Katana's reading entirely ignored the plain language of the claims.  Appx168.  The claims require two different circuits formed on the *same* "front surface."  Appx168.  But Appellants' complaint mapped those circuits to *different* surfaces.  Appx168.  Appellants argued below that the claim language of the asserted patent—*i.e.*, the language requiring the circuits to be formed on the same surface—was a "typographical error" that the Idaho court could simply ignore.  Appx380-81.  Appellants do not attempt to maintain that argument before this Court, instead now saying (at 36-37) that there is a "disputed claim construction" for the '879 patent.  But Appellants do not identify any construction, much less a nonfrivolous one, that could harmonize their infringement position with the plain claim language.  *See, e.g.*, *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907,

918-19 (Fed. Cir. 2012) (objective bad faith based on frivolous claim construction position).

For the '013 patent, Micron alleged in its pleadings that Appellants' infringement allegations impossibly mapped two mutually exclusive limitations onto the same physical component. Appx170. The claimed semiconductor device required "wiring patterns" plus a "support pattern." Appx113 (claim 11). Those are separate structures with distinct functions. But Appellants pointed to the same pattern for both. Appx170; Appx398. Appellants do not defend their impermissible double-mapping as to the '013 patent (either below or on appeal), nor do they identify any alternative mapping. They instead respond (at 37) by insisting only that such a "misidentification" cannot plausibly establish bad faith. But it can if the relevant feature was mislabeled in bad faith or if the error was not corrected and the claim withdrawn when the error was pointed out, as here. In any event, sorting those points out involves factual questions to be resolved at trial, not on the pleadings under Rule 12.

As further evidence of bad faith, Micron's complaint noted that Appellants accused Micron of "continu[ing] to infringe" the asserted patents, even though each one had expired. Appx165-66 ¶¶ 60-63 (citing Appx2343 ¶ 13). Appellants do not dispute that their assertion of continuing infringement was baseless. They instead insist (at 35) that it does not matter because this too was "just a typo." Combined with Appellants' other objective errors, however, that mischaracterization supports

further factual allegations in the complaint that Appellants asserted infringement in bad faith.  The complaint also cited Micron's past litigation history with Longhorn and dubious claims asserted by another Longhorn affiliate as evidence of bad faith. Appx158-61 ¶¶28-38; Appx25-26.

The district court walked through those factual allegations and more bearing on bad faith in Micron's complaint.  Appx21-26.  The district court also factored into its analysis the federal presumption that patents are asserted in good faith.  Appx26. In all, the district court concluded that, accepting Micron's factual allegations as true at the pleading stage, "Micron's complaint pleads enough facts to allow a finding under the statutory factors that Longhorn and Katana acted in bad faith."  Appx26. That approach was plainly correct.  Appellants (at 36-37) cite *C.R. Bard* and *Golan* in arguing that the district court erred in denying their motions to dismiss, but those cases concerned the clear-and-convincing evidentiary standard needed for establishing liability, not the standard for plausibly stating a claim.  *See Golan*, 310 F.3d at 1371; *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1368-69 (Fed. Cir. 1998). If this Court elects to reach it, the district court's denial of Appellants' motion to dismiss should be affirmed.

## C.    Idaho's Bad Faith Assertion Act Is Not Facially Invalid

A facial challenge fails unless "*no set of circumstances* exists under which the [statute] would be valid."  *United States v. Hansen*, 599 U.S. 762, 769 (2023)

– 41 –

(alteration in original) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). If this Court considers Appellants' facial challenge, it should be rejected as falling well short of that standard.

### 1. Patent Law Does Not Preempt Idaho's Bad Faith Assertion Law

Appellants argue that patent law facially preempts Idaho's law, but they are incorrect for the same well-established reasons articulated by the District of Idaho and other courts to consider similar challenges. *See, e.g.*, Appx6-18; *NAPCO*, 555 F. Supp. 3d at 207-12.

Idaho's bad faith assertion law represents a valid exercise of Idaho's interest in protecting its citizens from burdensome, abusive patent infringement accusations. *See* Idaho Code § 48-1701. States are "independent sovereigns," so preemption analyses in "a field which the States have traditionally occupied" must "start with the assumption that the historic police powers of the States" are not superseded "unless that was the clear and manifest purpose of Congress." *Medtronic, Inc*, 518 U.S. at 485 (citations omitted).

That presumption against preemption applies here because Idaho's law serves an objective traditionally at the heart of the States' police powers: protecting their businesses and economies from unfair trade practices. *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989). Not by accident did Idaho place its bad faith assertion statute among the unfair competition and consumer protection laws in Title 48 of its

state code ("Monopolies and Trade Practices"). The Idaho Legislature made specific legislative findings rooted in consumer protection and statewide economic harm, § 48-1701, and defined "bad faith assertion of patent infringement" as "an unlawful, unfair and deceptive act or practice in trade or commerce," § 48-1703(1), (4).

Presumption aside, Appellants' arguments satisfy no theory of preemption. There are three types: express, field, and conflict. *Zenith*, 182 F.3d at 1355. Appellants do not argue express preemption, Appx7, and federal patent law does not expressly preempt state tort law anyway, *Hunter Douglas*, 153 F.3d at 1332-33. Appellants likewise do not assert field preemption. Nor could field preemption apply because, although Congress has occupied the field of patent *issuance*, states can "regulate the *use* of" intellectual property, *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156 (1989) (emphasis added), and Congress has not occupied the field of tort law, *see Ultra-Precision Mfg. v. Ford Motor Co.*, 411 F.3d 1369, 1377 (Fed. Cir. 2005). Congress has passed no law responsive to the relatively new problem of bad faith patent assertion, nor has it disturbed any of the states' laws responding to it. Appx9. That acquiescence demonstrates that Congress intends not to exclusively occupy the field.

As for conflict preemption, two subcategories exist: impossibility and obstacle preemption. The district court correctly held that impossibility preemption did not apply because it is not "impossible … to comply with both state and federal law."

– 43 –

Appx10 (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000)).
Appellants do not challenge that determination.

That leaves obstacle preemption, which is the focus of Appellants' brief. *See*
BlueBr43-44 (citing legal standard). Obstacle preemption applies where a state law
"stands as an obstacle to the accomplishment and execution of the full purposes and
objectives of Congress." *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262
(1979) (citation omitted). The district court correctly concluded, after a thorough
analysis, that obstacle preemption did not apply. Appx13-18.

Idaho's bad faith assertion law does not conflict with the Patent Act's objec-
tives. As noted, the purposes behind the federal patent system are to "foster and
reward invention," to "promote[ ] disclosure of inventions," and to "assure that ideas
in the public domain remain there." *Aronson*, 440 U.S. at 262. The patent laws also
discourage egregious conduct during patent litigation through fee-shifting in "ex-
ceptional cases." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S.
545, 548 (2014) (discussing 35 U.S.C. § 285). The Idaho Act covers activity that
federal patent law does not incentivize or protect. To the contrary, "bad faith mar-
ketplace statements concerning patents do not further the purposes of the patent law."
*Zenith*, 182 F.3d at 1354; *see also Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 876
(Fed. Cir. 1985), *overruled on other grounds by Nobelpharma AB v. Implant Inno-
vations, Inc.*, 141 F.3d 1059, 1067 & n.5 (Fed. Cir. 1998) (en banc in pertinent part).

The district court correctly perceived no conflict, as Idaho's law and the patent laws share common goals of "protecting valid patents without enabling bad-faith or vexatious litigation." Appx15. The Idaho law is tailored to that objective and requires a party like Micron to prove in court that a patent has been asserted in bad faith. Idaho Code § 48-1706(1).

Indeed, courts have rejected every facial challenge to other state laws against bad faith patent assertion. *NAPCO*, 555 F. Supp. 3d 189; *Landmark*, 2020 WL 1430088; *Landmark*, 637 F. Supp. 3d 1154; *Triple7Vaping.com*, 2017 WL 5239874. Some courts have concluded that particular claims were preempted as applied, but the underlying state laws survived even there. *Reck-n-Rack LLC v. Just Encase Prods. Inc.*, 649 F. Supp. 3d 734, 739-40 (E.D. Wis. 2023) (dismissing complaint for unlawful patent assertion because plaintiff failed to allege bad faith); *Puritan*, 188 A.3d at 862-63 & n.15 (affirming summary judgment because plaintiff failed to present evidence of bad faith but noting that "does not mean that Maine's statute is preempted as a whole").

Appellant's contrary arguments are unsound. Appellants insist (at 43) that Idaho's law regulates "activity that is permitted and even incentivized by federal patent laws." Not at all. Federal patent law protects only good faith assertions of patent infringement; bad faith assertions would undermine the key policies underlying the Patent Act. *Loctite*, 781 F.2d at 876. Federal law *requires* proving objective

bad faith to impose any liability under Idaho's statute. Accordingly, Appellants' claim (at 43) that Idaho's Act "creates the *threat*" of damages for those "petitioning a federal court in good faith" is not only speculative—it contradicts the law.

Appellants also contend (at 43) that Idaho's Act "practically presumes bad-faith assertion" and "does nothing to protect patentees from bad-faith infringement." The first contention is wrong; the second misses the point. The law presumes that a plaintiff asserts a valid patent in good faith, and the district court faithfully cited and applied that presumption. Appx22. Idaho's statute does not displace that presumption. It places the burden on the party seeking relief to show bad faith and makes relief available only if that party prevails. Idaho Code § 48-1706(1). Idaho's law provides a non-exhaustive list of factors that courts may consider as additional evidence against a finding of bad faith, *id.* § 48-1703(3), but reciting factors that can weigh against bad faith does not negate the requirements to show objective and subjective bad faith or shift any burden to the patentee. *NAPCO*, 555 F. Supp. 3d at 210-12 (rejecting preemption argument because imputed objective and subjective bad faith requirements applied regardless of factors provided under North Carolina bad faith assertion law); *Washington v. Landmark*, 637 F. Supp. 3d at 1162 (rejecting preemption argument based on state-law factors for showing bad faith where complaint nonetheless "expressly addresse[d] preemption by pleading bad faith under the federal standards").

In addition, Idaho's bad faith assertion law need not remedy "bad-faith *infringement*" or other commercial conduct of Appellants' choosing as a precondition for constitutionality. The state was under no obligation to enact a law directed to bad faith infringement when it chose to protect its citizens from bad faith assertion, and federal law already addresses and provides penalties for willful infringement.[17]

Appellants suggest (at 42-43) that Idaho's law "goes too far" because federal law already provides mechanisms to discourage bad faith assertions by way of Section 285 and Rule 11. To be sure, federal law protects *in some ways* against *some* malfeasance by patentees. But not exclusively—and Congress has provided no indication it intended to occupy that field. Idaho's law "includes additional elements not found in the federal patent law." *See Dow*, 139 F.3d at 1473. For example, neither Section 285 nor Rule 11 is conditioned on establishing both subjective and objective bad faith. *See Octane*, 572 U.S. at 554-56 (rejecting "subjective bad faith and objectively baseless" requirements for finding an exceptional case under Section 285); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 & n.11 (1991) (noting that Rule 11 "does not mandate a finding of bad faith"). Establishing a cause of action

---

[17]  Contrary to Appellants' suggestion (at 41), it is not unlawful "discrimination" for the Act to suggest that a patent plaintiff's own practicing of the patent makes it more likely that a patent defendant's accusation of bad faith is not true, because the legislature could have rationally concluded that patent assertion entities have tended to engage in bad faith patent assertion at higher rates than practicing entities. In any event, none of the statutory factors is required or dispositive.

under Idaho's statute requires both. And those federal provisions have long coexisted with, and have often been asserted alongside, various types of state-law claims based on bad faith patent assertion. *E.g.*, *Energy Heating*, 889 F.3d at 1305-07 (affirming judgment of tortious interference based on bad faith patent assertion and vacating denial of exceptional-case motion under Section 285); *Hunter Douglas*, 153 F.3d at 1337 (vacating dismissal of state-law unfair competition claims based on alleged bad faith patent assertion while finding no clear error holding case not exceptional under Section 285); *Dow*, 139 F.3d at 1471 (similar).[18]

### 2.    The Constitution Does Not Otherwise Nullify Idaho Law

Appellants also suggest in passing (at 43-44) that the First Amendment preempts Idaho's bad faith assertion law as an impediment to government petitioning activity. This Court should disregard those undeveloped arguments. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006).

To the extent that Appellants have asserted that Idaho's law impermissibly regulates *constitutionally protected* petitioning activity, that would be incorrect. Even under the most generous standard reserved for certain facial First Amendment challenges, courts may not strike down a law unless "a substantial number of its

---

[18] Appellants' reliance on *Building Innovation Industries, L.L.C. v. Onken*, 473 F. Supp. 2d 978 (D. Ariz. 2007), is misplaced. That was an as-applied challenge, and the state fee-shifting statute there displaced Section 285 with a much *lower* threshold that awarded fees to *any* "successful party" in a contract dispute. *Id.* at 986-87.

applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010). Appellants do not try to meet that standard. Nor could they. "To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep." *Hansen*, 599 U.S. at 770. In this case, the state law at issue requires establishing subjective and objective bad faith, so the only "speech" it prohibits is litigation that a court has determined was brought in bad faith. The Constitution provides no protection for actions initiated in bad faith. *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743-44 (1983). Appellants have not presented anything more than speculation to suggest widespread adverse effects on legitimate petitioning activity.

Finally, Appellants are wrong to suggest (at 39-40) that Idaho's law is the first one to include bad faith complaints as potential sources of liability. Idaho's law identifies a complaint as just one species within a much broader genus of potentially actionable bad faith *communications*. Idaho Code § 48-1703 (addressing "bad faith assertion of patent infringement in a demand letter, a complaint *or any other communication*" (emphasis added)). In nearly every other state law against bad faith assertion, liability can be premised on any form of bad faith "assertion" or "communication," and a complaint necessarily serves as a written communication. *E.g.*, Colo. Rev. Stat. § 6-12-102(1) ("any written or electronic communication"); Me.

Stat. tit. 14 § 8701(1) ("a letter, an e-mail or other written communication"); N.C. Gen. Stat. § 75-145(2) ("[a] letter, e-mail, or other communication asserting or claiming that a target has engaged in patent infringement"); Tenn. Code Ann. § 29-10-102(a) ("any written or electronic communication"); Wis. Stat. § 100.197(1)(a) ("a letter, e-mail, or other written communication attempting in any manner to enforce or assert rights in connection with a patent"); *see also* Fed. R. Civ. P. 4(c) (requiring plaintiff to serve a copy of its complaint). Idaho's law sits squarely within the mainstream.

More broadly, litigants have long asserted state torts, such as unfair competition and malicious prosecution, based on bad faith complaints. *E.g.*, *Hydranautics*, 204 F.3d at 885-87 (malicious prosecution claim based on baseless patent complaint); *Concept Design Elecs. & Mfg. v. Duplitronics, Inc.*, 52 F.3d 342 (Fed. Cir. 1995) (nonprecedential) (unfair competition claim based on baseless infringement action); *Mirafi, Inc. v. Murphy*, 928 F.2d 410 (Fed. Cir. 1991) (nonprecedential) (unfair competition claim based on bad faith litigation); *U.S. Aluminum Corp./Texas v. Alumax, Inc.*, 831 F.2d 878 (9th Cir. 1987) (malicious prosecution action based on infringement litigation that had been deemed exceptional under Section 285).

*     *     *

Idaho's bad faith assertion law is not preempted or otherwise inapplicable based on any facial constitutional infirmity because it provides a cause of action

solely against patent assertions made in subjective and objective bad faith.  There is no federal interest in advancing or upholding abusive allegations of patent infringement.  Appellants' challenge should be rejected under the straightforward application of long-established principles of comity in our federal system.

## III.    The District Court Did Not Abuse Its Discretion Staying Infringement Proceedings Until Appellants Choose to Post a Bond

### A.    The District Court Did Not Misapply State Law in Ordering the Bond, and Any Alleged Error Would Be Harmless

The district court acknowledged the presumption of good faith, the requirement that the presumption must be overcome by affirmative evidence, and the reasonable likelihood standard of Idaho's bond provision.  Appx22, Appx28.  With the full evidentiary record before it, the district court then determined that a bond was warranted.  Appx28.

Factual findings should not be overturned absent "a definite and firm conviction that a mistake has been committed." *Impax Lab'ys, Inc. v. Aventis Pharms. Inc.*, 468 F.3d 1366, 1378 (Fed. Cir. 2006).  "A judge is not required, in making findings, to mention every item of evidence and either adopt it or reject it," and presumably "the judge considers all of the evidence[.]" *W. Pac. Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280, 1285 (9th Cir. 1984).   The "author of an opinion has broad discretion to determine what the opinion should contain and in what detail," and

need only include that which he or she considers "necessary or appropriate specifically to discuss." *Lowder v. DHS*, 504 F.3d 1378, 1383 (Fed. Cir. 2007).

The district court received and heard argument on a significant evidentiary record before finding in Micron's favor on the bond motion. The parties each submitted evidence for the court's consideration. Appx419-27 (identifying Micron's evidence); Appx1208-19 (identifying Appellants' evidence). For its part, Micron submitted declarations and dozens of exhibits to substantiate its likelihood of prevailing on the state-law bad faith assertion claims: a declaration from Micron's Senior Director of Licensing & Litigation (Appx409-13); a declaration from Micron's Senior Manager of Package Design (Appx415-17); a copy of Katana's infringement complaint against Micron (Appx430); documents relating to Micron's history of innovation (Appx472-83); a listing of Longhorn-affiliated entities and other materials from the Longhorn website (Appx487); corporate documents for Longhorn-affiliated entities (Appx490-564); Lone Star's complaint against Micron (Appx587); the transfer order from the Lone Star case (Appx646); the dismissal order from the Lone Star case (Appx657); final written decisions from the PTAB (Appx669; Appx674; Appx679; Appx722; Appx771; Appx813; Appx849; Appx900); correspondence relating to Katana's infringement allegations (Appx944-46; Appx999-1001; Appx1039-41; Appx1043-46; Appx1048); Katana's non-opposition to Micron's motion to transfer (Appx1050-51); and documents pertaining to estimated patent

litigation costs (Appx1060; Appx1093; Appx1097).   In addition, the district court conducted a hearing on Micron's bond motion where the parties further debated the evidence and the issues.  Appx1544-610.[19]

The record thus contains ample support from which the district court could justify and award the bond.  A presumption of regularity attaches to a district court's decision. *Bernklau v. Principi*, 291 F.3d 795, 801 (Fed. Cir. 2002) (affirming despite court's lack of discussion of how it weighed evidence).  And under the applicable standard of review, if a district court's ultimate finding is "plausible in light of the record viewed in its entirety, the court of appeals may not reverse it." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-74 (1985).

Appellants rely (at 46) on two lines in the court's opinion to suggest that the district court made no finding at all.  They highlight the opinion's reference to a "reasonable possibility" in one spot instead of "reasonable likelihood."  Appx28.  And they cite a reference to "the higher 12(b)(6) standard" and "the lower statutory standard."  *Id.*  But the district court recognized the applicable standard.  *Id.*

---

[19]    Appellants complain (at 5, 7, 21-24, 30-31) that they were denied discovery from Micron relating to the bad faith assertion claims.  But those claims focus on *Appellants'* intent and knowledge, and what a reasonable person would have believed, when Appellants sent their letters and filed suit.  This was and remains information within Appellants' possession; no discovery from Micron can change what either Appellants or a reasonable person would have known or intended at times in the past.  This is why the district court denied discovery.  Appx1180-81.

(discussing Idaho Code § 48-1703).  Micron also had presented the court with extensive evidence of bad faith, which the court should be understood to have considered and relied upon when granting the bond motion.

Even if this Court concludes that the district court erred by not articulating the basis for its decision as well as it could have, that error would be harmless for two reasons.  The first is that Micron submitted, briefed, and argued extensive factual evidence that supports the district court's bond determination.  The district court found in Micron's favor after reviewing that evidence.  The second is that Appellants failed before the district court, and now on appeal, to explain how any *evidence* they presented would change the outcome.  Their attack below was aimed at the *legal significance* of Micron's identified facts—*e.g.*, that the adequacy of pre-suit analysis was immaterial; that competing views on validity and infringement are not probative; and that (in a general sense) Micron had not shown bad faith.  *See* Appx1203-05.  The district court cannot be faulted for not expressly addressing factual arguments that Appellants never made.

### B.     Federal Law Does Not Preempt the Bond Provision as Applied

This Court should also reject Appellants' jumble of preemption attacks on the way that the district applied the Idaho law's bond provision.  *See* BlueBr44-45, 49-52.

*Stay of infringement proceedings.*  Appellants complain (at 47-48) that their infringement case is stayed until they post a bond.  While the authority to *order* a bond comes from Idaho Code § 48-1707, state law does not spell out consequences for failing to post one.  The authority to *stay* the case arose from the district court's inherent powers.  *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).  That authority is itself federal and by definition cannot be preempted by federal patent law.  *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 680 (9th Cir. 2001) ("[T]he preemption doctrine applies solely to conflicts between state and federal law.").  Appellants' arguments also make little sense in light of the record here, where Appellants themselves insisted that the entire district court case be stayed, including due to the IPRs.

*Standard of proof.*  At various points, Appellants' brief presumes—without support or explanation—that a bond could not issue absent *clear and convincing evidence* of bad faith.  *See* BlueBr2, 14, 25, 29, 31, 45, 47; *contra* Idaho Code § 48-1707 (permitting bond where movant establishes "reasonable likelihood" of proving bad faith assertion).  In doing so, Appellants conflate the standard for imposing *liability* with the standard for imposing a *refundable security*.  While Micron would need to establish bad faith by clear and convincing evidence to prevail on the ultimate merits of its claim, *Golan*, 310 F.3d at 1371, nothing required the district court to apply that standard to the *preliminary* question of whether a bond was warranted.  This Court's precedents importing the clear and convincing standard into state-law

claims did so for purposes of a final decision on the merits. *See id.*; *Energy Heating*, 889 F.3d at 1304-05; *Globetrotter*, 362 F.3d at 1377.

It would make no sense to import the same evidentiary standard required to prevail *on the merits* of a bad faith assertion claim into the preliminary determination that asks whether a bond is warranted *pending* the final merits decision. Forcing a plaintiff to wait until it has definitively proven its case before seeking a bond would defeat the bond's entire purpose, which is to provide security at the outset for a party deemed likely to win in the end. Preliminary relief thus turns on an assessment of likely success, not an unattainable requirement to conclusively prove a claim at the outset. *Cf. DexCom, Inc. v. Abbott Diabetes Care, Inc.*, 89 F.4th 1370, 1375 (Fed. Cir. 2024) (in the preliminary injunction context, requiring movant to show only a "reasonable likelihood of success").[20]

*Alternative remedies.* Appellants contend (at 45, 51-52) that, apart from substantive patent law, "federal procedure"—*i.e.*, Rules 11 and 12 and Section 285— also preempts the bond. In support, Appellants cite cases that prohibited applying state *procedural* rules in federal court. *See Shady Grove Orthopedic Assocs., P.A. v.*

---

[20] Appellants go further, arguing Micron must conclusively show objective base-lessness to even assert a claim under Idaho law, much less seek a bond for a likely violation. BlueBr50 (citing *SSI Techs., LLC v. Dongguan Zhengyang Elec. Mech. Ltd.*, 59 F.4th 1328, 1337 (Fed. Cir. 2023)). But *SSI* was an appeal from a summary judgment decision and thus concerned the standard for liability, *id.* at 1330, which required evidence sufficient to find for the claimant on the merits, *id.* at 1338.

*Allstate Ins. Co.*, 559 U.S. 393, 398-406 (2010); *Klocke v. Watson*, 936 F.3d 240, 245, 247 (5th Cir. 2019), *as revised* (Aug. 29, 2019); *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333-34 (D.C. Cir. 2015).  Those cases hold that state procedural rules must yield to a Federal Rule of Civil Procedure that "'answer[s] the same question[.]'"  *Abbas*, 783 F.3d at 1333; *Shady Grove*, 559 U.S. at 401; *Klocke*, 936 F.3d at 244; *see Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law.").  The problem with Appellants' argument is that the bond provision at issue here is substantive, not procedural.  Appellants asserted below that the bond was procedural, Appx1202-03, but the district court disagreed, Appx27, and Appellants themselves now recognize the bond provision as "used substantively as a state-law device with 'teeth' … not simply as a procedural tool to provide security for a possible damages award," BlueBr8.  Preemption by federal procedural rules thus cannot apply.

Furthermore, even if the "same question" standard could apply, the bond provision here does not answer the same question as the rules Appellants cite.  Rule 11 governs improper representations to a court, not bad faith communications in general relating to patent infringement.  Section 285 addresses a broad, discretionary assessment of exceptionality at the conclusion of a lawsuit—whether a case "stands out from others," *Octane*, 572 U.S. at 554—not bad faith, and not a protective bond at

the outset encompassing damages and other harms beyond just attorneys' fees. Rule 12 addresses whether a complaint should be dismissed; Idaho's bond provision does not.

The better comparison is to state anti-SLAPP laws that the Ninth Circuit and others have upheld absent a collision with the Federal Rules—even where those laws provided additional substantive relief. *See, e.g.*, *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (upholding state law providing special motion to strike and attorneys' fees for filing meritless lawsuit); *see also Godin v. Schencks*, 629 F.3d 79, 86-87 (1st Cir. 2010). There is likewise no collision here, because the Federal Rules and Section 285 were not meant to control the issue the bond provision addresses: posting of security upon a bad faith assertion of patent infringement.

Appellants nonetheless insist (at 45, 49-50, 52) that Micron should have sought relief through Rules 11 and 12 or Section 285. But Micron was not required to avail itself of mechanisms that address different concerns and have different timing. Appellants also insist (at 52) that Micron's claim "is not about any underlying tortious misconduct," but that is flat wrong. Idaho law defined the relevant tortious misconduct: asserting three patents against Micron in bad faith.

*Remaining assertions.* Appellants' remaining scattered assertions should be rejected as well. Appellants insist (at 49) that the bond "badly distorts the balance

of rights in federal patent litigation" and "block[s] the federal courthouse doors." Those hyperbolic claims simply reiterate Appellants' other flawed preemption challenges and fail for the same reasons: Idaho's law applies only to *bad faith* patent assertion, which no federal law protects.

Appellants also complain (at 49) that the bond is "uncapped" and "outsized." Not so. The statute caps the bond at a good faith estimate of reasonable litigation costs and damages Micron is reasonably likely to recover if it prevails on its bad faith assertion claims. Idaho Code § 48-1707. Here, the court was skeptical about the costs of patent litigation and did not even accept Micron's estimate of what the costs would ultimately be, so Appellants' complaints about the supposedly "massive" size of the bond (at 29) must be taken with a grain of salt.

Finally, Appellants insist (at 51) that the court "ordered the bond without *consideration* of any evidence for or against bad faith." (Emphasis added.) But, as explained, Micron presented considerable affirmative evidence of bad faith, which was before the court when it issued its decision. *Supra* § III.A. Appellants likewise insist (at 50-51) that the district court "did not address preemption at all" when considering the bond. But the district court addressed the parties' preemption arguments in detail when it rejected Appellants' challenges to the Idaho law, Appx6-18, including arguments about the bond provision specifically, *e.g.*, Appx15, Appx17.

This Court should reject Appellants' as-applied preemption arguments as to the district court's preliminary bond ruling.

### C.    If the Court Finds Error in the District Court's Bond Order, the Correct Remedy Would Be Vacatur, Not Reversal

If the Court concludes that the district court failed to explain its reasoning sufficiently in granting the bond order, that would at most support vacatur and remand for further findings, not outright reversal.  To do otherwise would require this Court to impermissibly find facts on appeal.  *First Interstate Bank of Billings v. United States*, 61 F.3d 876, 882 (Fed. Cir. 1995).

## CONCLUSION

Appellants' interlocutory appeal is jurisdictionally deficient, and this Court should dismiss it and decline to award mandamus relief.  But, if this Court reaches the merits, it should affirm the district court's rulings on Appellants' motion to dismiss and on Micron's bond request.

Respectfully submitted,

PERKINS COIE LLP
by /s/Amanda Tessar
Amanda Tessar

Counsel for Appellees Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type–volume limitation of Federal Circuit Rule 32(b)(1). The brief contains 13,980 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft® Word and 14-point Times New Roman type.

Dated: May 28, 2024                    /s/Amanda Tessar

                                       Amanda Tessar

**CERTIFICATE OF AUTHORITY**

I certify that I have the authority of my co-counsel Amanda Tessar to file this document with her electronic signature.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: May 28, 2024                    /s/Andrew T. Dufresne

                                       Andrew T. Dufresne