No. 23-2007, No. 23-2095

===============================================================

In the United States Court of Appeals
for the Federal Circuit

MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR
PRODUCTS, INC., MICRON TECHNOLOGY TEXAS, LLC, STATE OF
IDAHO,
*Plaintiffs-Appellees,*
v.
LONGHORN IP, LLC,
*Defendant-Appellant.*

—————————————

KATANA SILICON TECHNOLOGIES LLC,
*Plaintiff-Appellant,*
v.
MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR
PRODUCTS, INC., MICRON TECHNOLOGY TEXAS, LLC, STATE OF
IDAHO,
*Defendants-Appellees.*

—————————————

On Appeal from the United States District Court
for the District of Idaho

—————————————

**CORRECTED BRIEF OF NORTH CAROLINA, ALASKA,
ARIZONA, COLORADO, HAWAIʻI, ILLINOIS, INDIANA,
KANSAS, LOUISIANA, MAINE, MARYLAND, MASSACHUSETTS,
MISSISSIPPI, NEW JERSEY, NEW MEXICO, NEW YORK,
OKLAHOMA, OREGON, SOUTH CAROLINA, SOUTH DAKOTA,
TENNESSEE, TEXAS, VERMONT, VIRGINIA, WASHINGTON,
WISCONSIN, WYOMING, AND THE DISTRICT OF COLUMBIA
AS AMICI CURIAE IN SUPPORT OF APPELLEES MICRON
TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS,
INC., MICRON TECHNOLOGY TEXAS, LLC, AND STATE OF
IDAHO, AND IN SUPPORT OF AFFIRMANCE**

—————————————

(*Counsel listed on inside cover*)

JOSHUA H. STEIN
Attorney General

Ryan Y. Park
Solicitor General

Nicholas S. Brod
Deputy Solicitor General

*Counsel for Amici Curiae*

N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602
(919) 716-6400

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 23-2007 |
| **Short Case Caption** | Micron Technology, Inc. v. Longhorn IP, LLC |
| **Filing Party/Entity** | North Carolina |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/30/2024

Signature: /s/ Nicholas S. Brod

Name: Nicholas S. Brod

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| North Carolina | | |
| Alaska | | |
| Arizona | | |
| Colorado | | |
| Hawaii | | |
| Illinois | | |
| Indiana | | |
| Kansas | | |
| Louisiana | | |
| Maine | | |
| Maryland | | |

☑    Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable    ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)    ☐ No    ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable    ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

| **1. Represented Entities.**<br>Fed. Cir. R. 47.4(a)(1) |
|---|
| Provide the full names of all entities represented by undersigned counsel in this case.<br><br>(Continued from page 2) |
| Massachusetts |
| Mississippi |
| New Jersey |
| New Mexico |
| New York |
| Oklahoma |
| Oregon |
| South Carolina |
| South Dakota |
| Tennessee |
| Texas |
| Vermont |
| Virginia |
| Washington |
| Wisconsin |

| Wyoming |
|---|
| District of Columbia |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................ii

INTEREST OF AMICI CURIAE ............................................. 1

INTRODUCTION ................................................................ 2

ARGUMENT ...................................................................... 5

    I.    The Majority Of States Have Enacted Laws To Promote
          Innovation By Combating Bad-Faith Patent Assertions............5

          A. Patent trolls harm innovation through bad-faith
              litigation ................................................................5

          B. Idaho is one of more than thirty States that has passed
              legislation to curb bad-faith patent assertions.................... 10

    II.   The District Court Correctly Held That Federal Law
          Does Not Facially Preempt Idaho Law ..................................... 14

CONCLUSION ...................................................................... 22

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aronson v. Quick Point Pencil Co.*,
440 U.S. 257 (1979) ................................................................. 20

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
489 U.S. 141 (1989) ..................................................... 2, 14, 15

*California Coastal Comm'n v. Granite Rock Co.*,
480 U.S. 572 (1987) ................................................................. 21

*California v. ARC America Corp.*,
490 U.S. 93 (1989) ................................................................... 19

*Chamber of Commerce v. Whiting*,
563 U.S. 582 (2011) ................................................................. 18

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015) ........................................................... 2, 10

*Conway v. United States*,
997 F.3d 1198 (Fed. Cir. 2021) ............................................. 21

*Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*,
524 F.3d 1254 (Fed. Cir. 2008) ............................................. 15

*Energy Heating, LLC v. Heat On-The-Fly, LLC*,
889 F.3d 1291 (Fed. Cir. 2018) ............................................. 15

*Eon-Net LP v. Flagstar Bancorp*,
653 F.3d 1314 (Fed. Cir. 2011) ........................................... 6, 7

*Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*,
362 F.3d 1367 (Fed. Cir. 2004) ....................................... 16, 22

*Gregory v. Ashcroft*,
501 U.S. 452 (1991) ................................................................. 14

*Gust, Inc., v. Alphacap Ventures, LLC*,
905 F.3d 1321 (Fed. Cir. 2018) ............................................... 7

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*,
153 F.3d 1318 (Fed. Cir. 1998) ....................................... 16, 21

*Katana Silicon Techs. LLC v. Micron Tech., Inc.*,
  671 F. Supp. 3d 1138 (D. Idaho 2023) .................................... 14, 17, 20

*Landmark Tech. LLC v. Azure Farms, Inc.*,
  No. 18-cv-1568, 2020 WL 1430088 (D. Or. Mar. 24, 2020) ................ 18

*Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*,
  24 F.3d 1368 (Fed. Cir. 1994) ............................................ 15

*NAPCO, Inc. v. Landmark Tech. A, LLC*,
  555 F. Supp. 3d 189 (M.D.N.C. 2021) .................................... 18

*Puritan Med. Prods. Co. LLC v. Copan Italia S.p.A.*,
  188 A.3d 853 (Me. 2018) ................................................. 18

*United States v. Salerno*,
  481 U.S. 739 (1987) ..................................................... 21

*Washington v. Landmark Tech. A, LLC*,
  637 F. Supp. 3d 1154 (W.D. Wash. 2022) ................................. 18

*Zenith Elecs. Corp. v. Exzec, Inc.*,
  182 F.3d 1340 (Fed. Cir. 1999) ..................................... 17, 20

**Constitutional Provision**

U.S. Const. art. I, § 8, cl. 8 ..................................................... 10

**Statutes**

15 U.S.C. § 45(a)(1) ............................................................. 4

35 U.S.C. § 285 ................................................................. 19

Ala. Code §§ 8-12A-1 to -7 ...................................................... 11

Ala. Code § 8-12A-2(a) .......................................................... 12

Ala. Code § 8-12A-2(b) .......................................................... 13

Ala. Code § 8-12A-2(d) .......................................................... 13

Ala. Code § 8-12A-2(e) .......................................................... 12

Ala. Code § 8-12A-2(f) .......................................................... 13

Ariz. Rev. Stat. Ann. §§ 44-1421 to -1424 ...................................... 11

Ariz. Rev. Stat. Ann. § 44-1422(A) .............................................. 12

Ariz. Rev. Stat. Ann. § 44-1422(B) .............................................. 13

iii

Ariz. Rev. Stat. Ann. § 44-1423 ........................................................ 13

Colo. Rev. Stat. §§ 6-12-101 to -104 .............................................. 11

Colo. Rev. Stat. § 6-12-102(1) .......................................................... 12

Colo. Rev. Stat. § 6-12-104 ............................................................... 13

Fla. Stat. Ann. §§ 501.991–.997 ...................................................... 11

Fla. Stat. Ann. § 501.991 .................................................................. 11

Fla. Stat. Ann. § 501.993 .................................................................. 12

Fla. Stat. Ann. § 501.995 .................................................................. 13

Ga. Code Ann. §§ 10-1-770 to -774 ................................................. 11

Ga. Code Ann. § 10-1-771(a) ........................................................... 12

Ga. Code Ann. § 10-1-771(b) ........................................................... 12

Ga. Code Ann. § 10-1-771(c) ............................................................ 13

Ga. Code Ann. § 10-1-773(b) ........................................................... 13

Ga. Code Ann. § 10-1-773(c) ............................................................ 13

Idaho Code §§ 48-1701 to -1708 .................................................. 4, 11

Idaho Code § 48-1701 ................................................................... 4, 11

Idaho Code § 48-1703 ..................................................................... 1, 4

Idaho Code § 48-1703(1) ................................................................... 12

Idaho Code § 48-1703(2) ..................................................... 12, 19, 21

Idaho Code § 48-1703(2)(a)-(h) ........................................................ 17

Idaho Code § 48-1703(2)(b)(i)-(iii) .................................................. 12

Idaho Code § 48-1703(3) ............................................................. 13, 17

Idaho Code § 48-1705 ........................................................................ 13

Idaho Code § 48-1706 ..................................................................... 1, 4

815 Ill. Comp. Stat. 505/2SSS ......................................................... 11

815 Ill. Comp. Stat. 505/2SSS(b) ..................................................... 12

Ind. Code Ann. §§ 24-11-1-1 to -5-2 ................................................ 11

Ind. Code Ann. § 24-11-3-1 ............................................................... 12

Ind. Code Ann. § 24-11-3-2 ...................................................................... 12

Ind. Code Ann. § 24-11-3-3 ...................................................................... 13

Ind. Code Ann. § 24-11-5-1 ...................................................................... 13

Kan. Stat. Ann. § 50-6,140 ....................................................................... 11

La. Stat. Ann. § 51:1428 ........................................................................... 11

La. Stat. Ann. § 51:1428(B)(1) .................................................................. 12

La. Stat. Ann. § 51:1428(B)(2) .................................................................. 12

La. Stat. Ann. § 51:1428(B)(3) .................................................................. 13

La. Stat. Ann. § 51:1428(C) ...................................................................... 13

Md. Code Ann., Com. Law §§ 11-1601 to -1605 ...................................... 11

Md. Code Ann., Com. Law § 11-1603(a) ................................................... 12

Md. Code Ann., Com. Law § 11-1603(b)(1) .............................................. 12

Md. Code Ann., Com. Law § 11-1603(b)(2) .............................................. 13

Md. Code Ann., Com. Law § 11-1604 ....................................................... 13

Md. Code Ann., Com. Law § 11-1605 ....................................................... 13

Me. Rev. Stat. Ann. tit. 14, §§ 8701–8702 ............................................... 11

Me. Rev. Stat. Ann. tit. 14, § 8701(2) ....................................................... 12

Me. Rev. Stat. Ann. tit. 14, § 8701(4) ....................................................... 13

Me. Rev. Stat. Ann. tit. 14, § 8701(5) ....................................................... 13

Mich. Comp. Laws Ann. §§ 446.161–.173 ................................................ 11

Mich. Comp. Laws Ann. § 446.165 ........................................................... 12

Mich. Comp. Laws Ann. § 446.169(1) ...................................................... 13

Mich. Comp. Laws Ann. § 446.169(2) ...................................................... 13

Minn. Stat. § 325D.72 .......................................................................... 11, 13

Miss. Code Ann. §§ 75-24-351 to -359 .................................................... 11

Miss. Code Ann. § 75-24-355 ................................................................... 13

Mo. Ann. Stat. §§ 416.650–.658 .............................................................. 11

Mo. Ann. Stat. § 416.652(1) ..................................................................... 12

Mo. Ann. Stat. § 416.652(2) ........................................................... 12

Mo. Ann. Stat. § 416.652(3) ........................................................... 13

Mo. Ann. Stat. § 416.654 ............................................................... 13

Mo. Ann. Stat. § 416.656 ............................................................... 13

Mont. Code Ann. §§ 30-13-151 to -154 .................................... 11

N.C. Gen. Stat. §§ 75-140 to -145 .............................................. 11

N.C. Gen. Stat. § 75-141 ................................................................ 11

N.C. Gen. Stat. § 75-143(a) .......................................................... 12

N.C. Gen. Stat. § 75-143(b) .......................................................... 13

N.C. Gen. Stat. § 75-145(a) .......................................................... 13

N.C. Gen. Stat. § 75-145(b) .......................................................... 13

N.D. Cent. Code §§ 51-36-01 to -08 ......................................... 11

N.D. Cent. Code § 51-36-02 ......................................................... 12

N.D. Cent. Code § 51-36-03 ......................................................... 12

N.D. Cent. Code § 51-36-04 ......................................................... 13

N.D. Cent. Code § 51-36-06 ......................................................... 13

N.D. Cent. Code § 51-36-07 ......................................................... 13

N.H. Rev. Stat. Ann. §§ 359-M:1 to :5 ..................................... 11

N.H. Rev. Stat. Ann. § 359-M:2(I) .............................................. 12

N.H. Rev. Stat. Ann. § 359-M:2(II) ............................................. 12

N.H. Rev. Stat. Ann. § 359-M:2(III) ........................................... 13

N.H. Rev. Stat. Ann. § 359-M:4(I) .............................................. 13

N.H. Rev. Stat. Ann. § 359-M:4(II) ............................................. 13

Okla. Stat. Ann. tit. 23, §§ 111–114 .......................................... 11

Or. Rev. Stat. Ann. § 646A.810 ................................................... 11

R.I. Gen. Laws §§ 6-41.1-1 to -6 ................................................ 11

R.I. Gen. Laws § 6-41.1-1 ............................................................. 11

R.I. Gen. Laws § 6-41.1-3(a) ........................................................ 12

R.I. Gen. Laws § 6-41.1-3(b) ................................................................12

R.I. Gen. Laws § 6-41.1-3(c) ................................................................13

R.I. Gen. Laws § 6-41.1-6(a) ................................................................13

R.I. Gen. Laws § 6-41.1-6(b) ................................................................13

2016 S.C. Acts No. 261 § 2 ..................................................................11

S.D. Codified Laws §§ 37-36-1 to -9 ....................................................11

S.D. Codified Laws § 37-36-2 ..............................................................12

S.D. Codified Laws § 37-36-3 ..............................................................12

S.D. Codified Laws § 37-36-4 ..............................................................13

S.D. Codified Laws § 37-36-6 ..............................................................13

S.D. Codified Laws § 37-36-7 ..............................................................13

Tenn. Code Ann. §§ 29-10-101 to -104 ................................................11

Tex. Bus. & Com. Code Ann. §§ 17.951–.955........................................11

Utah Code Ann. §§ 78B-6-1901 to -1905...............................................11

Utah Code Ann. § 78B-6-1901 ..............................................................11

Va. Code Ann. §§ 59.1-215.1–.4............................................................11

Va. Code Ann. § 59.1-215.2(A) ............................................................12

Va. Code Ann. § 59.1-215.2(B) ............................................................12

Va. Code Ann. § 59.1-215.2(C) ............................................................13

Va. Code Ann. § 59.1-215.3 ..................................................................13

Vt. Stat. Ann. tit. 9, §§ 4195–4199 .......................................................11

Vt. Stat. Ann. tit. 9, § 4195 ..........................................................10, 11

Vt. Stat. Ann. tit. 9, § 4197(a) .............................................................12

Vt. Stat. Ann. tit. 9, § 4197(b) .............................................................12

Vt. Stat. Ann. tit. 9, § 4197(c) .............................................................13

Vt. Stat. Ann. tit. 9, § 4199 ..................................................................10

Vt. Stat. Ann. tit. 9, § 4199(a) .............................................................13

Vt. Stat. Ann. tit. 9, § 4199(b) .............................................................13

Wash. Rev. Code Ann. §§ 19.350.005–.900 ..............................................11

Wash. Rev. Code Ann. § 19.350.005..........................................................11

Wash. Rev. Code Ann. § 19.350.020(1) .....................................................12

Wash. Rev. Code Ann. § 19.350.020(2) .....................................................12

Wash. Rev. Code Ann. § 19.350.020(4) .....................................................13

Wash. Rev. Code Ann. § 19.350.030..........................................................13

Wis. Stat. Ann. § 100.197...........................................................................11

Wyo. Stat. Ann. § 40-1-201 to -205 ...........................................................11

Wyo. Stat. Ann. § 40-1-202(a) ...................................................................12

Wyo. Stat. Ann. § 40-1-202(b) ...................................................................12

Wyo. Stat. Ann. § 40-1-202(c) ...................................................................13

Wyo. Stat. Ann. § 40-1-203.........................................................................13

Wyo. Stat. Ann. § 40-1-204.........................................................................13

**Rule**

Fed. R. Civ. P. 11 .......................................................................................19

**Other Authorities**

Hon. William Alsup, *Huge Numbers of Patent Cases: How One District Judge Manages Them*, 18 Chi.-Kent J. Intell. Prop. 111 (2019) ..........8

James Bessen, *The Evidence Is In: Patent Trolls Do Hurt Innovation*, Harv. Bus. Rev. (Nov. 2014), https://bit.ly/3eiTLoA ............................9

James Bessen & Michael J. Meurer, *The Direct Costs from NPE Disputes*, 99 Cornell L. Rev. 387 (2014) .................................................9

Ran Duan, *Patent Trolls and Capital Structure Decisions in High-Tech Firms*, 155 J. of Banking & Fin. 1 (2023)...............................................8

Exec. Office of the President, *Patent Assertion and U.S. Innovation* (June 2013), https://bit.ly/3UUVi9p .........................................3, 5, 8, 9

Kenneth G. Huang, et al., *Escaping the Patent Trolls: The Impact of Non-Practicing Entity Litigation on Firm Innovation Strategies*, Strategic Mgmt. J. 1 (2024) ....................................................................8

S. 1720, 113th Cong. § 5 (2013)..................................................................4

S. 632, 114th Cong. §§ 202, 203 (2015) ..................................................... 3

Unified Patents, *Patent Dispute Report: 2023 in Review* (Jan. 8, 2024), https://bit.ly/3JXpdrk .......................................................................... 3, 5

Brian T. Yeh, *An Overview of the "Patent Trolls" Debate*, Cong. Rsch. Serv. (Apr. 16, 2013), bit.ly/44VSZ9x ................................................. 3, 5

## INTEREST OF AMICI CURIAE

Under Federal Rule of Appellate Procedure 29(a)(2), the States of North Carolina, Alaska, Arizona, Colorado, Hawaiʻi, Illinois, Indiana, Kansas, Louisiana, Maine, Maryland, Massachusetts, Mississippi, New Jersey, New Mexico, New York, Oklahoma, Oregon, South Carolina, South Dakota, Tennessee, Texas, Vermont, Virginia, Washington, Wisconsin, and Wyoming, and the District of Columbia, respectfully submit this brief as amici curiae in support of appellees.  The district court below correctly held that federal law does not preempt an Idaho law that gives a private right of action to targets of bad-faith assertions of patent infringement.  *See* Idaho Code §§ 48-1703, -1706.  Many other States have passed similar laws in an effort to curb abusive practices by so-called "patent trolls."  Amici States therefore have a significant interest in defending the constitutionality of these state unfair-competition laws.

# INTRODUCTION

State unfair-competition law has "coexisted harmoniously with federal patent protection" since the Founding. *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166 (1989). This appeal involves a uniquely pernicious form of unfair competition that harms innovative businesses and stifles economic growth: bad-faith assertions of patent infringement.

Patent trolls—also known as nonpracticing entities or patent-assertion entities—are firms that use their patents "not as a basis for producing and selling goods but, instead, primarily for obtaining licensing fees." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 646 (2015) (citation and quotation marks omitted). This "industry" weaponizes the patent system in ways that harm productive businesses and "can impose a harmful tax on innovation." *Id.* at 646-47 (citation and quotation marks omitted). Patent trolling often involves a common set of unfair business practices:

- Acquiring low-quality patents that are often vague or broadly worded;

- Forming shell corporations to hide the true owner, while maintaining few assets beyond the patent itself to reduce litigation risk;

- Lodging bad-faith assertions of patent infringement against a large number of potential defendants, often with a particular focus on vulnerable or unsophisticated parties; and

- Demanding nuisance-value settlements.

*See generally* Exec. Office of the President, *Patent Assertion and U.S. Innovation* at 4-7 (June 2013), https://bit.ly/3UUVi9p.  Because of these abusive practices, many targeted businesses must either pay to settle meritless claims or devote significant resources to defending against false patent-infringement accusations.

This problem shows no signs of abating.  Patent trolls now generate more than half of all patent litigation.  Unified Patents, *Patent Dispute Report: 2023 in Review* (Jan. 8, 2024), https://bit.ly/3JXpdrk.  For almost two decades, bad-faith patent assertions have drawn the attention of policymakers, legal scholars, and the press.  Brian T. Yeh, *An Overview of the "Patent Trolls" Debate*, Cong. Rsch. Serv. at 1 (Apr. 16, 2013), bit.ly/44VSZ9x.  But despite various attempts, Congress has failed to pass legislation to address this problem on the federal level. *See, e.g.*, S. 632, 114th Cong. §§ 202, 203 (2015) (unenacted legislation that would have made bad-faith patent assertions an "unfair or

deceptive act or practice" under 15 U.S.C. § 45(a)(1)); S. 1720, 113th
Cong. § 5 (2013) (similar).

Fortunately, more than thirty States have stepped in to fill the
void.  Exercising their historic police powers, these States have passed
laws to bar the kind of unfair competition on which patent-trolling
relies.  Idaho's Bad Faith Assertions of Patent Infringement Act is one
such law.  Idaho Code §§ 48-1701 to -1708.  That law reflects a policy
judgment shared by a majority of States: that patent trolling harms
innovation, businesses, consumers, and state economies.  *See id.* § 48-
1701 (legislative findings of fact).  By giving a private cause of action
directly to targets of bad-faith assertions of patent infringement, *id.*
§§ 48-1703, -1706, Idaho's law provides an important tool for businesses
to fight back against abusive practices by patent trolls.

Federal law does not preclude a State like Idaho from passing
unfair-competition laws to stop unscrupulous business practices, even
when those practices involve patents.  The district court below therefore
correctly held that federal law does not facially preempt Idaho's private
right of action for targets of bad-faith assertions of patent infringement.
Amici States respectfully request that the Court affirm the district

4

court's judgment and preserve their sovereign authority to protect

consumers and businesses from unfair competition.

## ARGUMENT

## I.    The Majority Of States Have Enacted Laws To Promote Innovation By Combating Bad-Faith Patent Assertions.

### A.    Patent trolls harm innovation through bad-faith litigation.

Patent trolling abuses our patent system and stifles innovation.

Patent trolls focus "not on developing or commercializing technologies

but on buying and asserting patents against companies that have

already begun using them, often after independently developing them

without knowledge" of the asserted patent.  Yeh, *supra*, at 1.  This

business model causes "great harm to society" by straining, rather than

contributing to, our country's "innovation ecosystem."  *Patent Assertion*

*and U.S. Innovation*, *supra*, at 9.

Instead of fostering innovation, patent trolls initiate expensive

patent litigation—and a lot of it.  Patent-troll-related litigation now

makes up roughly 58 percent of all patent lawsuits.  *See* Unified

Patents, *supra*.  These meritless lawsuits impose considerable costs on

productive businesses and, ultimately, consumers.

Defending against even baseless assertions of patent infringement can inflict heavy burdens.  For example, as this Court has recognized, a district court often must "engage in excessive claim construction analysis before it is able to see the lack of merit of the patentee's infringement allegations."  *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011).  In addition, the cost of discovery falls disproportionately on accused infringers, who "often possess enormous amounts of potentially relevant documents that are ultimately collected and produced."  *Id*.  By contrast, patent trolls have "little at risk when filing suit" because they do "not engage in business activities that would potentially give rise to" counterclaims.  *Id.*

Patent trolls can therefore extract significant settlements from productive companies merely by demanding less than the cost of litigation—even for completely "meritless" claims.  *Id.*  This Court's decision in *Eon-Net* illustrates the parasitic nature of patent-troll litigation.  In that case, a patent troll called Eon-Net offered to settle a "meritless" patent-infringement claim for $25,000 to $75,000—one of numerous such "offers" that Eon-Net had made to productive businesses.  *Id.*  Refusing to bow to this bad-faith tactic, one falsely

6

accused infringer "expended over $600,000 in attorney fees and costs" just to litigate through claim construction. *Id.* Given this disparity, the Court found it "apparent why the vast majority of those that Eon-Net accused of infringement chose to settle early in the litigation." *Id.* The "low settlement offers—less than ten percent of the cost that [the alleged infringer] expended to defend suit—effectively ensured that Eon-Net's baseless infringement allegations remained unexposed, allowing Eon-Net to continue to collect additional nuisance value settlements." *Id.*

Only because one accused infringer was willing to undertake the costly expense of litigation was this Court able to ultimately hold that Eon-Net's claims of patent infringement were made in bad faith. *Id.* at 1316-17; *see id.* (affirming Rule 11 sanctions against Eon-Net). But the *Eon-Net* case is the exception that proves the rule: As this Court has recognized, a patent troll is often "able to obtain not insignificant revenues without having to test the merits of its position" in court. *Gust, Inc., v. Alphacap Ventures, LLC*, 905 F.3d 1321, 1332 (Fed. Cir. 2018).

These costs are "a plague on innovation."  Hon. William Alsup,

*Huge Numbers of Patent Cases: How One District Judge Manages Them*,

18 Chi.-Kent J. Intell. Prop. 111, 124 (2019).  Not only do they reduce

funding that might otherwise be available for research and

development, but they also distort the innovation process itself.

Kenneth G. Huang, et al., *Escaping the Patent Trolls: The Impact of*

*Non-Practicing Entity Litigation on Firm Innovation Strategies*,

Strategic Mgmt. J. 1, 3 (2024).  For example, even companies that are

not targets of bad-faith patent assertions may rationally decide to shift

their innovation priorities away from sectors with a higher risk of

patent-troll litigation.  *Id.* at 3-4.  The costs imposed by patent trolling

may also affect how companies are managed more generally, from their

capital flows to their hiring decisions.  *See* Ran Duan, *Patent Trolls and*

*Capital Structure Decisions in High-Tech Firms*, 155 J. of Banking &

Fin. 1, 2 (2023); *Patent Assertion and U.S. Innovation*, *supra*, at 10-11.

And while patent trolling can harm businesses of all kinds, the

burden falls disproportionately on smaller companies.  The majority of

bad-faith patent assertions target small companies and even "end users

of products, including many small businesses."  *Patent Assertion and*

*U.S. Innovation*, *supra*, at 1. These smaller companies "accrue larger costs relative to their size." James Bessen & Michael J. Meurer, *The Direct Costs from NPE Disputes*, 99 Cornell L. Rev. 387, 411 & n.102 (2014). Because of the significant costs associated with defending against baseless infringement allegations, many smaller companies feel immense pressure to settle. These settlements impose real harms. Hundreds of smaller companies have reported "significant operational impact[s]," from having to change a product, to delays in hiring and operational milestones. *Patent Assertion and U.S. Innovation*, *supra*, at 10-11.

Moreover, the costs of bad-faith patent assertions have effects beyond individual businesses, causing system-wide harms to our Nation's economy. For example, one scholar has estimated that bad-faith claims of patent infringement drain more than $60 billion annually from productive firms. James Bessen, *The Evidence Is In: Patent Trolls Do Hurt Innovation*, Harv. Bus. Rev. (Nov. 2014), https://bit.ly/3eiTLoA.

In sum, patent trolls aggressively threaten expensive lawsuits against productive businesses to extract nuisance settlements. The "*in*

9

*terrorem* power of patent trolls" hurts not only individual businesses but also our Nation's entire economy. *Commil*, 575 U.S. at 649 (Scalia, J., dissenting). And patent trolls undermine the Constitution's vision that the patent system "promote the Progress of Science and useful Arts." U.S. Const. art. I, § 8, cl. 8.

**B.    Idaho is one of more than thirty States that has passed legislation to curb bad-faith patent assertions.**

In response to the significant harms described above, numerous States have passed laws to curb bad-faith assertions of patent infringement.

In 2013, Vermont became the first State to pass a statute aimed at preventing bad-faith patent-infringement assertions. Specifically, the statute sought to protect "knowledge-based companies," especially "small- and medium-size" companies. Vt. Stat. Ann. tit. 9, § 4195. The Vermont law allows individual parties or the Attorney General to bring lawsuits challenging patent-infringement assertions made in bad faith. *Id.* § 4199.

Just eleven years later, thirty-two States, including Idaho, have now enacted similar statutes.[1]

Although these laws vary in their particulars, they tend to follow a general pattern.  Several laws begin with legislative findings of fact setting out how patent trolling harms innovation and state economies.[2] The laws generally bar any person from making a bad-faith assertion of

---

[1]    *See* Ala. Code §§ 8-12A-1 to -7; Ariz. Rev. Stat. Ann. §§ 44-1421 to -1424; Colo. Rev. Stat. §§ 6-12-101 to -104; Fla. Stat. Ann. §§ 501.991–.997; Ga. Code Ann. §§ 10-1-770 to -774; Idaho Code §§ 48-1701 to -1708; 815 Ill. Comp. Stat. 505/2SSS; Ind. Code Ann. §§ 24-11-1-1 to -5-2; Kan. Stat. Ann. § 50-6,140; La. Stat. Ann. § 51:1428; Me. Rev. Stat. Ann. tit. 14, §§ 8701–8702; Md. Code Ann., Com. Law §§ 11-1601 to -1605; Mich. Comp. Laws Ann. §§ 446.161–.173; Minn. Stat. § 325D.72; Miss. Code Ann. §§ 75-24-351 to -359; Mo. Ann. Stat. §§ 416.650–.658; Mont. Code Ann. §§ 30-13-151 to -154; N.H. Rev. Stat. Ann. §§ 359-M:1 to :5; N.C. Gen. Stat. §§ 75-140 to -145; N.D. Cent. Code §§ 51-36-01 to -08; Okla. Stat. Ann. tit. 23, §§ 111–114; Or. Rev. Stat. Ann. § 646A.810; R.I. Gen. Laws §§ 6-41.1-1 to -6; S.D. Codified Laws §§ 37-36-1 to -9; Tenn. Code Ann. §§ 29-10-101 to -104; Tex. Bus. & Com. Code Ann. §§ 17.951–.955; Utah Code Ann. §§ 78B-6-1901 to -1905; Vt. Stat. Ann. tit. 9, §§ 4195–4199; Va. Code Ann. §§ 59.1-215.1–.4; Wash. Rev. Code Ann. §§ 19.350.005–.900; Wis. Stat. Ann. § 100.197; Wyo. Stat. Ann. §§ 40-1-201 to -205.  South Carolina also passed a similar law in 2016, but it was written to expire after five years.  2016 S.C. Acts No. 261 § 2. It is no longer in force.

[2]    *See* Fla. Stat. Ann. § 501.991; Idaho Code § 48-1701; N.C. Gen. Stat. § 75-141; R.I. Gen. Laws § 6-41.1-1; Utah Code Ann. § 78B-6-1901; Vt. Stat. Ann. tit. 9, § 4195; Wash. Rev. Code Ann. § 19.350.005.

patent infringement.[3]  A majority of these laws define "bad faith"

through a list of nonexhaustive factors.[4]  To take just one example,

under some state laws, courts may consider as evidence of bad faith the

fact that a demand letter lacks basic information about the patent—the

patent number, the identity of the patent owner, and "factual

allegations" about "the specific areas in which the target's products,

services and technology infringe the patent or are covered by the claims

in the patent."[5]  A majority of these laws also include a list of

---

[3]     *See, e.g.*, Ala. Code § 8-12A-2(a); Ariz. Rev. Stat. Ann. § 44-1422(A); Colo. Rev. Stat. § 6-12-102(1); Fla. Stat. Ann. § 501.993; Ga. Code Ann. § 10-1-771(a); Idaho Code § 48-1703(1); 815 Ill. Comp. Stat. 505/2SSS(b); Ind. Code Ann. § 24-11-3-1; La. Stat. Ann. § 51:1428(B)(1); Me. Rev. Stat. Ann. tit. 14, § 8701(2); Md. Code Ann., Com. Law § 11-1603(a); Mich. Comp. Laws Ann. § 446.165; Mo. Ann. Stat. § 416.652(1); N.H. Rev. Stat. Ann. § 359-M:2(I); N.C. Gen. Stat. § 75-143(a); N.D. Cent. Code § 51-36-02; R.I. Gen. Laws § 6-41.1-3(a); S.D. Codified Laws § 37-36-2; Vt. Stat. Ann. tit. 9, § 4197(a); Va. Code Ann. § 59.1-215.2(A); Wash. Rev. Code Ann. § 19.350.020(1); Wyo. Stat. Ann. § 40-1-202(a).

[4]     *See, e.g.*, Ala. Code § 8-12A-2(e); Ariz. Rev. Stat. Ann. § 44-1422(A); Ga. Code Ann. § 10-1-771(b); Idaho Code § 48-1703(2); Ind. Code Ann. § 24-11-3-2; La. Stat. Ann. § 51:1428(B)(2); Md. Code Ann., Com. Law § 11-1603(b)(1); Mo. Ann. Stat. § 416.652(2); N.H. Rev. Stat. Ann. § 359-M:2(II); N.C. Gen. Stat. § 75-143(a); N.D. Cent. Code § 51-36-03; R.I. Gen. Laws § 6-41.1-3(b); S.D. Codified Laws § 37-36-3; Vt. Stat. Ann. tit. 9, § 4197(b); Va. Code Ann. § 59.1-215.2(B); Wash. Rev. Code Ann. § 19.350.020(2); Wyo. Stat. Ann. § 40-1-202(b).

[5]     *See, e.g.*, Idaho Code § 48-1703(2)(b)(i)-(iii).

nonexhaustive factors that a court may consider as evidence weighing
against a bad-faith finding.[6]  Many laws then provide a cause of
action—typically for equitable and monetary relief, as well as costs and
fees—to targets of bad-faith assertions of patent infringement.[7]  Some
laws also empower State Attorneys General to bring enforcement
actions, either instead of or in addition to private lawsuits.[8]

---

[6]  *See, e.g.*, Ala. Code § 8-12A-2(f); Ariz. Rev. Stat. Ann. § 44-1422(B);
Ga. Code Ann. § 10-1-771(c); Idaho Code § 48-1703(3); Ind. Code Ann.
§ 24-11-3-3; La. Stat. Ann. § 51:1428(B)(3); Md. Code Ann., Com. Law
§ 11-1603(b)(2); Mo. Ann. Stat. § 416.652(3); N.H. Rev. Stat. Ann. § 359-
M:2(III); N.C. Gen. Stat. § 75-143(b); N.D. Cent. Code § 51-36-04; R.I.
Gen. Laws § 6-41.1-3(c); S.D. Codified Laws § 37-36-4; Vt. Stat. Ann. tit.
9, § 4197(c); Va. Code Ann. § 59.1-215.2(C); Wash. Rev. Code Ann.
§ 19.350.020(4); Wyo. Stat. Ann. § 40-1-202(c).

[7]  *See, e.g.*, Ala. Code § 8-12A-2(d); Fla. Stat. Ann. § 501.995; Ga.
Code Ann. § 10-1-773(c); Idaho Code § 48-1706; Ind. Code Ann. § 24-11-
5-1; Me. Rev. Stat. Ann. tit. 14, § 8701(4); Md. Code Ann., Com. Law
§ 11-1605; Mich. Comp. Laws Ann. § 446.169(2); Mo. Ann. Stat.
§ 416.654; N.H. Rev. Stat. Ann. § 359-M:4(II); N.C. Gen. Stat. § 75-
145(b); N.D. Cent. Code § 51-36-06; R.I. Gen. Laws § 6-41.1-6(b); S.D.
Codified Laws § 37-36-7; Vt. Stat. Ann. tit. 9, § 4199(b); Wyo. Stat. Ann.
§ 40-1-203.

[8]  *See, e.g.*, Ala. Code § 8-12A-2(b); Ariz. Rev. Stat. Ann. § 44-1423;
Colo. Rev. Stat. § 6-12-104; Ga. Code Ann. § 10-1-773(b); Idaho Code
§ 48-1705; La. Stat. Ann. § 51:1428(C); Me. Rev. Stat. Ann. tit. 14,
§ 8701(5); Md. Code Ann., Com. Law § 11-1604; Mich. Comp. Laws Ann.
§ 446.169(1); Minn. Stat. § 325D.72; Miss. Code Ann. § 75-24-355; Mo.
Ann. Stat. § 416.656; N.H. Rev. Stat. Ann. § 359-M:4(I); N.C. Gen. Stat.
§ 75-145(a); N.D. Cent. Code § 51-36-07; R.I. Gen. Laws § 6-41.1-6(a);
S.D. Codified Laws § 37-36-6; Vt. Stat. Ann. tit. 9, § 4199(a); Va. Code

Idaho is thus far from an outlier in its efforts to curb bad-faith patent assertions. A majority of States have recognized the significant harms caused by patent trolling and have passed unfair-competition laws to stop those abuses.

## II. The District Court Correctly Held That Federal Law Does Not Facially Preempt Idaho Law.

The district court below correctly held that federal law does not facially preempt Idaho's cause of action for bad-faith patent assertions. *Katana Silicon Techs. LLC v. Micron Tech., Inc.*, 671 F. Supp. 3d 1138, 1149-55 (D. Idaho 2023). The Idaho law—like the many other state laws discussed above—works in tandem, not in conflict, with federal law.

Our dual-sovereign system often benefits from unique state approaches to important policy questions. *See Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991). The federal patent system is no exception. Federal law unquestionably controls patent rights and issuance. *Bonito Boats*, 489 U.S. at 156. But States otherwise have wide latitude to regulate the use of intellectual property through unfair-competition

---

Ann. § 59.1-215.3; Wash. Rev. Code Ann. § 19.350.030; Wyo. Stat. Ann. § 40-1-204.

law.  *Id.* at 166.  As this Court has explained, "[u]nfair competition law and patent law have long existed as distinct and independent bodies of law, each with different origins and each protecting different rights." *Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1373 (Fed. Cir. 1994).  While "[t]he law of unfair competition generally protects consumers and competitors from deceptive or unethical conduct in commerce," patent law "protects a patent owner from the unauthorized use by others of the patented invention, irrespective of whether deception or unfairness exists." *Id.*

This Court has developed a specific framework to decide whether federal patent law preempts state tort claims.  "State tort claims based on enforcing a patent . . . are preempted by federal patent laws, unless the claimant can show that the patent holder acted in bad faith." *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1304 (Fed. Cir. 2018).  "Bad faith includes separate objective and subjective components." *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008).  To be objectively in bad faith, infringement allegations "must be such that no reasonable litigant could reasonably expect success on the merits." *Id.* (citation and

quotation marks omitted).  To be subjectively in bad faith, infringement

allegations must be brought without "a subjective expectation of

success," for example, as "an attempt to interfere directly with the

business relationships of a competitor."  *Globetrotter Software, Inc. v.*

*Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1375-76 & n.8 (Fed. Cir. 2004)

(citation and quotation marks omitted).

Even if a state law does not expressly incorporate these subjective

and objective bad-faith requirements, this Court has held that courts

should read those elements into the challenged state law to avoid a

constitutional problem.  *Hunter Douglas, Inc. v. Harmonic Design, Inc.*,

153 F.3d 1318, 1336-37 (Fed. Cir. 1998), *overruled in part on other*

*grounds, Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356,

1358-59 (Fed. Cir. 1999) (en banc).  Thus, neither subjective bad faith

nor objective baselessness "need be a required element of a state tort

law for that cause of action to stave off preemption by federal patent

law."  *Id.* at 1336.  Instead, "to avoid preemption, 'bad faith must be

alleged and ultimately proven' in a particular case, 'even if bad faith is

not otherwise an element of the tort claim.'"  *Globetrotter*, 362 F.3d at

1374 (quoting *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999)).

Here, the challenged Idaho law requires a plaintiff to plead and prove a bad-faith assertion of patent infringement. The law—like many other state laws—has a list of nonexhaustive factors that a court may consider in determining bad faith. Idaho Code § 48-1703(2)(a)-(h). The Act further includes a list of factors that a court "may consider . . . as evidence that a person has *not* made a bad-faith assertion of patent infringement." *Id.* § 48-1703(3)(a)-(c) (emphasis added).

These various factors allow courts, consistent with this Court's preemption precedents, to find liability for bad-faith assertions of patent infringement only when an individual has made assertions that are both objectively and subjectively in bad faith. As the district court below correctly recognized, the Idaho law therefore "facilitates the application of the federal standard by illustrating what kinds of behavior could constitute bad faith." *Katana*, 671 F. Supp. 3d at 1151. And because "a court must follow federal law, the factors in Section 48-1703 are best viewed as a supplement to the federal standard, not an obstacle to it." *Id.* Many courts have reached a similar conclusion,

construing state laws barring bad-faith patent assertions to comply with the federal bad-faith standard. *See, e.g.*, *NAPCO, Inc. v. Landmark Tech. A, LLC*, 555 F. Supp. 3d 189, 211-12 (M.D.N.C. 2021) (North Carolina law); *Washington v. Landmark Tech. A, LLC*, 637 F. Supp. 3d 1154, 1162 (W.D. Wash. 2022) (Washington law); *Landmark Tech. LLC v. Azure Farms, Inc.*, No. 18-cv-1568, 2020 WL 1430088, at *5 (D. Or. Mar. 24, 2020) (Oregon law); *Puritan Med. Prods. Co. LLC v. Copan Italia S.p.A.*, 188 A.3d 853, 862-63 & n.15 (Me. 2018) (Maine law).

Katana nonetheless argues that the Idaho law stands as an impermissible obstacle to the purposes and objectives of Congress. Br. 39-44. But Katana must meet a "high threshold" to show obstacle preemption here. *Chamber of Commerce v. Whiting*, 563 U.S. 582, 607 (2011). Obstacle preemption "does not justify a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives." *Id.* This is because "such an endeavor would undercut the principle that it is Congress rather than the courts that preempts state law." *Id.*

Katana has fallen far short of meeting this high threshold. First, Katana asserts that the Idaho law "practically presumes bad-faith assertion," contrary to federal law. Katana Br. 43. But the statute says nothing of the kind. To the contrary, the statute's list of various discretionary factors that might support a bad-faith finding, or lack thereof, squarely forecloses that argument. Idaho Code § 48-1703(2)-(3).

Second, Katana also claims that the law "goes too far" because federal law already has protections against bad-faith assertions, including a provision that allows attorney's fees to prevailing parties in "exceptional cases," 35 U.S.C. § 285, and a rule that allows parties to seek sanctions, Fed. R. Civ. P. 11. Br. 42. Yet state law does not stand as an obstacle to federal objectives merely by providing consumers with *greater* protections than federal law. *See California v. ARC America Corp.*, 490 U.S. 93, 101-02 (1989).

Third, Katana asserts that the "threat" of the Idaho law has a chilling effect on asserting patent-infringement claims in federal court and therefore upsets the balance that Congress struck between "the rights of patentees and accused infringers." Katana Br. 42-43. The law,

however, is entirely consistent with the objectives of the federal patent system:  to "foster and reward invention," to "promote[ ] disclosure of inventions," and to "assure that ideas in the public domain remain there."  *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979). For all the reasons discussed above, the Idaho law works alongside the federal patent system to further these objectives by targeting only bad-faith assertions of patent infringement.  *Katana*, 671 F. Supp. 3d at 1153 ("Both the state Act and the federal Patent Act have the end goal of protecting valid patents without enabling bad-faith or vexatious litigation."); *see Zenith*, 182 F.3d at 1354 ("[B]ad faith marketplace statements concerning patents do not further the purposes of the patent law.").

Congress's silence on bad-faith patent assertions further undermines Katana's claim that state legislation in this area upsets any balance struck by federal patent law.  Indeed, Congress has considered, but failed to pass, federal legislation that would allow for enforcement actions against bad-faith patent assertions.  *See supra* pp 3-4.  That the "text of the [federal] statutory scheme is silent" "suggests

20

an absence of clear preemptive intent." *Conway v. United States*, 997 F.3d 1198, 1208-09 (Fed. Cir. 2021).

Fourth and finally, Katana misapprehends the standard for facial challenges. A statute is facially unconstitutional only when "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). In the preemption context, this means that "a state law is not per se preempted unless every fact situation that would satisfy the state law is in conflict with federal law." *Hunter Douglas*, 153 F.3d at 1335 (citing *California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 580 (1987)). For example, in *California Coastal Commission*, the Supreme Court upheld state permitting regulations against a facial preemption challenge because there was "a *possible* set of permit conditions not in conflict with federal law." 480 U.S. at 593 (emphasis added).

Katana cannot satisfy the facial preemption standard here. The Act provides a list of factors that a court may consider, each of which turns on questions of fact that may or may not apply in a given case. *See* Idaho Code §§ 48-1703(2)-(3). These factual considerations are designed to inform a court's ultimate legal conclusion about whether a

patent assertion was made in bad faith. *See id.* (stating that the factors may be considered "as evidence" of whether there was a bad-faith assertion). As long as a court's ultimate finding of liability under the Idaho law rests on a legal conclusion that the patent assertion was made in subjective bad faith and was objectively baseless, there is no conflict with federal law. *Globetrotter*, 362 F.3d at 1374.

## CONCLUSION

Amici States respectfully request that this Court affirm the judgment of the district court holding that federal law does not preempt Idaho's private right of action to targets of bad-faith patent-infringement assertions.

Respectfully submitted,

JOSHUA H. STEIN
Attorney General

Ryan Y. Park
Solicitor General

/s/ Nicholas S. Brod
Nicholas S. Brod
Deputy Solicitor General

*Counsel for Amici Curiae*
N.C. Department of Justice
Post Office Box 629, Raleigh, NC 27602
May 30, 2024                (919) 716-6400

**Additional Amici States**

TREG TAYLOR
Attorney General of
    Alaska

KRIS MAYES
Attorney General of
    Arizona

PHILIP J. WEISER
Attorney General of
    Colorado

ANNE E. LOPEZ
Attorney General of
    Hawai'i

KWAME RAOUL
Attorney General of
    Illinois

THEODORE E. ROKITA
Attorney General of
    Indiana

KRIS W. KOBACH
Attorney General of
    Kansas

LIZ MURRILL
Attorney General of
    Louisiana

AARON M. FREY
Attorney General of
    Maine

ANTHONY G. BROWN
Attorney General of
    Maryland

ANDREA JOY CAMPBELL
Attorney General of
    Massachusetts

LYNN FITCH
Attorney General of
    Mississippi

MATTHEW J. PLATKIN
Attorney General of
    New Jersey

RAÚL TORREZ
Attorney General of
    New Mexico

LETITIA JAMES
Attorney General of
    New York

GENTNER DRUMMOND
Attorney General of
    Oklahoma

ELLEN F. ROSENBLUM
Attorney General of
    Oregon

ALAN M. WILSON
Attorney General of
    South Carolina

MARTY J. JACKLEY
Attorney General of
   South Dakota

JONATHAN SKRMETTI
Attorney General & Reporter of
   Tennessee

KEN PAXTON
Attorney General of
   Texas

CHARITY R. CLARK
Attorney General of
   Vermont

JASON S. MIYARES
Attorney General of
   Virginia

ROBERT W. FERGUSON
Attorney General of
   Washington

JOSHUA L. KAUL
Attorney General of
   Wisconsin

BRIDGET HILL
Attorney General of
   Wyoming

BRIAN L. SCHWALB
Attorney General of the
   District of Columbia

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 4,338 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a 14-point, proportionally spaced typeface.

/s/ Nicholas S. Brod
Nicholas S. Brod