No. 23–2007, 23–2095

IN THE
# United States Court of Appeals for the Federal Circuit

MICRON TECHNOLOGY, INC.,
MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON
TECHNOLOGY TEXAS, LLC, STATE OF IDAHO,
*Appellees,*

*v.*

LONGHORN IP LLC,
*Appellant.*

-------------------------------------------------------------------------------

KATANA SILICON TECHNOLOGIES LLC,
*Appellant,*

*v.*

MICRON TECHNOLOGY, INC.,
MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON
TECHNOLOGY TEXAS, LLC, STATE OF IDAHO,
*Appellees.*

-------------------------------------------------------------------------------

*Appeal from the United States District Court for the District of Idaho in
No. 1:22-cv-00282, Judge David C. Nye*

**CORRECTED BRIEF OF *AMICI CURIAE*
COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION
AND HIGH TECH INVENTORS ALLIANCE
IN SUPPORT OF MICRON *ET AL.*
AND IN SUPPORT OF AFFIRMANCE**

Joshua Landau
Computer & Communications
    Industry Association
25 Massachusetts Avenue NW
Suite 300C
Washington, DC 20001
jlandau@ccianet.org
(202) 470-3622
Counsel for *Amici Curiae*

**CERTIFICATE OF INTEREST**

I certify that the following information is accurate and complete to the best of my knowledge.

Dated:  May 24, 2024                          */s/ Joshua Landau*

Joshua Landau

| 1. Represented Entities | 2. Real Parties in Interest | 3. Parent Corporations and Stockholders |
|---|---|---|
| Computer & Communications Industry Association | Same | None |
| High Tech Inventors Alliance | Same | None |

i

| **4. Legal Representatives** |
| --- |
| None |

| **5. Related Cases** |
| --- |
| None |

| **6. Organizational Victims and Bankruptcy Cases** |
| --- |
| Not Applicable |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ................................................................. iv

STATEMENT OF INTEREST ................................................................. 1

INTRODUCTION ................................................................. 4

ARGUMENT ................................................................. 8

    I.    MPHJ's Bad Faith Assertion Campaign Led To State Bad Faith Assertion Laws ................................................................. 8

    II.    Bad Faith Patent Assertion Laws Have Now Been Enacted In 34 States And Used In Several ................................................................. 13

    III.    State Bad Faith Assertion Laws Are Still Needed To Address Patent Litigation Abuses ................................................................. 15

CONCLUSION ................................................................. 19

# TABLE OF AUTHORITIES

## CASES

*800 Adept, Inc. v. Murex Sec., Ltd.,*
    539 F.3d 1354 (Fed. Cir. 2008) ........................................................ 14

*Beauty Indus. Grp. Opco, LLC v. Landmark Tech. A, LLC,*
    No. 2:20-cv-00590-JCB (D. Utah) .................................................. 17

*Boydstun Equip. Mfg., LLC v. Cottrell, Inc.,*
    No. 3:16-cv-790-SI (D. Or 2017) .................................................... 15

*Dow Chem. Co. v. Exxon Corp.,*
    139 F. 3d 1470 (Fed. Cir. 1998) ..................................................... 13

*Energy Heating, LLC v. Heat On-The-Fly, LLC,*
    889 F.3d 1291 (Fed. Cir. 2018) ...................................................... 14

*Globetrotter Software v. Elan Computer Grp., Inc.,*
    362 F.3d 1367 (Fed. Cir. 2004) ...................................... 5, 11, 13, 14

*Hunter Douglas Inc. v. Harmonic Design, Inc.,*
    153 F.3d 1318 (Fed. Cir. 1998) ...................................................... 13

*In re Innovatio IP Ventures, LLC Patent Litig.,*
    921 F. Supp. 2d 903 (N.D. Ill. 2013) ............................................. 16

*Landmark Tech., LLC v. Azure Farms, Inc.,*
    2020 WL 1430088 (D. Or. 2020) .................................................... 14

*NAPCO, Inc. v. Landmark Tech. A, LLC,*
    555 F. Supp. 3d. 189 (M.D.N.C. 2021) ..................................... 14, 17

*Puritan Med. Prods. Co. v. Copan Italia S.A.,*
    188 A.3d 853 (Me. 2018) ................................................................ 14

*Washington v. Landmark Tech. A, LLC,*
    637 F. Supp. 3d 1154 (W.D. Wash. 2022) ................................. 14, 17

*Zenith Elecs. Corp. v. Exzec, Inc.,*
    182 F. 3d 1340 (Fed. Cir. 1999) ..................................................... 14

**STATUTES**

9 V.S.A. § 4195 *et seq*..................................................................5, 11

Flor. Stat. § 501.991 .......................................................................17

Idaho Code Ann. § 48-1701 .......................................................14, 15

Idaho Code Ann. § 48-1703 ...............................................................13

**LEGISLATIVE HISTORY**

Vermont H.299 (2013) ....................................................................5, 11

**OTHER AUTHORITIES**

James Bessen & Michael Meurer, *The Direct Costs from NPE Disputes*, 99 Cornell L. Rev. 387 (2014) ...............................................5

Colleen Chien, *Startups and Patent Trolls*, 17 Stan. L. Rev. 461 (2014).................................................................8

Complaint, *FTC v. MPHJ et al.*, 1:14-cv-00011-WSS, Doc. No. 1-24 (W.D. Tex. Jan. 13, 2014), https://www.eff.org/files/2014/01/14/draft_ftc_complt_to_mphj.pdf ...9

Complaint, *MPHJ et al.*, FTC Dkt. No. C4513 (Mar. 17, 2015), https://www.ftc.gov/system/files/documents/cases/141106mphjcm pt.pdf ......................................................................................4, 9

*What we heard from startups this Patent Quality Week*, Engine (June 10, 2022), https://www.engine.is/news/category/what-we-heard-from-startups-this-patent-quality-week .................................17

Alison Griswold, *The FTC Has Settled With America's Most Notorious Patent Troll*, Slate (Nov. 7, 2014), https://slate.com/business/2014/11/ftc-patent-troll-settlement-mphj-charged-with-deceptive-sales-claims-and-phony-legal-threats.html ...................................................................................4, 10

Joshua Landau, *Another startup bites the dust, courtesy of patent trolls*, Patent Progress (May 17, 2024),

https://www.patentprogress.org/2024/05/another-startup-bites-the-dust-courtesy-of-patent-trolls/........................................................8

Joshua Landau, *State Bad Faith Patent Assertion Statutes*, Patent Progress (2019), https://www.patentprogress.org/state-bad-faith-patent-assertion-statutes/ ............................................6, 13

Mark Lemley & A. Douglas Melamed, *Missing the Forest for the Trolls*, 113 Colum. L. Rev. 2117 (2013) ................................................8

Joe Mullin, *Is Landmark Technology's Two-Decade Patent Assault On E-Commerce Finally Over?*, EFF (Oct. 13, 2023), https://www.eff.org/deeplinks/2023/10/landmark-technologys-two-decade-patent-assault-e-commerce-finally-over...............................16

Joe Mullin, *Meet the nice-guy lawyers who want $1,000 per worker for using scanners*, Ars Technica (Apr. 7, 2013), https://arstechnica.com/tech-policy/2013/04/meet-the-nice-guy-lawyers-who-want-1000-per-worker-for-using-scanners/ ...............4, 9

Joe Mullin, *Patent trolls want $1,000—for using scanners*, Ars Technica (Jan. 2, 2013), https://arstechnica.com/tech-policy/2013/01/patent-trolls-want-1000-for-using-scanners/ ..............9

Abby Rives, *State Policy Update: Anti-patent troll laws and what they mean for startups*, Engine Advocacy (Nov. 14, 2022), https://engineadvocacyfoundation.medium.com/state-policy-update-anti-patent-troll-laws-and-what-they-mean-for-startups-ed445184c4b8....................................................................................12

**STATEMENT OF INTEREST**

The Computer & Communications Industry Association ("CCIA") is an international nonprofit association representing a broad cross section of communications and technology firms. For more than fifty years, CCIA has promoted open markets, open systems, and open networks. CCIA members[1] employ more than 1.6 million workers, invest more than $100 billion in research and development, and contribute trillions of dollars in productivity to the global economy. CCIA regularly files *amicus* briefs in this and other courts to promote balanced patent policies.

The High Tech Inventors Alliance ("HTIA") represents leading technology providers and includes some of the most innovative companies in the world.[2] HTIA member companies are global leaders in software, ecommerce, cloud computing, artificial intelligence, quantum computing, digital advertising and marketing, streaming, networking and telecommunications hardware, computers,

---

[1] CCIA's members are listed at https://www.ccianet.org/about/members.
[2] More information on HTIA, including a full list of its members can be found at https://www.hightechinventors.com/.

1

smartphones, and semiconductors. HTIA includes four of the top six software companies in the world, two of the top ten providers of 5G network infrastructure, three of the ten largest tech hardware companies, and three of the ten largest semiconductor companies in the world. They are also some of the world's largest patent owners and have collectively been granted nearly 350,000 patents.

As product manufacturers, patent licensors and licensees, and patent owners, *amici*'s members benefit from a properly balanced patent system. Patent enforcement is part of that balance—but only if conducted in good faith. And when conducted in bad faith, patent assertions are appropriate subject matter for state regulation. *Amici* believe this *amicus* brief can provide additional context as to why more than thirty states passed bad faith patent assertion statutes in a short span of time and why those laws remain necessary today.

Pursuant to Fed. R. App. P. 29(a)(4)(e), no counsel for a party to the case underlying the pending petition for writ of mandamus authored this brief in whole or in part, and no party or party's counsel made a monetary contribution intended to fund the preparation or submission of this brief. No person other than *amici* or their counsel

2

made a monetary contribution to fund the preparation or submission of this brief.[3]

Pursuant to Fed. R. App. P. 29(a)(2), *amici* submit this brief along with an accompanying motion for leave to file.

---

[3] Micron, although a member of HTIA, did not participate in the decision to file or the preparation of this brief and did not provide funding intended for the preparation or submission of this brief.

3

## INTRODUCTION

In 2012, a secretive entity called MPHJ was formed.  MPHJ acquired a set of four patents and one pending application for a reported $1.[4]  It then formed more than 100 shell companies, each named with an apparently meaningless set of six letters.  And 81 of those shell entities were used to send letters targeting small businesses, demanding a license fee of $900-$1200 per employee.[5]

By the end of its campaign, MPHJ's shell companies sent out more than 16,000 demand letters.[6]  They were sued by multiple state attorneys general under state consumer protection laws, as well as being subject to an administrative action by the Federal Trade Commission.  This experience led Vermont to pass its law specifically targeting bad faith patent assertion, the Vermont Bad Faith Assertions

---

[4] Complaint, *MPHJ et al.*, FTC Dkt. No. C4513 at 2 (Mar. 17, 2015), https://www.ftc.gov/system/files/documents/cases/141106mphjcmpt.pdf.
[5] Joe Mullin, *Meet the nice-guy lawyers who want $1,000 per worker for using scanners*, Ars Technica (Apr. 7, 2013), https://arstechnica.com/tech-policy/2013/04/meet-the-nice-guy-lawyers-who-want-1000-per-worker-for-using-scanners/.
[6] Alison Griswold, *The FTC Has Settled With America's Most Notorious Patent Troll*, Slate (Nov. 7, 2014), https://slate.com/business/2014/11/ftc-patent-troll-settlement-mphj-charged-with-deceptive-sales-claims-and-phony-legal-threats.html.

4

of Patent Infringement Act.[7]  As acknowledged in the legislative

findings, Vermont considered the possibility of its law being pre-empted

by federal law.[8]  And, drawing from this Court's precedent,[9] it

addressed this possibility by requiring that the assertion be in bad

faith.[10]

MPHJ wasn't the only patent troll operating in this fashion, and

Vermont's wasn't the only state legislature that recognized bad faith

assertions as a substantial problem.  At this same time, a published

empirical analysis found that patent trolls imposed more than $29

billion in direct costs on innovator businesses in 2011 alone, with an

estimated 90% of NPE lawsuits filed against small and medium

businesses.[11]  The cost and frequency of abusive assertions caught the

---

[7] Vermont H.299 (2013), codified at 9 V.S.A. § 4195 *et seq*.

[8] 9 V.S.A. § 4195(a)(3) (recognizing "that Vermont is preempted from passing any law that conflicts with federal patent law").

[9] *See Globetrotter Software v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1375 (Fed. Cir. 2004) ("to avoid preemption, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim").

[10] 9 V.S.A. § 4197(a) (prohibiting "bad faith assertion of patent infringement").

[11] *See* James Bessen & Michael Meurer, *The Direct Costs from NPE Disputes*, 99 Cornell L. Rev. 387, 397 (2014),

attention of state legislatures and, over the course of the next 5 years, an additional 33 states would pass their own bad faith assertion laws.[12] These laws were frequently modeled on Vermont's law, and uniformly require bad faith assertion as an element of the offense.

In the years since, a number of non-practicing entities have used similar tactics. And other states, from coast to coast, have used their bad faith patent assertion laws to protect their residents from abuse of the patent system. But equally importantly, these bad faith assertion laws have likely had prophylactic effects, raising the risk of an MPHJ-style business model and decreasing the expected returns. These effects have discouraged others from taking MPHJ's approach, accomplishing the primary policy goal of these laws—deterring bad faith assertion.

The legislatures of 34 states have spoken—they recognized the problem bad faith patent assertion could create for their residents and enacted laws to protect them from this behavior. The Federal Circuit

---

https://scholarship.law.cornell.edu/cgi/viewcontent.cgi?article=4620&context=clr.

[12] Joshua Landau, *State Bad Faith Patent Assertion Statutes*, Patent Progress (2019), https://www.patentprogress.org/state-bad-faith-patent-assertion-statutes/.

should not lightly second-guess these states and their elected legislatures.

# ARGUMENT

## I.    MPHJ's Bad Faith Assertion Campaign Led To State Bad Faith Assertion Laws

The formation of MPHJ in 2012 wasn't the first instance of a so-called "bottom feeder" patent troll, an entity that sends out demand letters that intentionally set the settlement price below the cost of obtaining substantive legal counsel, much less mounting a litigation or IPR defense.[13] This pricing strategy makes it economically irrational for the targets of demand letters to defend themselves instead of just paying the troll to go away.  But even though these suits are often described as "nuisance" lawsuits, they are not merely an inconvenience. For a small company or startup, a bad faith demand letter can be a "death knell."[14]

MPHJ wasn't the first entity to pursue this business model.  In fact, it wasn't even the first bottom feeder to use the patents it

---

[13] *See* Mark Lemley & A. Douglas Melamed, *Missing the Forest for the Trolls*, 113 Colum. L. Rev. 2117, 2126 (2013).

[14] Colleen Chien, *Startups and Patent Trolls*, 17 Stan. L. Rev. 461, 474 (2014); *cf.* Joshua Landau, *Another startup bites the dust, courtesy of patent trolls*, Patent Progress (May 17, 2024), https://www.patentprogress.org/2024/05/another-startup-bites-the-dust-courtesy-of-patent-trolls/.

asserted.[15]  But its story is representative.  Formed as a Delaware

corporation, MPHJ acquired a set of four patents and one pending

application for a reported $1.[16]  It then set about forming more than 100

additional Delaware shell corporations, all but one named with an

apparently meaningless set of letters.  And those shell entities began to

send out letters demanding that small businesses pay a license fee of

$900-$1200 per employee.[17]  These letters were followed by successively

more aggressive letters threatening litigation.[18]

This was neither a novel nor unique business model.  What made

MPHJ notable wasn't its tactics, but rather the sheer scale of its

abusive campaign.  By the end of its campaign, MPHJ's shell companies

had sent out at least 16,000 demand letters to small businesses across

---

[15] Joe Mullin, *Patent trolls want $1,000—for using scanners*, Ars Technica (Jan. 2, 2013), https://arstechnica.com/tech-policy/2013/01/patent-trolls-want-1000-for-using-scanners/.

[16] Complaint, *MPHJ et al.*, FTC Dkt. No. C4513 at 2 (Mar. 17, 2015), https://www.ftc.gov/system/files/documents/cases/141106mphjcmpt.pdf.

[17] Joe Mullin, *Meet the nice-guy lawyers who want $1,000 per worker for using scanners*, Ars Technica (Apr. 7, 2013), https://arstechnica.com/tech-policy/2013/04/meet-the-nice-guy-lawyers-who-want-1000-per-worker-for-using-scanners/.

[18] *See* Complaint, *FTC v. MPHJ et al.*, 1:14-cv-00011-WSS, Doc. No. 1-24 (W.D. Tex. Jan. 13, 2014), https://www.eff.org/files/2014/01/14/draft_ftc_complt_to_mphj.pdf.

the country.[19]  This drew significant attention, leading to consumer

protection lawsuits by state attorneys general as well as legal action

taken by the Federal Trade Commission.

Notably, those initial cases were brought under general consumer

protection laws by government entities.  However, it was impractical for

the targets of bad faith assertions tactics to rely on government

enforcement actions to address every single instance of abuse.  State

attorneys general and the FTC have broad responsibilities and limited

resources.  Patent assertion entities that were less prolific than MPHJ

were likely to slip under the radar.  No matter how strenuous the

efforts of officials like Vermont's Attorney General, William Sorrell,

government actors lack the resources to pursue every case.  And there's

no guarantee they would even know bad faith assertions had occurred

in their state.  Because demand letters are not public communications,

enforcement agencies have no way of learning about the occurrence of a

bad faith assertion unless it is reported to them or made public by the

---

[19] Alison Griswold, *The FTC Has Settled With America's Most Notorious Patent Troll*, Slate (Nov. 7, 2014), https://slate.com/business/2014/11/ftc-patent-troll-settlement-mphj-charged-with-deceptive-sales-claims-and-phony-legal-threats.html.

recipient of a demand letter.  Unfortunately, targets of bad faith demand letters—particularly under-resourced small businesses—might not be aware that their state government could potentially help them.

To address these challenges, Vermont passed the first bad faith patent assertion law, the Vermont Bad Faith Assertions of Patent Infringement Act ("BFAPIA").[20]  In addition to allowing for enforcement by the state attorney general, the new law also allowed the target of a bad faith assertions to themselves bring an action directly against the bad faith asserter.[21]  As part of that bill—indeed, as acknowledged in the legislative findings—Vermont considered the possibility of its law being pre-empted by federal law.[22]  And, drawing from this Court's precedent,[23] it addressed this possibility by requiring that the assertion be in bad faith for the BFAPIA to apply.[24]

Vermont's approach solved several key policy problems.  First, it helped to solve the collective action problem that exists because each

---

[20] Vermont H.299 (2013), codified at 9 V.S.A. § 4195 *et seq.*
[21] 9 V.S.A. § 4199(b).
[22] 9 V.S.A. § 4195(a)(3).
[23] *See Globetrotter*, 362 F.3d at 1375.
[24] 9 V.S.A. § 4197(a).

individual target would find it economically irrational to pursue a defense, even though the collective harm imposed on all the targets combined would be sufficient to justify the cost of litigation. By providing a simpler and less expensive state law cause of action, small business targets of bad faith campaigns could conceivably afford to defend themselves. And by enacting a provision specifically addressing bad faith assertions in state law, small businesses and local lawyers without expertise in patent law would be more likely to be aware that these state laws provide a viable defense.

While this was a needed legislative change, it may have come too late for a number of MPHJ's targets. Aggressive bad faith demands from trolls can easily kill a startup.[25] And while MPHJ was representative of its type, it wasn't unique—and other states took note.

---

[25] *See, e.g.*, Abby Rives, *State Policy Update: Anti-patent troll laws and what they mean for startups*, Engine Advocacy (Nov. 14, 2022), https://engineadvocacyfoundation.medium.com/state-policy-update-anti-patent-troll-laws-and-what-they-mean-for-startups-ed445184c4b8.

## II.    Bad Faith Patent Assertion Laws Have Now Been Enacted In 34 States And Used In Several

Over the course of the next 5 years, an additional 33 states would pass their own bad faith assertion laws.[26]  These laws were frequently modeled on Vermont's law and uniformly require bad faith assertion as an element of the offense.[27]  The Idaho statute at issue in this case, Idaho Code Ann. § 48-1703, follows this pattern and prohibits "mak[ing] a bad faith assertion of patent infringement."

These laws' explicit requirement of bad faith is the key consideration in any preemption analysis.  This Court has previously assessed the topic of preemption of state law by federal patent law.[28]  And it has each time noted that bad faith is the necessary element required to avoid preemption.[29]  Many states, Idaho included, have

---

[26] A complete list of states that have passed such laws, and the statutory citations for each state's law, can be found at https://www.patentprogress.org/state-bad-faith-patent-assertion-statutes/.

[27] *Id.*  Some states require bad faith explicitly; others implicitly require it as part of a list of factors that themselves tend to show bad faith.

[28] *See, e.g., Globetrotter,* 362 F.3d at 1375 (Fed. Cir. 2004).

[29] *See, e.g., Dow Chem. Co. v. Exxon Corp.*, 139 F. 3d 1470 (Fed. Cir. 1998); *Hunter Douglas Inc. v. Harmonic Design, Inc.,* 153 F.3d 1318 (Fed. Cir. 1998); *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F. 3d 1340 (Fed.

specifically noted their desire to avoid preemption as part of their legislative findings.[30]  Given this, it is no surprise that state bad faith assertion laws only subject the patentee to liability if bad faith is proved.

These laws have been asserted against patent plaintiffs both successfully and unsuccessfully.[31]  Both state and federal courts have examined several of these laws and generally have failed to find preemption.[32]  The legislatures of 34 states have acted to protect their residents from bad faith patent assertion and, in doing so, have taken care to avoid conflict with federal patent law.

---

Cir. 1999); *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354 (Fed. Cir. 2008); *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291 (Fed. Cir. 2018); *Globetrotter*, 362 F.3d 1367.

[30] Idaho Code Ann. § 48-1701(1)(c).

[31] *Compare NAPCO, Inc. v. Landmark Tech. A, LLC*, 555 F. Supp. 3d. 189 (M.D.N.C. 2021) (finding no facial preemption and that NAPCO sufficiently pled bad faith) *with Puritan Med. Prods. Co. v. Copan Italia S.A.*, 188 A.3d 853 (Me. 2018) (finding no bad faith and preempting the statute insofar as it covers conduct that falls outside the federal bad faith standard).

[32] *See, e.g., Landmark Tech., LLC v. Azure Farms, Inc.*, 2020 WL 1430088 (D. Or. 2020); *NAPCO, supra*; *Washington v. Landmark Tech. A, LLC*, 637 F. Supp. 3d 1154 (W.D. Wash. 2022).

14

As noted above, Idaho's law explicitly requires "bad faith" to find liability. It also sets out a list of non-exclusive factors that may be relevant to a finding of bad faith, including failure to conduct a reasonable pre-communication investigation, subjective bad faith, prior court findings that a previous assertion of the same patent was meritless, and any other factor the court might find relevant.[33] These factors each illustrate aspects of objective and subjective bad faith.[34] Idaho's statute permits a party to protect itself only when a patent plaintiff's conduct satisfies this bad faith requirement. This Court should, in line with its clear precedent, allow the statute to remain in force.

## III. State Bad Faith Assertion Laws Are Still Needed To Address Patent Litigation Abuses

While MPHJ was successfully stopped from abusing the patent system, it wasn't the first to do so, and it certainly wasn't the last.

---

[33] Idaho Code Ann. § 48-1701(1)(c).

[34] To the extent that, in a given case, the factors might permit a finding of bad faith assertion without both objective and subjective bad faith being present, the statute would still remain facially valid, only being preempted as to that particular claim. *Cf. Boydstun Equip. Mfg., LLC v. Cottrell, Inc.,* No. 3:16-cv-790-SI (D. Or 2017).

15

Other entities have also engaged in broad, indiscriminate bad faith assertions of this type. For example, in an earlier series of cases Innovatio IP Ventures, LLC sent out more than 8,000 demand letters across the country, targeting cafes, restaurants, hotels, and "other small businesses that do not make or sell devices that provide the accused Wi-Fi functionality."[35]

And more recently, Landmark Technology A has engaged in a similar campaign over the past decade. Reportedly, during the course of a single 18-month period, Landmark sent out more than 1,800 demand letters to small businesses, requiring them to pay $65,000 to license patents that were later found to be invalid for indefiniteness.[36] Perhaps unsurprisingly, Landmark has faced a series of actions under

---

[35] *In re Innovatio IP Ventures, LLC Patent Litig.*, 921 F. Supp. 2d 903, 907 (N.D. Ill. 2013).

[36] Joe Mullin, *Is Landmark Technology's Two-Decade Patent Assault On E-Commerce Finally Over?*, EFF (Oct. 13, 2023), https://www.eff.org/deeplinks/2023/10/landmark-technologys-two-decade-patent-assault-e-commerce-finally-over.

state bad faith laws in jurisdictions across the country from Washington to North Carolina, with a stop in Utah along the way.[37]

In another example, a Florida-based startup received abusive demands from a non-practicing entity. Fortunately, Florida is one of the 34 states that has enacted a bad faith assertion law and the startup was able to use Florida's Patent Troll Prevention Act[38] to achieve a walk away settlement.[39]

While it is clear that bad faith assertions continue to be a problem, the prevalence of these abusive tactics is less clear because demand letter campaigns are notorious for their lack of transparency. There are often no public details as to who was involved in the assertion, who was targeted, and what the scope of the assertion was. In fact, it is typically not publicly known that a bad faith assertion has occurred at all, because demand letters are not court documents and

---

[37] *See NAPCO*, 555 F. Supp. 3d. 189; *see also Beauty Indus. Grp. Opco, LLC v. Landmark Tech. A, LLC*, No. 2:20-cv-00590-JCB (D. Utah); *Washington v. Landmark Tech. A, LLC*, 637 F. Supp. 3d 1154 (W.D. Wash. 2022).

[38] Flor. Stat. § 501.991.

[39] *What we heard from startups this Patent Quality Week*, Engine (June 10, 2022), https://www.engine.is/news/category/what-we-heard-from-startups-this-patent-quality-week.

there is no public record of them unless a target proactively publicizes it or reports the conduct to a state attorney general or other agency. Entities like MPHJ and Landmark are only known because one or more of their targets finally pushed back. How many innovators, faced with demand letters, closed up their business or went into some other field, and no one will ever know about it?

Bad faith patent assertion laws provide those innovators—and the state executives charged with enforcing those laws—with the tools needed to push back when a plaintiff goes too far. And the courts, federal and state alike, are fully capable of distinguishing bad faith assertion from a legitimate effort to enforce patent rights in good faith. Not every patent case includes a bad faith assertion—indeed, the vast majority do not. But when such abusive assertions do occur these laws frequently provide the best—and often the only economically feasible—means to address those assertions. Bad faith patent assertion laws serve a useful and necessary function, and do so in full compliance with this Court's precedent on preemption. They should be allowed to continue to provide these benefits by serving their intended function.

**CONCLUSION**

State bad faith patent assertion laws were enacted in the wake of a wave of abusive tactics employed against small businesses, including one particularly prolific and egregious demand letter campaign. These tactics continue to be used today. Demand letter assertion campaigns like those engaged in by Landmark illustrate the persistent need for state bad faith patent assertion laws to guard against abusive behavior. This Court should uphold the judgment below, finding that the Idaho bad faith assertion statute is not preempted as the court below found, in line with the decisions of other district courts around the country examining similar state bad faith patent assertion laws.

May 24, 2024                    Respectfully submitted,


                                _____ /s/ Joshua Landau _____

                                Joshua Landau
                                Computer & Communications
                                Industry Association
                                25 Massachusetts Avenue NW
                                Suite 300C
                                Washington, DC 20001
                                202-470-3622
                                Counsel for *Amici Curiae*

United States Court of Appeals
for the Federal Circuit
*Micron v. Longhorn,* 23-2007, -2095

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

This brief was printed using a 14-point Century Schoolbook font.

This brief complies with the type-volume limitation of Federal Rule of

Appellate Procedure 27.  According to Microsoft Word 2021, the word

processing system used to prepare this document, the brief contains

3245 words, excluding the parts of the document exempted by Federal

Rule of Appellate Procedure 32(f).


May 24, 2024                    /s/ Joshua Landau

                               Joshua Landau
                               Counsel for *Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2024, I caused the foregoing **Brief of *Amici Curiae* Computer & Communications Industry Association and High Tech Inventors Alliance** to be electronically filed with the Clerk of the Court using CM/ECF, which will automatically send email notification of such filing to all counsel of record.

May 24, 2024             _____/s/ Joshua Landau_____

Joshua Landau
Counsel for *Amici Curiae*