Case No. 23-2007, Case No. 23-2095

# United States Court of Appeals for the Federal Circuit

---

MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON TECHNOLOGY TEXAS, LLC, STATE OF IDAHO,
*Plaintiffs-Appellees*

v.

LONGHORN IP, LLC,
*Defendant-Appellant*

---

Case No. 23-2007; Appeal from the United States District Court for the District of Idaho in No. 1:22-cv-00273-DCN, Judge David C. Nye.

---

KATANA SILICON TECHNOLOGIES LLC,
*Plaintiff-Appellant*

v.

MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON TECHNOLOGY TEXAS, LLC, STATE OF IDAHO,
*Defendants-Appellees*

---

Case No. 23-2095; Appeal from the United States District Court for the District of Idaho in No. 1:22-cv-00282-DCN, Judge David C. Nye.

---

**CORRECTED REPLY BRIEF OF APPELLANTS KATANA SILICON TECHNOLOGIES LLC AND LONGHORN IP, LLC**

SCOTT W. BREEDLOVE
JOSHUA BENNETT
OMER SALIK
CARTER ARNETT BENNETT &
PEREZ PLLC
8150 N. Central Expressway, Suite 500
Dallas, Texas 75206

*Counsel for Appellants*

July 11, 2024

FORM 9. Certificate of Interest                                    Form 9 (p. 1)
                                                                   March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF INTEREST

**Case Number** 2023-2007

**Short Case Caption** Micron Technology Inc. v. Longhorn IP, LLC

**Filing Party/Entity** Longhorn IP, LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/28/2024                 Signature:  /s/ Scott W. Breedlove

                                 Name:      Scott W. Breedlove

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Longhorn IP, LLC | | Tanit Ventures Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Nathan I. Cox (formerly Carter Arnett PLLC) | Daniel L. Schmid (formerly Carter Arnett PLLC) | Keely E. Duke, Duke Evett, PLLC |
| Seth Lindner (formerly Carter Arnett PLLC) | Theresa Dawson (formerly Carter Arnett PLLC) | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

iv

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF INTEREST

**Case Number** 2023-2095

**Short Case Caption** Katana Silicon Technologies LLC v. Micron Technology Inc

**Filing Party/Entity** Katana Silicon Technologies LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/28/2024          Signature:   /s/ Scott W. Breedlove

                          Name:        Scott W. Breedlove

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| Katana Silicon Technologies LLC | | Tanit Ventures Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Nathan I. Cox (formerly Carter Arnett PLLC) | Daniel L. Schmid (formerly Carter Arnett PLLC) | Keely E. Duke, Duke Evett, PLLC |
| Seth Lindner (formerly Carter Arnett PLLC) | E. Leon Carter, Carter Arnett PLLC | Bradley D. Liddle, Carter Arnett PLLC |
| Michael Pomeroy, Carter Arnett PLLC | Theresa Dawson (formerly Carter Arnett PLLC) | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................1

II.    ARGUMENT ..................................................................................4

    A.    The District Court Clearly Erred and Abused Its Discretion by Ordering an $8-Million State-Law Bond and Conditioning Patent Enforcement on Payment ...........................................4

        1.    *Micron cannot transform the district court's explicitly allegation-based decision into an implicit evidence-based "finding."* ...................................................................4

        2.    *The district court ignored all evidence* ........................5

        3.    *Appellees' arguments confirm the massive bond was intended to have "teeth" and "deter" Katana* ...........9

        4.    *The district court's ultra-low bar to order the bond undermined the federal presumption of good faith* .................10

    B.    Idaho's BFA Statute Expressly Regulates Live, Federal Court Pleadings and, at Least to That Extent, Is Facially Preempted ..........11

        1.    *While other states expressly carve out federal pleadings, Idaho has the only BFA statute in the country to expressly include a patent "complaint."* .................13

        2.    *This Court's decisions permit state tort claims involving bad-faith "marketplace" patent assertions, not state regulation of exclusively federal pleadings* .............14

        3.    *Appellees and amici confirm Idaho's Act is, in relevant part, intended to use state law to solve perceived problems with federal patent law and litigation rules* .............18

        4.    *The Act interferes with fundamental objectives of federal patent law and is therefore facially preempted, such that the "complaint" provision, at a minimum, should be struck* .......................................................................20

C.  Micron's Attempt to Apply the Idaho Act to Parse and
    Punish the Allegations of Katana's Infringement Complaint
    Is Preempted..........................................................................................24

    1.  *Micron's BFA claim centers on Katana's patent
        infringement complaint*..............................................................24

    2.  *Micron's critique of Katana's infringement complaint is
        petty and premature and cannot meet the high federal
        standard for sham litigation or objective baselessness*............25

    3.  *Idaho's Act cannot be constitutionally applied to
        critique exclusively federal claims and threaten liability
        of quadruple the accused infringer's attorneys' fees*...............26

D.  Micron Cannot Avoid This Court's Jurisdiction or Mandamus
    Authority...............................................................................................27

# TABLE OF AUTHORITIES

## Cases

*800 Adept, Inc. v. Murex Secs., Ltd.*,
    539 F.3d 1354 (Fed. Cir. 2008)...................................................................24

*Abbott Laboratories v. Brennan*,
    952 F.2d 1346 (Fed. Cir. 1991)...................................................................16

*Abbott v. Nat'l Bank of Com.*,
    175 U.S. 409 (1899) ...................................................................................12

*Am. Target Advert., Inc. v. Giani*,
    199 F.3d 1241 (10th Cir. 2000)...................................................................10

*Anderson v. City of Bessemer City*,
    470 U.S. 564 (1985) .....................................................................................5

*Aptive Env't, LLC v. Vill. of E. Rockaway*,
    2019 WL 3206132 (E.D.N.Y. July 16, 2019) .............................................10

*Atari Games Corp. v. Nintendo of Am., Inc.*,
    897 F.2d 1572 (Fed. Cir. 1990)...................................................................28

*Atl. Fertilizer & Chem Corp. v. Italmare, S.p.A.*,
    117 F.3d 266 (5th Cir. 1997)..............................................................3, 4, 30

*Azizian v. Federated Dep't Stores, Inc.*,
    499 F.3d 950 (9th Cir. 2007).......................................................................10

*Bldg. Innovation Indus., L.L.C. v. Onken*,
    473 F.Supp.2d 978(D. Ariz. 2007)................................................................3

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
    489 U.S. 141 (1989) .........................................................................2, 20, 24

*Byrne v. Wood, Herron & Evans, LLP*,
    676 F.3d 1024 (Fed. Cir. 2012)...................................................................22

*Cohen v. Beneficial Indus. Loan Corp.*,
　337 U.S. 541 (1949) .............................................................3, 29, 30

*Commil USA, LLC v. Cisco Sys., Inc.*,
　575 U.S. 632 (2015) .....................................................................1

*Concept Design Elecs. & Manufacturing, Inc. v. Duplitronics, Inc.*,
　52 F.3d 342 (Fed. Cir. 1995) ........................................................17

*Dow Chem. Co. v. Exxon Corp.*,
　139 F.3d 1470 (Fed. Cir. 1998) ..........................................15, 16, 21

*Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*,
　524 F.3d 1254 (Fed. Cir. 2008) ....................................................11

*eBay Inc. v. MercExchange, L.L.C.*,
　547 U.S. 388 (2006) ....................................................................23

*Energy Heating, LLC v. Heat On-The-Fly, LLC*,
　889 F.3d 1291 (Fed. Cir. 2018) ....................................................15

*Entegris, Inc. v. Pall Corp.*,
　490 F.3d 1340 (Fed. Cir. 2007) ....................................................30

*Eon-Net LP v. Flagstar Bancorp*,
　653 F.3d 1314 (Fed. Cir. 2011) ................................................1, 19

*Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*,
　362 F.3d 1367 (Fed. Cir. 2004) .............................................10, 15

*Golan v. Pingel Enter., Inc.*,
　310 F.3d 1360 (Fed. Cir. 2002) .............................................15, 16

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*,
　153 F.3d 1318 (Fed. Cir. 1998) ............................................ Passim

*Hydranautics v. FilmTec Corp.*,
　204 F.3d 880, 886 (9th Cir. 2000) ................................................17

*Immigr. & Naturalization Serv. v. St. Cyr*,
    533 U.S. 289 (2001) ...................................................................14

*John Doe No. 1 v. Reed*,
    561 U.S. 186 (2010) ..............................................................12, 13

*Lite-Netics, LLC v. Nu Tsai Cap. LLC*,
    60 F.4th 1335 (Fed. Cir. 2023) ...................................................25

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996) ...................................................................22

*Micron Tech., Inc. v. Netlist, Inc.*,
    Case No. 1:24-cv-00081-DCN (D. Idaho Feb. 9, 2024) ................3

*Mirafi, Inc. v. Murphy*,
    928 F.2d 410 (Fed. Cir. 1991) .....................................................17

*OptoLum, Inc. v. Cree, Inc.*,
    244 F.Supp.3d 1005 (D. Ariz. 2017) ..........................................22

*Pavo Sols. LLC v. Kingston Tech. Co.*,
    35 F.4th 1367 (Fed. Cir. 2022).......................................................7

*PhishMe, Inc. v. Wombat Sec. Techs., Inc.*,
    2017 WL 3821107 (D. Del. Aug. 31, 2017) ................................26

*U.S. Aluminum Corp./Texas v. Alumax, Inc.*,
    831 F.2d 878 (9th Cir. 1987) ............................................. Passim

*United States v. Sup. Ct. of N. Mex.*,
    839 F.3d 888 (10th Cir. 2016)................................................12, 13

*Zenith Elecs. Corp. v. Exzec, Inc.*,
    182 F.3d 1340 (Fed. Cir. 1999)...............................................15, 16

## Statutes

28 U.S.C. § 1338(a) ...........................................................................1

35 U.S.C. § 261 ................................................................................22

35 U.S.C. § 281 .................................................................................22
35 U.S.C. § 285 ...................................................................................1
Act § 48-1703(1) ................................................................................27
Act § 48-1703(3)(b) ...............................................................19, 23, 25
Mo. Rev. Stat. § 416.650(1) ..............................................................13
Utah Code Ann. § 78B-6-1902(1) ......................................................13
Va. Code Ann. § 59.1-215.1 ..............................................................13
Vt Stat. Ann. tit. 9 § 4197(a) .............................................................12
Vt Stat. Ann. tit. 9 § 4198 ..................................................................12
Wash. Rev. Code § 19.350.010(1)(d) .................................................13

**Rules**

Fed. R. Civ. P. 11 .................................................................................1
Fed. R. Civ. P. 12 .................................................................................1
Fed. R. Civ. P. 12(b)(6) ........................................................................5
Fed. R. Civ. P. 56 .................................................................................1

TABLE OF ABBREVIATIONS AND CONVENTIONS

| | |
|---|---|
| Katana | Patent owner and Appellant Katana Silicon Technologies LLC in Case No. 23-2095 |
| Longhorn | Appellant Longhorn IP LLC in Case No. 23-2007 |
| '879 Patent | Asserted U.S. Patent No. 6,352,879 owned by Katana, Appx56-79 |
| '013 Patent | Asserted U.S. Patent No. 6,731,013 owned by Katana, Appx80-114 |
| '806 Patent | Asserted U.S. Patent No. RE38,806 owned by Katana, Appx31-55 |
| Micron | Appellees Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC |
| Order | Memorandum Decision and Order filed May 3, 2023, Appx1-30 |
| BFA | Bad-faith assertion of patent infringement |
| Act | Title 48, Chapter 17 of the Idaho Code, entitled "Bad Faith Assertions of Patent Infringement" |
| MicronBr__ | Micron's Response Brief page __ |
| IdahoBr__ | State of Idaho's Response Brief page __ |
| AmiciStatesBr__ | Brief of Amici States page __ |
| OpeningBr__ | Principal Brief of Appellants Katana and Longhorn |
| | In quotations, all emphasis is added unless otherwise noted. |

## I.    INTRODUCTION

This appeal is about a state's power to regulate live, federal court pleadings that assert claims which Congress excluded from state court. It is decidedly *not* about a state's "historic police powers" or regulating competition in the marketplace.

BFAs should be discouraged. In patent infringement litigation (excluded from state-court jurisdiction by 28 U.S.C. § 1338(a)), federal law addresses the issue with substantive and procedural rules including 35 U.S.C. § 285 and Rules 11, 12, and 56 of the Federal Rules of Civil Procedure. The Supreme Court has noted, "If frivolous cases are filed in federal court, it is within the power of the court to sanction attorneys for bringing such suits. It is also within the district court's discretion to award attorney's fees to prevailing parties in 'exceptional cases.'" *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 647 (2015) (citing Fed. R. Civ. P. 11 and 35 U.S.C. § 285); *see also Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1317 (Fed. Cir. 2011) (precedential) (affirming an award of fees and costs under Section 285 and sanctions against Eon-Net under Rule 11). In the marketplace, state law addresses BFA misconduct with tortious interference and unfair competition causes of action, and more recently, BFA statutes.

But Idaho's Act crosses the line. While some states expressly carve *out* federal court filings, Idaho's Act sweeps them *in*. Unlike all other BFA statutes in the country, Idaho's statute expressly regulates the contents of a federal "complaint."

And this is precisely how Micron applies the Act here. Micron takes advantage of the Act's unique breadth by challenging Katana's live, as-yet-unlitigated infringement complaint using state law. And Micron mounts this state-law challenge even though it has never moved to strike or dismiss Katana's complaint under applicable federal rules. In patent litigation, however, federal law governs.

Regulating federal pleadings before they've even been litigated is not a state's province and is not the original intent of this Court's preemption precedent. To avoid preemption, that precedent requires "bad faith in the marketplace." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1337 (Fed. Cir. 1998). "To require less would impermissibly alter the balance between the competing purposes of federal patent law that Congress has prescribed." *Id.* This Court's cases relied on by Appellees universally focus on such marketplace activity and expressly distinguish legal proceedings.

To dodge the obvious conflict with federal interests, both Micron and Idaho ignore a fundamental objective of both Congress and the Constitution's Patent Clause: promoting "nationwide uniformity in patent law." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989). Instead, Idaho argues for states to experiment on their own in this area, "putting the States in competition for a mobile citizenry." IdahoBr7-8. But patent litigation is a federal matter that Congress has excluded from state court. States should not be allowed to experiment and

compete with one another by implementing 50 different sets of rules to govern live patent-infringement pleadings.

Aspects of Idaho's Act "disturb the delicately balanced patent regime" profoundly and—at least in the Act's regulation of infringement complaints, leveraging the threat of a massive bond and quadruple fees—would "undermine Congress's goal of nationwide uniformity in patent law by varying the possibility of fee recovery with the jurisdiction in which the action arose." *Bldg. Innovation Indus., L.L.C. v. Onken*, 473 F.Supp.2d 978, 987-88 (D. Ariz. 2007). The Act's threat of quadruple damages and a corresponding bond also creates a recognized "chilling effect" on "good faith actions of patentees." *See U.S. Aluminum Corp./Texas v. Alumax, Inc.*, 831 F.2d 878, 881 (9th Cir. 1987) (confirming the "chilling effect" of potential antitrust treble damages "upon the good faith actions of patentees").

This Court's intervention is needed now to avoid these pernicious effects, particularly as Micron is adopting a similar strategy in state court against other patent owners.[1] Challenges implicating the *power* of a district court to order a bond—as opposed to *discretion* regarding its amount—have been suitable for interlocutory appeal since *Cohen* itself was decided. OpeningBr9; *see also Atl. Fertilizer & Chem.*

---

[1] *See, e.g.*, *Micron Tech., Inc. v. Netlist, Inc.*, Case No. 1:24-cv-00081-DCN, ECF No. 1-3 (D. Idaho Feb. 9, 2024) (Micron complaint filed in **state** court seeking relief under the Act for Netlist's ongoing prosecution of **federal** patent litigation against Micron).

*Corp. v. Italmare, S.p.A.*, 117 F.3d 266, 268 (5th Cir. 1997) (agreeing with the Second Circuit's reasoning in *Donlon* "that the 'power-discretion dichotomy' was a reasonable means for determining the appealability of orders concerning security"). In *Atlantic Fertilizer*, the court observed that its past opinions were consistent with this dichotomy when it permitted interlocutory appeals arguing the district court lacked the authority to order security. *Id.* Appellants argue similarly about the bond in this appeal.

Ultimately in this case, the district court applied the Act's unconstitutional aspects and clearly erred. Micron's attempt to rewrite the Order—wishfully reading in some consideration of evidence that manifestly did not occur, *see* Appx28—cannot save the bond. This Court should grant Appellants' requested relief and remand to allow Katana's still-nascent patent infringement lawsuit to proceed without further hindrance from state law.

## II.   ARGUMENT

### A.   The District Court Clearly Erred and Abused Its Discretion by Ordering an $8-Million State-Law Bond and Conditioning Patent Enforcement on Payment.

#### 1.   *Micron cannot transform the district court's explicitly allegation-based decision into an implicit evidence-based "finding."*

Despite what the Order expressly states, Micron insists that the district court may have considered some unknown evidence in ordering the bond: "A judge is not

required, in making findings, to mention *every* item of evidence." MicronBr51. But here, the district court didn't mention *any* evidence. Indeed, the Order could not have been clearer that the district court considered only Micron's allegations and applied a standard lower even than Rule 12(b)(6): "Because the higher 12(b)(6) standard has been satisfied, the lower statutory standard is also ***necessarily*** satisfied. The above analysis on the motion to dismiss serves also to show that, under the Act, a bond is required." Appx28. And the "above analysis on the motion to dismiss" considered only allegations, of course, not evidence. *See also Appx*26 (concluding "***Micron's*** complaint pleads enough facts").

Micron quotes *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985), to suggest this Court may not reverse if the district court's "ultimate finding" is plausible considering the record. MicronBr53. Yet the Supreme Court's holding referenced not the "ultimate finding," but instead whether the district court's "account of the evidence" is plausible. Here, there was no account of the evidence at all.

### 2. The district court ignored all evidence.

Micron wrongly suggests Longhorn presented just "two pages of argument" to dispute Micron's so-called "mountain of evidence." MicronBr18 (citing Appx1203-05). Micron simply ignores the many pages of Longhorn's bond opposition reciting evidence that rebutted Micron's allegations and demonstrated

Appellants' good faith. *See* Appx1188-1198. And missing from Micron's supposed "mountain of evidence" were the seven initial slide decks and two rebuttal slide decks that Appellants presented to Micron in late 2018 and early 2019 showing their infringement position and then rebutting Micron's conclusory arguments on non-infringement and invalidity. *See* OpeningBr16-17 (highlighting some of this evidence). The evidence further showed, without dispute, that the individuals who studied Micron's product and identified the infringement were well-qualified. *Id.* at 23. Yet the district court considered none of this evidence in ordering the bond based on mere allegations.

To argue that Katana's live, federal complaint is an objectively baseless sham, Micron's BFA allegations identified one purported non-infringement argument for each of the three patents. *See* Appx1195-98. But the allegations—besides being premature since Katana's case has not even proceeded to the infringement-contentions stage—suggest disputes at most about claim construction or equivalents.

Regarding the '806 patent, for example, Micron argued its "thermoplastic encapsulants" did not satisfy "sealed with a resin." MicronBr38-39. Notably, though, Micron did not address the meaning of "resin," which is suspicious given a Micron admission and publications about the epoxy resin used in its package encapsulant and a DuPont publication about "thermoplastic encapsulation resins," which Longhorn submitted as evidence. Appx1195-1196. Nor did Micron's allegations of

a sham complaint account for the doctrine of equivalents, a fatal shortcoming since thermoplastic encapsulants and other resins used in semiconductor manufacturing processes are substantially the same, providing "electrical insulation and mechanical stability to chips and wires within a semiconductor package." Appx1211.

Regarding the '879 patent, Micron doubles-down on its obdurate refusal to recognize that claim element 1(d), which addresses the claimed "second wafer," referred in one spot to the "first wafer" by clerical error only. MicronBr39. District courts may correct such clerical errors, of course. *See, e.g.*, *Pavo Sols. LLC v. Kingston Tech. Co.*, 35 F.4th 1367, 1374 (Fed. Cir. 2022) (precedential). Even if the error were not corrected, though, it would simply mean the same claim element—"a circuit being formed on a front surface of the first wafer"—occurs twice in the same claim, in elements 1(a) and 1(d). But the minor error in the claim is readily apparent from the claim and the patent specification, which Longhorn detailed in response to the bond motion. Appx1196-97.

And for the '013 patent, Micron criticizes Katana's complaint for using an illustration appearing to point to the same pattern in Micron's NAND memory device to satisfy both the "wiring patterns" and the "support pattern" elements of claim 11. MicronBr40. But Katana has already provided Micron a proposed amended complaint, consistent with *federal* rules, with annotations clarifying where these elements are located in the distinct structures of Micron's product. *See* Case

No. 1:22-cv-00282-DCN, ECF No. 57-2 ¶¶93-104 (D. Idaho Nov. 22, 2022). Micron's argument that the earlier "misidentification" should be considered evidence of bad faith "if the error was not corrected and the claim withdrawn when the error was pointed out," MicronBr40, is therefore a bad-faith argument itself.

In its most telling argument, Micron still refuses to forgive a typo in the jurisdictional section of Katana's federal complaint, claiming that it "accused Micron of 'continu[ing] to infringe' the asserted patents, even though each one had expired" and that this is "evidence of bad faith." MicronBr40-41. In the legendary words of John McEnroe, "You can*not* be serious." In the first place, Katana's complaint consistently alleges that Micron infringed in the past, and it seeks damages for past infringement only, Appx2378-79, which Micron doesn't deny, *see* MicronBr40-41. Second, even the typo in the jurisdictional paragraph refers to products and doesn't say Micron itself continues to infringe; that paragraph begins, "Defendants have committed acts of infringement in this District …." Appx2343 (¶13).

What Micron's purported non-infringement arguments have in common, besides being tenuous, is that they all represent the use of state law to regulate the specific words of an exclusively federal claim in a live federal pleading.

   *3.    Appellees' arguments confirm the massive bond was intended to
          have "teeth" and "deter" Katana.*

Out of one side of its mouth, Micron criticizes Appellants for suggesting the
bond amount "is prohibitive" without "any direct assertion that they cannot pay."
MicronBr22. But when it wants to argue that the bond provision is not merely
procedural, Micron quotes with approval that the provision is "used substantively as
a state-law device with 'teeth.'" *Id.* at 57.

Appellees' own briefs confirm the real point: that regardless of Appellants'
literal ability or inability to pay, the massive bond was intended to, and tends to, chill
good-faith federal court petitioning activity. Idaho, for example, suggests the bond
requirement helps to create a "new liability," is meant to "serve as a deterrent," and
is "designed to have an impact on personal activity beyond the adjudicative process."
IdahoBr27. Indeed, Idaho's arguments to save the bond provision from preemption
recognize its effect to "penalize" the patent asserter "at the outset of the case." *See
id.* at 22.

Idaho's argument is consistent with the district court's own assessment. Its
Order identified the bond as one that "discourages" certain patent assertions "in and
of itself" and provides "much of the teeth" of the Act. Appx27, Appx1180. The idea
is that Katana would be "scared off" by a "significant bond" from enforcing its
patents against a powerful Idaho company. Appx1178-80.

If Appellees want to argue that the bond has teeth, is not merely a procedural device, and is designed to alter the patentee's conduct, they should not disavow its chilling effect. The $8-million bond is coercive, as intended. Indeed, it dwarfs bonds found to chill speech and petitioning activities in innumerable cases—even though bonds are "refundable" as Micron is fond of saying (MicronBr9, 27, 30, 55).[2]

> ### 4. The district court's ultra-low bar to order the bond undermined the federal presumption of good faith.

Micron argues that "[e]ven if this Court concludes that the district court erred by not articulating the basis for its decision as well as it could have, that error would be harmless." MicronBr54. But again, the district court articulated the basis for its decision unambiguously, making plain that it considered no evidence in deciding a bond was "required." Thus, the error is inescapable.[3] Nor was the district court's

---

[2] *See, e.g.*, OpeningBr6; *Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1249 (10th Cir. 2000) (describing the "chilling financial reality" of a $25,000 bond); *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950 (9th Cir. 2007) ($40,000); *Aptive Env't, LLC v. Vill. of E. Rockaway*, No. 19-cv-3365, 2019 WL 3206132 (E.D.N.Y. July 16, 2019) ($2,500).

[3] Were state regulation of pending federal claims permissible, mere allegations would not suffice to justify a substantial bond, and neither would evidence short of clear and convincing. Even patent assertions in the marketplace are protected from state tort liability absent clear and convincing evidence. *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1374-75 (Fed. Cir. 2004). *Globetrotter* confirmed "federal patent law preempts state law that **punishes** merely publicizing a patent in the marketplace" absent a bad-faith showing. *Id.* at 1377 n.9 (quotations omitted). As shown above, the bond is punishment, a "new liability" to scare off Katana. Given its size stemming from speculative quadruple damages, it creates precisely the "chilling effect" that the Ninth Circuit has recognized the mere threat of treble damages can have on "*good faith* actions of patentees." *U.S. Aluminum*,

error harmless. Requiring the $8-million bond based solely on Micron's allegations left Katana with the deal-killing prospect of defending itself against a BFA claim seeking quadruple damages before Katana even has a chance to take discovery on its infringement claims.

Moreover, Micron's argument to excuse the district court's refusal to permit discovery fundamentally misapprehends the federal "objective baselessness" standard. And it speaks to one of the underlying defects in Micron's overall strategy. Micron claims the district court was right to refuse Longhorn's request for discovery because the BFA claim depends only on what Appellants knew "at times in the past" such as when Katana filed its complaint. MicronBr53 n.19. But "objective baselessness requires a determination based on the record ultimately made in the infringement proceedings and the record of the state tort action, and ***not*** on the basis of information available to the patentee at the time the allegations were made." *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1264 (Fed. Cir. 2008) (precedential). In other words, Micron's theory is exactly wrong.

### B.   Idaho's BFA Statute Expressly Regulates Live, Federal Court Pleadings and, at Least to That Extent, Is Facially Preempted.

To defend the Act, Idaho claims it "closely resembles that of Vermont." IdahoBr4. Yet two differences between the statutes leap from their pages. First, in

---

831 F.2d at 881. Thus, imposition of a bond should require the clear-and-convincing standard.

describing conduct deemed unlawful, the Vermont statute does not call out a "complaint" or other federal pleading. Vt Stat. Ann. tit. 9 § 4197(a). Idaho's does. Second, Vermont's bond provision is capped at $250,000. *Id.* § 4198. Idaho's is uncapped. Idaho's Act really is an outlier.

As discussed below, facial preemption is the appropriate vehicle to address at least a portion of the Act's infirmities—specifically, its attempt to regulate federal pleadings of claims expressly excluded from state court. *See* OpeningBr39-44. After all, regulating a federal complaint is materially different than policing marketplace misconduct. *Cf. Abbott v. Nat'l Bank of Com.*, 175 U.S. 409, 411 (1899) (explaining that assertions made in a federal complaint were absolutely immune from a libel claim—"regardless of whether they were true or false, used maliciously or in good faith"—in order to further "free and unfettered administration of justice").

Appellees insist the facial unconstitutionality challenge must fail unless Appellants show "no set of circumstances exists under which Idaho's statute is valid." MicronBr23. Not exactly. Here, the focus of Appellants' facial preemption argument is the unique aspect of the Act regulating federal complaints. Thus, "facial standards are applied but only to the universe of applications contemplated by [the challenging parties'] claim, not to all conceivable applications contemplated by the challenged provision." *United States v. Sup. Ct. of N. Mex.*, 839 F.3d 888, 914 (10th Cir. 2016) ("*SCNM*") (identifying the "key lessons" of *John Doe No. 1 v. Reed*, 561

U.S. 186 (2010)). In *SCNM*, for example, challenged provisions of a professional-conduct rule were conflict-preempted by federal law in the grand-jury context but not otherwise. 839 F.3d at 929-30.

       *1.*     *While other states expressly carve out federal pleadings, Idaho has the only BFA statute in the country to expressly include a patent "complaint."*

Micron overplays its hand by representing that "[i]n nearly every other state law against bad faith assertion, liability can be premised on … a complaint." MicronBr49.

First, several states carefully regulate only marketplace activity while expressly carving out assertions made in litigation. Both Virginia and Washington, for example, target claims or allegations "other than those made in litigation." Va. Code Ann. § 59.1-215.1; Wash. Rev. Code § 19.350.010(1)(d). Missouri provides that a "demand letter" subject to its BFA statute includes communications asserting patent infringement "but shall not include a petition filed in a court of appropriate jurisdiction." Mo. Rev. Stat. § 416.650(1). And likewise in Utah, a "demand letter" is defined to include a written communication asserting or claiming patent infringement, but expressly "does not include a complaint filed in a United States District Court asserting patent infringement or discovery responses or other papers filed in an action." Utah Code Ann. § 78B-6-1902(1).

Second, Micron simply assumes that for other state BFA statutes regulating a written communication, a federal "complaint necessarily serves as a written communication" governed by the state statute. MicronBr49. Notably, Micron cites no supporting caselaw. And even if some BFA statutes could be read so broadly, a narrower construction that does not sweep in federal pleadings is more than "fairly possible." *See Immigr. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 299-300 (2001) (requiring statutory interpretation to avoid raising "serious constitutional problems" if an alternative interpretation is "fairly possible").

Neither Appellee, nor any of the amici, have been able to identify any other state BFA statute attempting expressly to regulate a patent infringement "complaint" or other federal pleading. *See, e.g.*, MicronBr49-50 (quoting numerous BFA statutes). Idaho's Act stands alone.

> 2.   *This Court's decisions permit state tort claims involving bad-faith "marketplace" patent assertions, not state regulation of exclusively federal pleadings.*

Appellees state boldly that the preemption issues in this appeal have been addressed with decades of precedent that "have already trod this ground." IdahoBr13; MicronBr34 (alluding to "well-established case law"). They gloss over the real issue, though, and fail to acknowledge the dispositive distinction between Idaho's statutory scheme and the traditional state torts that "this Court's previous patent-law decisions," MicronBr36, have considered. Importantly, these "previous

patent-law decisions" concerned marketplace activities—patent-related communications to interfere with contracts, customers, or prospective business relations—not regulation of federal pleadings. *See, e.g.*, *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1349 (Fed. Cir. 1999) ("The gravamen of Exzec's claim is marketplace misconduct, not abuse of the administrative and judicial process.").

State law regulating federal pleadings before they've even been litigated falls outside the original intent of this Court's preemption precedent. To avoid preemption, that precedent requires "bad faith in the marketplace." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1337 (Fed. Cir. 1998).

The marketplace context is confirmed by all four decisions that Idaho cites concerning the "already trod" preemption ground, IdahoBr13, and the fifth that Micron adds, MicronBr36. *See Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1471-72 (Fed. Cir. 1998) (threatening to sue customers); *Zenith*, 182 F.3d at 1349 ("marketplace misconduct"); *Globetrotter*, 362 F.3d at 1377 (pre-litigation communications in the marketplace); *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1298 (Fed. Cir. 2018) (precedential) (threatening a customer with a patent lawsuit); *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1370-71 (Fed. Cir. 2002) (cease-and-desist letter using expired patent and contacting 22 distributors).

Moreover, the marketplace context was crucial to this Court's reasoning in these decisions. In *Dow*, for example, this Court distinguished marketplace regulation from a state claim related to misconduct before the PTO in *Abbott Laboratories v. Brennan*, 952 F.2d 1346 (Fed. Cir. 1991), recognizing the *Abbott* claim would have been "an inappropriate collateral intrusion on the regulatory procedures of the PTO" and "contrary to Congress' preemptive regulation in the area of patent law." 139 F.3d at 1476-77. In contrast, "required elements" of Dow's claims against Exxon "take place in the marketplace, not before the PTO." *Id.* at 1477.

*Zenith* likewise emphasized that the state claim was not preempted "in part because the claims involved allegations of bad faith marketplace conduct by the patentee." 182 F.3d at 1355. The decision distinguished "a defendant who is made the subject of an infringement suit" on a patent obtained by inequitable conduct, whose remedy "is the traditional remedy of having the patent adjudged unenforceable," applying federal law. *Id.* at 1348-49. Thus, *Zenith* emphasized the "gravamen of Exzec's claim" was "marketplace misconduct, not abuse of the administrative and judicial process." 182 F.3d at 1349; *see also Golan*, 310 F.3d at 1370 (quoting *Zenith* concerning "publicizing a patent *in the marketplace*").

Micron does take one stab at arguing that state torts have been allowed "based on" complaints, citing just four cases that largely ignore preemption. MicronBr50.

None was a precedential decision of this Court. And critically, none involved state regulation of a live federal pleading.

Instead, one of these cases was an unpublished decision addressing a district court's finding of bad faith including alleged "*extra-judicial acts*" with the "purpose, intent and effect of unfairly damaging [the defendants] ***in the marketplace***." *Mirafi, Inc. v. Murphy*, 928 F.2d 410 (Fed. Cir. 1991) (unpublished table decision). And the other three cases involved patent infringement claims that had already had their day in federal court. The Ninth Circuit in *Hydranautics v. FilmTec Corp.*, for example, considered a malicious prosecution claim, of which one element requires "the prior action was terminated in [plaintiff's] favor." 204 F.3d 880, 886 (9th Cir. 2000). Moreover, the opinion does not even discuss preemption. Nor was preemption discussed in the unpublished decision in *Concept Design Elecs. & Manufacturing, Inc. v. Duplitronics, Inc.*, 52 F.3d 342 (Fed. Cir. 1995) (unpublished table decision). There, patent infringement claims were brought only as counterclaims, meaning the state-law unfair-competition claim was *not* attacking an infringement complaint. *See id.* at 342. And the state claim was not tried until eight months after a federal jury had already found the patents were invalid, unenforceable, and not infringed. *Id.*

Micron's fourth case also does not mention preemption, and its reasoning appears plainly inconsistent with the Federal Circuit's later-developed preemption jurisprudence. Specifically, *U.S. Aluminum* is an earlier Ninth Circuit malicious

prosecution case. It recognized "conflict is possible between state malicious prosecution laws and federal patent laws" but rejected the proposition that the state-law claim should require clear-and-convincing evidence of malice in the defendant patent owner's *earlier* prosecution of a patent infringement lawsuit. Thus, for purposes of the malicious prosecution claim, the court rejected the patentee's collateral-estoppel defense, declining to credit the Federal Circuit's holding that the earlier-prosecuted infringement case had *not* been brought in bad faith. *U.S. Aluminum*, 831 F.2d at 881.

In summary, there is nothing "already trod" about Appellees' suggestion that all 50 states should be allowed to regulate live, unlitigated patent complaints. Indeed, one of this Court's seminal cases, *Hunter Douglas*, clarified that state claims are conflict-preempted not only if the challenged conduct is "protected" by federal law (as with good-faith assertions in the marketplace), but also if it is "governed by federal patent law." 153 F.3d at 1335. And regardless of good faith or bad faith, a live infringement complaint and related pleadings are "governed by" federal patent law in Titles 28 and 35, etc.

> 3.      *Appellees and amici confirm Idaho's Act is, in relevant part, intended to use state law to solve perceived problems with federal patent law and litigation rules.*

Idaho seeks to fix perceived problems with federal litigation using state law. The Act itself bemoans the purported harm to Idaho companies from "abusive patent

litigation." Act 48-1701(d). Micron regrets that in federal court, "most complaints" make it past the pleadings stage and that, even in the case of a bad faith complaint, "many district courts are reluctant to consider dispositive motions." MicronBr8-9. It further suggests states passed BFA statutes with bond provisions to "mitigate the lopsided risk profile" said to characterize patent cases in federal court. *Id.* at 9.

The Amici States confirm that state BFA statutes were intended to create rules that Congress has declined to make governing patent assertions: "Patent trolls now generate more than half of all patent litigation[, b]ut despite various attempts, Congress has failed to pass legislation to address this problem on the federal level." AmiciStatesBr3-4 (citing unenacted federal legislation addressing "bad-faith patent assertions"). Not to worry, though: "Fortunately, more than thirty States have stepped in to fill the void." *Id.* at 4. The States quote this Court to lament that "a district court often must 'engage in excessive claim construction analysis before it is able to see the lack of merit of the patentee's infringement allegations.'" *Id.* at 6 (quoting *Eon-Net*, 653 F.3d at 1327). Acknowledging federal remedies addressing the problem and their successful use in *Eon-Net*, the States claim that case was the "exception that proves the rule." AmiciStatesBr7. Then, without a hint of irony, the States conclude that so-called patent trolls hurt "our Nation's entire economy" and "undermine the Constitution's vision that the patent system 'promote the Progress

of Science and useful Arts.'" *Id.* at 10 (citing the Patent Clause but omitting the preamble, "The ***Congress*** shall have Power To").

Thus, the Amici States argue, the individual states must step in to regulate. Yet nowhere do these States (1) acknowledge Idaho's unique regulation of a federal "complaint" or (2) address the legislation that Congress did pass to exclude patent infringement cases from state-court jurisdiction. Rather, the States and Appellees miss "[o]ne of the fundamental purposes" behind the Patent Clause: "to promote national uniformity in the realm of intellectual property." *Bonito Boats*, 489 U.S. at 162.

> **4.** *The Act interferes with fundamental objectives of federal patent law and is therefore facially preempted, such that the "complaint" provision, at a minimum, should be struck.*

Conflict preemption is not so rare as Appellees imply. Conflict preemption, after all, led to preempting state tort claims that could punish good-faith assertions of patent infringement in the marketplace. This Court explained, "If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for ***conflict*** with federal patent law." *Hunter Douglas*, 153 F.3d at 1335. For statements in the marketplace, conflict with federal law exists only if the infringement assertions were "protected"—i.e., made in good faith. But the conflict exists

20

irrespective of good or bad faith when a state statute regulates complaints "governed by" federal patent law.

The discussion of *field* preemption in *Hunter Douglas* is instructive. There, this Court repeated its observation from *Dow* "that state unfair competition law regulates conduct in a different field from federal law" and emphasized the nature of the conduct at issue: "The state law remedies in *Dow Chemical* were directed to allegedly tortious conduct ***in the marketplace***." *Id.* at 1334. *Dow* reiterated, "With respect to field pre-emption, Title 35 occupies the field of patent law, not commercial law between buyers and sellers." *Id.*

That observation highlights the fundamental difference here. The challenged aspect of Idaho's Act is foremost its regulation of a "complaint," not "commercial law between buyers and sellers" or "conduct in the marketplace," and patent infringement pleadings *are* governed exclusively by Title 35 and other federal rules. Thus, there is no compelling basis for states to disrupt the balance of federal litigants' rights and interests with 50 different theories about how Congress could improve patent law.

Appellees discuss three objectives of federal patent law and argue the Act doesn't pose an obstacle to any of them. MicronBr44; IdahoBr13-14. But Appellees gloss over the first of those objectives and fail to recognize a fourth objective—namely, "the strong federal interest in patent law uniformity as manifested by

[Congress]." *See Byrne v. Wood, Herron & Evans, LLP*, 676 F.3d 1024, 1025 (Fed. Cir. 2012) (Dyk, J., concurring). According to the Supreme Court, Congress observed "that increased uniformity would strengthen the United States patent system in such a way as to foster technological growth and industrial innovation." *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 390 (1996) (internal quotations omitted).

A more complete and updated list of Congress's objectives reflected in patent law was recited in *OptoLum, Inc. v. Cree, Inc.*, 244 F.Supp.3d 1005, 1013 (D. Ariz. 2017). These include "fostering and rewarding invention" and "promoting nationwide uniformity in patent law." Idaho's Act is an obstacle to both.

First, the Act interferes with the objective to foster and reward invention because its regulation of infringement complaints undermines patent markets by radically altering enforcement risks for patent licensing companies. Much of a patent's value—and therefore the federal system's reward for invention—can stem from the inventor's ability to sell and assign the patent. *See* 35 U.S.C. §§ 261, 281 (providing that patents "shall have the attributes of personal property" and be "assignable," and that a "patentee shall have remedy by civil action for infringement of his patent"). And buyers would not exist absent good prospects for a return. Indeed, companies form around the business model of acquiring patents and licensing them in exchange for payment. While certain states may not respect the

choice to license rather than practice a patent, federal law certainly does. *See, e.g.*, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006) (noting some patentees "might reasonably prefer to license their patents"). Micron itself has been rewarded by the patent market thus created. *See* Joff Wild, *It Was Micron's Idea to Create an NPE to Monetise its Patents, Round Rock Founder Reveals*, IAM (June 21, 2011), https://www.iam-media.com/article/it-was-microns-idea-create-npe-monetise-its-patents-round-rock-founder-reveals [https://perma.cc/DK35-65KH] (reporting that Micron had the idea to sell to John Desmarais "over 20% of its patent portfolio" and explaining that it's sensible for companies to retain certain patents for their "defensive positions" and "to sell everything else. This makes money and gets a significant expense [off] the books").

So, the tendency of Idaho and other states to tag all patent licensing entities as "patent trolls" is not harmless sport. *See* AmiciStatesBr2 (designating as "patent trolls" all companies that use their patents "primarily for obtaining licensing fees" instead of "as a basis for producing and selling goods"); Act § 48-1703(3)(b) (favoring patent-asserters who sell a patented product). Rather, this attitude has real consequences detrimental to the patent market when it leads to inappropriate state regulation that threatens a licensing company's practical ability to enforce in good faith the patents it's purchased. A detrimental impact on the patent market ultimately undermines rewards and incentives to inventors.

Second, the Act is an obstacle to nationwide uniformity in patent law when it regulates patent litigation. Unlike marketplace communications, patent litigation is governed by federal law and excluded from state-court jurisdiction. Allowing each state to impose its own regulations on the contents of a federal complaint—permitting even a quadruple-damages-based bond if the complaint allegedly falls short—is an obstacle to nationwide uniformity, a "fundamental purpose" of federal patent law. *Bonito Boats*, 489 U.S. at 162; *see also Onken*, 473 F.Supp.2d at 986-88 (reasoning that enforcing various state laws on fees in patent-related cases would "undermine Congress's goal of nationwide uniformity in patent law").

Thus, the Act's regulation of assertions in patent-infringement complaints interferes with federal patent law and is facially preempted, such that at least the "complaint" provision should be struck.

### C. Micron's Attempt to Apply the Idaho Act to Parse and Punish the Allegations of Katana's Infringement Complaint Is Preempted.

Even if aspects of the Act were not facially preempted, it would still be preempted as applied. Given the "jurisprudential basis for the bad faith standard," Micron "has *a heavy burden to carry*." *800 Adept, Inc. v. Murex Secs., Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir. 2008) (precedential). Yet Micron's allegations of bad faith are neither plausible nor appropriate.

### 1. Micron's BFA claim centers on Katana's patent infringement complaint.

As Micron has itself emphasized, its BFA claims "are centered on the Katana Complaint," Appx1139, which is why Katana's federal-court complaint was "Exhibit 1" to Micron's state-court complaint, *see Appx*153 n.1. *See* OpeningBr18, 30. Thus, in its June 6, 2022, counterclaim to Katana's infringement complaint, Micron quoted Act § 48-1703 and bold-italicized only "a complaint." Appx2526.

Unsurprisingly, then, Micron's proposed evidence of objective bad faith merely critiques the federal complaint. *See* MicronBr38-40 (pointing to Katana's infringement complaint for purported evidence of objective baselessness). The only other assertion conduct that Micron seems to mention in its brief is communication from 2018 and early 2019 (MicronBr13-14), which predates the Act's three-year limitations period (*see* Act § 48-1706(3)) and therefore cannot be the purported violation. *See* Appx20 (finding Katana's complaint was "a new assertion that triggered a new limitations period").

> 2.    *Micron's critique of Katana's infringement complaint is petty and premature and cannot meet the high federal standard for sham litigation or objective baselessness.*

While the federal standard for bad faith "has both objective and subjective elements, the former is a threshold requirement." *See Lite-Netics, LLC v. Nu Tsai Cap. LLC*, 60 F.4th 1335, 1343 (Fed. Cir. 2023) (precedential). Thus, Appellants focus here on objective baselessness. Appellants' brief showed that Micron's allegations at best pled run-of-the-mill liability arguments and failed to address

important claim construction issues undermining the plausibility of even those arguments. OpeningBr34-39. Micron's assertion in its brief that the "infringement claims are exceptionally weak," MicronBr38, is just as conclusory as the allegations in its BFA claim. Moreover, the Order did not rely on Micron's non-infringement arguments. *See* OpeningBr37.

Had the district court analyzed Micron's non-infringement allegations in light of the serious constitutional issues and Micron's "heavy burden," it should have reached the same conclusion as Magistrate Judge Burke in *PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, No. 16-403, 2017 WL 3821107, at *7 (D. Del. Aug. 31, 2017). There, the court recognized that, even if the later claim construction stage of the case favored defendant Wombat, "Wombat still would not have demonstrated that it is plausible that PhishMe had an objectively baseless infringement claim," and the court therefore concluded Wombat had failed to sufficiently plead objective bad faith. *Id.*

Finally, as discussed above in section II(B)(2), Micron's continued reliance on the single typo in the Katana Complaint's jurisdictional section, MicronBr40-41, demeans the important issues at stake. No one ever asserted that Micron should be liable for ongoing infringement of an expired patent.

> 3.    *Idaho's Act cannot be constitutionally applied to critique exclusively federal claims and threaten liability of quadruple the accused infringer's attorneys' fees.*

Even if Micron had plausibly alleged that infringement assertions in Katana's Complaint were objectively baseless, Micron's application of the Act would still be preempted because its focus is the federal complaint, not marketplace conduct. *See* OpeningBr49 ("[T]he Act badly distorts the balance of rights in federal patent litigation. The distortion is more pronounced here as Micron admits its BFA claim is 'centered on the Katana Complaint.'"). If there is any situation where the Act's "complaint" provision in section 48-1703(1) could be constitutionally applied, it wouldn't be this case where (a) there is no other non-time-barred challenged conduct and (b) the federal infringement claim has not yet been adjudicated (and has, by virtue of the Order, been subordinated to the state claim). Thus, for many of the same reasons discussed above regarding facial preemption, Micron's application of the Act is preempted.

### D.    Micron Cannot Avoid This Court's Jurisdiction or Mandamus Authority.

Micron criticizes Appellants' jurisdictional arguments because each one rests on purportedly "unsubstantiated suggestions that Appellants are harmed because the bond is prohibitive." MicronBr26. But the harmful effect of the $8-million bond is now apparent. As demonstrated in section II(B)(3), Appellees' own arguments suggest the bond is to deter, penalize, discourage certain patent assertions, and scare off Katana. An order invoking state law to effectively prevent a patentee from prosecuting federal claims for an indeterminate period of time is immediately

27

suspect, especially in concert with simultaneously allowing the accused infringer's unconstitutional claim for quadruple damages to proceed. This Court's *Atari* decision is instructive.

*Atari* considered the district court's preliminary injunction preventing Nintendo from suing Atari's customers for patent infringement on the theory that Nintendo was enforcing its patent in bad faith, in violation of antitrust laws. *Atari Games Corp. v. Nintendo of Am., Inc.*, 897 F.2d 1572, 1577-78 (Fed. Cir. 1990). Vacating the order, this Court noted that "a patent infringement suit is presumed to be brought in good faith" and recognized that the district court had simply "assume[d] the truth of Atari's antitrust allegations." *Id.* The Court could not find "specific factual findings" to justify the preliminary injunction and stressed that the district court "must examine carefully extraordinary relief which precludes the filing of civil lawsuits for an indeterminate period of time." *Id.* at 1578.

Similarly, the district court in this case undermined the federal presumption that a patent infringement suit is brought in good faith by improperly assuming the truth of Micron's allegations and conditioning Katana's ability to prosecute its patent infringement lawsuit for an indeterminate time period on payment of an $8-million bond. And it was all done pursuant to a state statute while allowing the unconstitutional quadruple-damages counterclaim to proceed.

The mere threat of even lesser treble damages creates an immediate chilling effect on the "good faith actions of patentees" that the Ninth Circuit recognized in *U.S. Aluminum*, 831 F.2d at 881. Immediate appeal is therefore appropriate.

Micron argues that conditioning Katana's enforcement right on payment of an $8-million bond is just "effectively a conditional stay" and that "[u]nder Appellants' logic, *all* stays would be immediately appealable, because they *all* conditionally prevent cases from moving forward." MicronBr27 (emphasis in original). But Appellants do not argue harm from a mere stay. The intense harm stems from the forced choice of paying such a massive bond or else watching Micron pursue its unconstitutional state counterclaim while Katana's federal claim is precluded for an indeterminate period. OpeningBr8-9. Such chilling coercion is certainly not present with "all stays," or any cited by Micron. This disparity in claim treatment immediately threatens the practical ability of Katana (or any other small company) to enforce its patent rights at all and mandates immediate appeal.

Regarding jurisdiction under *Cohen*, Micron argues that "[t]he separability factor alone is dispositive" and focuses attention on Appellants' arguments about the merits of Micron's BFA claim. MicronBr29. But the threshold issue is whether the bond is even constitutional and within the district court's *power*, not the merits of Micron's claim. Given the penal and coercive effect of the bond, a ***post***-judgment appellate decision that the $8-million bond was unlawful would not unring the bell

of constitutional injury. That is, the Order has "a final and irreparable effect on the rights of the parties." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545 (1949); *see also Atl. Fertilizer*, 117 F.3d at 268 (agreeing that "the 'power-discretion dichotomy' was a reasonable means for determining the appealability of orders concerning security").

The important question here is whether the district court had the power to allow the state claim regulating Katana's complaint to proceed unhindered while precluding Katana from litigating its federal claim unless it pays a massive state-law bond—a bond with teeth that takes its unconstitutional, chilling bite *pre*-judgment. A final judgment, whether for or against Katana, will have no bearing on that injury. The issue is therefore appealable as a collateral order.

Pendent jurisdiction over the dismissal motion is also appropriate. Micron argues the constitutionality issue is not "necessary to decide" the bond issue. MicronBr34. But Micron's cited case confirms the correct question is whether it is "necessary to review both 'to ensure meaningful review.'" *Entegris, Inc. v. Pall Corp.*, 490 F.3d 1340, 1348 (Fed. Cir. 2007). The answer is yes, especially since the unconstitutionality of the Act's "complaint" provision effectively resolves the bond issue.

Mandamus relief should be available in the alternative. Appellants submit that, absent immediate relief, a clearly erroneous state-law bond will block a

patentee's federal rights of enforcement while the large, financially leveraged corporate infringer is permitted to pursue an unconstitutional state-law claim for quadruple damages calculated to chill protected petitioning activity and scare off the patentee.

July 11, 2024                                    Respectfully submitted,

                                                */s/ Scott W. Breedlove*
                                                Scott W. Breedlove
                                                sbreedlove@carterarnett.com
                                                Joshua J. Bennett
                                                jbennett@carterarnett.com
                                                Omer Salik
                                                osalik@carterarnett.com
                                                CARTER ARNETT BENNETT &
                                                PEREZ PLLC
                                                8150 N. Central Expy, Suite 500
                                                Dallas, Texas 75206
                                                214-550-8188 (Telephone)
                                                214-550-8185 (Facsimile)

                                                COUNSEL FOR APPELLANTS KATANA
                                                SILICON TECHNOLOGIES LLC AND
                                                LONGHORN IP, LLC

## CERTIFICATE OF SERVICE

I hereby certify that, on July 11, 2024, all counsel of record were served with a true and correct copy of the foregoing REPLY BRIEF OF APPELLANTS KATANA SILICON TECHNOLOGIES LLC and LONGHORN IP, LLC through the Court's electronic filing system.

*/s/ Scott W. Breedlove*
Scott W. Breedlove

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i), as modified by Federal Circuit Rule 32(b)(1).

The brief contains 6911 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac version 16.81 in a 14-point Times New Roman font.

*/s/ Scott W. Breedlove*
Scott W. Breedlove